**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

DINOSAUR FINANCIAL GROUP LLC,
HILDENE CAPITAL MANAGEMENT, LLC and
SWISS LIFE INVESTMENT MANAGEMENT
HOLDING AG, on behalf of themselves and all
others similarly situated,

        Plaintiffs,                          Case No. 1:22-CV-1860 (KPF)

              -v-

S&P GLOBAL, INC., AMERICAN BANKERS
ASSOCIATION, and FACTSET RESEARCH
SYSTEMS INC.,

        Defendants.

-----------------------------------------------------------------x

**ORDER REGARDING PRODUCTION OF ELECTRONICALLY**
**STORED INFORMATION AND PAPER DOCUMENTS**

       This Order Regarding Production Of Electronically Stored Information And Paper Documents ("ESI Protocol") shall govern the Parties and any non-parties that produce or request documents in the above-captioned case whether they currently are involved or become so in the future, including any related actions that may later be consolidated with this case (collectively, the "Litigation").

**I.**    <u>**GENERAL PROVISIONS**</u>

A.    **Applicability:** This ESI Protocol will govern the production of ESI and paper documents.

B.    **Limitations & Non-Waiver:** Nothing in this ESI Protocol shall be construed to affect the relevance or admissibility of discoverable information. All objections to the relevance and admissibility of any documents are preserved and may be asserted at any time. Pursuant to the terms of this ESI Protocol, information regarding search process and electronically-stored information ("ESI") practices may be disclosed, but compliance with this ESI Protocol does not constitute a waiver, by any Party or non-party, of any objection to the production of particular ESI for any reason, including as irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party or non-party. For the avoidance of doubt, a Party or non-party's compliance with this ESI Protocol will not be interpreted to require disclosure of information potentially protected by the attorney-client

privilege, the work product doctrine, or any other applicable privilege or protection from disclosure, including foreign data protection laws. All Parties and non-parties preserve all such privileges and protections, and all Parties and non-parties reserve the right to object to the assertion of any such privileges and protections.  Nothing in this ESI Protocol is intended to alter any Party or non-party's rights, obligations, or responsibilities under Federal Rules of Civil Procedure 26, 34, and 37.

C.      **Deadlines:** References to schedules and deadlines in this ESI Protocol shall comply with Federal Rule of Civil Procedure 6 and Local Rule 6.4 with respect to computing deadlines.

D.      **Definitions:**

1.      Plaintiffs and Defendants, as well as their officers, and employees, are referred to as the "Parties" solely for the purposes of this ESI Protocol. A single Plaintiff or Defendant, as well as, where applicable, its respective officers, and employees, may also be referred to as a "Party" solely for the purposes of this ESI Protocol.

2.      A Producing Party is any Party or non-party, excluding designated experts, that produces ESI or documents pursuant to this ESI Protocol.

3.      A Receiving Party is any Party that receives ESI or documents produced pursuant to this ESI Protocol.

4.      A Requesting Party is any Party that requests ESI or documents pursuant to this ESI Protocol.

5.      Document Family means a collection of pages or files maintained together constituting a single communication of information, but consisting of more than a stand-alone record.  Examples include an email and its associated attachments, or a presentation with embedded files.

6.      Extracted Text is the text extracted from a Native Document, including all header, footer, and document body information. A Text File is a file containing the Extracted Text extracted directly from native files, or, in the case of hard copy or PDF documents subject to OCR, a file containing the text resulting from the OCR.

7.      Load File means an electronic file that is used to import all required production information into a database, including, if available, images, Extracted Text or OCR text, native files where required, metadata, as well as information indicating document breaks and document relationships.  For files produced as TIFF images, each page shall be electronically saved as an image file.  The Producing Party shall produce a unitization file, a type of load file, for all produced documents.

8.      Structured Data is data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (including Oracle, SQL, Access) or data sets, according to form and content rules defined by each field of the database.

9.	To avoid misunderstandings about terms, all Parties and non-parties should consult The Sedona Conference Glossary: eDiscovery and Digital Information Management, Fifth Edition.

E.	**Confidential Information:** For the avoidance of doubt, nothing herein shall contradict the Parties' and non-parties' rights and obligations with respect to any information designated as Protected Material under any Protective Order entered in this matter.

F.	**Preservation:** The Parties agree that they shall continue to take reasonable steps to preserve relevant documents and ESI, in accordance with their obligations under applicable law. By preserving or producing information for the purpose of this Litigation, the Parties are not conceding that such material is discoverable.

