December 9, 2024

*VIA ECF*
Hon. Katherine Polk Failla
United States District Court
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square, Room 618
New York, NY 10007



Re: *Dinosaur Financial Group LLC et al. v. S&P Global, Inc. et al.*, Case No. 22-cv-1860

Dear Judge Failla:

      Plaintiffs object to Defendants' December 4, 2024, letter motion (ECF No. 140, "Mot.") seeking, near the close of fact discovery, extensive additional discovery, including requests for production and interrogatories from 30 absent class members as well as depositions of 20 of them. Discovery from absent class members is "rarely permitted" because it "defeat[s] the [representative] purpose of class actions," *Stinson v. City of New York*, 2015 WL 8675360, at *1 (S.D.N.Y. Dec. 11, 2015), and requires a "strong showing" of need. *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 71 (S.D.N.Y. 2020). Defendants have not made any such showing, in part because much of the discovery they seek has already been produced.

      **Defendants' proposed discovery requests are untimely.** In the parties' November 25, 2024, meet and confer, Defendants acknowledged that they possess information from absent class members on all of these issues but asserted that they fear that that data may be inaccurate (despite the fact they regularly conduct audits of absent class members to correct any inaccuracies). Defendants have known of any alleged inaccuracies for the more than two and a half years since the complaint was filed and the 16 months since discovery began. Yet, Defendants waited until only three months remain in the discovery period to attempt to serve their discovery requests on absent class members. Defendants cannot justify this unnecessary delay, which alone is sufficient reason to deny their request. *See* J. Failla, Individual Rules of Practice in Civil Cases, § 2.C.ii.

      **Defendants' proposed discovery requests are unduly burdensome**. Complying with Defendants' requests will require absent class members to search their data systems across multiple business lines, seek data from their Third-Party Data Vendors ("TPDVs"), and make witnesses available for depositions. Indeed, Defendants' 20 proposed absent class member depositions are almost as many *party* depositions as each party may take in this case. In a December 2, 2024, meet and confer, Defendants argued that absent class members would easily find the "CGS Data" Defendants seek because that term is defined in their Subscription Agreement. Defendants are wrong. The Agreement defines "CGS Data" vaguely as CUSIP and CGS ISIN identifiers, CUSIP standard descriptions, "and other information about financial instruments." The Agreement does not define the "other information" included in CGS Data. Moreover, absent class members do not know which of the data TPDVs provide to them originated with Defendants because CGS does not tag or watermark that data.

**Defendants' own documents show that "Putative Class Members have foreign offices" and whether they do is irrelevant.** Defendants seek discovery showing that "Putative Class Members have foreign offices where they access CGS data … which use is beyond the reach of the Sherman Act pursuant to the Foreign Trade Antitrust Improvements Act ('FTAIA')." Mot. at II.A(1); *id.*, Ex. A at 8 (RFP 3); *id.*, Ex. B at 4 (Interrogatories 5, 6, and 7). Defendants already possess thousands of Use of Services Statements ("UoSS") ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See, e.g.*, Ex. 1 (FRSI00000092) at 93 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In addition, Defendants compiled "Master Books of Business" ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *E.g.*, Ex. 2 (FRSI00085703) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[1] Moreover, where absent class members use CGS data is irrelevant to an FTAIA analysis because Defendants' anticompetitive conduct and effects occur in the United States, requiring CUSIP Users to sign licenses providing that claims against Defendants be brought in and governed by New York law.

**Defendants already have gathered the requested information showing class members' use of "Elements of CUSIP_DB [other] than just CUSIP Identifiers."** Defendants seek the "CUSIP Master File content" and "Data Elements" (also referred to as descriptive data) beyond "CUSIP identifiers" putative class members access and use. *See* Mot. at II.A (2); *id.*, Ex. A at 3-4, 8-9 (RFPs 1, 2, 3, 4 and 6(c)) (defining such content and elements as "data that originates with CGS" and "any of all pieces of information enumerated in Attachment A that compose CGS Data"). But Defendants ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Ex. 3 (FRSI01421555); *see* Ex. 1 at 92 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Having already conducted that extensive research, Defendants offer no reason why these additional document requests are reasonable.

