January 8, 2025

*VIA ECF*
Hon. Katherine Polk Failla
United States District Court Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square, Room 618
New York, NY 10007

Re: *Dinosaur Financial Group LLC et al. v. S&P Global, Inc. et al.*, Case No. 22-cv-1860

Dear Judge Failla:

Pursuant to Local Rule 37.2 and Your Honor's Individual Rule 2.C, Plaintiffs submit this letter motion to compel production of documents and to address several issues pertaining to the privilege log of Defendant FactSet Research Systems Inc. ("FactSet"). After several rounds of negotiations, including a resulting FRE 502(d) stipulation and order entered last week, the parties have reached an impasse as to FactSet's assertion of privilege over two categories of communications: (1) communications with non-attorney third parties including ((a) public relations firms and (b) investment bankers and accountants); and (2) facially incomplete privilege assertions over communications with co-defendant the American Bankers Associations ("ABA"), under the asserted "common interest" doctrine. Plaintiffs have itemized the disputed documents for FactSet by Bates number.[1] We provide specific examples below.

It is black letter law that disclosure to a third party of a communication protected by the attorney-client privilege typically "eliminates whatever privilege the communication may have originally possessed." *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 86 (S.D.N.Y. 2019) (quotations and citations omitted). Because the Second Circuit and this Court sit in a media and commercial capitol, guidance for disputes over the narrow exceptions to this rule for disclosures to public relations firms, bankers, and accountants evolved long ago under *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961). These cases generally hold that the disclosure to the third party waives privilege unless the presence or input of the third party was "necessary" for the lawyer to provide the legal advice to the client – much as an interpreter would be necessary to enable a lawyer to advise a client that spoke a different language or a CPA might be needed to explain the Internal Revenue Code to a criminal defense lawyer in a tax fraud case. See *Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*, 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999). FactSet has not met this necessity test for either sub-category of documents disclosed to third parties.

   1. **Communications with Non-Attorney Third Parties**

   **(a) Public Relations Firms.** FactSet has withheld or redacted 62 documents disclosed to its consultant J. Roderick Public Relations. FactSet has acknowledged J. Roderick's non-legal role

---

[1] If the Court wishes to see Bates numbers, corresponding log entries, or documents, we can provide them. We note that that parties are continuing negotiations concerning FactSet's European Commission privilege assertions and will advise the Court promptly if the parties reach an impasse. To the extent the ABA's and S&P's logs reflect the same types of improper redactions, Plaintiffs request that any ruling apply equally to their logs.

of "manag[ing] media relations and press releases" and managing "crisis communications" in other documents. FRSI01704434 at 453 (identifying the "function" of J. Roderick" as "Communications"); *see also* https://www.jroderick.com/about (J. Roderick "is a strategic communications firm that creates campaigns to help large corporations clearly communicate nuanced, complex messages to targeted business audiences"). It is clear from unredacted portions of the challenged documents that J. Roderick was used for standard communications advice on how to respond to negative press articles, not to enable any underlying legal advice *See, e.g.*, FRSI01676654 (subject line "Critical CUSIP Story in Bond Buyer" discussing "a rough draft of a potential rebuttal to the Bond Buyer article"); FRSI01677119 (subject line "Bond Buyer Response – Update" stating "I can confirm this is the final that we have submitted to The Bond Buyer"); FRSI01643609 (subject line "Waters Technology Story Published"); FRSI01674188 (subject line "Waters Technology Update"). The presence of public relations consultants on these communications was not necessary to obtain legal advice and thus waived the attorney-client privilege. *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80 at 88 ("Any questions that arose regarding the propriety of a press release … could simply have been communicated to the attorneys by [the client] without [public relation firm's] involvement").

FactSet cannot rely on *In re Grand Jury Subpoenas Dated March 24, 2003*'s "narrowly construed" exception to this rule for public relations consultants hired "for the purpose of assisting the lawyer in rendering legal advice or to achieve a legal goal." *Pearlstein v. BlackBerry Ltd.*, 2019 WL 1259382, at *6 (S.D.N.Y. Mar. 19, 2019); *In re Signet Jewelers Ltd. Sec. Litig.*, 332 F.R.D. 131, 136 (S.D.N.Y. 2019), aff'd, 2019 WL 5558081 (S.D.N.Y. Oct. 23, 2019) ("The PR firms here were not called upon to perform a specific litigation task" but were "involved in public relations activities aimed at burnishing [the client's] image"). According to the retention agreement between co-defendant S&P Global Inc. ("S&P") (the predecessor owner of CUSIP Global Services) and J. Roderick Inc. (FRSI01561986), Defendants retained J. Roderick in 2012 as an independent contractor not for any legal goal or advice but for "media relations" support including "efforts to raise name and production recognition and awareness." Further, unlike in *In re Grand Jury Subpoenas*, FactSet refused to disclose any alleged legal purpose for hiring its public relations consultants. Lastly, FactSet has not claimed that 58 of these communications are protected by the work-product doctrine on its initial privilege log or any of its three supplemental logs and, in any event, for the remaining few documents, "many cases have rejected work product protection for material relating to public relations activities" as business, not legal advice. *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80 at 93.

