# Exhibit B

# JONES DAY

555 CALIFORNIA STREET, 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE: +1.415.626.3939 • JONESDAY.COM

Direct Number: +1.415.875.5712
cnmitchell@jonesday.com

December 19, 2024

BY E-MAIL

| | |
|---|---|
| Joshua M. Slocum | Meg Slachetka |
| Wollmuth Maher & Deutsch LLP | Competition Law Partners PLLC |
| 500 Fifth Avenue | 1101 Pennsylvania Avenue NW |
| New York, New York 10110 | Washington, DC 20004 |
| JSlocum@WMD-LAW.com | meg@competitionlawpartners.com |

Re: *Dinosaur Financial Group LLC, et al. v. S&P Global Inc., et al.*, Case Nos. 22-CV-1860, 22-CV-1929

Dear Counsel:

    Defendant American Bankers Association ("ABA", and, together with S&P Global, Inc. and FactSet Research Systems, Inc., the "Defendants") writes regarding the continuing failure of Swiss Life Investment Management Holding AG ("Swiss Life"), Dinosaur Financial Group LLC ("Dinosaur"), and Hildene Capital Management, LLC ("Hildene"; and together, "Plaintiffs") to comply with their obligations under Fed. Rule Civ. Proc. 26(a)(1)(A)(iii) to provide the Defendants with a computation of each category of damages claimed by Plaintiffs, as well as the documents or other evidentiary material on which those computations are based, including materials bearing on the nature and extent of injuries suffered. As explained further below, given the impending close of fact discovery on March 14, 2025, and certain statements in Dinosaur's recent Responses and Objections to FactSet Research Systems' Notice of 30(b)(6) Deposition, Defendants are particularly concerned that Plaintiffs belated assertion of a substantially different methodology for calculating damages than the one they have consistently articulated to date—an untimely assertion that would effectively preclude Defendants from taking the fact discovery to which they are entitled in relation to that methodology (which is a concern we addressed with you at the outset of the discovery period when you assured us you calculation was just 100 percent of licensing fees). Defendants therefore request that Plaintiffs immediately confirm the details of the methodology they intend to use to and comply with your obligation under Rule 26 to provide a "computation of each category of damages" you claim and "make available for inspection and copying as under Rule 34 the documents or other evidentiary materials, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." If you contend the documents are contained in the existing productions, please provide their Bates numbers.

    As you know, Plaintiffs initially provided no computation of damages in their initial disclosures. Instead each of the Plaintiffs stated that it would be the subject of expert testimony, with Dinosaur and Swiss Life each stating that it was therefore "premature" to provide any

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DETROIT • DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID
MELBOURNE • MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Joshua M. Slocum
Meg Slachetka
December 19, 2024
Page 2

computation of damages. Dinosaur Initial Disclosures at 5; Hildene Initial Disclosures at 6; Swiss Life Initial Disclosures at 4. Defendants raised this issue with you more than a year ago, during our December 4, 2023 meet-and-confer. *See* January 11, 2024 letter from Jones Day to Wollmuth Maher & Deutsch and Competition Law Partners at 2. And Defendants specifically noted that the law is clear that the mere fact that damages will be the subject of expert analysis and testimony in the future did not excuse Plaintiffs' from their disclosure obligations under Rule 26(a)(1)(A)(iii). *Id*.

In response, Plaintiffs asserted that its "[t]he 'computation' of [Plaintiffs'] damages amount was also disclosed in the SAC: it is 100% of the total dollar value of all license fees paid by CUSIP Users throughout the damages period," and therefore "the information needed to make that calculation is in the sole possession, custody, or control of Defendants." January 26, 2024 letter from Wollmuth Maher & Deutsch, Competition Law Partners, and Kaplan Fox & Kilsheimer to Jones Day at 1-2. Plaintiffs further stated that they "will update Defendants with any further relevant information during the discovery period if and as it is available . . ." *Id*.

Defendants subsequently sought to confirm that Plaintiffs position was "that the sole method [they] intend to use currently for damages is to claim the totality of the fees paid under the subscription agreements," and that Plaintiffs "currently contemplate no other method and will update [Defendants] if that changes while discovery is open." February 23, 2024 letter from Constantine Cannon to Wollmuth Maher & Deutsch, Competition Law Partners, and Kaplan Fox & Kilsheimer at 1. In response, Plaintiffs again asserted that "the calculation of damages—both in terms of how calculated and the amount—will be the subject of expert testimony." March 4, 2024 letter from Wollmuth Maher & Deutsch, Competition Law Partners, and Kaplan Fox & Kilsheimer to Constantine Cannon at 1. Plaintiffs went on to state that "Plaintiffs' method of calculating damages may change during the discovery and expert phases of the case," but that "Plaintiffs currently intend to compute damages based on the totality of the fees paid under the subscription agreements, subject to trebling, pre- and post- judgment interest, attorneys' fees, costs of the proceedings, and, if applicable, punitive damages," and "the information required to calculate damages is in the possession, custody, or control of Defendants and has yet to be produced to Plaintiffs." *Id*. In planning our discovery, Defendants have relied on Plaintiffs' disclosed methodology and your compliance with your obligations under Rule 26.

