# Exhibit C

  

January 6, 2025

**VIA EMAIL**

Caroline N. Mitchell
JONES DAY
555 California Street
26th Floor
San Francisco, CA 94104
cnmitchell@jonesday.com

      Re:   *Dinosaur Financial Group LLC, et al. v. S&P Global Inc., et al.*,
               Case No. 22-CV-1860

Dear Caroline:

This responds to the American Bankers Association's ("ABA") December 19, 2024, letter (the "ABA Letter") regarding Plaintiffs' damage theories and calculations. The ABA Letter attempts to manufacture a supposed deficiency where there is none. The record has been clear from the filing of the initial complaint (ECF No. 1) alleging that the ABA, together with S&P Global, Inc. ("S&P") and FactSet Research Systems Inc. ("FactSet"), had unlawfully monopolized the CUSIP Use Market: Plaintiffs' principal category of damages comprises the license fees paid by class members to CUSIP Global Services ("CGS"). The ABA Letter unsuccessfully attempts to muddy that record. While we cannot reasonably correct every error in the ABA Letter, we respond below to its principal points.

The ABA Letter asserts that "Plaintiffs initially provided no computation of damages in their initial disclosures." ABA Letter at 1. The ABA's complaint rings hollow. The damages calculation is clear and obvious from the complaint: Plaintiffs' damages caused by Defendants' violations of Section 2 of the Sherman Act equal the sum of the license payments Plaintiffs and the Class made to CGS. Plaintiffs could not have been clearer in the statement of this calculation, yet this is the third time that the ABA has claimed ignorance of Plaintiffs' damages theory. In letters dated January 11 and February 23, 2024, the ABA claimed not to know how Plaintiffs proposed to calculate their damages under Section 2. In responsive letters dated January 26 and March 4, 2024, Plaintiffs repeated their damages calculation methodology—that Plaintiffs' damages are equal to the license fees they paid to Defendants. Now, nearly a year later, the ABA still feigns ignorance of Plaintiffs' damage theory and calculation.

Caroline N. Mitchell   January 06, 2025
Page 2

Another misstatement in the ABA Letter is its assertion that the Defendants "substantially completed production of documents." (ABA Letter at 2.) In fact, while the evidence relevant to Plaintiffs' damage claim is overwhelmingly in Defendants' possession, custody, and control, Defendants *still* have not produced all of the relevant evidence responsive to Plaintiffs' Requests for Production. For example, Defendants only recently agreed to produce thousands of documents they had been improperly withholding pursuant to spurious privilege claims. FactSet produced more than 25,000 pages of such documents in mid-December. The ABA only in the last week agreed to produce documents it had been withholding based on the erroneous claim that it had a First Amendment right not to produce relevant discovery. The ABA has not yet produced those documents.

And, most critically, Defendants continue to withhold a complete set of data reflecting license transactions, meaning that Plaintiffs do not yet have the most basic documents needed to complete their damage calculation. For these reasons, the ABA's demand that Plaintiffs immediately "make available for inspection and copying as under Rule 34 the documents or other evidentiary materials, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered" is projection at its best. It takes an impressive level of chutzpah to demand that Plaintiffs produce calculations the ABA knows Plaintiffs cannot yet make because Defendants have not produced the relevant documents. The Defendants can, and no doubt have, made these calculations themselves using the documents in their possession, custody, and control.

To fabricate a purported deficiency, the ABA tries to conflate a non-existent discovery issue with an expert damages issue. The ABA argues that because Swiss Life has not caved to the ABA's unreasonably duplicative and burdensome demand to search non-party Swiss Life European affiliate companies for documents that could not possibly add anything proportionally relevant to the litigation, Plaintiffs must supposedly exclude from their damage calculation an unidentified category of "European investments." (ABA Letter at 3.) The ABA is incorrect.

Rather, the salient issue is that Plaintiffs' damage calculation approximates the out-of-pocket monetary harm caused by Defendants' anticompetitive conduct, which, among other things, forces non-United States financial institutions like Swiss Life to sign license agreements—governed by New York law and subject to jurisdiction exclusively in federal and state courts in New York—containing restrictive provisions as a condition to using CUSIP numbers contained in CGS ISINs. As we have previously explained, whether any additional Swiss Life affiliates engage in economic activity that Defendants contend requires a CUSIP license is immaterial because Swiss Life has already signed a license with CGS covering "use" by any such affiliates. Swiss Life's damages do not change if an affiliate also happens to engage in economic activity that falls within the same license Swiss Life has already signed and under which it has paid license fees to CGS. Defendants have failed to articulate why Swiss Life affiliates are relevant to its damages.

Equally inappropriate is the ABA's complaint that Plaintiffs and their experts continue to evaluate potential damages based on their review of documents Defendants have produced, many of them after the "substantial completion" of document discovery in August 2024. (ABA Letter at 4-5.) Such evaluation happens in every Section 2 case, and any additional categories of damages that Plaintiffs' experts ultimately assert will be based on documents and data exclusively within the control of Defendants and unavailable to Plaintiffs when they filed their complaint and served their

Caroline N. Mitchell  January 06, 2025
Page 3

initial disclosures.[1] For the purpose of transparency and as a good faith response, Plaintiffs describe below a general category of damages not directly referenced in the complaint that may be available to them based on their continuing review of Defendants' documents. Plaintiffs' description of their damage theory will of course depend on their continuing review of the documents, testimony in upcoming depositions, and an evaluation and analysis by Plaintiffs' experts, all of which have yet to occur.

The Second Amended Complaint assumes that CUSIP Users that "agree" to license the CUSIP_DB compilation are not in the Class. The documents Defendants have produced reveal that those CUSIP Users are forced to take a license to the compilation and sign "Distributor" licenses at the risk of Defendants requiring Third-Party Data Vendors to remove CUSIP numbers from the CUSIP Users' data feed. For this reason, Plaintiffs plan to include these CUSIP Users in the class definition and include the license fees they have paid in their damage calculation.

We trust that this letter resolves the issues raised in the ABA Letter. And, to be clear, Plaintiffs will disclose their experts' opinions and analyses at the appropriate time pursuant to Rule 26 and the operative case management order. We are available to discuss these issues in more detail if that would be helpful.

Best regards,

*/s/ Leiv Blad*
Leiv Blad

*/s/ Jeffrey Blumenfeld*
Jeffrey Blumenfeld

cc: All Counsel of Record *(via email)*

---

[1] Document production by Defendants and expert analysis may suggest additional types and dimensions of damages.