February 20, 2025



BY ECF – FILED UNDER SEAL

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square, Room 618
New York, NY 10007

Re: *Dinosaur Financial Group LLC et al. v. S&P Global, Inc., et al.*, Case No. 22-cv-1860

Dear Judge Failla:

      Plaintiffs write in response to Defendants' February 14, 2025, request for a pre-motion conference on their motion to preclude Plaintiffs from (1) including in the proposed class CUSIP Users that have signed "Distribution Agreements" and (2) relying on any damage theories other than their theory that the damages equal the license fees class members paid to Defendants. *See* Dkt. 167 (the "Motion"). Defendants' motion (1) prematurely seeks to resolve damages issues on the merits before the expert phase of the case has started and before the parties have exchanged expert reports or engaged in expert discovery; (2) ignores Defendants' failure to produce documents bearing on Plaintiffs' damages claims; (3) seeks to impose requirements inconsistent with the Federal Rules of Civil Procedure; and (4) fails to appreciate that Plaintiffs' proposed class definition merely conforms that definition to the record evidence uncovered during discovery.

      **1. Defendants Have Known of Plaintiffs' Primary Damages Theory For Over a Year.** Plaintiffs' initial disclosures stated that damages would be the subject of expert reports and discovery. When Defendants demanded that Plaintiffs provide their damages methodology in March 2024, Plaintiffs repeated the allegations in the Second Amended Complaint ("SAC"): the Plaintiffs' damages were equal to the license fees paid to Defendants. (Ex. A 3/4/2024 letter.) When Defendants complained nearly a year later that "Plaintiffs initially provided no computation of damages in their initial disclosures" (ABA 12/19/2024 letter (Ex. B), Plaintiffs reminded Defendants that the "damages calculation is clear and obvious from the complaint: Plaintiffs' damages caused by Defendants' violations of Section 2 of the Sherman Act equal the sum of the license payments Plaintiffs and the Class made to CGS," as do the damages for the state law claims. Ex. C (1/6/2025 letter); Ex. D (2/7/2025 letter).

      Beyond that, Plaintiffs' ability to provide Defendants with more detailed estimates of damages has been hampered by Defendants' continuing failure to produce documents bearing on damage issues. As an example, despite clear RFPs and repeated attempts to enforce them, Defendants still have not produced documents establishing the actual amounts many CUSIP Users paid in license fees. Indeed, Plaintiffs' counsel informed FactSet that its supplemental production (just made in mid-January) still appeared to be missing documentation of hundreds of millions of dollars in license fees on an individual class member basis. Ex. E. Defendants cannot fault Plaintiffs for not producing more precise damage calculations when Defendants have yet to produce documents that would undergird those calculations.

To manufacture a deficiency where one does not exist, Defendants' Motion argues that Plaintiffs disclosed a new theory of *damages* on December 4, 2024, when Plaintiffs stated that they intended to prove "the impact [*i.e.*, harm] Defendants' conduct has had on the competitive market." Motion at 3. There are two separate issues—harm to competition and damages. Plaintiffs' experts are analyzing the harm to competition, and whatever methodologies and analyses they employ will be disclosed in their reports, and Defendants will have ample opportunity for expert discovery concerning Plaintiffs' theory of *harm*. In any event, this is not a new issue. The SAC contains a straightforward allegation—that Defendants' conduct has harmed competition in specific and enumerated ways. ECF 87 ¶¶ 150-62. Defendants' motion cites no case in which a court precluded potential theories of anticompetitive *harm* prior to expert discovery and a motion for summary judgment, and the critical elements that would justify preclusion—a failure to comply with expert discovery deadlines including for an expert report—are entirely absent here. *See Softel, Inc. v. Dragon Med. and Scientific Comms.*, 118 F.3d 955 (2d Cir. 1997) (precluding expert testimony where report was filed after the close of expert discovery).

Plaintiffs have advised Defendants repeatedly that Plaintiffs' experts continue to analyze damages and competitive harm, and Defendants will have ample opportunity to test Plaintiffs' theories and calculations during the exchange of expert reports and backup materials, and at expert depositions. Plaintiffs believe that short-circuiting that process would be inappropriate.

