March 6, 2025



*BY ECF*

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square, Room 618
New York, NY 10007

Re: *Dinosaur Financial Group LLC et al. v. S&P Global, Inc., et al.*, Case No. 22-cv-1860

Dear Judge Failla:

  Plaintiffs submit this letter in opposition to Defendants' March 3 letter seeking a conference on their anticipated motion to compel the production of documents and communications purportedly in connection with a Rule 30(b)(6) deposition of non-party LeafHouse Financial Advisors, LLC ("LeafHouse") (Dkt. 185, 186). LeafHouse is a 3(38) fiduciary advisor to retirement plan holders under the Employee Retirement Income Security Act. At that deposition, LeafHouse's witnesses testified to the chronic anticompetitive harm Defendants' licensing policies are causing in the retirement industry and specifically for 3(38) fiduciaries like LeafHouse, retirement plan holders, and employees who invest in 401(k) plans. During defense questioning, LeafHouse's counsel directed its two corporate designee witnesses not to answer certain questions pertaining to their deposition preparation. The witnesses' counsel objected on the basis of privilege. Defendants took issue with that instruction. After the deposition concluded, Defendants raised this privilege assertion with Plaintiffs. Plaintiffs' counsel advised Defendants that LeafHouse had asserted the privilege and that Defendants should thus address their inquiries to LeafHouse's counsel, not to Plaintiffs' counsel. Before conferring with LeafHouse's counsel, Defendants rushed to this Court for a conference on a potential motion to compel *Plaintiffs* to produce documents (that do not exist) and communications about which *LeafHouse* has asserted privilege. We have been advised that after filing this letter motion, Defendants met and conferred with LeafHouse, and that those discussions are continuing.[1]

  **The LeafHouse Subpoenas.** In December 2024, Plaintiffs learned that LeafHouse had submitted a letter to the Securities & Exchange Commission ("SEC") on December 14, 2024 (the "LeafHouse Letter," Ex. B), commenting on financial regulators' proposed joint data standards under the Financial Data Transparency Act of 2022. Those standards were designed to establish technical standards for data submitted to federal financial regulatory agencies, including identifiers of financial instruments like CUSIP numbers, which would be open source and free of restrictions.[2] The LeafHouse Letter detailed how Defendants' conduct—and the restrictive terms of the CUSIP license, specifically—continued to impose anticompetitive harm on LeafHouse and others in the

---

[1] On March 4, counsel for LeafHouse wrote to Defendants' counsel stating LeafHouse's views on Defendants' attempts to compel information to be produced. *See* Ex. A.
[2] *See* https://www.sec.gov/newsroom/press-releases/2024-93.

retirement industry, including on 401(k) plans. *See* Ex. B. Plaintiffs did not know of the content or, indeed, the existence of the LeafHouse Letter until it was published on the SEC's website.

Upon learning of the LeafHouse Letter, Plaintiffs' counsel contacted counsel for LeafHouse regarding a potential deposition of the company focused on the statements made in the Letter. Plaintiffs scheduled that deposition on one of the few days on which LeafHouse's two witnesses were available—February 24, 2025, where LeafHouse is located in Austin, Texas. Plaintiffs served the LeafHouse deposition notice on Defendants on February 5. Defendants did not send a cross-notice until February 19, just two business days before the deposition.

Contrary to Defendants' contentions, Plaintiffs' counsel did not provide any documents to the LeafHouse witnesses or their counsel before the deposition and did not receive any documents from the witnesses or their counsel. Nor did Plaintiffs' counsel provide any draft questions or outlines to the witnesses or their counsel. The LeafHouse deposition testimony was the witnesses' recounting of the very substantial problems Defendants' licensing scheme has created in the retirement industry as stated in the LeafHouse Letter. Ex. B.

***The LeafHouse Deposition.*** Far from educating the LeafHouse witnesses on how to testify, as Defendants contend, Plaintiffs' questioning at the deposition consisted mostly of asking the witnesses to explain the statements in the LeafHouse Letter. *See*, *e.g.*, Kading Tr. at 18 (Ex. C).[3] Consistent with the statements in the Letter, the LeafHouse witnesses testified that Defendants' CUSIP license program imposes substantial burdens on licensees to police the use of CUSIP numbers by their customers. To avoid these burdens, so-called "record keepers"—those that maintain records of 401(k) plans and workers' investments in those plans—have created their own numbering systems for investments to communicate with the thousands of 3(38) fiduciaries like LeafHouse, thereby avoiding the policing function inherent in using CUSIP numbers. These bespoke numbering systems are not interoperable—meaning that they cannot work across electronic systems throughout the industry—and therefore are not substitutes for CUSIP numbers. *Id*. at 18-23; 24-34. These bespoke numbering systems create what the LeafHouse witnesses described as "data distortion," which occurs because different record keepers often use differing numbering systems to refer to the same investment. This distortion creates the potential for a 3(38) fiduciary to mistakenly recommend to employees investing in 401(k) plans investments that are inconsistent with their risk profile. *Id*.

