June 26, 2025

*VIA ECF*
Hon. Katherine Polk Failla
United States District Court Southern District of New York
Thurgood Marshall Courthouse, 40 Foley Square, Room 618
New York, NY 10007



Re: *Dinosaur Financial Group LLC et al. v. S&P Global, Inc. et al.*, Case No. 22-cv-1860

      Defendants oppose Plaintiffs' June 23, 2025 letter-motion relating to Plaintiffs' anticipated motion under Federal Rule of Civil Procedure 37(c) "precluding Defendants from denying that data produced by S&P and FactSet are a complete and accurate record of the actual license fees paid" by purported class members. Ltr. Mtn. at 1. As demonstrated by a corrected version of Plaintiffs' timeline (Defs.' Ex. A) and as set forth below, S&P and FactSet thoroughly met their discovery obligations by providing responsive documents relating to the actual fee amounts paid by putative class members and detailed answers to Plaintiffs' follow-up questions.

      In light of these facts, Plaintiffs have not met, and cannot meet, their burden to show that S&P and FactSet failed to disclose the requested information, or that S&P's and FactSet's continuing responses to Plaintiffs' shifting and expanding requests evince a "culpable state of mind." *Fischer v. Verizon N.Y., Inc.*, 2020 WL 5117913, at *3 (S.D.N.Y. Aug. 31, 2020), *aff'd*, 2021 WL 5827639 (S.D.N.Y. Dec. 8, 2021) (internal citations and quotations omitted); *see also Maldonado v. Town of Greenburgh*, 2022 WL 21295040, at *4 (S.D.N.Y. Mar. 31, 2022), *aff'd*, 2022 WL 2359800 (S.D.N.Y. June 30, 2022) ("Where a party seeks sanctions for discovery-related abuses pursuant to Rule 37, the moving party bears the burden of showing that its adversary failed to timely disclose information required by Rule 26." (internal citations and quotations omitted)). Moreover, Plaintiffs do not mention any ABA conduct in their letter, let alone any conduct that constitutes a violation of its discovery obligations; and Plaintiffs never asked to meet and confer with ABA on the issues their letter raises. There can therefore be no relief warranted as to ABA, let alone Rule 37(c) sanctions. *See, e.g.*, *Coan v. Dunne*, 602 B.R. 429, 442 (D. Conn. 2019) (denying request for adverse inference instruction against all defendants where alleged discovery misconduct was attributable only to one). Plaintiffs' sanction request should therefore be denied.

      At the outset, Defendants note that Plaintiffs failed to comply with the Court's Individual Rules requiring the parties to meet and confer regarding this motion in person or by telephone.[1] For this reason alone, Plaintiffs' motion should be denied. For months, S&P and FactSet have engaged with Plaintiffs, answering in writing roughly 100 detailed questions about data produced in this action relating to CUSIP Global Services' ("CGS") licensing fees and revenues, in addition to interrogatories. *See, e.g.*, Exs. H, I, J. At no point did Plaintiffs suggest that an impasse had been reached or that they intended to seek relief from the Court.

---

[1] Plaintiffs' proposed stipulation was never offered as a means to "avoid this motion," Ltr. Mtn. at 1, and as FactSet noted in its response, the stipulation falsely stated that "the assumed contract values are [] always 'the amounts actually paid.'" Ex. E (unless otherwise specified, references herein to "Ex." refer to the exhibits to Plaintiffs' letter-motion). The produced documents show neither S&P nor FactSet collected *100 percent* of billed licensing fees.