G.	**Meet and Confer Requirement**: The Requesting Party, Receiving Party, and Producing Party, as appropriate, shall meet and confer in an effort to resolve any disputes that may arise under this ESI Protocol, prior to seeking assistance from the Court.

## II.	**GENERAL PRODUCTION FORMAT PROTOCOLS**

A.	**TIFFs:** Except for Structured Data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files.  Each image will have a file name that is the unique "Bates" or document control number of that image, pursuant to ¶ II(F).  Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a Producing Party's vendor (i.e., portrait to portrait and landscape to landscape). The imaged data shall retain all attributes of the native or hard-copy file, such as document breaks. Produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within a document in its native file format shall also be imaged so that such content is viewable on the image file. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format (e.g., items identified in ¶ II(C) below), may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A Producing Party retains the option to produce ESI in alternative formats if so agreed by the Requesting Party, which may include native format, or a combination of native and TIFF formats.

B.	**Text Files:** Each ESI item produced under this ESI Protocol shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

1.	**OCR:** A Producing Party shall scan and OCR paper documents. The Producing Party will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. OCR text files should indicate page breaks where possible. Full OCR text shall be provided on a document-level basis in an

3

appropriately formatted text file named to match the first Bates number of the document. The Parties acknowledge that, due to poor quality of the originals or the existence of handwriting on a document, not all documents lend themselves to the generation of accurate OCR. If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format.  There is no obligation to OCR any electronic documents that do not natively exist in a text-searchable format.

2.  **ESI:** Except for redacted documents, emails and other ESI will be accompanied by Extracted Text taken from the electronic file itself, where available. For redacted documents, Producing Parties shall provide OCR text in accordance with the specifications in Section II.B(1).  To the extent Extracted Text is not technically possible (e.g., when the document is an image file), the text for each ESI item shall be generated by applying OCR to the native file.

C.  **Production of Native Items:** ESI shall be produced as TIFF images consistent with the format described in section II(A) with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 1 hereto. The exceptions to this rule shall be the following:

1.  Presentation files (e.g. MS PowerPoint) shall also be produced both with TIFFs and its associated native file; and

2.  Spreadsheet-application files including comma or tab delimited text files (e.g., MS Excel), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), for which all ESI items shall be produced only in native format.  In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the Producing and Requesting Parties shall meet and confer to determine the appropriate form of production. When producing the above file types in native format, the Producing Party shall produce a single-page TIFF slip sheet with a standardized phrase indicating that a native item was produced bearing that item's unique Bates number and confidentiality designation.  The corresponding load file shall include NativeFile Link information for each native file that is produced. Further, Producing and Requesting Parties shall meet and confer prior to producing native file types other than spreadsheet application files, presentation files, and multimedia audio/visual file types such as .wav, .mpeg and .avi.  Prior to processing non-standard native files for production, the Producing Party shall disclose the file type to and meet and confer with the Requesting Party on a reasonably useable production format. Requesting and Producing Parties shall meet and confer to the extent that there is data in database application files, such as SQL, to determine a reasonable form of production of usable data. Production load files shall contain a link to the produced native format file as specified in the NativeFile metadata field described in Appendix 1.

D.  **Requests for Other Native Files:** Other than as specifically set forth above, a Producing Party need not produce documents in native format. If a Party would like a particular

document produced in native format and this ESI Protocol does not require the production of that document in its native format, the Party seeking such production shall explain the reason for its request that the document be produced in its native format. The Party seeking such production in native format will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with a link in the NativeFile field, along with all Extracted Text and applicable metadata fields set forth in Appendix 1.  If a Producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in native format.

E.     **Native Integrity and Confidentiality**: Through the pendency of the Litigation, the Producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata. The Requesting Party shall also ensure that the confidentiality assigned to the document follows the native pursuant to Section II.L.

F.     **Bates or Document Control Numbering:**

1.     All documents produced as TIFF images must be assigned a legible identifying Bates number electronically "burned" onto the image that must always: (1) be unique across all document productions in this Litigation; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters, or embedded spaces, except for hyphens or underscores; (4) be sequential within a given document; and (5) include a letter prefix identifying the Producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

2.     If a Bates number or set of Bates numbers is intentionally skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

3.     The Producing Party will make reasonable efforts to brand all TIFF images with Bates numbering and confidentiality designations at a location that does not obliterate or obscure any part of the underlying images.