Moreover, absent class members are unlikely to know whether the information provided to them by TPDVs "originates" with CGS because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Ex. 4 (FRSI01762029) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Defendants' proposed discovery requests allegedly seeking to understand how such data is used would be more efficiently directed to the TPDVs who provide data to absent class members. In fact, Defendants have already requested the terms of the contracts that absent class members entered with TPDVs and the fees the TPDVs charged in subpoenas to the TPDVs. Mot., Ex. A at 8 (RFPs 1 and 2); *see, e.g.*, Ex. 5 (FactSet Subpoena to Moody's Corporation) at 6 (RFP 1 requesting "Documents sufficient to show each Version of Your agreements relating to CGS Identifiers, CGS Data, or CUSIP_DB content"), at 7 (RFP 11 requesting "Documents sufficient to show Your fee schedule for Your products or services relating to the provision of CGS Data"). Absent from Defendants' Motion is an explanation of *why* the materials produced by TPDVs are insufficient and *how* the requested discovery will cure any purported deficiencies.

Finally, Defendants seek discovery showing "each source of CGS Data, other than those covered by [the Absent Class Member's] Subscription Agreement." Mot., Ex. A at 9 (RFP 7); *see id.*, Ex. B at 4 (Interrogatory 9). CGS has already conducted extensive research on this topic and

---

[1] Exs. 2 and 10 are voluminous Excel spreadsheets. Plaintiffs have attached PDF excerpts of those exhibits. Pursuant to the Court's Individual Rules, Plaintiffs will provide clean, unredacted versions of all materials to the court.

2

has reached detailed conclusions on how and from where CUSIP Users obtain "each source of CGS Data." *See, e.g.*, Ex. 6 (FRSI00060445) at 453 ███████████████████████████████████████; Ex. 7 (FRSI01400550) ███████████████████████████████████████. Defendants offer no reason why the burden of additional requests on absent class members will change CGS' conclusions.

**Defendants already have gathered the information on "Substitute Competitive Identifiers".** Defendants assert that they need discovery into whether "Putative Class Members choose to use CUSIP identifiers when they could substitute [allegedly] competitive identifiers." Mot. at II.A(3); *id.*, Ex. A at 9 (RFP 6(c)); *id.*, Ex. B at 4 (Interrogatory 8). Specifically, Defendants ask that absent class members "specify the year(s) … when [they] switched from using CUSIP identifiers." *Id.*, Ex. B at 4. This is a topic that has also been amply covered in CGS's audits and licensing negotiations. *See e.g.*, Ex. 8 (FRSI00069343) at 352 ███████████████████████████████████████; Ex. 9 (FRSI00141090) at 093 ███████████████████████████████████████.

**Documents showing "data not part of the alleged product market" relevant to "alleged damages" have already been produced and are irrelevant.** The product market in this case is limited to "the use of identifiers of United States financial instruments" SAC, Doc. 87, at ¶ 126. Defendants ask this Court to allow discovery of absent class members who may obtain identifiers for non-U.S. financial instruments pursuant to their subscriptions, payment for which (Defendants contend) should be excluded from damages. Mot. at II.A(4); *id.*, Ex. A at 8 (RFP 5); *id.*, Ex. B at 2-3 (Interrogatories 1, 2, 3, and 4). Defendants already have access to this type of information in their audit records. *See id.*, Ex. B at 2 ("Interrogatories 1 through 7 seek the type of information you maintain pursuant to Section 4 titled 'Usage Review' or 'Audit/Inspection') of your CUSIP Global Services Agreement"). CGS conducts hundreds of audits a year. Ex. 10 (FRSI00075852). Indeed, CGS has already audited several of the firms from whom Defendants stated they now intend to seek discovery from: Beta Capital Management, Blue Sky Data, Boston Partners, and Dearborn Partners.  *See* Ex. 6 at 452–54 ████████████████; Ex. 11 (FRSI01064898) at 902–903 (same); Ex. 12 (FRSI00132403) at 411–413 (same); Ex. 13 (FRSI00187292) at 301–306 (same). In any event, these documents are irrelevant to market definition because CUSIP numbers identify only United States financial instruments, payments by all CUSIP Users are made to CGS in New York, licenses for the use of CUSIP numbers anywhere in the world are governed by New York law, and issues must be litigated in New York courts.

Interrogatory No. 10 requests that absent class members "[i]dentify any damages you have experienced as a result of entering into a CUSIP Global Services Subscription Agreement." Mot., Ex. B at 4. But at this stage absent class members are "strangers to the litigation"; it is the class representatives that are alleging damages and damages will implicate expert reports and discovery which have not yet occurred. *Fishon*, 336 F.R.D. at 68-70. To require an entity that may not even be aware of this case to describe the damages that it has suffered will cause significant confusion. *Id.* at 69 ("Many [absent class members] may not even know about the lawsuit; they may not even know about the possibility that they have been wronged by the defendant").

Plaintiffs request that the Court deny Defendants' motion for leave.