**(b) Communications with Bankers and Accountants.** Defendants used accounting and banking advisors in the divestiture/acquisition of the CUSIP Global Services division of S&P, including KPMG, Accenture, Centerview, and Goldman Sachs. Plaintiffs challenged 70 "privileged" documents disclosed to bankers and accountants. For 40 such documents, FactSet's privilege logs merely state that the documents are privileged communications relating to "CGS services and operations." *See, e.g.*, FRSI01602187. This is plainly insufficient. FactSet has offered no explanation as to *why* outside bankers or accountants were necessary to facilitate communications with counsel on that topic as CGS's employees are presumably capable of explaining the services CGS offers and how CGS operates, and that topic does not relate to a specialized area of expertise like accounting. *See Walsh v. CSG Partners, LLC*, 544 F. Supp. 3d 389, 392 (S.D.N.Y. 2021) (rejecting an attorney-client privilege claim by an investment bank when

2

the bank did not act as a translator). Further, the phrase "CGS services and operations" is so vague that it is not "sufficient to enable the Receiving Party to assess the privilege claim" (ESI Protocol, Dkt. 123 at VI.B.1.h) and does not "enable other parties to assess the claim" of privilege (Fed. R. Civ. P. 26) as it is difficult to imagine documents in CGS's possession that do not implicate its services and operations. *See In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 326 (S.D.N.Y. 2020) (finding log descriptions of "'seeking or conveying legal advice' about the 'on-sale contracts,' the 'Credit Facility Agreement,' or 'the AE-GE contracts'" inappropriately vague); *see also McNamee v. Clemens*, 2014 WL 1338720, at *4 (E.D.N.Y. Apr. 2, 2014). The remaining challenged entries are no more informative and provide no more explanation as to why accountants or bankers were necessary to facilitate communications with counsel: 13 log entries state that they are communications regarding "licensing agreement negotiations" (*e.g.* FRSI01608460); 6 entries state that they are about "CUSIP identifiers or other securities identifiers" (*e.g.* FRSI01627805); one entry is about "monitoring a user's compliance with a CGS licensing agreement" (FRSI01608135); and the last 10 entries simply state that they are communications regarding the divestiture (*e.g.*, FRSI01636426). On their face, there is no indication that bankers or accountants were necessary to facilitate communications with counsel on those topics and despite Plaintiffs' repeated requests that FactSet clarify the basis of these privilege claims, FactSet has declined to do so. Accordingly, Plaintiffs request that the Court order FactSet to produce in unredacted form the challenged communications disclosed to bankers, accountants, or other consultants involved in FactSet's purchase of CGS.

As a prime example of FactSet's overbroad privilege assertions, FactSet recently clawed back a document bearing Bates Nos. FRSI01263636–40 in which a FactSet employee forwarded to its banker, Centerview, a document prepared by attorneys on "legal due diligence" items (i) which were obviously not in the area of Centerview's expertise as a banker; and (ii) for which the attorneys had expressed no interest in receiving, let alone "needing," Centerview's input. The Court should deny the claw back request.

### 2. Facially Improper Common Interest Assertions[2]

Just because FactSet and the ABA may both benefit commercially from the joint operation of the licensing program and that there may be matters in which one or both hired a lawyer does not render all communications between the entities privileged under the "common interest" doctrine. First, and at a minimum, there must be a lawyer involved (or at least cited) in the communication among the non-lawyers for it to be privileged. *See Sokol v. Wyeth, Inc.*, 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008) (describing the common interest doctrine as an exception to general rule that disclosure of attorney-client communications to a third party waives privilege). Despite several requests by Plaintiffs and the production by FactSet of three supplemental logs, FactSet has yet to update its privilege log to identify attorneys on 155 out of 165 log entries challenged on the basis of facially deficient common interest assertions,[3] thereby waiving the right to claim these documents are privileged. *See In re Rivastigmine Pat. Litig.*, 237 F.R.D. 69, 84 (S.D.N.Y. 2006) (abrogated on other grounds).

---

[2] Substantive challenges regarding the breadth of the ABA's privilege assertions will be addressed in a separate motion to compel. There may be some overlap with FactSet's privilege assertions.

[3] FactSet produced the 10 remaining documents either in full or in redacted form.

Respectfully submitted,

<div style="display:flex">
<div>

/s/ *Ronald J. Aranoff*
Ronald J. Aranoff
Lyndon M. Tretter
Reuben R. Bauer
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue, 12th Floor
New York, New York 10110
Telephone: (212) 382-3300
Email: raranoff@wmd-law.com
ltretter@wmd-law.com
rbauer@wmd-law.com

</div>
<div>

/s/ *Leiv Blad*
Leiv Blad
Jeffrey Blumenfeld *(pro hac vice)*
Meg Slachetka
COMPETITION LAW PARTNERS PLLC
1101 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 742-4300
Email: leiv@competitionlawpartners.com
jeff@competitionlawpartners.com
meg@competitionlawpartners.com

/s/ *Robert N. Kaplan*
Robert N. Kaplan
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
800 Third Ave., 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Email: rkaplan@kaplanfox.com
garenson@kaplanfox.com
ekatcher@kaplanfox.com

</div>
</div>