Nine months then passed, during which the parties substantially completed production of documents and served third party discovery, and yet Plaintiffs provided no further information on their damages computations or methodology. Though Defendants at times put pointed questions to Plaintiffs regarding the scope of the "fees paid under the subscription agreements" that Plaintiffs contend is the sole and simple extent of their damages methodology, Plaintiffs

JONES DAY

Joshua M. Slocum
Meg Slachetka
December 19, 2024
Page 3

ignored those questions. In particular, on April 18, 2024, counsel for ABA wrote to counsel for Swiss Life stating that

> as we noted on our meet and confer, European investments are included as part of the data available pursuant to the Subscription Agreement. To the extent Plaintiffs assert that non-U.S. investments are not relevant to Swiss Life's claims or defenses, we would like to confirm that Swiss Life intends to amend its initial disclosures to provide the precise calculation of damages in this matter, which appears to be some portion of the fees paid pursuant to the Subscription Agreement. Related to this, we further request that Swiss Life supplement its initial disclosures to provide your precise damages calculation, as it no longer appears to be as straightforward as adding the total fees paid under the Subscription Agreements.

April 18, 2024 email from A. Dollinger to M. Slachetka. In response, Swiss Life's counsel notably avoided answering that straightforward question. April 26, 2024 email from M. Slachetka to A. Dollinger. To the extent that anything in Swiss Life counsel's response could even be deemed to approach the subject matter of that question it was a non-responsive statement that "[f]or the avoidance of doubt, Swiss Life Investment Management Holding AG pays the fees charged in the Subscription Agreement." *Id*. Having received no answer counsel for ABA reiterated its question:

> As to our note regarding the payment of subscription fees, while we appreciate your assertion that SLIMHAG pays the fees charged in the Subscription Agreement, our question concerning those fees did not relate to the source of payment. Rather, we seek confirmation that Swiss Life does not seek damages for those portions of the subscription fee paid solely to access ISINs for non-U.S. assets, which we understand you have asserted are not relevant to any claims or defenses in this litigation.

May 3, 2024 email from A. Dollinger to M. Slachetka. Despite that clearly repeated inquiry, Swiss Life refused to answer. May 7, 2024 email from M. Slachetka to A. Dollinger.

To date no Plaintiff has amended its initial disclosures to comply with the requirements of Rule 26(a)(1)(A)(iii), notwithstanding the fact that less than three months remain until the close of fact discovery. Nor has any Plaintiff ever recanted repeated assurances that their

JONES DAY

Joshua M. Slocum
Meg Slachetka
December 19, 2024
Page 4

damages calculations are simply the totality of all fees paid under any subscription agreements entered into by CUSIP Users during the damages period.

It therefore came as a surprise when on December 4, 2024, in response to FactSet's Notice of 30(b)(6) deposition calling for testimony on "Your damages," that Dinosaur intended to designate one or more witnesses to testify, not only to "its license fees paid to Defendants generally," but also "its views (if any) regarding the impact Defendants' conduct has had on the competitive market." Dinosaur's Responses and Objections to FactSet's Notice of 30(b)(6) Deposition at 17. Dinosaur did not explain how that latter topic was supposedly responsive to FactSet's request for testimony on Dinosaur's damages, which to date Plaintiffs have contended was simply to be based on the totality of subscription agreement fees paid by CUSIP Users. *Id*. This disconnect between Dinosaur's intended damages testimony and Defendants' repeatedly-asserted damages methodology again raises questions regarding the accuracy and good faith of Plaintiffs' damages disclosures.