**2. Plaintiffs Are Not "Radically Altering" the Class Definition, but Merely Conforming it to the Evidence Defendants Produced.** The SAC defined the CUSIP User Class as "[a]ll persons and entities (other than Third-Party Data Vendors) that directly paid a so-called 'license fee' to [CGS] . . . pursuant to a Subscription Agreement . . . and did not license the [full] CUSIP_DB compilation. SAC (Dkt. 87) ¶ 135. This definition set forth Plaintiffs' pre-discovery understanding that there were two categories of licensees: Third-Party Data Vendors ("TPDVs"), like Bloomberg LP, whose business is to distribute financial data, and CUSIP Users, like the Plaintiffs, who use CUSIP numbers in their businesses. *Id.* ¶ 45.

[redacted]

2



Having learned of the existence and effect of these distributor agreements and that so-called "Distributors" were not TPDVs but merely a subset of CUSIP Users, Plaintiffs promptly notified Defendants on January 6, 2025, that they intended to include in the CUSIP User Class, CUSIP Users that had signed Distribution Agreements. Dkt. 167-1 at 3. Plaintiffs' notice created no prejudice. Defendants could not have been surprised that the so-called "Distributors" were among the entities defined in the SAC as CUSIP Users rather than as TPDVs. Indeed, Defendants served a Rule 45 subpoena on Ultimus Fund Solutions LLC, a provider of index and ETF fund data, and the subpoena applies to Ultimus' subsidiary, Woodfield, which has signed a Distribution Agreement with Defendants. Further, almost three months of the fact discovery period remained since Plaintiffs' notification, and Defendants will have the entire expert discovery period to develop arguments with respect to their classification of CUSIP Users as "Distributors." Nor is this a case where amending the class definition requires additional discovery. The "facts of [the Distributors'] use of CGS Data," about which Defendants claim to be concerned, are—and always have been—within Defendants' sole possession, custody, and control.

Moreover, Plaintiffs' class motion will delineate further the basis for including these CUSIP Users in the class. Plaintiffs believe that the Court should adjudicate that motion when presented and not upon Defendants' premature preclusion request. Conforming the class definition in a complaint to the evidence produced during discovery is permitted as "a court is not bound by the class definition proposed in the complaint…." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). The time to address arguments regarding class definition is at the class certification stage when the Court can do so with the benefit of a full record. *See Omar v. 1 Front St. Grimaldi, Inc.*, 2019 WL 1322614, at *9 (E.D.N.Y. Jan. 8, 2019) (expanding a class definition based on information learned during discovery); *see also Menking ex rel. Menking v. Daines*, 287 F.R. 174, 181 (S.D.N.Y 2012) (modifying a class from citywide to statewide based on plaintiff's class certification due to evidence gained in discovery).

Respectfully submitted,

/s/ *Ronald J. Aranoff*
Ronald J. Aranoff
Lyndon M. Tretter
Reuben R. Bauer
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue, 12th Floor
New York, New York 10110
Telephone: (212) 382-3300
Email: raranoff@wmd-law.com
ltretter@wmd-law.com
rbauer@wmd-law.com

/s/ *Leiv Blad*
Leiv Blad
Jeffrey Blumenfeld (*pro hac vice*)
Meg Slachetka
COMPETITION LAW PARTNERS PLLC
1101 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 742-4300
Email: leiv@competitionlawpartners.com
jeff@competitionlawpartners.com
meg@competitionlawpartners.com

/s/ *Robert N. Kaplan*
Robert N. Kaplan
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Ave., 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Email: rkaplan@kaplanfox.com
garenson@kaplanfox.com
ekatcher@kaplanfox.com

The Court is in receipt of Defendants' request for a pre-motion conference regarding its anticipated (i) motion to preclude Plaintiffs from expanding the asserted Class, and (ii) motion to preclude Plaintiffs from advancing certain theories of damages.  (Dkt. #167).  The Court is also in receipt of Plaintiffs' response in opposition (Dkt. #175), and Defendants' supplemental submission (Dkt. #177).

In light of the parties' submissions, the Court will hold a telephonic pre-motion conference on **March 3, 2025,** at **11:00 a.m.**  The dial-in information is as follows:  At 11:00 a.m., the parties shall call (855) 244-8681 and enter access code 2315 780 7370.  It is the Court's expectation that one attorney per side will be designated as lead counsel for purposes of this conference.

The Clerk of Court is directed to terminate the pending motion at docket entry 167.

Dated:    February 26, 2025          SO ORDERED.
          New York, New York

                                     *Katherine Polk Failla*

                                     HON. KATHERINE POLK FAILLA
                                     UNITED STATES DISTRICT JUDGE