To reconcile the conflicting numbers that record keepers use, 3(38) fiduciaries like LeafHouse create their own "cheat sheet" showing what instrument is referenced by each number. This process takes substantial time and money that could more productively be invested in innovative products and services. Importantly, signing a CUSIP license with Defendants would not solve these problems for LeafHouse. It still would have to (i) reconcile record keepers' bespoke numbering systems, (ii) pay an annual license fee that would be several hundreds of thousands of dollars based on the number of CUSIPs it "uses," and (iii) take on the same policing function, with its attendant administrative burdens and costs that caused the record keepers to create their numbering systems in the first place. This would impose on LeafHouse unsustainable financial

---

[3] Although the transcript is designated Highly Confidential under the Protective Order (Dkt. 125), the information in those pages reflects LeafHouse's experience. Counsel for LeafHouse has consented to Plaintiffs filing the transcript excerpts in Exhibit C on the public docket.

and administrative burdens given the company's size and the slim profit margins on which 3(38) fiduciaries operate. The LeafHouse witnesses testified that these problems could be avoided only if the Defendants ceased imposing the anticompetitive terms of the CUSIP license, which would result in the free, unrestrictive use of CUSIPs by industry participants. (*Id.*) These points were set forth—albeit in less detail—in the LeafHouse Letter. Ex. B.

During the deposition, defense counsel inquired about Plaintiffs' counsel's presence at the witness' deposition preparation and *counsel for LeafHouse*—Thomas Clark—instructed the witnesses not to answer these questions on the grounds of privilege. *E.g.*, Defs.' Ex. 2 at 113-14, Dkt. 186-2. Defendants did not probe the basis of the privilege claim.[4] *See* Ex. A. Plaintiffs' counsel at the deposition, a lawyer from Competition Law Partners PLLC ("CLP"), informed Defendants' counsel that the inquiry was inappropriate. CLP also stated that because LeafHouse had asserted the privilege Plaintiffs' counsel was obliged to abide by the privilege claim. (*Id.*)

***Defendants' Complaint.*** The day after the deposition, Defendants requested a meet and confer with Plaintiffs' counsel regarding LeafHouse's claim of privilege and demanded that Plaintiffs' counsel "state whether you communicated with the witnesses regarding their testimony[,] list any topics you discussed with the witnesses and the substance of your communications, and provide any documents or communications shared with the witnesses, including any outlines that were disclosed." Defs' Ex. 3 at 5, Dkt. 186-3. Because LeafHouse had asserted the privilege, Plaintiffs' counsel informed Defendants that any meet and confer should be with LeafHouse's counsel. (*Id.*) In their letter to this Court, Defendants complained that Plaintiffs' counsel refused to engage in a meet and confer. To be clear, Plaintiffs' counsel's position was *not* that no meet and confer should take place, but rather that the meet and confer should proceed *with Mr. Clark*, *i.e.*, the attorney for the non-party invoking the privilege instruction. Under these circumstances, a meet and confer on this issue with Plaintiffs' counsel would have been futile.

Plaintiffs understand that Defendants met and conferred with LeafHouse on March 4, 2025, *after* they filed their motion. We understand that those discussions are continuing, but, to the extent Defendants and LeafHouse are unable to resolve their issues absent judicial intervention, we submit that any motion to compel further testimony from LeafHouse should be filed in the Western District of Texas, the district in which LeafHouse resides. Fed. R. Civ. Pro. 37(a)(2).

For all these reasons, Defendants' motion for a conference and to compel further testimony from LeafHouse should be denied.

---

[4] Counsel for Defendants' inflammatory assertion that CLP improperly tried to influence the testimony of a LeafHouse witness is both baseless and wrong. CLP was merely objecting and pointing out that Defendants' counsel was using a vague term—"descriptive data"—that a third party to the litigation would not understand. When Defendants' counsel offered to restate the question, CLP ceased objecting. *See* Kading Tr. at 83-84 (Defs.' Ex. 2, Dkt. 186-2).

Respectfully submitted,

| | |
|---|---|
| /s/ *Ronald J. Aranoff* | /s/ *Leiv Blad* |
| Ronald J. Aranoff | Leiv Blad |
| Lyndon M. Tretter | Jeffrey Blumenfeld |
| Reuben R. Bauer | Meg Slachetka |
| WOLLMUTH MAHER & DEUTSCH LLP | COMPETITION LAW PARTNERS PLLC |
| 500 Fifth Avenue, 12th Floor | 601 Pennsylvania Ave., NW |
| New York, New York 10110 | Washington, DC 20004 |
| Telephone: (212) 382-3300 | Telephone: (202) 742-4300 |
| Email: raranoff@wmd-law.com | Email: leiv@competitionlawpartners.com |
| ltretter@wom-law.com | jeff@competitionlawpartners.com |
| rbauer@wmd-law.com | meg@competitionlawpartners.com |

/s/ *Robert N. Kaplan*
Robert N. Kaplan
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Ave., 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Email: rkaplan@kaplanfox.com
garenson@kaplanfox.com
ekatcher@kaplanfox.com

The Court is in receipt of Defendants' letter requesting a conference to discuss its anticipated motion to compel the production of documents and communications from Plaintiffs to non-party LeafHouse Financial Advisors, LLC ("LeafHouse").  (Dkt. #186).  The Court is also in receipt of Plaintiffs' response.  (Dkt. #188).

The Court understands that there have been additional communications between the parties since Defendants filed their letter.  In particular, on March 4, 2025, counsel for LeafHouse confirmed that LeafHouse "entered into a common interest agreement with Competition Law Partners and their clients."  (Dkt. #188-1 at 3).  Since LeafHouse has now affirmatively stated that it is asserting the common interest privilege and its basis for doing so, this factual issue appears to be resolved.  However, to the extent Defendants still wish to pursue a motion to compel documents and further testimony from LeafHouse, the Court agrees with Plaintiffs that any such motion should be filed in the Western District of Texas.  (Dkt. #188 at 3).

In light of the above, Defendants' request for a pre-motion conference is denied.

Dated:    March 10, 2025          SO ORDERED.
          New York, New York

                                  *Katherine Polk Failla* (signature)

                                  HON. KATHERINE POLK FAILLA
                                  UNITED STATES DISTRICT JUDGE