More fundamentally, the basic premise of Plaintiffs' motion is untrue: S&P and FactSet timely produced detailed licensing fee data kept in the ordinary course of their businesses that is responsive to Plaintiffs' requests, including licensing fee data found in the Master Books of Business ("MBBs") and FactSet general ledger excerpts pertinent to the CGS licenses. These documents are the most relevant data reasonably available for the purpose Plaintiffs seek, i.e., "to identify all CUSIP Users and the amounts paid per annum by each CUSIP User during the Relevant Time Period." Ltr. Mtn. at 1 (quoting Ex. A). The MBBs identify each licensee and detail, *inter alia*, the level of their subscription, the effective date, and the annual contract value. Consistent with accrual accounting principles, the general ledger contains corresponding entries for each licensee showing amounts actually received by CGS for the license. Receivable aging reports and documents seeking payment (or terminating licenses) indicate whether licensing fees were paid. Thus, Plaintiffs already have the most relevant data available for calculating payments received from each CGS licensee and have never explained why that production of data is insufficient.

Plaintiffs therefore misrepresent the record to manufacture claims of Defendants' alleged "discovery violations." Ltr. Mtn. at 1; Ex. F. As just one example, Plaintiffs' incomplete and inaccurate timeline asserts that on August 13, 2024, "Defendants fail[ed] to produce responsive documents by the substantial completion deadline." Ex. F. Not true. FactSet began producing the MBBs *on March 1, 2024*, and continued to do so on a rolling basis for the remainder of the document production period. FactSet produced the responsive general ledger excerpts on August 13, 2024. In the ensuing months, FactSet repeatedly, diligently, and in good faith endeavored to answer Plaintiffs' questions regarding the data FactSet produced. The last communication before Plaintiffs filed their motion was FactSet's letter dated April 25, 2025—not May 28, as Exhibit F suggests. *See* Defs.' Ex. A. Since that date, Plaintiffs have not responded to FactSet's letter or otherwise approached FactSet on this subject.

Further exemplifying the meritless nature of Plaintiffs' motion, Plaintiffs cite S&P's letter of June 12, Ltr. Mtn at 2, but fail to note that in that letter S&P agreed to further investigate what, if any, further information it may have in response to Plaintiffs' follow-up questions. Ex. I at 3 (response to Question 15.a). After that further investigation, S&P has since determined that the transaction data it produced on November 22, 2024 is, in fact, very useful for allowing Plaintiffs to calculate that which they are seeking to show, i.e., the amounts paid to CGS by putative class members for the period for which S&P has data.[2] Plaintiffs also incorrectly suggest that S&P claimed it had "no responsive documents." Ltr. Mtn. at 2. Rather, S&P stated that because it no longer operated the CGS business (as of early 2022), S&P would provide data about CGS licensing fees to the extent that such data was not available from FactSet (i.e., it would produce documents "uniquely in S&P's possession"). Ex. C at 1, 8. S&P then did search for and produce such unique documents related to the licensing fees paid by CGS users by the discovery production deadline.[3]

---

[2] Although S&P stated in its June 12 letter that it was "not aware" that its produced transaction data could be used to fully calculate the "actual amounts paid" by CGS customers, Ex. I at 2, in S&P's May letter, S&P explained to Plaintiffs that the data it produced did include "cash payment[s] received" by CGS, Ex. J at 5 (Question 13). Plaintiffs thus should already have been aware that they had relevant data, and if there was any confusion regarding S&P's responses, Plaintiffs should have met and conferred with S&P (as S&P offered in its letters to do). In any case, S&P has investigated the issue further (as it agreed to do) and confirmed, as a result of its further review, that the data S&P produced in November 2024 *does* include information relating to amounts paid by CGS customers in licensing fees.
[3] S&P never represented whether these particular documents were "sufficient to show the fees paid" by all class members, Ltr. Mtn. at 2, but stated that it was producing "transaction and receipt data" in its possession, Ex. H. at 10.