G.     **Document Family Relationships:** Document Family relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Producing Party is producing a hard-copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

H.     **Entire Document Families:** Email attachments and embedded files must be mapped to their parent email by including a "BegAttach" field designating the beginning of each such attachment and "EndAttach" field designating the end of each such attachment. If attachments and embedded files cannot be separated from parent documents, then "BegAttach" and "EndAttach" fields listing the unique beginning and end number for each

attachment or embedded document must be included. Entire document families must be produced, even if only the parent email is responsive, except the following:

1. Non-substantive junk files (such as .ole or .dll formats), logos, and non-user-created content routinely excluded during processing (provided such routine processing-generated exclusions are agreed to among the Parties); and

2. Documents that are withheld on the basis of attorney-client privilege or work-product protection or any other applicable protection that warrants withholding a document and in compliance with any applicable Court order on or local rules concerning such assertions of privilege, work-product or other protection.

3. Attachments: If an attachment is unrelated to CUSIPs or the claims and defenses in this litigation, and is not otherwise independently responsive to a Party's document requests, it may be withheld if it (i) contains only highly sensitive personal information, such as a family photo or personal medical records; or (ii) if it is Highly Confidential Material (as defined in the Stipulated Protective Order or any amendment thereto) that falls entirely into one of the specifically enumerated categories of information set forth in Section II.M.3 or that are otherwise agreed by the Parties or ordered by the Court.  To be excluded, the attachment must be wholly unrelated to the reason that the parent document was responsive to the request.  Any attachment that is withheld pursuant to this provision shall be logged with a description of the reason for withholding it that provides the Requesting Party with sufficient information to test the propriety of withholding it.

I. **Custodians**: The custodian or originating source shall be identified in the Custodian field of the database load files, discussed immediately below. Documents found in the possession of a natural person (or on his or her hardware or storage media) shall identify such natural person custodian. When not captured by a required automated process, a Producing Party shall use a uniform description of a particular Custodian across productions, and separate multiple custodians in the "Custodian" field by a semicolon. For documents with no individual custodian (e.g., centralized files, document management systems), Producing Parties shall use the relevant entity name(s) in the "Custodian" field. If a person changed names, such as upon marriage or divorce, both names may appear in the Custodian field for the relevant time periods and there is no obligation on the producing party to account for the name change when normalizing names.

J. **Load Files:**  All production items will be provided with a delimited data file or "Load File," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available.  The Load File must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data Load File should match the total number of designated document breaks in the Image Load files in the production. The name of the image Load File should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC001.DAT). The volume names should be consecutive to the extent possible (i.e., ABC001, ABC002, et. seq.). There

6

should be one row in the Load File per TIFF image. Every image in the delivery volume should be cross-referenced in the image Load File. The image key should be named the same as the Bates number of the page. The data Load File (i.e., the .DAT file) should use standard Concordance delimiters: Comma - ¶ (ASCII 20); Quote - þ (ASCII 254); and Newline - ® (ASCII174). The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines. All date fields should be produced in mm/dd/yyyy format. All attachments shall sequentially follow the parent document or email. Use carriage-return line-feed to indicate the start of the next record. Load Files should not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered. The name of the data Load File should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT). If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format.  Load Files should not be split across volumes regardless of delivery media.

K.   **Color:** Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then a Receiving Party may, in good faith, request that the document or ESI item be produced in its original colors. For such documents, a Receiving Party requesting the color copies shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI) or in native format. All requirements for productions stated in this ESI Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Requests that a document be produced in color for the reasons set forth in this paragraph shall not be unreasonably denied by the Producing Party. If a Producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

L.   **Confidentiality Designations:** If a particular paper document or ESI item qualifies for confidential treatment pursuant to the terms of any Protective Order entered by the Court in the Litigation, or a stipulation entered into by the Parties, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images to the extent practicable. This designation also should be included in the appropriate data field in the Load File. For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible. Requesting Parties shall ensure that the confidentiality claim follows the document regardless of whether the designation imprints on the file when viewed in printed form. Failure to comply with the procedures set forth in this ESI Protocol, any Protective Order or confidentiality order, or any confidential stipulation shall not waive any protection or confidential treatment.

M.   **Redactions:** Absent a written agreement by the Parties or Court Order, a Producing Party may redact documents only on the following grounds:

1. **Personal Data Redactions:** A Producing Party may redact personal information to the extent that the information falls within one of the following categories: (a) the information relates to medical or health issues of an individual, (b) social security numbers, tax identification numbers, personal financial account or banking secrecy information, or personal passcodes, or (c) is otherwise protected from disclosure by any applicable U.S. or Swiss law, regulation, or rule after providing notice to the Requesting Party of the grounds for applying such law, regulation, or rule and an opportunity to challenge the grounds for any such application prior to production. Such redactions should be identified as "Redacted – PD" on the document.