3

Respectfully submitted,

/s/ *Ronald J. Aranoff*
Ronald J. Aranoff
Lyndon M. Tretter
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue, 12th Floor
New York, New York 10110
Telephone: (212) 382-3300
Email: raranoff@wmd-law.com
ltretter@wmd-law.com

/s/ *Leiv Blad*
Leiv Blad
Jeffrey Blumenfeld *(pro hac vice)*
Meg Slachetka
COMPETITION LAW PARTNERS PLLC
1101 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 742-4300
Email: leiv@competitionlawpartners.com
jeff@competitionlawpartners.com
meg@competitionlawpartners.com

/s/ *Robert N. Kaplan*
Robert N. Kaplan
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
800 Third Ave., 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Email: rkaplan@kaplanfox.com
garenson@kaplanfox.com
ekatcher@kaplanfox.com

```
Application GRANTED in part.  The Court is in receipt of Defendants'
request to serve limited, specified discovery on 30 members of the absent
putative class.  (Dkt. #140).  The Court is also in receipt of
Plaintiffs' response in opposition.  (Dkt. #142, 143).  For the reasons
that follow, the Court will allow for limited discovery of 10 members of
the absent putative class.

In reaching this decision, the Court gives particular weight to Judge
Liman's exceptionally thoughtful opinion in Fishon v. Peloton Interactive,
Inc., in which opinion Judge Liman carefully outlines the factors
considered when evaluating whether to permit discovery of absent putative
class members.  336 F.R.D. 67 (S.D.N.Y. 2020)("Peloton").  In particular,
Judge Liman states that discovery will be allowed in such circumstances
when: "[i] the discovery is not sought for any improper purposes, to
harass, or to alter the membership of the class; [ii] it is narrowly
tailored to subjects which are plainly relevant; and [iii] it does not
impose an undue burden given the need for the discovery at issue and the
availability of the same or similar discovery from a party."  Id. at 71.
```

In this case, the discovery that Defendants seek is not intended to harass or alter membership of the class. Defendants have articulated reasonable bases to believe that absent putative class members may have information that is relevant to both Defendants' opposition to Plaintiffs' anticipated motion for class certification and the merits of this case. (Dkt. #140 at 2).

Moreover, while the Court will ultimately limit the breadth of discovery permitted, Defendants' requests do not risk changing the class size or persuading absent class members to opt out of the class, in part because it "is limited to a relatively small subset of the putative class," when "CGS's records reflect thousands of subscribers in the class period." (*Id.* at 2). The document requests and interrogatories (with the exception one discussed further below) are narrowly tailored to subjects which are plainly relevant.

This case is different from *Peloton* in that the all class members may not have awareness of this action. *See Peloton*, 336 F.R.D. at 72 (explaining that each of the putative class members had "already brought a claim against Peloton in arbitration based on the same allegations asserted [in the action]"). Even so, however, this action involves sophisticated, corporate entities. (Dkt. #140 at 3 (noting the putative class members are "by and large financial services, investment, or insurance companies")). And as such, Court does not expect the limited discovery sought to be unduly burdensome, as it might be in a case involving individual plaintiffs.

While the Court will permit discovery for the reasons outlined above, the Court finds that there is not a need for documents and interrogatories from 30 absent putative class members and depositions of 20 absent putative class members. Based on the record before it, the Court will permit discovery of 10 absent putative class members. This is because, in part, Defendants have failed to offer a "persuasive justification for divergence from the presumption in the Federal Rules of Civil Procedure that parties are entitled to ten depositions." *Peloton*, 336 F.R.D. at 74 (citing Fed. R. Civ. P. 30). Should Defendants determine, after conducting additional discovery, that good cause exists for discovery of more than 10 absent putative class members, Defendants may renew their request with the Court.

Furthermore, the Court will require Defendants to strike interrogatory number 10. (Dkt. #140-2 at 4). The Court agrees with Plaintiffs that such a broad inquiry regarding damages may result in "significant confusion." (Dkt. #143 at 3). The Court would have permitted an interrogatory that implicated the damages analysis, but asking absent putative class members explicitly to "[i]dentify any damages" that they experienced is unwarranted. (Dkt. #140-2 at 4). Absent putative class members may be "strangers to the litigation" and should not be asked to broadly opine on a topic that will be the subject of expert discovery and analysis. *Peloton*, 336 F.R.D. at 68.

Finally, the parties are cautioned that, given the extended period of time already allowed for discovery, the Court has no intention of granting an extension of the deadline for completion of fact discovery. The Court recommends that the parties plan accordingly.

The Clerk of Court is directed to terminate the pending motion at docket entry 140.

Dated:    December 13, 2024          SO ORDERED.
          New York, New York

                                     *[signature: Katherine Polk Failla]*

                                     HON. KATHERINE POLK FAILLA
                                     UNITED STATES DISTRICT JUDGE