Defendants have made quite clear that they require sufficient disclosures of Plaintiffs' damages computations and the evidence on which it was based well in advance of the close of discovery, so that they have time to take complete discovery on these issues. March 12, 2024 letter from Constantine Cannon to Wollmuth Maher & Deutsch, Competition Law Partners, and Kaplan Fox & Kilsheimer at 1 ("We appreciate your commitment to provide the factual basis for your damages calculation in discovery, but that alone is not enough if and when you change the methodology you have disclosed thus far. We do not want to find ourselves in a position where we have not taken complete discovery because full disclosure was delayed."). As you know, document production is now substantially completed and depositions of fact witnesses are underway and will be proceeding rapidly between now and the close of fact discovery. Defendants will thus be significantly and materially prejudiced if Plaintiffs suddenly offer a new, revised, or alternative methodology for computing damages, as Defendants will not have adequate time to request and receive necessary documents, nor to adequately prepare for and take necessary deposition testimony on the factual underpinnings of any such methodology. Indeed the very purpose of Rule 26's disclosure requirements is to prevent precisely this sort of "sandbagging," as Plaintiffs own cited case law makes clear. *See* January 26, 2024 letter from Wollmuth Maher & Deutsch, Competition Law Partners, and Kaplan Fox & Kilsheimer to Jones Day at fn. 2 (citing *Max Impact, LLC v. Sherwood Grp., Inc.*, 2014 WL 902649, at *4 (S.D.N.Y. Mar. 7, 2014); *Max Impact*, 2014 WL 902649 at *4 ("The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence.").

And to be clear, it is no answer to prejudice of such an untimely disclosure or revision to your damages methodology to contend that such methodologies may have required expert analysis or testimony to refine. As Defendants have previously pointed out, whether or not

Plaintiffs' damages case may ultimately require expert testimony or analysis is irrelevant to Plaintiffs' obligations to make sufficient and timely disclosures under Rule 26(a)(1)(A)(iii). *See, e.g. Barnes by & on Behalf of United States v. HealthNow New York Inc.*, 2024 WL 3819408, at *3 (W.D.N.Y. Aug. 14, 2024) (finding that statements that an expert report would be forthcoming and that damages documents are in the exclusive possession of the defendant was "wholly insufficient"); *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2013 WL 5495542, at *5 (S.D.N.Y. Oct. 3, 2013) ("The mere fact that assessing the amount of damages will require expert testimony does not absolve [the disclosing party] of providing in its initial disclosures a computation of damages using the best information it has available").

Accordingly, Defendants hereby request that Plaintiffs immediately—and in no event later than December 31, 2024—either:

1. **Confirm that Plaintiffs intend to seek damages based solely on the totality of the fees paid by CUSIP Users under subscription agreements during the damages period (subject to trebling, pre- and post- judgment interest, attorneys' fees, costs of the proceedings, and, if applicable, punitive damages), and not based on any other methodology of calculation or estimation, and either (i) confirm that all relevant documents on which Plaintiffs damages calculations will be based have been produced and identify where in Plaintiffs production sets they are located, or (ii) produce any additional, unproduced documents to be used in Plaintiffs' damages calculations; or**

2. **Disclose in full any calculation or estimate of damages that Plaintiffs may rely upon _other_ than the simple total of all subscription fees paid by CUSIP Users during the damages period, and either (i) confirm that all relevant documents on which Plaintiffs damages calculations will be based have been produced and identify where in the Parties' production sets they are located, or (ii) produce any additional, unproduced documents to be used in Plaintiffs' damages calculations**.

Defendants reserve all rights, including the right to seek to exclude any evidence of damages calculated on any basis other than the totality of the fees paid by CUSIP Users under subscription agreements during the damages period. In this regard, we note that even the case law Plaintiffs themselves cited in their January 26, 2024 letter (fn. 2) to contend that its then failure to comply with its Rule 26(a)(1)(a)(iii) was not prejudicial, makes clear that new, belatedly-asserted damages methodologies that would be advanced by Plaintiffs at this late date would be subject to exclusion. *Max Impact, LLC v. Sherwood Grp., Inc.*, 2014 WL 902649, at

JONES DAY

Joshua M. Slocum
Meg Slachetka
December 19, 2024
Page 6

\*7 (S.D.N.Y. Mar. 7, 2014) (citing cases where damages theories and evidence were excluded because "the plaintiffs either failed entirely to provide any meaningful disclosure of a computation of damages . . . *or attempted to assert a new theory on damages at or after the end of fact discovery*) (emphasis added); *see also Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Fin. Corp.*, 2005 WL 977850, at \*1 (S.D.N.Y. Apr. 28, 2005) (precluding evidence of currency conversion damages because its updated disclosure setting forth that damages theory was provided "just two weeks before the close of discovery," and was therefore "not a reasonable amendment or update;" but "simply too late").

                                        Sincerely,

                                        JONES DAY

                                        */s/ Caroline N. Mitchell*

                                        Caroline N. Mitchell

cc:  Counsel of Record (via email)