Even after the close of fact discovery, S&P has continued to diligently answer Plaintiffs' questions about its data, and provided Plaintiffs with supplementary materials it identified during the course of its efforts to answer Plaintiffs' questions—again, questions about legacy data at S&P concerning a business that it has not operated for three years. S&P fully complied with its discovery obligations. *See Fischer*, 2020 WL 5117913, at *3.[4]

Finally, there is no missing or withheld evidence. FactSet and S&P produced responsive data as maintained in the ordinary course of business. Plaintiffs may find it burdensome to analyze the data and conform them to the specific uses to which Plaintiffs would like to put them. But Plaintiffs' desire that FactSet and S&P had maintained their business records in a different way does not mean FactSet or S&P failed to comply with their discovery obligations. As long as they timely produced the information reasonably available to them—which they have done—there is no basis for sanctions precluding Defendants from challenging Plaintiffs', or their experts', analyses of that information. *See Maldonado*, 2022 WL 21295040, at *4 ("[P]reclusion of evidence is a harsh remedy, [and] it should be imposed only in rare situations." (quoting *Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012)) (alterations in original)). It is Plaintiffs' burden, not Defendants', to support their damages theory, and Defendants are entitled to rebut that showing. Plaintiffs' request must be denied.

Respectfully submitted,

| /s/ Eric J. Stock | /s/ Jeffrey Shinder | /s/ David Kiernan |
|---|---|---|
| Eric J. Stock | Jeffrey I. Shinder | David C. Kiernan |
| GIBSON, DUNN & CRUTCHER LLP | SHINDER CANTOR LERNER | JONES DAY |
| 200 Park Avenue, 47th Fl. | 14 Penn Plaza, Suite 1900 | 555 California Street, 26th Fl. |
| New York, NY 10166 | New York, NY 10122 | San Francisco, CA 94104 |
| Tel.: (212) 351-2301 | Tel.: (646) 960-8601 | Tel.: (415) 626-3939 |
| Fax: (212) 716-0801 | jeffrey@scl-llp.com | Fax: (415) 875-5700 |
| estock@gibsondunn.com | | dkiernan@jonesday.com |
| Attorney for Defendant S&P Global, Inc. | Attorney for Defendant FactSet Research Systems, Inc. | Attorney for Defendant American Bankers Association |

---

[4] Plaintiffs' cited cases are distinguishable. Neither FactSet nor S&P destroyed documents or failed to search for or produce directly relevant documents. *See, e.g., Fossil Indus., Inc. v. Onyx Specialty Papers, Inc.*, 302 F.R.D. 288, 291 (E.D.N.Y. 2014) (party sought to rely at trial on documents that it had failed to produce that were "directly responsive" to discovery requests); *Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 257-60 (W.D.N.Y. 2013) (party sought to rely on documents using data that "undoubtedly existed and should have been produced or made available . . . during the discovery period"); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 435-37 (S.D.N.Y. 2004) (employees "unquestionably deleted e-mails"); *Creative Res. Grp. of N.J., Inc. v. Creative Res. Grp., Inc.*, 212 F.R.D. 94, 101, 106-07 (E.D.N.Y. 2002) (the "incredible nature of [party's] claims about the whereabouts of the documents and whether or not they ever existed" indicated intentional destruction of evidence or at least willful refusal to produce); *Markey v. Lapolla Indus., Inc.*, 2015 WL 50275, at *10, *21 (E.D.N.Y. Aug. 25, 2015), *report and recommendation adopted*, 2016 WL 324968 (E.D.N.Y. Jan. 26, 2016) (firm neither reviewed discovery requests with its clients nor searched client's email for documents).

The Court is in receipt of Plaintiffs' request for a pre-motion conference pursuant to Fed. R. Civ. P. 37(c) (Dkt. #207) and Defendants' response (Dkt. #208).  Plaintiffs' request is hereby DENIED.

The Court accepts Defendants' explanation as to how Plaintiffs are able to calculate the actual license fees paid by class members from the discovery that Defendants have produced to date on a rolling basis.  If Plaintiffs disagree, they are invited to meet and confer with Defendants pursuant to the Court's Individual Rules of Practice in Civil Cases before requesting a conference.

The Clerk of Court is directed to terminate the motion pending at docket entry 207.

Dated:     June 30, 2025          SO ORDERED.
           New York, New York

                                  *[signature: Katherine Polk Failla]*

                                  HON. KATHERINE POLK FAILLA
                                  UNITED STATES DISTRICT JUDGE