2. **Privilege Redactions**: Pursuant to Federal Rule of Civil Procedure 26(b)(5)(A), a Producing Party may redact information protected by the attorney-client privilege, the work product doctrine, the common-interest doctrine, or any other applicable privilege, protection, or immunity recognized by U.S. law. Such redactions must be identified as "Redacted - Privileged" on the document. If any member of a Document Family is responsive, the Producing Party shall produce all family members and/or portions thereof that are not independently protected as privileged. If a Producing Party subsequently produces a document previously withheld and place-holdered or redacted pursuant to this ESI Protocol, the Producing Party shall produce that document pursuant to the production specifications of this Protocol that would have been applicable had the document been produced initially, including provision of Load Files necessary to link the replacement file to other previously produced family members. The Producing Party shall apply an appropriate numerical suffix to the Bates number of the file to account for instances where the reproduced version of the file occupies more pages than the original image of the file.

3. **Other Redactions:** Upon written agreement of the Parties or further Order of the Court, a Producing Party may redact specified categories of Highly Confidential Material (as defined in the Stipulated Protective Order, or any modification thereto) that are irrelevant to the claims or defenses in the above-captioned case. The Parties have agreed that the following categories of information may be redacted subject to this Paragraph: (i) nonpublic information about potential mergers and acquisitions unrelated to CUSIPs; (ii) profits and losses unrelated to CUSIPs; (iii) discussions within board minutes that relate only to business units unrelated to CUSIPs; and (iv) discussions within strategic business plans that pertain only to business units unrelated to CUSIPs. Such redactions must be identified as "Redacted Other" on the document. Such redactions shall be applied so as to give the Receiving Party sufficient context to understand the unredacted portions of the document. Except as otherwise specified in this Protocol, if any member of a Document Family is responsive, the Producing Party shall produce all family members and/or portions thereof that are not independently protected as privileged. If a Producing Party subsequently produces a document previously withheld and place-holdered or redacted pursuant to this ESI Protocol, the Producing Party shall produce that document pursuant to the production specifications of this Protocol that would have been applicable had the document been produced initially,

including provision of Load Files necessary to link the replacement file to other previously produced family members.   The Producing Party shall apply an appropriate numerical suffix to the Bates number of the file to account for instances where the reproduced version of the file occupies more pages than the original image of the file.

N.   **Production Media & Protocol:**  A Producing Party may produce documents via email, readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"), or via secure file-sharing service, including any network-based secure file transfer mechanism or SFTP. Productions made via SFTP are not required to be supplemented with hard media containing the same production. Each Production Media shall include a unique identifying label identifying the Producing Party, the Litigation, the date of production, the disk number (1 of X, 2 of X, etc.) the production volume, any confidentiality designation, and the Bates range of the documents in the production. For SFTP productions, the Producing Party shall provide a cover letter containing the information that would otherwise be on the label. Each volume shall limit director contents to approximately 5,000 files per folder. Any Requesting Party that is unable to resolve any technical issues with the electronic production method used for a particular production may request that a Producing Party provide a copy of that production using Production Media.  The Producing Party must encrypt Production Media, and will provide a decryption key to the Requesting Party in a communication separate from the production itself. Further, any replacement Production Media shall cross-reference original Production Media, identify itself as a replacement, and cross-reference the Bates range that is being replaced.

O.   **Foreign Language Documents**: To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all such documents or ESI in the original language(s) as well as any English translations of such documents or ESI and certifications of such translations that are readily available and stored by the party in the ordinary course  (i.e., that were not created specifically by the Producing Party for the Litigation). If no English version of a document is available, the Producing Party has no obligation to produce an English translation of that document. The Producing Party shall make reasonable efforts to ensure that all technologies and processes used to collect, process and produce any document—including all TIFF conversion and OCR processes and the extraction of text from native files—preserves all foreign language text, punctuation and other characteristics as they exist in the source native file. To the extent reasonably and technically possible, foreign language text files shall be delivered in UTF-8 and be Unicode compliant, with the correct encoding to enable the preservation of the documents' original language.

## III.   PAPER DOCUMENT PRODUCTION PROTOCOLS

A.   **Scanning:** Where OCR is used to scan paper documents, the Parties agree that the following ¶¶ III(B)-(C) shall apply.

B. **Coding Fields:** The following information shall be produced in the Load File accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, and (g) Redacted (Y/N) or otherwise indicating that a redaction is present. Additionally, all paper documents will be produced with a coding field named "Record Type" with "Paper" in it or otherwise indicating that the document originated in paper form, and such indication shall be explained to the Requesting Party.

C. **Unitization of Paper Documents:** Paper documents should be logically unitized for production to the extent reasonably practicable. Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The Parties will make reasonable efforts to unitize documents logically.

1. **Unitization:** Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the Load File to the extent reasonably practicable. Similarly, pages that are stapled or clipped shall be produced as a single document and not multiple one-page documents. The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields to the extent reasonably practicable. However, non-responsive documents within a folder, clipped bundle, or binder need not be produced. This provision does not obligate any Producing Party to reassemble Document Families for paper documents that are not maintained or stored as Document Families as they are kept in the ordinary course of business, nor shall any Producing Party be obligated to make whole any document that is not stored or maintained in its complete form.

2. **Identification:** Where a document, or a document group—such as folder, clipped bundle, or binder—has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

D. **Custodian Identification:** Producing Parties will utilize best efforts to ensure that paper records for a particular custodian are produced in consecutive Bates stamp order. *See* ¶ II(F) above.

## IV.    ESI METADATA FORMAT AND PROCESSING ISSUES

A. **System Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology (http://www.nrsl.nist.gov/) as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files if they clearly do not have user-created content.

B. **Metadata Fields and Processing:**

1.  **Time Zone:** To the extent reasonably practicable, ESI items shall be processed using a consistent time zone, and the time zone (e.g., EST) used shall be disclosed to the requesting Party.

2.  **Auto Date/Time Stamps:** To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

3.  Except as otherwise set forth in this ESI Protocol, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that can reasonably be extracted from a document.

4.  Producing Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Redacted (Y/N), (h) NativeLink fields, and (i) Record Type (as indicated above with respect to documents sourced from paper).

5.  To the extent reasonably available, metadata identified in Appendix 1 shall be provided in a Concordance-format delimited file with a .DAT file extension using Concordance default delimiters, including ASCII 020 and 254 delimiters for column break and text qualifier, and new line as ASCII 174. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each document.

C. **Redaction:**

1.  Where ESI items need to be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated, except in the case of personal database files (e.g., MS Access), which shall be governed by ¶ III above. Any metadata fields reasonably available and unnecessary to protect the privilege protected by the redaction shall be provided. For certain MS Excel documents or other file types or files, TIFF redactions may be impracticable. These documents may be redacted in native format. Where a document is redacted, the TIFF image should show the word "Redacted" and a production Load File should be populated to indicate the document contains a redaction.  If a document normally produced in native format requires redaction, it may be produced in redacted TIFF format, or redacted native format at the Producing Party's discretion, to the extent reasonably and technically possible.

2.  If the items  redacted and partially  withheld from production are  Excel-type spreadsheets as addressed in ¶ III above and native items are also  withheld, to the extent  reasonably practicable,  each  entire  ESI  item must be produced in

TIFF format, including all unprivileged pages, and other information that does not print when opened as last saved by the custodian or end user. For PowerPoint-type presentation decks, this shall include, but is not limited to, any speaker notes. The Producing Party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images are formatted so as to be legible. If redacting TIFF images, the Producing Party shall make reasonable efforts to (1) reveal hidden rows, columns, or sheets prior to converting the document to TIFF; (2) clear any filters that may conceal information; (3) adjust column widths so that numbers do not appear as "########"; (4) ensure that column and row headings print; (5) ensure that the tab name appears in the header or footer of the document; (6) process comments so that they are produced at the end of the spreadsheet; (7) process spreadsheets so that they print across and then down; and (8) process presentations (such as PowerPoints) so that all speaker notes and comments are visible.

3.  If the items redacted and partially withheld from production are audio/visual files, the Producing Party shall, to the extent reasonably practicable, provide the unredacted portions of the content. If the content is a voice recording, the Requesting and Producing Parties shall meet and confer to discuss the appropriate manner for the Producing Party to produce the unredacted portion of the content.

D.  **Email Collection and Processing:**

1.  **Email Threading:** Email threads are email communications that contain prior or lesser included email communications. A most inclusive email thread is one that contains all of the prior or lesser included emails and attachments including each branch of the email thread. A Producing Party may use email thread suppression to exclude email from production, provided however, that an email that includes an attachment or content in the BCC or other blind copy field shall not be treated as a lesser included version of an email that does not include the attachment or content, even if all remaining content in the email is identical. Producing Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression (a) eliminate the ability of a Requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread. If the sender, recipient(s) (including any ccs or bccs), and date information on suppressed threads is unreadable in the produced inclusive thread, the producing Party shall provide a .csv or .xls file containing the metadata for the suppressed threads to the extent that the suppressed threads are within the scope of the collection and/or custodians.

2.  **Email Domains:** Producing Parties may utilize an ESI search process to identify and exclude irrelevant categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails, retailer advertising, and newsletters or alerts from non-industry or non-relevant sources.

E.   **De-Duplication:** To the extent consistent with the below subparts, the Producing Party need only produce a single copy of a particular electronic document.

   1.   **Vertical De-Duplication**. A Producing Party may de-duplicate ESI vertically by custodian, provided however, that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include identical content in the BCC or other blind copy field, even if all remaining content in the email is identical.

   2.   **Horizontal De-Duplication.** A Producing Party may de-duplicate ESI horizontally (globally) across the population of records, and provided further that: (a) an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical; and (b) all custodians who were in possession of a de-duplicated document must be identified in the AllCustodian field. To ensure accuracy, the AllCustodian field must be captured by an automated process and cannot be populated using a manual process. In the event of a rolling production of documents or ESI items, the Producing Party shall provide an overlay Load File with an updated AllCustodian field along with each production or as soon as practicable thereafter. The metadata overlay may contain a full refresh of data for the AllCustodian field or be a supplement to the information previously provided for the field. At the time of production, the Producing Party shall identify the overlay as a full refresh overlay or a supplemental overlay.

   3.   Duplicate electronic documents shall be identified by a commercially accepted industry standard (e.g., MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The Producing Party shall use reasonable efforts to produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable.  The Producing Party is not obligated to extract or produce entirely duplicate ESI documents.

   4.   Duplicate messaging files shall be identified by a commercially accepted industry standard (e.g., MD5 hash values) for the email family, which includes the parent and email attachments. Duplicate messaging materials will be identified at a family level, including message and attachments. Email families bearing an identical value are considered a duplicate group. The Producing Party shall use reasonable efforts to produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable.

   5.   Production of ESI de-duplicated in accordance with the ESI Protocol shall constitute production of documents as maintained in the ordinary course of business.  No Producing Party shall be required to, but may, eliminate vertical duplicates by manual review, including hard copy documents that are exact duplicates of electronic versions. However, any document containing handwritten

notes or markings would not be an exact duplicate of an electronic version and if responsive must be produced as an original document.

6.    The Parties will not treat a document containing handwritten notes, highlighting, or any other markings as a duplicate of a non-marked or annotated version of the same document.

F.    **Structured Data**:  To the extent that responding to a discovery request requires production of ESI contained in a database, a Producing Party may query the database for discoverable information and generate and produce a report in a reasonably usable and exportable Excel or .csv format.  The first line of each such file will show the column headers for each field of data included.  The Parties shall meet and confer to finalize the appropriate data extraction and production format for specific information contained in a database.

G.    **Zero-byte Files:**  Producing Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If the Requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the Requesting Party may request that the Producing Party produce the zero-byte file. The Requesting Party may provide a Bates number to the Producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

H.    **Microsoft "Auto" Feature:**  To the extent reasonably practicable and technologically possible for a Producing Party's vendor, Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business.  If "auto date," "auto file name," "auto file path," or similar features are identified, the produced document shall be processed so as to maintain the metadata as last saved by the custodian or end user, not the date of collection or processing (i.e., force off Auto Data), to the extent practicable.

I.    **Hidden Text:**  ESI items shall be processed, to the extent practicable, in a manner that preserves and displays hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

J.    **Embedded Objects:**  With the exception of embedded Microsoft Excel, Microsoft Word, Microsoft PowerPoint, or similar objects which are each to be extracted as standalone documents, the Parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a Producing Party (e.g., such embedded objects will be produced within the document itself, rather than as separate attachments).

K.    **Compressed Files:**  Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .RAR, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is

decompressed into the lowest possible compression resulting in individual folders and/or files.

L.   **Password-Protected, Encrypted, or Proprietary Software Files:** With respect to any ESI item that is within the scope of review and either password-protected or encrypted, the Producing Party will take reasonable steps to identify the password for the ESI item or unencrypt the ESI item so that it can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request remain for a particular custodian after such reasonable efforts have been made, the Producing Party shall advise the Requesting Party by producing a slipsheet for each encrypted or password-protected document indicating that the document cannot be decrypted and providing the metadata for the document required by Appendix 1 to the extent it can be reasonably extracted from the file in its encrypted form. ESI that is reasonably likely to contain responsive, non-duplicative information and that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a Requesting Party, and the Requesting and Producing Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

## V.   PROCESSING OF NON-PARTY DOCUMENTS AND ESI

A.   A Party that issues a non-party subpoena ("Issuing Party") seeking the production of documents shall include a copy of this ESI Protocol with the subpoena and request that the non-party produce documents and ESI in accordance with the specifications set forth herein.

B.   The Issuing Party is responsible for producing to all other Parties any documents and/or ESI obtained pursuant to a subpoena.  To the extent practical given the volume, productions by a non-party should be produced by the Issuing Party to all other Parties within ten (10) calendar days of the receipt by the Issuing Party.

C.   If a non-party refuses to produce documents and/or ESI in accordance with the specifications set forth here, the Issuing Party has no obligation to conform the non-party's production to such specifications.

D.   Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

## VI.   PRODUCTION OF PRIVILEGE LOGS

A.   Except as provided below, for any Document redacted or withheld in its entirety, the Producing Party shall produce privilege logs in MS Excel format or any other agreed-upon format that permits electronic sorting and searching.

B.   Privilege Log Requirements:

1.      Consistent with Federal Rule of Civil Procedure 26(b)(5) and Local Rule 26.2, and unless otherwise agreed by the Parties or Ordered by the Court, Privilege Logs shall contain the following information for each document withheld or redacted on grounds other than the protection of personal data under Section II.M.1:

   a.  a sequential number associated with each privilege log record;
   b.  the date of the document or ESI;
   c.  the Bates number of the documents or ESI redacted;
   d.  the identity of persons who sent (and, if different, the identity of all persons who authored or signed) the document or ESI and the addressees, recipients, copyees, and blind copyees (with senders, signers, authors, addressees/recipients, copyees, and blind copyees, each separately identified by those categories);
   e.  the document type (i.e., letter or memorandum);
   f.  for any person identified pursuant to subpart d above, the Producing Party will make reasonable, good faith efforts to identify the employer of each individual if the employer is not employed by the Producing Party and to the extent it is not reasonably identifiable from the entry itself. If the employer is unknown, the producing Party will note that the employer is unknown;
   g.  All attorneys shall be noted with an asterisk (*) or other identifier;
   h.  The general subject matter of the information contained in the document or ESI that is sufficient to enable the Receiving Party to assess the privilege claim, without revealing information itself privileged or protected. The same description may be used for multiple documents (i.e., a categorical description) so long as the Producing Party has in good faith evaluated the document to ensure the description accurately reflects the content of the document and is sufficient for the Receiving Party to evaluate the claim of privilege;
   i.  the type or nature of the privilege or immunity asserted (i.e., attorney-client privilege or work-product doctrine); and
   j.  an indication of whether the document has been redacted or withheld in its entirety.

2.      For email threads suppressed in accordance with IV.D(1), the Producing Party may either: (i) log an entry for each lesser included email for which a privilege or protection is asserted; or (ii) log a single entry for the entire thread and produce a redacted version of the threaded email.

3.      As an alternative to manually entering the information required by Section V.B.(1)(d), Producing Party's privilege log may be generated by exporting metadata from the review tool used to identify privileged documents where that metadata actually provides the information required, and provided that the metadata are reasonably understandable and legible.

4.      The Producing Party shall produce to all other Parties a privilege log no later than 30 days after substantial completion of the Producing Party's productions

from which privileged documents were withheld unless another deadline is agreed to by the Parties.

5.      The following categories of Documents need not be reflected in a Producing Party's privilege log, unless good cause exists to require that a Party do so or the Parties otherwise agree:

    a.      Communications after the filing of the earliest complaint in the above-captioned case that are exclusively between a Party and its corporate in-house and/or outside counsel regarding this litigation.

    b.      Any privileged materials or work product created by or specifically at the direction of a Producing Party's outside counsel, an agent of outside counsel other than the Producing Party, and non-testifying consultants or experts in anticipation of or in connection with this litigation, or with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts in connection with this litigation.

C.      **Challenges to Privilege Claims**:  Should a Receiving Party, in good faith, have reason to believe a particular entry or category of entries on a privilege log or its associated document does not reflect privileged information, or that the entry does not provide sufficient information to assess any such claim of privilege, the Receiving Party may request additional information, and the Producing Party will not unreasonably refuse to provide more information about the basis of the asserted privilege in compliance with Federal Rule of Civil Procedure 26(b)(5). Should a Receiving Party, in good faith, have reason to believe a particular redaction or withheld document is responsive and does not reflect privileged or protected discoverable information after the producing Party has provided the additional information, the Requesting Party shall provide (i) the Producing Party with its justification for believing the redaction or withheld document may be responsive and not privileged or protected, and (ii) the Producing Party an opportunity to re-consider its assertion of privilege or protection on the redaction or document. The Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court. The Requesting Party shall not challenge the Producing Party's privilege log or any individual entries thereon without following the procedures set forth in this protocol, unless based solely on material non-compliance with this ESI Protocol. The withdrawal of an asserted privilege or protection following a challenge and subsequent meet and confer shall not be a basis to challenge other documents included in the privilege log, except for duplicate documents.

## VII.   <u>MISCELLANEOUS PROVISIONS</u>

A.      **Inaccessible ESI:** If a Producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible, or if the Requesting Party asserts that, following production, certain ESI is not reasonably usable, the Requesting and Producing Parties shall meet and confer to discuss resolving such assertions. If the Requesting and Producing Parties cannot resolve any such disputes after

such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

B.    **Variations or Modifications:** Variations from this ESI Protocol may be required. Any practice or procedure set forth herein may be varied by agreement, which will be confirmed in writing. In the event a Producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the Producing Party will notify the Requesting Party of the variation or modification.  Upon request by the Requesting Party, the Requesting and Producing Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

SO ORDERED.

Dated:  October 17, 2023
         New York, New York

_____
            Hon. Katherine Polk Failla
            United States District Judge

18

Dated: October 16, 2023

Respectfully submitted,

By:   /s/ Ronald J. Aranoff
David H. Wollmuth
R. Scott Thompson
Ronald J. Aranoff
Ryan A. Kane
Joshua M. Slocum
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue, 12th Floor
New York, New York 10110
Telephone: (212) 382-3300
dwollmuth@wmd-law.com
sthompson@wmd-law.com
raranoff@wmd-law.com
rkane@wmd-law.com
jslocum@wmd-law.com

*Co-Lead Class Counsel*

By:      /s/ Eric J. Stock
Eric J. Stock
Alexander H. Southwell
Esther Lifshitz
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 351-2301
Fax: (212) 716-0801
estock@gibsondunn.com
asouthwell@gibsondunn.com
elifshitz@gibsondunn.com

*Attorneys for Defendant S&P Global Inc.*

By:      /s/ David Kiernan
David C. Kiernan *pro hac vice*
Craig E. Stewart *pro hac vice forthcoming*
JONES DAY
555 California St., 26th Fl.
San Francisco, CA 94104
Tel.: (415) 626-3939
Fax: (415) 875-5700

By:   /s/ Leiv Blad
Leiv Blad
Jeffrey Blumenfeld *pro hac vice*
Meg Slachetka
COMPETITION LAW PARTNERS PLLC
1101 Pennsylvania Avenue NW
Washington, DC  20004
Telephone: (202) 742-4300
leiv@competitionlawpartners.com
jeff@competitionlawpartners.com
meg@competitionlawpartners.com

*Co-Lead Class Counsel*

By:   /s/ Robert N. Kaplan
Robert N. Kaplan
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Ave., 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
rkaplan@kaplanfox.com
garenson@kaplanfox.com
ekatcher@kaplanfox.com

*Co-Lead Class Counsel*

By:/s/ Jeffrey Shinder
Jeffrey I. Shinder
CONSTANTINE CANNON LLP
335 Madison Avenue, Fl. 9
New York, NY 10017
Tel.: (212) 350-2700
Fax: (212) 350-2701
jshinder@constantinecannon.com

dkiernan@jonesday.com
cestewart@jonesday.com

Michelle K. Fischer *pro hac vice*
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114
Tel.: (216) 586-3939
Fax: (216) 579-0212
mfischer@jonesday.com

Alexander V. Maugeri
Amanda L. Dollinger
JONES DAY
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-3939
Fax: (212) 755-7306
amaugeri@jonesday.com
adollinger@jonesday.com

*Attorneys for Defendant American
Bankers Association*

W. Stephen Cannon
Seth D. Greenstein
James J. Kovacs
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave., NW 1300N
Washington, D.C. 20004
Tel.: (202) 204-3500
Fax: (202) 204-3501
scannon@constantinecannon.com
sgreenstein@constantinecannon.com
jkovacs@constantinecannon.com

*Attorneys for Defendant FactSet Research Systems,
Inc*