# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DINOSAUR FINANCIAL GROUP LLC, SWISS LIFE INVESTMENT MANAGEMENT HOLDING AG, and HILDENE CAPITAL MANAGEMENT, LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-v.-<br><br>S&P GLOBAL, INC., AMERICAN BANKERS ASSOCIATION, and FACTSET RESEARCH SYSTEMS INC.,<br><br>Defendants. | Case No.<br>22 Civ. 1860 (KPF) |

## EXPERT REPORT OF ARTHUR M. MILLER

August 14, 2025

Arthur M. Miller Report                                                    Confidential

# TABLE OF CONTENTS

I. ASSIGNMENT AND SCOPE ............................................................................. 1

II. QUALIFICATIONS ------------------------------------------------------------------- 3

III. SUMMARY OF MY OPINIONS ------------------------------------------------------- 5

IV. RELEVANT BACKGROUND ---------------------------------------------------------- 7

V. HISTORICAL CIRCUMSTANCES LEADING TO THE DEVELOPMENT AND
ACCEPTANCE OF CUSIP NUMBERS--------------------------------------------------- 7

VI. CUSIP GLOBAL SERVICES IDENTIFIERS ------------------------------------------- 13

VII. CUSIP NUMBERS ARE REQUIRED FOR TRADING, SETTLING, AND CLEARING
SECURITIES TRANSACTIONS AND ARE REQUIRED BY REGULATORS ----------------- 17

    A. Depository Trust & Clearing Corporation ("DTCC") ------------------------------- 19

    B. DTC (THE DTCC SUBSIDIARY)------------------------------------------------- 20

    C. NSCC ------------------------------------------------------------------------- 21

    D. FICC ------------------------------------------------------------------------- 23

    E. Securities & Exchange Commission------------------------------------------------ 24

    F. Financial Industry Regulatory Authority ("FINRA") Rules ----------------------------- 26

    G. Municipal Securities Rulemaking Board ----------------------------------------- 29

    H. U.S. Treasury ----------------------------------------------------------------- 31

    I. Federal Reserve Bank of New York------------------------------------------------ 33

    J. NYSE Group------------------------------------------------------------------- 35

    K. Nasdaq Rules ----------------------------------------------------------------- 36

    L. NAIC------------------------------------------------------------------------- 37

VIII. OTHER IDENTIFIERS NOT USED FOR THE PURPOSE OF TRADING, CLEARING,
OR SETTLING TRANSACTIONS OR REGULATORY COMPLIANCE ----------------------- 37

    B. Other Publicly Available U.S. Securities Identifiers Not Used for Securities Trade
Processing -------------------------------------------------------------------------- 38

Arthur M. Miller Report                                                      Confidential

C. Non-U.S. Securities Identifiers----------------------------------------------------------------40

D. Product-Specific Identifiers------------------------------------------------------------------41

E. Entity Identifiers------------------------------------------------------------------------------43

F. Platform-Specific Identifiers----------------------------------------------------------------44

APPENDIX A. LIST OF DOCUMENTS AND MATERIALS RELIED UPON ------------------47

APPENDIX B. CURRICULUM VITAE OF ARTHUR M. MILLER------------------------------59

APPENDIX C. LITIGATION & DEPOSITION EXPERIENCE-------------------------------------62

EXHIBIT D. ASSET CLASSES FOR WHICH CGS WILL ISSUE IDENTIFIERS--------------63

APPENDIX E. OTHER REFERENCES TO CUSIP NUMBERS
IN THE CODE OF FEDERAL REGULATIONS --------------------------------------------------64

Arthur M. Miller Report                                                    Confidential

# I.   ASSIGNMENT AND SCOPE

1.    I am a Managing Director of SEDA Experts, LLC ("SEDA") and have been retained by Competition Law Partners PLLC, Kaplan Fox & Kilsheimer LLP, and Wollmuth Maher & Deutsch LLP, counsel to the Plaintiffs in the above-captioned matter ("Counsel"). Based on my forty-five years of experience in the U.S. financial industry and my review of the documents and information described below, I have been asked to provide opinions on the following topics:

     i.     The historical circumstances leading to the creation of CUSIP Numbers, and how CUSIP Numbers came to be accepted as the standard identifiers for publicly traded securities such as stocks, bonds, and U.S. Treasuries.

     ii.    A description of CUSIP Numbers and other CUSIP Global Services ("CGS") securities identifiers, and the features that distinguish them from other identifiers of financial instruments with respect to the execution of trades in securities and the clearing and settlement of those trades ("trade processing") and the reporting and disclosure of securities transactions and holdings required of issuers, investors, and broker-dealers by securities regulators ("reporting requirements").

     iii.   Whether CUSIP Numbers are embedded in the regulatory system and to what extent their use is necessary for firms to conduct their day-to-day operations. In particular, an analysis of the references to CUSIP Numbers in the rules and regulations of the relevant subsidiaries of the Depository Trust & Clearing Corporation ("DTCC") and U.S. regulatory entities such as the Securities and Exchange Commission ("SEC"), the Municipal Securities Rulemaking Board ("MSRB"), and the Financial Industry Regulatory Authority ("FINRA").

2.    For purposes of this Report, "securities" are defined to include only traditional, marketable financial instruments issued in the United States such as publicly traded stocks ("equities") and debt ("bonds") and commercial paper issued by corporations; mutual funds and exchange-traded funds; the marketable debt of the U.S. Treasury and other federal agencies; and debt of state and local government entities ("municipal notes and bonds").

3.    SEDA Experts is being compensated at a rate of $1,200 per hour for my time. SEDA Experts' compensation is not contingent in whole or in part on the conclusions I have reached in this

Arthur M. Miller Report                                                   Confidential

Report or the outcome of this litigation. As part of performing my analysis, I utilized a team of SEDA

Experts professionals who worked under my direction and supervision. I have had access to what I

understand to be the discovery materials produced in connection with this litigation. A list of

documents I relied upon in connection with this matter is attached as Appendix A.

4.      My analysis and opinions are based on my over 38 years of work at Goldman Sachs &

Co. LLC ("Goldman Sachs"), the documents that I have reviewed in the course of preparing this

Report, and my over 45 years of real-world experience in securities financings and their standards

and processes. These roles included serving as a "front line" investment banker in the municipal

finance (investment banking) department of Goldman Sachs, in particular its Strategies & Analytics

Group; serving on the Goldman Sachs Firm-Wide New Products Development Committee; serving

as a member of the Fixed Income Research Group of Goldman Sachs; and being a general resource

to municipal bond investment bankers, sales and trading desks, operations, and legal and compliance.

5.      My analysis and opinions are also based upon my service on the MSRB at a time during

which several rules and regulations governing the transaction settlement processes of municipal

securities, including specifically the use of CUSIP Numbers, were developed and set in place, and

my active participation in the municipal, executive, and policy committees of the Securities Industry

and Financial Markets Association ("SIFMA") as well as various legal organizations such as the

National Association of Bond Lawyers and the American Bar Association.

6.      As a result of this experience, I have both broad-based and particularized knowledge

of the trade processes for municipal securities and, by virtue of the commonality of those processes

and the rules governing them, knowledge of those processes for other securities.

7.      I have also considered the documents, industry guidance, and materials discussed

herein as they apply to the facts in this litigation. I use citations to securities industry guidance and

other authorities to demonstrate and support my opinions, but these references do not, by themselves,

determine my opinions.

Arthur M. Miller Report                                                    Confidential

8.      I reserve the right to update and supplement this Report at any time should additional materials and information be provided or otherwise made available to me.

## II.    QUALIFICATIONS

9.      I am currently a Managing Director at SEDA, a Financial Services Expert Witness firm that provides independent advice, data analytics, and valuation services to corporations, government agencies, and regulatory bodies in the financial services industry. For this expert assignment, I am acting in my capacity as Managing Director.

10.     I hold an undergraduate degree (A.B.) from Princeton University (1973), a Masters of Arts (History) from the University of North Carolina (1976), a Juris Doctor from Duke University (1978), and a Master of Law from New York University (1982).

11.     From 1985 to 2023, I was employed by Goldman Sachs, largely in the Public Sector & Infrastructure Group of the Investment Banking Division in New York City.  I was a Managing Director and Co-Head of the Public Finance Strategies & Analytics Groups. I also served on the Goldman Sachs' Firm-Wide New Products Development Committee, and as part of the Fixed Income Research Group.

12.     During my 38-year career at Goldman Sachs, I was continually involved in the firm's efforts to create and develop new products that would serve specific issuer or investor needs.  A necessary element of all these projects was to address the ability of investors to buy and sell the products in a standardized manner using existing market infrastructure.  These projects included:

    i.      Zero coupon/converting to fixed coupon bonds;
    ii.     Stripping of coupons of municipal bonds under Section 1286I of the Tax Code;
    iii.    Foreign currency-denominated municipal bonds;
    iv.     Auction rate bonds;
    v.      "Paired" floater/inverse floater bonds; and
    vi.     "Qualified Tax Credit Bonds", and the "stripping" of the quarterly federal income tax credits "paid" on the bond (Section 54A of the Tax Code; repealed in 2017).

3

Arthur M. Miller Report                                                    Confidential

13.     The development of almost every new product involved to one degree or another questions regarding the use and utility of CUSIP Numbers.  For example, when "strippable" Federal Tax Credit Bonds were authorized by Congress in 2010, several CUSIP-specific issues arose such as: (i) whether CGS could or would assign a CUSIP Number to a Federal Tax Credit; (ii) whether the Tax Credit was a municipal obligation or one of the U.S. government (which would result in different CUSIP Number assignments); and (iii) since no cash was actually transferred upon maturity of the Tax Credit, whether the use of CUSIP Numbers and the Depository Trust Company ("DTC")[1] processes would be sufficient safeguards for the proper tax reporting of the credits and to prevent multiple claims of the same credit against the Federal government.[2]

14.     I also utilized CUSIP Numbers extensively in my work as an investment banker to municipal issuer clients.  For example, as Co-Head of Quantitative Strategies & Analytics, I supervised the development of client-specific data sets for purposes of analyzing the benefits of refinancing specific bonds or maturities for savings via tender offers or exchanges. As part of that process, we gathered data necessary for the client to make informed decisions from a wide range of sources; this data included: (i) current holders of each security (from DTC and other sources); (ii) the market values of the securities (from Bloomberg and Refinitiv, and trading data from the MSRB's Electronic Municipal Market Access ("EMMA") platform); (iii) secondary market insurance or securitization of specific bonds (from EMMA and other sources); and (iv) original pricing, coupons, yields, and redemption provisions (from the client's offering statements).  The retrieval of data from third parties, and the use of the data for tax and valuation analytics and assessment of market strategies for the client, was coordinated using the CUSIP Number for each security.

15.     From 2014 to 2018, I served on the Board of Directors of the MSRB, serving as Vice Chair for two of those years, during which several rules and regulations relating to the municipal bond

---

[1] DTC is a subsidiary of DTCC.  See ¶¶ 51-53 infra.
[2] See, e.g., IRS Notice 2010-28 § 3.03(c)(4), p. 11 (March 23, 2010) (qualified tax credit bonds must be issued in registered form, and all stripped tax credits and residual cash components must be assigned a CUSIP Number): https://www.irs.gov/pub/irs-drop/n-10-28.pdf. The first issuance of Tax Credit Bonds was by San Diego (CA) Unified School District in May 2009; the Official Statement for that issue can be viewed at: https://emma.msrb.org/MS280663-MS279758-MD567449.pdf. Note the CUSIP Numbers assigned on page 2.

Confidential

market structure, including specifically the use of CUSIP Numbers, were developed or finalized. One

such rule was an amendment to the general MSRB rule that municipal bond underwriters and advisors

apply for and (if eligible) obtain CUSIP Numbers for all municipal securities.[3] The amendment created

an exemption of municipal securities purchased by commercial banks and state bond banks at issuance

in the narrow circumstance that the purchaser intends to hold the security to maturity (and thus the

bond is not expected to be traded).[4]

16.    Throughout my career, I have been a frequent panelist at many municipal finance

seminars, and I have authored or co-authored several seminar outlines. Many of these presentations

centered around explaining market functions and dynamics, and how securities firms conduct their

operations (and why). The most recent of these, still in use by the National Association of Bond

Lawyers in their annual workshop, describes the roles and operations of sales and trading desks and

the operating systems supporting those functions.

17.    My curriculum vitae is attached as Appendix B.

18.    A list of all my trial and deposition testimony over the last four years is attached as

Appendix C.

## III.    SUMMARY OF MY OPINIONS

19.    In my opinion, the early history of the CUSIP Numbering System shows that without

the support and directive of industry groups and the required use of CUSIP Numbers mandated by the

major stock exchanges, the National Association of Securities Dealers ("NASD"), and the SEC in the

early to mid-1970s, and by the MSRB in the early 1980s, it is not at all clear that the CUSIP Numbering

System would have become the industry standard for securities identifiers. Until the creation of

Financial Instrument Global Identifiers ("FIGIs") in 2009, 41 years later, and their public availability

in 2014, CUSIP Numbers were the only identifiers that covered a sufficiently broad range of classes

---

[3] See ¶ 72 infra.
[4] See MSRB Notice 2017-25 (Dec. 15, 2017), amending MSRB Rule G-34(a)(i):
https://www.msrb.org/sites/default/files/2017-25.pdf; SEC Release No. 34-82321: Release No. 34-82321 (December 14, 2017), 82 FR 60433 (December 20, 2017).

Arthur M. Miller Report                                              Confidential

of securities in the public markets, such that they could have been considered generally for trade processing and reporting requirements.

20.    CUSIP Numbers are required to comply with regulatory reporting requirements or as a matter of market practice for the trade processing of: (i) all marketable U.S. Treasuries; (ii) all exchange-traded equity and debt securities (whether registered with the SEC[5] or exempt under the SEC's Rule 144A and Regulation S) and exchange-traded funds ("ETFs"); (iii) marketable securities of governmental agencies; (iv) other corporate bonds that are registered with the SEC or exempt under Rule 144A; (v) corporate and asset-backed commercial paper; and (vi) virtually all municipal notes and bonds. This opinion is based upon several factors, including: (i) their early mandated use for trade processing by the major exchanges, the NASD, and securities regulators; (ii) the history and ubiquity of their use, resulting in CUSIP Numbers becoming part of the *lingua franca* for the electronic processing of publicly traded securities; (iii) the historical lack of alternative identifiers; and (iv) regulators' requirements that issuers, broker-dealers, and investment managers use CUSIP Numbers for required reporting.

21.    Just as CUSIP Numbers are required for the routine trade processing of publicly traded securities, the converse is also true: other securities identifiers, including specifically FIGIs, cannot be used in place of CUSIP Numbers. Based upon the provisions of the DTC's Operational Arrangements Manual, FIGIs are not used by DTC in securities trade processing.[6] In addition to the DTC's required use of CUSIP Numbers, the specified uses of CUSIP Numbers under the current regulatory systems of the SEC, FINRA, and the MSRB mean that firms cannot use FIGIs and other identifiers in lieu of CUSIP Numbers for many required reporting purposes.

---

[5] Section 6 of the Securities Act of 1933 defines "registered securities" as securities for which a registration statement has been filed by the issuer with the SEC under Section 6 of the Securities Act of 1933 which, when deemed effective, allows for their sale to the general investing public. 15 U.S.C § 77f.

[6] The use and importance of DTC as a central platform for securities trade processing extends beyond the immobilization of securities and standardization of trade processing (discussed below at ¶ 26). DTC's Continuous Net Settlement process, which nets the purchase and sale orders of a DTC participant, combined with its role as the central counterparty for trades (effectively guaranteeing trades among participants), reduces the credit risks that each participant may have to the market and as a result reduces market risk as a whole.

Arthur M. Miller Report                                              Confidential

## IV.  RELEVANT BACKGROUND

22.     The American Bankers Association ("ABA") is a trade association for the United States banking industry organized under Section 501(c)(6) of the Internal Revenue Code. S&P Global, Inc. ("S&P") is a provider of financial data and data analytics, headquartered in New York. FactSet Research Systems, Inc ("FactSet") is a provider of financial data and a financial data analytics company, headquartered in Norwalk, Connecticut.

23.     As discussed below,[7] in 1968 a diverse group of major industry participants, including the ABA, created the CUSIP Numbering System. The ABA contracted with S&P to operate this system through a newly formed division called the CUSIP Service Bureau. The CUSIP Service Bureau was renamed CUSIP Global Services in 1989. CGS remained responsible for managing the CUSIP Number issuance and licensing business on behalf of the ABA as a division of S&P until March 1, 2022, at which time CGS was sold to FactSet through an asset purchase agreement.

## V.  HISTORICAL CIRCUMSTANCES LEADING TO THE DEVELOPMENT AND ACCEPTANCE OF CUSIP NUMBERS

24.     <u>The Paperwork Crisis</u>. The need for an identifier for publicly traded securities arose primarily from the "paperwork crisis" that confronted Wall Street in the 1960s, extending into the 1970s.  At the time, virtually all publicly traded stocks, corporate bonds, municipal notes and bonds, and U.S. Treasury obligations were issued in physical form. The company or obligor (or its agent) would issue a "certificated" format, tamper-resistant physical piece of paper to the purchaser of or investor in the financial instrument.  Stock certificates were generally issued to the legal owner of the shares in the company, with the owner's name either printed on the certificate or enrolled on the books and records of a registrar.  Bonds were issued either in "bearer" form[8] or (like stocks) to a registered owner.  To purchase or sell a registered security in physical form, the seller was required to deliver the actual physical certificate (typically through its broker and other parties) to the registrar for the

---

[7] See ¶¶ 27-31 infra.

[8] Bearer bonds are not registered to an owner, nor is the owner's name imprinted on the bond; whoever has physical possession of the bond is deemed owner. See MSRB, "MSRB Glossary of Municipal Securities Terms" p. 13 (PDF p. 17) (3rd Ed., Aug. 2013):  https://www.msrb.org/sites/default/files/2022-08/MSRB-Glossary-of-Municipal-Securities-Terms-Third-Edition-August-2013.pdf.

Arthur M. Miller Report                                                                 Confidential

security, who would then cancel the seller's certificate and issue and deliver a new certificate in the name of the ultimate purchaser. A bearer bond could be transferred directly to an ultimate purchaser without cancellation.

25.      Brokers and securities dealers were typically required to "settle" the purchases or sales of securities (i.e., physically deliver the securities from a seller or to a purchaser, together with payments for the transaction) within five business days. A stock certificate typically would pass through nine parties as part of that process, with an average of about 3.5 errors for each trade.[9] The errors ranged from the wrong issuer name or "ticker" (described below); to the wrong transfer, delivery, or rejection form (each bank acting as a registrar or trustee had its own set of forms, and would reject a transmittal not on its form); to missed deadlines. The system was labor-intensive, requiring matching trade orders by hand. As trading volume increased,[10] the required paperwork involved, the correction of the errors involved, and the manpower required for both within the five-day timeframe became overwhelming.

26.      To address this situation, in the 1960s and early 1970s the major stock exchanges, members of the broker dealer community, and the commercial banks that processed and cleared securities trades, together formed a series of *ad hoc* and formal working groups and committees.[11]

---

[9] See, e.g., "Mr. CUSIP Dies at 94," The Shareholder Services Optimizer, vol 14, # 1, pp. 9-11 (1stQ. 2008): https://optimizeronline.com/wp-content/uploads/2008_Q1.pdf.
[10] For example, annual stock trading volume on the US stock exchanges increased from 857 million shares in 1950 (655 million on the New York Stock Exchange ("NYSE")) to 6,231 million (5,056 million on the NYSE) in 1975. The number of shares listed on the NYSE rose from 2,353 million shares in 1950 to 22,478 million in 1975. Statistical Abstract of the United States, 98th Edition (1977), Table Nos. 873 & 874, pp. 539-40 (pp. 73-74 of PDF): https://www2.census.gov/library/publications/1977/compendia/statab/98ed/1977-07.pdf. As a point of reference, in 2024 annual equities trading volume across all major platforms was approximately 3.06 **trillion** shares – approximately 467 times the number of exchange-traded shares in 1975. See SIFMA, 2025 Capital Markets Fact Book, pp. 60 & 61 (July 2025): https://www.sifma.org/resources/research/statistics/fact-book/, and fn. 51 infra.
[11] Foremost of these were the Joint Industry Control Group, formed in 1968, and the Banking and Securities Industry Committee ("BASIC"), formed in 1970. BASIC's first Board was comprised of the CEOs of the NYSE, the American Stock Exchange, the National Association of Securities Dealers, Morgan Guaranty Trust, Bankers Trust, First National City Bank, and a retired partner of Price Waterhouse as its Chair. See Herman W. Bevis, "BASIC – Interindustry Teamwork," pts. 1 & 2, pp. 2 & 5 (pp. 11 & 14 of PDF) (Apr. 1, 1974) ("BASIC – Interindustry Teamwork"): https://www.sechistorical.org/collection/papers/1980/1984_0401_BasicTeamwork_1.pdf; https://www.sechistorical.org/collection/papers/1980/1984_0401_BasicTeamwork_2.pdf. Bevis was the first Executive Director of BASIC.

Arthur M. Miller Report                                                    Confidential

These committees and subcommittees undertook a range of initiatives to address the paperwork crisis. Three of the most important initiatives were:

    i.    An effort to "immobilize" securities certificates by holding them in one central location by a custodian (or "depository") for the benefit of brokers, dealers, and banks that dealt with the securities, and to create a "book-entry" system of recording the beneficial ownership in the securities through a series of books and records of ownership both at the depository and at the securities firms, which in turn recorded the beneficial ownership of securities by their customers. This effort led to the creation in 1968 of the Central Certificate Service ("CCS") by the New York Stock Exchange; CCS was eventually folded into DTC in 1973.[12]

    ii.    The development of standardized processes and procedures, and processing forms, for securities trade processing.[13]

    iii.    Ancillary to these two initiatives, the development of a uniform set of identifiers for securities, to be used for reference identification of securities by all participants in all aspects of the securities industry.

    27.    <u>Development of the CUSIP Numbering System</u>. The third initiative was intended to address what at the time was called the "Tower of Babel" issue: the lack of common descriptions or identifications for securities. The lack of common descriptions multiplied the possibility of errors in trades and made the identification of the securities that were the subject of a trade a labor-intensive process, given the need to check that both sides of a trade were referencing the same security. The Tower of Babel problem was not confined to the direct participants in the securities industry – the exchanges, the broker-dealers, and the banks that participated in the processing of securities trades and their payments. For example, commercial banks more generally were confronted with an "internal" paperwork crisis in their control and accounting processes for securities. Banks had as many as three different identifiers for the same security: one for a security held for the account of the bank itself, a second for a security held in a trust account of a bank customer, and a third for a security

---

[12] BASIC – Interindustry Teamwork, pt. 1; pp. 8-9, 13-14, 43-43 (pp. 17-18, 22-23, 51-52 of PDF).
[13] ABA, "Security Identification System: Specification and Guides, Technical Bulletin," p. 2 (Jan. 1967): ABA-0000000195. ("Technical Bulletin # 1"); BASIC – Interindustry Teamwork, pt. 1; pp. 1, 9 (pp. 10, 18 of PDF) & pt. 2, pp. 154-157 (pp. 85-88 of PDF). It was this initiative that led to the adoption by the exchanges of the Uniform Practice Codes and the forms relating thereto, all of which require the inclusion of a CUSIP Number of a security if available. See ¶¶ 71, 75, 86 & 88 infra.

held in the bank's common trust fund. The identifiers used by the bank often would not match the identifiers used by outside parties, such as a ratings service, a pricing service providing market pricing information to the bank, or a broker seeking to transfer a security to or from the bank.[14]

28.     As a result, a group of major industry participants, together with the ABA, created the "CUSIP Numbering System" to serve as the system for the assignment of unique identifiers to all securities traded.[15]

29.     The CUSIP Numbering System (the assignment of CUSIP Numbers together with the publication of a CUSIP index or directory described below) was intended to: (i) provide a unique identifier for each existing security and for each newly issued security; (ii) have that identifier printed on all of the stock or bond certificates in a location on the form of the certificate that would be standardized so as to allow for the automated processing of the physical securities; and (iii) have the identifier be readable both by people and machines.[16]

30.     For securities that were still delivered in physical form, the use of the CUSIP Numbers reduced the level of errors in the transaction processes. For securities that were immobilized and held by a depository, the CUSIP Number was necessary to assure that the security being bought or sold was in fact the one intended to be traded by the two parties. Making CUSIP Numbers "machine readable" was intended to facilitate transaction processing both for securities that were the subject of a physical transfer and for processing book-entry-only transactions, both within the framework of the then-existing computer technology and also allowing for future, more computer-reliant trade execution.[17] In order "to realize its full potential the [CUSIP Numbering] system [had to be] readily adaptable not only to banks and trust companies but also to the security brokers, dealers, exchanges,

---

[14] See ABA, "Wall Street Agrees on a Uniform Way to Identify Stocks", "Banking", p. 12 (Sept. 1968): ABA-0000027456.
[15] See, e.g., "Remarks of Homer H. Budge. Chairman, Securities and Exchange Commission," pp. 2-3 (June 20, 1969): "We know that the CUSIP system is the result of several years of cooperative effort and hard work by the financial community. This includes the American Bankers Association, the New York Stock Exchange, the American Stock Exchange, the National Association of Securities Dealers, the Association of Stock Exchange Firms, the Investment Bankers Association, and other organizations and representatives of individual firms within the financial community.": https://www.sec.gov/news/speech/1969/062069budge.pdf.
[16] See ABA, Technical Bulletin # 1, p. 2; BASIC – Interindustry Teamwork, pt. 1, p. 2, 8 (p. 11, 17 of PDF).
[17] See BASIC – Interindustry Teamwork, pt. 2, p. 178 (p. 109 of PDF).

insurance companies, mutual funds, investment advisory companies, security servicing companies, governmental agencies, or, in fact, the entire spectrum of the financial community."[18]

31. In December 1968, the ABA contracted with Standard Statistics Company, Inc. ("SSC," a subsidiary of S&P) to publish its index annually (with periodic interim supplements) in the form of the "CUSIP Directory," a hard-copy book published between 1969 and the mid- to late-2000s.

32. Delays in Adoption. At its initial stages, acceptance and use of CUSIP Numbers was on a voluntary basis and faced considerable resistance from smaller broker-dealers and those outside of New York, as well as the municipal bond market. In a 1974 paper, the former Chair of the Banking and Securities Industry Committee ("BASIC")[19] identified several areas of resistance to the adoption of CUSIP Numbers, including:

i. Initially, the CUSIP Numbering System was not adopted by many institutions; CUSIP Directories were not being purchased.[20]

ii. Municipal bonds were not subject to any self-regulatory authority,[21] with the result that the adoption of CUSIP Numbers was on an "unsatisfactorily small percentage of such issues."[22]

iii. Financial institutions lagged in the conversion of in-house systems to CUSIP Numbers; time, effort, expense, retraining of clerks, and temporary disruption being the cited factors. Many sought to retain their old systems for internal trade processing, only using the CUSIP Numbering System to the extent required for external communication and trade processing. As the author noted, "[g]etting CUSIP on stock and bond instruments was no systems advance *per se*."[23]

33. As a result of this slow adoption of the CUSIP Numbering System, in December 1970 S&P "sharply suggested the need for a big push for the use of CUSIP, and the best candidates here were the high-volume clearing input and output of NASD and the exchanges, and the documents

---

[18] ABA, Technical Bulletin # 1," p. 11.
[19] See fn. 11 supra.
[20] BASIC – Interindustry Teamwork, pt. 2, pp. 148 (p. 79 of PDF).
[21] Ibid., p. 150 (p.81 of PDF). The creation of the MSRB was authorized the following year by Section 13 of the Securities Acts Amendments of 1975, adding Section 15B to the Securities Exchange Act of 1934. Pub. Law 94-29: https://www.congress.gov/94/statute/STATUTE-89/STATUTE-89-Pg97.pdf; see 15 USC § 78o-4(b).
[22] BASIC – Interindustry Teamwork, pt. 2, p. 150 (p. 81 of PDF).
[23] Ibid.

Arthur M. Miller Report                                                      Confidential

handled by NYCH banks."[24] The lag in adoption, and the resultant lack of revenues from directory

sales and other services, was so significant that a "crisis meeting" was held in December 1970 between

the ABA and S&P, in which S&P was reported to have stated that "it could not wait forever . . . to

learn whether CUSIP would fly."[25]

34.    In response, in February 1971, BASIC proposed the mandatory adoption of the CUSIP

Numbers by April 1, 1972. Shortly thereafter the American, New York and Midwest Stock Exchanges

all announced their intention to mandate the use of CUSIP Numbers on or before the recommended

April 1, 1972 deadline. I understand that by the April 1, 1972 date all the exchanges, both in New

York and in other U.S. cities, were using CUSIP Numbers as part of their trade processes.[26]

35.    In the ensuing two decades, other regulatory and self-regulatory organizations

introduced rules requiring the use of CUSIP Numbers, firmly embedding them within the regulatory

system.[27] For example, in February 1971, the SEC announced a proposal to require the use of CUSIP

Numbers on certain reports[28] and since then has incorporated CUSIP Numbers into many of its

regulations. Similarly, in 1979, the MSRB required that CUSIP Numbers for municipal bonds be

included, if available, on trade confirmations.[29]  The use of CUSIP Numbers for municipal bonds

accelerated in 1983 when the MSRB mandated that securities identifiers be affixed to all newly issued

municipal bonds underwritten by a securities firm, and designated CUSIP Service Bureau as the sole

---

[24] Ibid., p. 151 (p. 82 of PDF).
[25] Ibid., pp. 150-151 (p. 81-82 of PDF).
[26] See CGS, "CGS History": 1972: "All clearing corporations begin using CUSIPs, making them the mandatory identifier for all brokerage firms." https://www.cusip.com/about/history.html
[27] See ¶¶ 59-64 infra.
[28] BASIC – Interindustry Teamwork, pt. 2, p. 150 (p. 81 of PDF). These proposals were the start of the extensive list of specific references to CUSIP Numbers currently in the SEC'S regulations.  See Part VII infra.
[29] MSRB, "Milestones in Municipal Securities Regulation": https://www.msrb.org/Milestones-Municipal-Securities-Regulation#1970 . See ¶¶ 86 & 88 infra.

Arthur M. Miller Report                                              Confidential

provider of such identifiers.[30] This rule (which is still in effect), with some narrow exceptions,[31] thus requires an underwriter or broker dealer to obtain a CUSIP Number for any municipal bond that is eligible for a CUSIP Number.[32]

36.     Taken as a whole, the early history of the CUSIP Numbering System shows that, without the support and directive of industry groups and the mandated use of CUSIP Numbers by the major stock exchanges, the NASD, and the securities regulators (as detailed in Section VII below), it is not at all clear that the CUSIP Numbering System would have become the industry standard for securities identifiers. Until the creation of FIGI identifiers in 2009, 41 years later, and their public availability in 2014, CUSIP Numbers were the only identifiers that covered a sufficiently broad range of securities asset classes such that they could have been considered for securities trade processing. However, as discussed below, FIGIs have yet to achieve more than a fraction of the same type of industry-wide acceptance as CUSIP Numbers, cannot be used for the routine trade processing of securities, and in general remain much less widely used, even for required reporting purposes.

## VI.    CUSIP GLOBAL SERVICES IDENTIFIERS

37.     Currently, CGS identifies approximately 34 classes of assets for which it will generate identifiers. In addition to stocks, bonds, municipals, and Treasuries, the list includes a wide range of assets, set forth in Appendix D.[33]

38.     <u>CUSIP Numbers</u>.[34] Every CUSIP Number follows a standard format, developed by the Technical Subcommittee of the CUSIP Committee beginning in 1968 and since modified from time

---

[30] MSRB Rule G-34(a)(i) & Rule G-34 Supplementary Material Information .01, MSRB Rule Book (Oct. 2024) ("MSRB Rule Book"), pp. 294-295 & 300: https://www.msrb.org/sites/default/files/2024-10/MSRB-Rule-Book-October-1-2024.pdf

[31] For example, no CUSIP number is required if a security is sold to a commercial bank that has a present intent at the time of sale to hold the security to maturity. See MSRB Rule G-34(a)(i)(F), MSRB Rule Book pp. 294-95; see also Rule G-34(d) (exemption if the security is not eligible for a CUSIP Number), MSRB Rule Book p. 299.

[32] An example of a security that would not be "DTC-eligible" would be a bond that paid DTC (as the nominal owner of the security) in Euros; for such securities, an agent of the issuer must pay the investor (via its broker dealer) the Euros directly, not through DTC's operations. See The Depository Trust Company, Operational Arrangements, p. 40 (p. 43 of PDF) (April 2025) ("DTC Operational Arrangements"): https://www.dtcc.com/~/media/files/downloads/legal/issue-eligibility/eligibility/operational-arrangements.pdf.

[33] See https://www.cusip.com/identifiers.html#/CUSIP .

[34] While technically the term "CUSIP" is an acronym for the original committee described above, securities industry professionals often use the term "CUSIP" to refer both to the provider of CUSIP Numbers (CGS and its predecessor CUSIP Service Bureau) and the actual CUSIP Numbers themselves. Thus, one gets a "CUSIP" from "CUSIP" for a security.

Arthur M. Miller Report                                          Confidential

to time. A CUSIP Number is a string of nine alphanumeric characters. The first six characters (also known as the "Base CUSIP") identify the issuer of the security; the next two identify the specific security of the issuer; and the ninth character is a "check digit," designed to catch typographical and other errors in the input of the CUSIP Number.[35]

39.      CUSIP Numbers are used as identifiers in the United States for the securities of both U.S.- and Canadian-domiciled[36] entities. In Canada, Clearing and Depository Services Inc., a subsidiary of The Canadian Depository for Securities ("CDS"), is the National Numbering Agency (described below) for Canada;[37] however, CDS "coordinates the assignment of ISIN and CUSIP [N]umbers with [CGS]."[38] All securities of an issuer of the same type, terms, and structure share the same CUSIP Number. Conversely, two securities of the same issuer with different terms will have different CUSIP Numbers. Thus, all shares of common stock of, for example, Apple Inc. will have the same CUSIP Number of 037833 100, regardless of when Apple issued the stock, when it was purchased by an investor, or which trading venue executed the trade.[39] Apple has also issued debt in the form of Notes bearing an interest rate of 2.05% due September 11, 2026; those Notes have the CUSIP Number 037833 DN7.

40.      In addition to a security's CUSIP Number, CGS also creates a "standardized" abbreviated description of the name of the issuer and of the issue.[40] These descriptions, together with

---

[35] CGS, "Inside the CGS Identification System" pp. 4-9 ("Inside the CGS Identification System"): https://experience.cusip.com/inside-the-cusip-system

[36] The SEC's regulations define a "foreign issuer" as "any issuer which is a foreign government, a national of any foreign country or a corporation or other organization incorporated or organized under the laws of any foreign country." 17 CFR § 240.3b-4(b).  A U.S. corporation or similar entity is "domiciled" in the state or country in which it is incorporated or organized under the laws of that state or country. See Wex Definitions, "domestic corporation" ("corporations are domiciled or considered citizens of the state in which they are incorporated"): https://www.law.cornell.edu/wex/domestic_corporation
The procedures of the Association of National Numbering Agencies ("ANNA") provide that depository receipts, such as Global and American Depository Receipts ("GDRs" and "ADRs"), of foreign securities are assigned identifiers based upon the country of the custodian bank holding the securities on behalf of investors.  See ANNA, "Identifiers": "In the case of depository receipts, such as ADRs, the country code is that of the organisation that issued the receipt, rather than instead [sic] of the one that issued the underlying security.": https://anna-web.org/identifiers/

[37] ANNA, "Members": https://anna-web.org/anna-members/;  See also ¶ 44 infra.

[38] CDS, "ISIN Issuance and ISIN Eligibility Services": https://www.cds.ca/issuers/issuer-services/isin-issuance-and-isin-eligibility-services.

[39] See V. Morris & K. Morris, "CUSIP: A Common Language for Efficient Markets," p. 3, 6 (pp. 5, 8 of PDF):: https://experience.cusip.com/brochure/cusip-a-common-language-for-efficient-markets

[40] See Inside the CGS Identification System, pp. 9-22, 26.

Arthur M. Miller Report                                                    Confidential

the CUSIP Number, constituted the information provided about a security in print form in the original CUSIP Directories.

41.     Beyond certain basic rules (for example, the common stock of a corporation will always have a seventh and eighth digit of "10"), as noted above the CUSIP Number itself does not provide a description of the characteristics of the security; thus, a CUSIP Number will not provide the maturity or interest rate of a U.S. Treasury. For that information, a party using a CUSIP Number would need to refer to a separate database that matches the CUSIP number of a security to any relevant information a party may need to execute a transaction. This type of a database is generally referred to as a "Security Master File." Security Master Files can be developed and maintained by firms internally or firms can rely on outside vendors to supply such databases.

42.     Beginning with the December 1968 contract, and through its renewal in 2014, the ABA granted CGS and its predecessors the exclusive license to issue CUSIP Numbers.[41] Once a CUSIP Number is assigned to a financial instrument, it is generally not changed, nor is it reassigned to a later instrument of the issuer if, for example, a bond matures and has been retired. There are minor exceptions to this general rule under DTC's policies and procedures for "corporate actions," pursuant to which a security or a portion of it may have new or different terms, such as a reverse stock split.[42]

43.     CINS. In 1988, CGS extended the CUSIP identification system to create the CUSIP International Numbering System ("CINS") for identifiers of securities and other financial instruments either underwritten[43] (in the case of bonds) or domiciled (in the case of equities) outside of the United

---

[41] Agreement between ABA and CGS, effective as of Sept. 15, 2014, p. 2. ABA-0000028676. I am aware of a distinction for Money Market Instruments ("MMIs"), which have maturities as short as one day, making it impractical for CGS to process and assign the CUSIP Numbers directly in real time for those instruments. Instead, DTC itself assigns the CUSIP Numbers from a set of potential CUSIP Numbers pre-authorized by CGS. DTC Operational Arrangements, p. 24 (p. 27 of PDF).
[42] DTC Operational Arrangements, p. 24 (p. 27 of PDF).
[43] Section 2(a)(11) of the Securities Act of 1933 defines an "underwriter" as "any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking." 15 USC § 77b(a)(11). The term distinguishes the activities of a broker-dealer in the context of a primary or new issuance offering of securities from, for example, secondary market trading activity. In the context of foreign securities, Regulation S (17 CFR §§ 230.901-905) provides parameters for determining whether the broker-dealer conducts an underwriting of a security outside of the United States.

Arthur M. Miller Report                                            Confidential

States and Canada.[44] Although also a nine-character alphanumeric string, the operating rules for the construction of CINS are slightly different from those for CUSIP Numbers. For a CINS, the first character is a country or region code, the subsequent five characters identify the issuer of the security, the next two characters identify the specific security of the issuer; and the ninth character is a "check digit." CGS states that CINS are used as the local identifier by more than 30 non-North American markets.[45]

44.    ISINs. International Securities Identification Numbers ("ISINs") grew out of an effort beginning in 1981 by the International Standards Organization ("ISO") to create securities identifiers for global use in securities trade processing. Its structure standards are currently set forth in ISO 6166.[46] The ISIN regime is coordinated among countries by the Association of National Numbering Agencies ("ANNA")[47] through the designation of national numbering agencies for each country. In addition, for countries with no designated national numbering agency, ANNA appoints a Substitute Numbering Agency. CGS has been designated as the Substitute Numbering Agency for 53 countries, mostly in North and South America.[48]

45.    An ISIN is structured as a twelve-character alphanumeric string. ISINs for U.S.-based securities that require an ISIN (e.g., common stocks of US corporations traded in Europe or Asia) are created by CGS simply by adding to the CUSIP Number for the security: (i) the two letters "US"

---

[44] Inside the CGS Identification System, pp. 4, 24. CGS has also outlined a list of securities for which an issuer should apply for a CINS rather than a CUSIP Number: (i) U.S. company equity securities offered solely outside the U.S. and Canada, in particular or as an example U.S. companies offering stock under Regulation S stock on the U.K. AIM Exchange or in Germany; (ii) public offerings in the U.S. by a non-U.S./Canadian issuer (other than ADRs and GDRs), in particular or as an example issuers in the Cayman Islands, Bermuda and other non-U.S./Canadian issuers; and (iii) debt offered solely outside the U.S. and Canada, in particular or as an example Eurobonds and other debt offerings that meet the requirements of Regulation S. CGS, "Processes: Assigning CUSIP/CINS/ISIN," p. 3: https://www.cusip.com/pdf/Processes%20-%20CUSIP_Template_2019.pdf.    DTC's rules require either CINS or CUSIP Numbers for DTC to process trades in securities that are subject to restrictions on trading and investors under the SEC's Regulation S (17 CFR §§ 230.901-905) or Rule 144A of the Securities Act of 1933 (17 CFR § 230.144A) (together referred to as "Legally Restricted Securities"). See DTC, Operational Arrangements, pp. 24-25 (pp. 27-28 of PDF).
[45] https://www.cusip.com/identifiers.html#/CINS
[46] ISO, "ISO 6166:2021": "ISO 6166:2021"
[47] See https://anna-web.org/
[48] See https://anna-web.org/anna-members/

Arthur M. Miller Report                                                   Confidential

before the CUSIP Number; and (ii) a check digit (in effect, a second check digit) as the 12th and final

character.[49] Apple's common stock bears the ISIN US 037833 100 5.

46.    As the National Numbering Agency for the United States, CGS assigns and issues

ISINs under ANNA's procedures for securities that are domiciled in the United States (for example,

U.S. Treasuries, equity securities of U.S.-based corporations, and obligations of U.S. state and local

governments).[50] ISINs are not mentioned in DTC's Operational Arrangements Manual.

## VII.    CUSIP NUMBERS ARE REQUIRED FOR TRADING, SETTLING, AND CLEARING SECURITIES TRANSACTIONS AND ARE REQUIRED BY REGULATORS

47.    CUSIP Numbers (and in certain instances, CINS) are required to comply with

regulatory reporting requirements or as a matter of market practice for the trade processing in the

United States of:

    i.     All marketable U.S. Treasuries;

    ii.    All exchange-traded equity and debt securities (whether registered with the SEC or exempt under Rule 144A or Regulation S) and ETFs;

    iii.    All marketable securities of governmental agencies;

    iv.    Corporate bonds that are registered with the SEC or exempt under Rule 144A;

    v.    Corporate and asset-backed commercial paper; and

    vi.    Virtually all municipal notes and bonds.

48.    Based upon my experience, these six categories represent the substantial majority of

the overall securities publicly traded in the United States.[51]

---

[49] https://www.cusip.com/identifiers.html#/ISIN.
[50] Ibid.
[51] For perspective, some measures of the size of the markets are useful. In terms of trading volume, far and away the two largest markets are the U.S. Treasuries market and the publicly traded stock markets. SIFMA estimates that total trading volume in U.S. Treasuries for 2024 was approximately $228.79 trillion (average daily volume (ADV) of trades of $907.92 billion; 252 trading days). For publicly traded equites, the volume in 2024 was approximately $153.15 trillion (ADV $607.72 billion), with 3.06 trillion shares traded (ADV 12.16 billion shares). Trades in mortgage-backed securities (largely issued by federal agencies) in 2024 were approximately $74.23 trillion (ADV $294.56 billion). Total corporate bond trades in 2024 were approximately $13.07 trillion (ADV $51.90 billion). Municipal bond trades in 2024 totaled approximately $3.36 trillion (ADV $13.34 billion). The volume of commercial paper outstanding at the end of 2024 was approximately $1.17 trillion Sources: SIFMA, 2025 Capital Markets Fact Book, pp. 56, 57, 60 & 61 (July 2025); author calculations: https://www.sifma.org/resources/research/statistics/fact-book/.    Commercial paper outstanding: SIFMA data set: https://www.sifma.org/resources/archive/research/statistics/.
Certain over-the-counter securities handled entirely by a single broker-dealer, and securities that are not DTC-eligible, technically might not be required to obtain a CUSIP Number; however, even in such situations a CUSIP Number is

Arthur M. Miller Report                                          Confidential

49.    My conclusion is based upon several factors:

    i.    <u>Mandated Use of CUSIP Numbers in Trade Processing</u>. DTC has required the use of CUSIP Numbers (or, in certain instances, CINS) for any trades that it processes. Further, with the limited exceptions outlined below,[52] the MSRB has required their use for the entire municipal securities bond market. CUSIP Numbers (and only CUSIP Numbers) are used by the U.S. Treasury as part of the auctions of its marketable securities and its STRIPS program.

    ii.    <u>Other Required Uses</u>. Beyond trade processing, the rules of FINRA and the MSRB governing trade reporting and customer confirmations by broker-dealers, as well as the reporting requirements of the SEC by investment managers of portfolio holdings, effectively require that a CUSIP be obtained for any "CUSIP-eligible" publicly traded security and, as a result, any trade execution with respect to the security would utilize its CUSIP Number.

    iii.    <u>History and Ubiquity of CUSIP Use</u>. As described above, over the course of its 57-year history, CUSIP Numbers have become part of the *lingua franca* for the electronic processing of publicly traded securities. Because of this long-standing use of CUSIPs, currently any platform that processes trades in public securities (whether it be on the investor side, the broker-dealer side, exchanges, or clearing entities) must be able to process trades on the basis of CUSIP Numbers.

    iv.    <u>Historical Lack of Alternative Identifiers</u>. The use of CUSIP Numbers was cemented over these decades by the fact that CUSIP Numbers were the sole securities identifiers in common use across all the major asset classes. For example, the use of ticker symbols (or some expanded version of that system of identification) was effectively abandoned when the exchanges, by the 1970s, agreed to the use of CUSIP Numbers as the sole means of securities identification of exchange-traded securities. I understand that the FIGI model was not created by Bloomberg until 2009 and was not made available on a non-proprietary basis until 2014, well after CUSIP Numbers had become the market standard identifier.

50.    As described in detail below,[53] the extensive use of CUSIP numbers to identify publicly

traded securities is reflected in the specific references to CUSIP Numbers in the rules and regulations

---

often obtained to allow for the securities to be more freely traded. According to a representative of FINRA, the "vast majority" of TRACE-eligible (fixed income) securities in fact have CUSIP Numbers assigned to them. See Deposition Testimony of Pers Ola Persson of FINRA, pp. 27-28 (March 11, 2025).

[52] See ¶ 72 infra.

[53] See ¶¶ 59-76 infra.

Arthur M. Miller Report                                    Confidential

that govern securities transactions and their ownership. Almost all of the SEC, FINRA, and MSRB rules and regulations that I am aware of that call for the use of a specific securities identifier have specified that CUSIP Numbers be used or provided if available. While they have allowed for or, in some instances, required other securities identifiers *in addition to* (but, with one exception, not as a substitute for) CUSIP Numbers, the use of CUSIP Numbers permeates the rules and regulations of these entities. These rules cover a wide range of issues: the transaction processes and operations themselves; information reporting by issuers, regulated investors, and broker-dealers; and required books and records, to name a few. Set forth below are summaries of the rules and regulations of the major operational and regulatory entities that reference CUSIP Numbers.[54] In instances in which another identifier is permitted (either by name or generically), I generally have noted this fact and whether it may be used in lieu of or in addition to CUSIP Numbers.[55]

## A.    Depository Trust & Clearing Corporation ("DTCC")

51.    The SEC website lists six "active" clearing agencies registered with the SEC.[56] Of these, three are subsidiaries of DTCC: (i) the DTC, which acts as the central depository for securities and provides for the securities settlement and related services to its participants; (ii) the National Securities Clearing Corporation ("NSCC"), which provides central counterparty clearing and settlement for trades involving equities, corporate and municipal debt, exchange-traded funds, and unit investment trusts (the financial instruments held by DTC), and (iii) the Fixed Income Clearing Corporation ("FICC"), which provides central counterparty services for the U.S. government and

---

[54] While I have listed the references to CUSIP that I am aware of, I do not represent that this is a complete list. Moreover, I have not attempted to capture the nuances of the application of, and the exceptions thereto, for each rule and form; the following intended as a summary only, showing how firms need CUSIP Numbers to operate.

[55] I have not tried to identify all instances in which identifiers other than CUSIP Numbers appear, only in those situations in which they are mentioned in addition to CUSIP Numbers. I do not represent that this is a complete list.

[56] https://www.sec.gov/about/divisions-offices/division-trading-markets/clearing-agencies. I understand the SEC's term "active" to mean agencies that are currently engaged in the business of clearing securities, securities options, or credit default swaps.

Arthur M. Miller Report                                                Confidential

mortgage-backed securities markets, e.g., automated real-time trade comparison, netting, settlement, trade confirmation, clearing, risk management and electronic pool notification.[57, 58]

52.    The three DTCC subsidiaries (which are often collectively referred to as "DTC") process, clear, and settle every securities trade for transactions between "DTC participants": securities firms, broker-dealers commercial banks, trust companies, and other financial industry participants in the securities markets.[59] Customers and clients of DTC participants that trade securities also will indirectly require the services of DTC, in that securities trades for (or by) the customer that are executed with other broker-dealers for the customer's account will require the transfer via DTC of securities from (or to) the transacting broker-dealer to (or from) the customer's broker-dealer.

## B.    DTC (THE DTCC SUBSIDIARY)

53.    DTC (the subsidiary) provides servicing for a wide range of securities types:

A wide range of security types may be made eligible for DTC's services in accordance with the DTC Rules. These include, but are not limited to, equities, warrants, rights, corporate debt and notes, municipal bonds, government securities, asset-backed securities, collateralized mortgage obligations, equity and debt derivatives, variable-rate demand obligations, money market instruments (e.g., commercial paper, bankers' acceptances, institutional certificates of deposit, short-term bank notes, discount notes and certain medium-term notes), American/Global Depository Receipts (or "ADR/GDR"), shares of closed end funds, retail certificates of deposits, unit investment trust certificates ("UIT"), shares of exchange traded funds and insured custodial receipts.[60]

54.    DTC's Operational Arrangements Manual requires an issuer or its agent (such as the underwriter of an issue of securities) to obtain a CUSIP Number (or in the case of certain foreign securities, a CINS) for each security to be included in DTC's book-entry system.[61] Given DTC's

---

[57] DTTC Q1 2025 Financial Statements, p. 6 (p. 8 of PDF): https://www.dtcc.com/-/media/Files/Downloads/legal/financials/2025/DTCC-Financial-Statements-Q1-2025.pdf.
[58] The other three listed clearing agencies are: (i) The Options Clearing Corporation, which clears and settles options with specified characteristics, see https://www.theocc.com/clearance-and-settlement/clearing; (ii) ICE Clear Credit LLC, which primarily clears and settles credit default swaps ("CDSs"); and (iii) LCH SA, which also primarily clears and settles CDSs.
[59] Lists of the DTCC Participants can be found at: https://www.dtcc.com/client-center/dtc-directories.
[60] "Examples of Types of Eligible Securities," DTC Operational Arrangements, p. 9 (p. 12 of PDF).
[61] DTC Operational Arrangements, p. 24 (p. 27 of PDF). See also DTC ClaimConnect Service Guide, p. 9 (Dec. 5, 2024) (CUSIP Number required for submitting a claim for over- or under-payment of a cash entitlement): https://www.dtcc.com/-/media/Files/Downloads/legal/service-guides/ClaimConnect.pdf; DTC Custody Services Guide (March 28, 2023) (multiple references to CUSIP Numbers required and used for custody services): https://www.dtcc.com/-

Arthur M. Miller Report                                                                    Confidential

position as the only SEC-recognized clearing and settlement platform for stocks, corporate bonds, and municipal bonds, and its extensive role in clearing Treasury trades,[62] its operational rules create a *de facto* requirement for the use of CUSIP Numbers for publicly traded securities of these types.

55.      As a clearing agency regulated by the SEC, all of DTC's rules and procedures are subject to review and approval by the SEC.  In addition, DTC's schedule of fees charged for various services (such as providing shareholder lists to issuers) are subject to the same review and approval process.[63]

**C.    NSCC**

56.      As noted above, the NSCC provides central counterparty clearing and settlement to trades process by DTC. DTC's requirement to use CUSIP Numbers is reflected in the Uniform Practice Codes of FINRA, the MSRB, and the exchanges such as the NASD and NYSE Group (discussed below). As such, the trade forms submitted by DTC participants to the NSCC for comparison, clearing, and settlement are required to include CUSIP Numbers.

**D.    FICC**

57.      As noted above, the FICC subsidiary of DTCC clears and settles and serves as a central counterparty for U.S. government and mortgage-backed securities. Government securities (i.e., U.S. Treasuries and securities issued by U.S. government agencies) are handled by FICC's Government Securities Division. Mortgage-backed securities are handled by its Mortgage-Backed Securities Division. All direct participants of the respective divisions of FICC must clear secondary market trades with other direct participants through FICC's facilities.[64]

---

/media/Files/Downloads/legal/service-guides/Custody.pdf; DTC Settlement Service Guide (July 14, 2025) (multiple references to CUSIP Numbers required and used for settlement processing): https://www.dtcc.com/-/media/Files/Downloads/legal/service-guides/Settlement.pdf .

[62] DTCC states that in 2024 daily activity in its Government Securities Division (see ¶ 57 infra) set a new record, surpassing $10 trillion. DTCC, 2024 Annual Report, p. 17: https://www.dtcc.com/annuals/2024/files/DTCC-Annual-Report-2024-Print.pdf.

[63] See Section 17A generally & Section 17A(b)(3) specifically of the Securities Exchange Act of 1934, 15 USC §§ 78q-1, 78q-1(b)(3) (Commission must determine that the rules of a clearing agency meet specified statutory requirements).

[64] SEC's Standards for Clearing Agencies: "When the covered clearing agency provides central counterparty services for transactions in U.S. Treasury securities . . . [its standards for participation must r]equire that any direct participant of such covered clearing agency submit for clearance and settlement all of the eligible secondary market transactions to which such direct participant is a counterparty." 17 CFR § 240.17ad-22(e)(18)(iv)(A): https://www.ecfr.gov/current/title-17/chapter-II/part-240/subpart-A/subject-group-ECFR1d63caaeb4b148e/section-240.17ad-22.    See   also   FICC,

Arthur M. Miller Report                                    Confidential

58.    The Rulebook for FICC's Government Securities Division requires a CUSIP Number as part of the "required match data" for purposes of all trade comparisons.[65] Thus, all securities serviced by FICC must have a CUSIP Number.

**E.    Securities & Exchange Commission**

59.    <u>SEC Rules & Regulations</u>. The SEC does not operate any trade processing systems. Rather, the SEC refers to CUSIP Numbers in its forms and regulations, generally in the context of disclosure – to the SEC, the investing public, and the financial markets as a whole – of issuance, trading, and portfolio holdings of securities by issuers, mutual funds, broker-dealers, and investment managers. References to CUSIP Numbers permeate the SEC's regulations, their use in filings with the SEC and disclosure to the public being specified (often with the caveat "if available") for a wide range of disclosure and operational rules. Companies that are subject to these regulations require CUSIPs to conduct their businesses. Following is a brief summary of many of the SEC regulations and forms that reference CUSIP Numbers.

60.    <u>Disclosure of Ownership of Securities/Composition of Portfolios</u>

i.    <u>Form 13F</u>. Large institutional investment managers are required to file Form 13F with the SEC on a quarterly basis, listing their holdings of certain equity "13(f)" securities (generally, equities that can be traded or quoted on a recognized exchange such as the New York Stock Exchange, or on a recognized automated quote system). The Form Table submitted by investment managers requires inclusion of the CUSIP Number of the class of equities being reported; the instructions for the Form also allow a manager to "optionally" provide the security's FIGI as well.[66]

ii.    <u>Registered Investment Companies</u>. Mutual funds (other than money market funds), exchange-traded funds, closed end funds, and certain other entities are required to file with the SEC, on a monthly basis, Form N-PORT, providing information about the securities that are held, including the securities' CUSIP

---

Government Securities Division Rulebook ("FICC GSD Rulebook"), Rule 2A § 7(e) & Rule 18 § 2, pp. 87 & 213 (June 5, 2025): https://www.dtcc.com/~/media/Files/Downloads/legal/rules/ficc_gov_rules.pdf; FICC, Mortgage-Backed Securities Division, Clearing Rules, ("FICC MBS Rules") Rule 2A § 5(e), p. 49 (June 5, 2025): https://www.dtcc.com/~/media/Files/Downloads/legal/rules/ficc_mbsd_rules.pdf.

[65] FICC GSD Rulebook, Schedule of Required Match Data, Item 2, p. 297.

[66] 17 CFR §§ 240.13f-1(a)(1) & 249.325 Form 13F; SEC Form 13F General Instructions, Part 11.b(3)(iii) & Form 13F Information Table, pp. 7, 14: http://www.sec.gov/about/forms/form13f.pdf. Form 13F was amended in 2022 to include FIGIs pursuant to SEC Release No. 34-95148 (June 23, 2022), with an effective date of January 3, 2023: https://www.sec.gov/files/rules/final/2022/34-95148.pdf.

Arthur M. Miller Report                                      Confidential

Numbers. The instructions for Form N-PORT require that the fund provide, for each security, the CUSIP Number and at least one of the following other identifiers: (i) ISIN, (ii) ticker (if an ISIN is not available), or (iii) other unique identifier (if ticker and ISIN are not available). A similar disclosure must be made for any convertible securities or derivatives held, if the convertible security or derivative references a security with a CUSIP Number or other unique identifier.[67]

    iii.    <u>Money Market Funds</u> are required to File Form N-MFP with the SEC on a monthly basis, listing the securities held by the fund(s) together with their CUSIP Numbers (if any) and (if available) at least one of the following other identifiers: (i) the ISIN of the security; (ii) the CIK (defined below) of the issuer; (iii) the RSSD ID[68] of the issuer; or (iv) other unique identifier.[69] Money market funds are also required to disclose on their websites, on at least a semiannual basis, the securities held by the fund(s), together with their CUSIP Numbers (if any).[70]

    iv.    <u>Actively Managed Exchange-Traded Funds</u> must disclose on their websites, on a daily basis, for each portfolio holding, its "CUSIP or other identifier . . . ."[71]

    v.    <u>Schedules 13D & 13G</u>. A person or entity acquiring more than 5% of a class of equity securities of an issuer generally is required to file Form 13D (or, in some cases, Form 13G) with the SEC. The schedules require inclusion of the CUSIP Number of the class of equities being reported.[72]

61.    <u>Transaction Reporting & Confirmation</u>

    i.    <u>"Going Private" Transactions</u> must be reported to the SEC under Rule 13E-3 on Schedule 13E-3, including the CUSIP Number of the securities affected.[73] Canadian issuers that "self-tender" for their securities must file Schedule 13E-4F, which requires inclusion of the CUSIP Number.[74]

    ii.    <u>Tender Offers</u> must be reported to the SEC under Rules 13E-4 and Regulation14D on Schedule TO, including the CUSIP Number of the securities affected.[75] Certain tender offer communications must include the CUSIP

---

[67] 17 CFR §§ 270-30b1-9 & 274.150 Form N-PORT; SEC Form N-PORT, Items C.1.d, C.9.f.iii & c.11.c.iii, pp. 12, 14 & 16: https://www.sec.gov/files/formn-port.pdf.
[68] RSSD ID: "Research, Statistics, Supervision, and Regulation, and Discount and Credit Database ID"; a unique ID issued by the Federal Reserve System to financial institutions.
[69] 17 CFR §§ 270.30b1-7 & 274.201 Form N-MFP; SEC Form N-MFP, Items C.3 & C.5; p. 9: https://www.sec.gov/files/formn-mfp.pdf.
[70] 17 CFR § 270.2a-7(h)(10)(i)(B)(3).
[71] 17 CFR § 270.6c-11(c)(1)(i)(B).
[72] 17 CFR § 240.13d-101 &-102.
[73] 17 CFR §§ 240.13e-3(d)(1) & 240.100 Schedule 13E-3.
[74] 17 CFR §§ 240.13e-4(g)(1) & 240.102 Schedule 13E-4F.
[75] 17 CFR §§ 240.13e-4(c)(2); 240.14d-3(a)(1); 240.14d-100 Schedule TO.

Arthur M. Miller Report                                                    Confidential

Number on Schedule 14D-1 (Schedules 14D-1F & 14D-9F for Canadian issuers).[76]

    iii.    <u>Tender Offer/Rights Offerings</u>.  Certain tender offers and rights offering that are exempt from SEC rules must file Form CB with the SEC, listing the securities subject to the offering with CUSIP Numbers "if applicable."[77]

    iv.    <u>Short Positions</u>.  Certain institutional investment managers are required to report online their "short" positions in securities to the SEC on Form SHO.  The Information Tables for the Form require the CUSIP Number <u>and</u> FIGI (if available) of any positions reported.[78]

    62.    <u>Rating Agencies</u> are required to maintain records of the current and historical ratings of securities or obligors  "identified by the name of the rated security or obligor and, if applicable, the CUSIP of the rated security or the Central Index Key (CIK) number of the rated obligor."[79] Moreover, rating agencies must make available to the public all ratings changes for securities previously rated, specifically referencing "[t]he CUSIP of the security or money market instrument . . . ."[80]

    63.    <u>Custody & Control; Books & Records</u>

    i.    <u>Registered Investment Companies</u> are required to file with the SEC an annual report on Form N-CEN, detailing additional information on certain positions and transactions, identified by the ticker and CUSIP Number or (in the case of certain "support securities." "at least two identifiers, if available (*e.g.*, CIK, CUSIP, ISIN, LEI)."[81]

    ii.    <u>Securities Lending</u>. Pursuant to SEC'S Rule 10c-1, broker-dealers are required to report to a "registered national securities agency" certain information regarding securities lending transactions, including "[t]he ticker symbol, International Securities Identification Number ("ISIN"), Committee on Uniform Securities Identification Procedures ("CUSIP"), or Financial Instrument Global Identifier ("FIGI") of the security, or other security identifier."[82]

---

[76] 17 CFR §§ 240.14d-9; 240.14d-101 Schedule 14D-9; 240.14-1(b); 240.14d-102 Schedule 14D-1F; 240.14d-103 Schedule 14D-9F.

[77] 17 CFR §§ 230.801(a)(4) & 239.800 Form CB; SEC Form CB, p. 1: https://www.sec.gov/files/formcb.pdf.

[78] 17 CFR §§ 240.13f-2 & 249.332 Form SHO.  The Information Tables are set forth in SEC Release No. 34-98738, pp. 314 & 315 (Oct. 13, 2023), which modified Form SHO to include the requirement to include the provision of FIGIs: https://www.sec.gov/files/rules/final/2023/34-98738.pdf.

[79] 17 CFR § 240.17g-2(a)(8).

[80] 17 CFR § 240.17g-7(b)(2)(iv)(C).

[81] 17 CFR §§ 270.30a-1 & 274.101 Form N-CEN; SEC Form N-CEN, Items F.17.a, F.17.b & G.1.a.ii, pp. 36-38: https://www.sec.gov/files/formn-cen.pdf.

[82] 17 CFR § 240.10c-1a(c)(2). This rule was finalized by the SEC in 2023 in SEC Release No. 34-98737 (Oct. 13, 2023): https://www.sec.gov/files/rules/final/2023/34-98737.pdf.

Arthur M. Miller Report                                                   Confidential

    iii.    <u>Repos</u>. Customer confirmations concerning repurchase agreements between broker-dealers and customers generally must provide the CUSIP Number or mortgage-backed security pool number "as appropriate" of the security that is the subject of the agreement.[83]

    iv.    <u>Lost or Stolen Securities</u>. Various "reporting institutions" must file Form X-17F-1A with the SEC with respect to missing, lost, counterfeit or stolen securities. The CUSIP Numbers of the securities must be provided.[84]

    v.    <u>Transfer Agents</u> that cease operations are required to send notice of such to each registered depository, along with a list of the "issue or issues handled and their CUSIP" Numbers of the issue or issues handled.[85] In addition, transfer agents must have written control procedures for dealing with the physical handling, cancellation, and destruction of securities certificates, including records "indexed and retrievable by CUSIP" Number.[86]

    vi.    <u>Investment Advisors</u> are required to report to their chief compliance officer any personal transactions and holdings (direct or indirect) in securities, including their ticker or CUSIP Number.[87]

    vii.    "<u>Aggregating entities</u>" that are responsible for reporting large positions of related entities in Treasuries must report, and preserve records of, transactions by CUSIP number.[88]

    viii.    <u>Government Securities Brokers or Dealers</u> that hold in custody securities that are subject to repurchase agreements ("repos") generally must identify on the confirmation the security subject to the agreement, together with its CUSIP Number "or mortgage-backed security pool number, as appropriate . . . .".[89]

    ix.    <u>Reports of Proxy Voting Records</u>. Certain investment management companies are required to annually report their proxy voting records on the SEC's Form N-PX. The form requires that the reporting entity provide the CUSIP Number (or, if a CUSIP Number is not available, the ISIN) of any security for which a proxy was voted. The reporting entity has the option to report the global share class FIGI for the security as well. [90]

---

[83] 17 CFR § 240.15c3-3(b)(4)(iv).
[84] 17 CFR § 240.17f-1(c)(6)(xi); 17 CFR 249.1200 Form X-17F-1A; SEC Form X-17F-1A, Item 9: https://www.sec.gov/files/formx-17f-1a.pdf.
[85] 17 CFR § 240.17Ad-16(a).
[86] 17 CFR § 240.17Ad-19(c)(3)-(5).
[87] 17 CFR § 275.204A-1(b)(1)(i)(A) & -1(b)(2)(i)(A)
[88] 17 CFR § 420.3(f) & 4(c)(1).
[89] 17 CFR § 403.5(d)(2)(i).
[90] 17 CFR §§ 240.14Ad-1(a) & 270.30b1-4; 249.326 Form N-PX & 274.129 Form N-PX; SEC Form N-PX, Items 1(b) (CUSIP Number) & 1(d) (FIGI), pp. 6 , 14: https://www.sec.gov/files/formnpx.pdf. Form NPX was amended in 2022 to allow for the inclusion of FIGIs: SEC Release No. 33-11131 (Nov. 2, 2022): https://www.sec.gov/files/rules/final/2022/33-11131.pdf. See ¶ 96 infra for a description of a global share class FIGI.

Arthur M. Miller Report                                           Confidential

      x.    <u>Form PF</u>. Certain investment advisors to private funds, and certain commodity pool operators and commodity trading advisors, are required to file Form PF, describing their portfolio, including providing any exposure to "reference assets," providing their "CUSIP (if any), and at least one of the following other identifiers: (i) ISIN; (ii) Ticker (if ISIN is not available); (iii) Other unique identifier (if ticker and ISIN are not available)." The listing of the funds' portfolio holdings of securities must include the CUSIP Number of each security, the issuer's LEI, and at least one of the security's ISIN, CIK, or other identifier. Separately, the Form provides for the optional reporting of a FIGI for reference securities.[91]

64.    <u>Other SEC Forms</u>. A number of other miscellaneous SEC rules and forms refer to CUSIP Numbers; these rules and forms are cited in Appendix E.

65.    <u>References to FIGIs</u>. As described above, I am aware of only a few instances in the SEC's Rules and forms in which FIGIs are specifically cited as an acceptable identifier. In the first instance, Form SHO mandates the provision of the both the CUSIP Number and the FIGI (if available). In the second instance, concerning reports of securities lending transactions, the language of the regulation appears to be neutral as to the use of CUSIP Numbers, ISINs, or FIGIs. The third through fifth, in Forms 13F, NPX, and Form PF, mandate the provision of a CUSIP Number (if available), but allows *in addition* the use of a FIGI.

66.    <u>Other References in the Code of Federal Regulations</u>. In addition to the SEC's rules, there are numerous references to CUSIPs in other federal agency rules, further indicative of the extent to which CUSIP Numbers are embedded in the United States regulatory system as the primary identifier of securities. A list of these references is in Appendix E.

**F.    Financial Industry Regulatory Authority ("FINRA") Rules**

67.    FINRA is the regulatory body charged with the development and enforcement of rules and regulations governing broker-dealers in the United States. It was created in 2007 through a merger of the rulemaking and enforcement divisions of the New York Stock Exchange and National Association of Securities Dealers. Many of its rules mirror those of its predecessor organizations. As

---

[91] 17 CFR §§ 275.204(b)-1(a) & 279.9 Form PF; SEC Form PF, Items 40(a)(vii) & 65(c) & (e) (CUSIP Numbers), 40(a)(xi) (FIGI), pp. 40 & 58-59: https://www.sec.gov/files/formpf.pdf. The SEC amended Form PF in 2024 to allow for the provision of FIGIs: SEC Release No. IA-6546 (Feb. 8, 2024): https://www.sec.gov/files/rules/final/2024/ia-6546.pdf.

Arthur M. Miller Report                                                    Confidential

a self-regulatory organization ("SRO") subject to the SEC's approval, FINRA's rules and regulations are subject to review and approval by the SEC before becoming effective. FINRA's rules address all broker-dealer activity generally and particularly with respect to all securities other than municipal securities (which fall under the purview of the MSRB[92]). In addition to rulemaking, FINRA has the power to impose fines and suspend or bar broker-dealer firms and individuals for violations of its rules. FINRA incorporates CUSIP Numbers in a range of its rules, including trade reporting and trade processing by broker-dealers, and broker-dealer books and records. Broker-dealers must utilize CUSIP Numbers (if the security has one) in order to comply with the following FINRA regulations.

68.    Rule 6530: Reports of Covered Securities Loan Information. FINRA requires that broker-dealers provide information on covered securities loans via its Securities Loan and Transparency Engine. Rule 6530(a)(2)(B) requires that the dealer provide the "[s]ecurity symbol, CUSIP, ISIN, or FIGI, or other security identifier." I understand that this Rule will be effective on January 2, 2026; it is intended to mirror the SEC's Rule 10c-1, described above.[93] This is the only specific reference to FIGIs by name that I am aware of in FINRA's Rule Book

69.    TRACE. FINRA operates and maintains the Trade Reporting and Compliance Engine ("TRACE"), into which over-the-counter transactions in corporate bonds and other fixed income instruments (other than municipal bonds) are reported by broker-dealers.[94] CUSIP Numbers are an integral part of the TRACE rules.  Specifically:

     i.     Rule 6730 Transaction Reporting. Rule 6730(c)(1) requires that each trade report contain the "CUSIP number [of the security] or if a CUSIP number is not available at the Time of Execution, a similar numeric identifier (e.g., a mortgage pool number) or a FINRA symbol."[95]

---

[92] See ¶ 72 infra.
[93] https://www.finra.org/rules-guidance/rulebooks/finra-rules/6530; see ¶ 63.ii supra. FINRA's Rule 6530 was approved by the SEC earlier this year pursuant to SEC Release No. 34-102093 (Jan. 2, 2025): https://www.sec.gov/files/rules/sro/finra/2025/34-102093.pdf.
[94] https://www.finra.org/filing-reporting/trace
[95] https://www.finra.org/rules-guidance/rulebooks/finra-rules/6730

Arthur M. Miller Report                                           Confidential

     ii.    <u>Rule 6760 Obligation to Provide Notice</u>. Rule 6760(b) requires that the managing underwriter of any new issue of TRACE-Eligible Securities provide FINRA "the CUSIP number or if a CUSIP number is not available, a similar numeric identifier (e.g., a mortgage pool number)."[96]

     iii.    <u>Rule 7730 TRACE Data Fees</u>. A schedule of fees charges for historic TRACE data, some of which depend upon the number of "CUSIPs" (i.e., separate securities) accessed.[97]

70.    The rules governing the reporting of over-the-counter trades to FINRA's TRACE system thus do not require a security to have a CUSIP Number; however, if the security does have a CUSIP Number, it must be provided as part of the trade report.[98] It is my understanding that FINRA assigns a FINRA Symbol to every security reported to its systems; it does so even though the "vast majority" of such securities in fact have CUSIP Numbers assigned to them.[99]

71.    <u>Settlement, Books & Records, etc</u>. References to CUSIP Numbers are also incorporated into other FINRA rules, such as:

     i.    <u>Rule 11100 Scope of Uniform Practice Code</u>. Rule 11100(d) requires that the CUSIP Number "must be used on the Uniform Transfer Instruction Form, Uniform Delivery Ticket and the Uniform Comparison or Confirmation" between broker-dealers.[100]

     ii.    <u>Rule 11210 Confirmations Sent by Each Party</u>. FINRA's Uniform Comparison Form (Supplementary Material .01) for trades between two broker-dealers includes a section for the CUSIP Number.[101]

     iii.    <u>Rule 11310 Book-Entry Settlement</u>. Rule 11310(d)(2) refers to requirements for book-entry settlement at a securities depository in addition to obtaining a CUSIP Number.[102]

---

[96] https://www.finra.org/rules-guidance/rulebooks/finra-rules/6760
[97] https://www.finra.org/rules-guidance/rulebooks/finra-rules/7730
[98] See FINRA, Frequently Asked Questions (FAQ) about the Trade Reporting and Compliance Engine (TRACE)" Q. 3.1.41: https://www.finra.org/filing-reporting/trace/faq
[99] See Deposition Testimony of Pers Ola Persson of FINRA, pp. 27-28 (March 11, 2025). Mr. Persson cites a "church bond" as an example of a security that might not have a CUSIP Number. Ibid pp.171-172. "Church bonds," bonds issued by religious organizations for charitable or religious purposes, are exempt from registration pursuant to Section 3(a)(4) of the Securities Act of 1933, 15 USC § 77c(a)(4).
[100] https://www.finra.org/rules-guidance/rulebooks/finra-rules/11100
[101] https://www.finra.org/rules-guidance/rulebooks/finra-rules/11210
[102] https://www.finra.org/rules-guidance/rulebooks/finra-rules/11310

Arthur M. Miller Report                                              Confidential

      iv.    <u>Rule 11360 Units of Delivery</u>. FINRA's Uniform Delivery Ticket Form (Supplementary Material .01) provides a field for the CUSIP Number of the securities delivered.[103]

      v.    <u>Rule 11550 Delivery of Registered Securities</u>. FINRA's Uniform Transfer Instruction Form (Supplementary Material .01) provides a field for the CUSIP Number of the securities delivered or transferred.[104]

      vi.    <u>Rule 11840 Rights and Warrants</u>. FINRA's Rule 11840(e) and Supplementary Material .01, on the handling of expired stock and bond rights and warrants, provide a "Sample Letter of Indemnity" in which the CUSIP Number of the rights and warrants is to be provided.[105]

      vii.    <u>Rule 11870 Customer Account Transfers</u>. FINRA's Rule 11870 governs the handling of customer account transfers between broker-dealers; Rule 11870(d)(7) requires that the "carrying member" (the broker-dealer from whom the account is being transferred) provide the receiving member certain data with respect to any municipal securities held for which a CUSIP has not been assigned.[106]

## G.    Municipal Securities Rulemaking Board

72.    The MSRB is the regulatory body governing the sales, trading and trade processing of publicly traded municipal debt by brokers, dealers and underwriters, and municipal departments of commercial banks, the overwhelming majority of which are publicly traded.[107] Banks and broker-dealers that deal in publicly traded municipal debt must comply with the regulations listed below that require CUSIP Numbers. With limited exceptions, MSRB's Rule G-34(a)(i) requires that the underwriter (or, in certain cases, the advisor to the issuer) of any new issue of municipal securities apply for and obtain a CUSIP Number for any new issue of municipal securities in time for settlement. Rule G-34(a)(ii)(A) also requires that the underwriter "apply to a securities depository registered with the Securities and Exchange Commission" (i.e., DTC) to make the security eligible for its services if

---

[103] https://www.finra.org/rules-guidance/rulebooks/finra-rules/11360
[104] https://www.finra.org/rules-guidance/rulebooks/finra-rules/11550
[105] https://www.finra.org/rules-guidance/rulebooks/finra-rules/11840
[106] https://www.finra.org/rules-guidance/rulebooks/finra-rules/11870
[107] New issue volume in municipal securities in 2024 totaled $513.6 billion; of that, only $17.8 billion was privately placed. From 2015 to 2024, private placements have averaged 6.25% of total issuance volume. Total trade volume for 2024 was 14.47 million trades, with a par value of $3.315 trillion, of which 5.50 million trades with a par value of $581.52 billion were interdealer trades. Source: https://www.sifma.org/resources/research/statistics/us-municipal-bonds-statistics/ Virtually all new issues and interdealer trades were executed via DTC's services.

Arthur M. Miller Report                                                    Confidential

the security meets the eligibility requirements of the depository.[108] By virtue of DTC's operational rules MSRB Rule G-34 in effect creates a double mandate of the use of CUSIP Numbers.

73.     <u>NIIDS and Form G-32</u>. As part of the same process, MSRB Rule-34(a)(ii)(C) requires underwriters to submit in electronic format up to approximately 110 data elements relating to each security to DTCC's "New Issue Information Dissemination System" and to make such data elements available to all DTC participants at or prior to settlement.[109] In addition, under Rule G-32(b)(i)(A),[110] data elements for each security with a CUSIP Number must be submitted directly to the MSRB on Form G-32, of which 12 are in addition to the data elements contained within the NIIDS data set.[111]

74.     <u>Real-Time Transaction Reporting System ("RTRS") and Short-Term Obligation Rate Transparency ("SHORT") System</u>. With certain exceptions, MSRB Rule G-14(b) requires broker-dealers and underwriters to report any purchase or sale of municipal securities (regardless of whether they are cleared and settled through DTC) to the MSRB on Form IF-1.  The reported trades must include the CUSIP Number of the security traded. Rule G-14(b)(v)(A) provides an exception if the bond does not have a CUSIP number.[112] In a similar manner, MSRB's (SHORT) System (a disclosure reporting system) requires that documents filed include the CUSIP Numbers of the related securities.[113]

75.     The MSRB's mandated use of CUSIP Numbers flows through a range of other MSRB rules, including:

---

[108] MSRB Rule Book pp. 294-295. In practical terms, virtually all publicly traded municipal securities meet DTC's eligibility requirements and virtually all such securities are made DTC-eligible. There is a narrow exception to the requirements to obtain a CUSIP Number and to make the security DTC-eligible for municipal securities purchased by commercial banks and state bond banks at issuance if the purchaser intends to hold the security to maturity (and thus the bond is not expected to be traded). MSRB Rule G-34(a)(i)(F), G-34(a)(ii)(A)(3). Ibid. There is also an exception to the requirement to make a security DTC-eligible (but NOT from obtaining a CUSIP Number) if the security has a maturity date of 60 days or less; MSRB Rule G-34(a)(ii)(A)(2), MSRB Rule Book p. 295.

[109] MSRB Rule Book pp. 295-296. See also "Underwriting Implementation of the New Issue Information Dissemination System (NIIDS) for Municipal Securities", Attachments I & II, pp. 4-14 of PDF: https://www.dtcc.com/-/media/Files/pdf/2008/4/9/3349-08.pdf.

[110] MSRB Rule Book pp. 273-275.

[111] MSRB Form G-32: https://www.msrb.org/MSRB-Form-G-32.

[112] MSRB Rule Book p. 92. See also MSRB Rule IF-1, MSRB Rule Book p. 408; MSRB, "RTRS Web Users Manual," p. 5 (Nov. 2022): https://www.msrb.org/sites/default/files/RTRSWeb-Users-Manual.pdf.

[113] MSRB, "Short-term Obligation Rate Transparency (SHORT) System User Interface Submission Manual", p. 7 (Nov. 2022): https://www.msrb.org/sites/default/files/SHORT-System-Web-User-Interface-Manual.pdf

Arthur M. Miller Report                                                    Confidential

      i.     <u>Rule G-8 Books and Records</u>. Rule G-8(a)(xv)(A), -8(a)(xxii)(A)(1) and -8(xxii)(B)(1) require broker-dealers to maintain records of securities underwritten, as well as variable rate and auction rate securities remarketed, including the CUSIP Numbers.[114]

      ii.    <u>Rule G-11 Primary Offering Practices</u>. Rule G-11(k)(iii) requires a co-manager underwriter to tell the senior managing underwriter/syndicate leader if it receives more than one order from a retail customer relating to a particular CUSIP Number.[115]

      iii.   <u>Rule G-12 Uniform Practices</u>. Rule G-12(c)(v)(F) requires confirmations of interdealer trades to include CUSIP numbers, if assigned.[116]

      iv.   <u>Rule G-15 Customer Confirmation, Clearance, Settlement and other Uniform Practice Requirements</u>. Rule G-15(a)(i)(B)(2) requires all customer trade confirmations to include the CUSIP Numbers if assigned.[117]

      v.    <u>Rule G-26 Customer Account Transfers</u>. Rule G-36(e)(ii) requires the transferring broker-dealer provide additional information for transfers of securities which don't have a CUSIP Number.[118]

76.    There are no specific references to FIGIs in the MSRB's current Rule Book.

## H.   U.S. Treasury

77.    The Bureau of the Fiscal Service of the U.S. Treasury (the section of the U.S. Treasury responsible for managing the public debt of the federal government) obtains CUSIP Numbers for all new issues of marketable U.S. Treasury securities.[119, 120]

78.    The U.S. Treasury provides three systems by which investors can own marketable U.S. Treasuries: (i) the Treasury/Reserve Automated Debt Entry System ("TRADES"), described as the "commercial book-entry system . . . in which Treasury securities are held in a tiered system through securities intermediaries such as financial institutions or brokerage firms [i.e., the DTCC systems

---

[114] MSRB Rule Book pp. 32, 35.
[115] MSRB Rule Book p. 59.
[116] MSRB Rule Book p.63.
[117] MSRB Rule Book p. 108.
[118] MSRB Rule Book p. 239.
[119] 31 CFR § 356.10.
[120] Marketable U.S. Treasury securities include Treasury Bills, Treasury Notes, Treasury Bonds, Floating Rate Notes, Treasury Inflation-Protected Securities ("TIPS"), and, derivative of the foregoing, its Separate Trading of Registered Interest and Principal Securities ("STRIPS") Program. See ¶ 81(iv) infra. Non-marketable securities include United States Savings Bonds and U.S. Treasury Obligations – State & Local Government Series ("SLGS"), issued to state and local governments.

Arthur M. Miller Report                                                  Confidential

described above]. A Treasury security is maintained in the commercial book-entry system if it is credited by a Federal Reserve Bank to a Participant's [financial institutions that maintain an account at a Federal Reserve Bank] Securities Account;" (ii) TreasuryDirect®, a retail-investor-oriented, online system maintained by the Treasury itself for purchasing and holding eligible marketable Treasury securities, United States Savings Bonds, and certificates of indebtedness in electronic form as a computer record on the books of the Treasury; and (iii) Legacy TreasuryDirect®, a non-internet based system for holding marketable Treasury securities and Savings Bonds in book-entry form.[121] Both TreasuryDirect systems are managed by the Bureau of the Fiscal Service. This trifurcation of investor holdings creates a unique set of rules governing the purchases, sales, and transfers of marketable U.S. Treasuries.

79.     As its name implies, Legacy TreasuryDirect accounts are closed to the establishment of any new accounts, any new purchases by existing accounts, or the transfer of U.S. Treasuries into an existing account (other than from another Legacy account). Transfers (but not sales) out of a LegacyDirect Account, either to a TreasuryDirect account or to a bank or broker-dealer account, are permitted. For any such transfer, Form 5179 is required to be submitted detailing the specific securities to be transferred, including their CUSIP Numbers.[122]

80.     An investor can purchase or sell marketable U.S. Treasuries, either at issuance or in the secondary market, via its bank or broker-dealer account in the same manner as other securities. By contrast, an investor can directly purchase marketable Treasuries via its TreasuryDirect account only at a Treasury auction of new issues via a non-competitive bid; no secondary market transactions can be executed directly from a TreasuryDirect account.[123] However, an investor cannot directly sell existing holdings in a TreasuryDirect account; instead, one must transfer the U.S. Treasuries to a bank or broker-dealer account, and effect the sale via the bank/broker-dealer/DTCC system, which in turn requires the use of a CUSIP Number. An investor can transfer existing holdings into (or out of) a

---

[121] 31 CFR § 357.0(a).
[122] https://treasurydirect.gov/forms/sec5179.pdf
[123]

Arthur M. Miller Report                                                    Confidential

TreasuryDirect system from (or to) a bank or brokerage account; in either case, the process requires the use of DTCC'S facilities and thus the use of CUSIP Numbers for the marketable U.S. Treasuries being transferred.

81.     In addition, a number of regulations governing the issuance of U.S. Treasuries make reference to CUSIP Numbers:

    i.    31 CFR § 356.5: Notes that "[W]hen we [the U.S. Treasury] issue additional securities with the same CUSIP number as outstanding securities, we consider them to be the same securities as the outstanding securities."

    ii.    31 CFR § 356.10: Treasury auction announcements will include the CUSIP Number.

    iii.    31 CFR § 356.13(a)(1) & (c)(1): A dealer competitively bidding in a Treasury auction must disclose its "net long position" in Treasuries with the same CUSIP Number as the Treasury being auctioned (see § 356.5 above) if the net long position exceeds certain thresholds.

    iv.    31 CFR § 356.31(a): Describes the Separate Trading of Registered Interest and Principal Securities ("STRIPS") that allows the interest payments and principal payments on U.S. Treasuries to be "separated" and bought and sold individually. The Rule notes that CUSIP Numbers for STRIPS will be provided as part of the auction announcement of any strippable Treasuries.

82.     I am not aware of any reference to FIGIs on the website of the Bureau of the Fiscal Service.

## I.     Federal Reserve Bank of New York.

83.     The Federal Reserve Bank of New York (the "NY Fed") is a major participant in the U.S. Treasuries and federal agencies securities market, currently holding approximately $6.2 trillion of securities in the Federal Reserve System Open Market Account ("SOMA"), $4.1 trillion of which are marketable U.S. Treasuries, the balance made up mostly of agency mortgage-backed securities.[124] Pursuant to directions from the Federal Reserve System's Federal Open Market Committee, the NY Fed's Open Market Trading Desk executes purchases and sales of U.S. Treasuries and agency

---

[124] As of July 30, 2025: https://www.newyorkfed.org/markets/soma-holdings. As of July 31, 2025, there were $28.97 trillion of outstanding marketable U. S. Treasuries. SOMA thus holds approximately 14.15% of the marketable Treasury securities outstanding. Summary of Treasury Securities Outstanding, July 2025: https://fiscaldata.treasury.gov/datasets/monthly-statement-public-debt/summary-of-treasury-securities-outstanding.

Arthur M. Miller Report                                              Confidential

securities for SOMA both in the secondary market and at auctions of new Treasury issues; it also engages in repurchase agreements and reverse repurchase agreements.[125] The secondary market purchases and sales of Treasury and agency securities (other than at Treasury auctions) are conducted through 25 primary dealers.[126] The U.S. Treasury and agency securities holdings serve as collateral for U.S. currency in circulation, and are part of the implementation of the Federal Reserve System's monetary policy.[127] The NY Fed also assists approximately 200 central banks, governments, and other official institutions in the purchase and sale of U.S. Treasuries.[128] The NY Fed is a participant in DTC.[129]

84.    The NY Fed's engagement in the auctions of new issue U.S. Treasuries, in the secondary market for U.S. Treasuries and agency securities, and in the repo markets, all require utilization of CUSIP Numbers as appropriate in order to conduct trades with the U.S. Treasury, the primary dealers and others in the securities held in SOMA, and with its approved repo/reverse repo counterparties. I am not aware of any use of FIGIs by the NY Fed in the purchase and sales of U.S. Treasuries and federal agency securities.

85.    In addition, the NY Fed assists the U.S. Treasury's Bureau of the Fiscal Services in the auction of marketable U.S. Treasuries by accepting and processing tenders, issuing securities to the successful bidders, and serving financial institutions.[130] Given the use of CUSIP Numbers by the Bureau of the Fiscal Services as part of the auction process outlined above, I understand that the NY Fed would use CUSIP Numbers for this purpose as well.

---

[125] https://www.newyorkfed.org/markets/domestic-market-operations. In addition to primary dealers, the NY Fed maintains lists of approved counterparties. See https://www.newyorkfed.org/markets/standing-repo-facility-counterparties & https://www.newyorkfed.org/markets/rrp_counterparties.
[126] https://www.newyorkfed.org/markets/primarydealers
[127] https://www.newyorkfed.org/markets/soma-holdings
[128] https://www.newyorkfed.org/markets/domestic-market-operations/monetary-policy-implementation/treasury-securities
[129] The NY Fed is DTC Participant # 3000: https://www.dtcc.com/client-center/dtc-directories
[130] See, e.g., https://www.frbservices.org/treasury-services/auctions.html ;
https://www.newyorkfed.org/markets/treasury-debt-auctions-and-buybacks-as-fiscal-agent.

Arthur M. Miller Report                                      Confidential

**J.    NYSE Group**

86.    NYSE Group is a subsidiary of Intercontinental Exchange, Inc. ("ICE"), a financial holding company. ICE operates several exchanges.  The Group's exchanges in the United States are: (i) NYSE, which is the "old" New York Stock Exchange; (ii) NYSE Arca, formerly Archipelago, a Chicago-based exchange that lists both equities and options; (iii) NYSE American, previously named the American Stock Exchange, which also lists both equities and options; (iv) NYSE National, an automated, screen-based trading platform; and (v) most recently, NYSE Texas, a newly created exchange.[131] As one might expect, these exchanges have many rules and definitions that are substantively identical. Following is a summary of the references to CUSIP Numbers in the rules, grouped by the rules' intent, for each of these exchanges.

i.    Definitions. An "issue" of "depository eligible securities" is defined as securities that are "identified by a single CUSIP number." The use of an alternative identifier is not mentioned in the definitions. NYSE Arca Rule 7.60-E(a)(2);[132] NYSE American Rules 226(d)[133] & 776(d);[134] NYSE National Rule 7.60(a)(2)[135] & NYSE Arca Rule 7.62-E(a)(3).[136]

ii.    Depository Listing Requirement. For any security to be listed, the exchange must have received a representation from the issuer that a CUSIP number identifying the securities has been included in the file list maintained by a "securities depository registered as a clearing agency under Section 17A of the Securities Exchange Act [DTC]." NYSE ARCA Rule 7.62-E(a)(1),[137] NYSE American Rules 227[138] & 777;[139] NYSE Texas Rule 1(g)(1).[140]

iii.    Managed Fund Shares. Managed Fund Shares must disclose daily their portfolio holdings, including their ticker and CUSIP Number "or other identifier." NYSE Rule 8.600(c)(2)(B);[141] NYSE Arca Rule 8.600-

---

[131] See https://www.nyse.com/regulation/rules
[132] https://nysearcaguide.srorules.com/rules/b44a1f6a7ccd1000bfdc90b11c2ac4f1026f?searchId=2709640840
[133] https://nyseamericanguide.srorules.com/rules/09013e2c853aa5f5?searchId=2709656276
[134] https://nyseamericanguide.srorules.com/rules/09013e2c853aa70b?searchId=2709657199
[135] https://nysenationalguide.srorules.com/browse/2e3576ba7d071000953a90b11c18c902037?searchId=2709254794
[136] https://nysearcaguide.srorules.com/rules/b44a1f747ccd100085e090b11c2ac4f10271?searchId=2709638745
[137] https://nysearcaguide.srorules.com/rules/b44a1f747ccd100085e090b11c2ac4f10271?searchId=2709638745
[138] https://nyseamericanguide.srorules.com/rules/09013e2c853aa5f6?searchId=2709654989
[139] https://nyseamericanguide.srorules.com/rules/09013e2c853aa70c?searchId=2709654224
[140] https://nysetexasguide.srorules.com/rules/bca182487d5e1000a1c7005056885db604?searchId=2709648932
[141] https://nyseguide.srorules.com/rules/d80923e47dd410009dcf000d3a8abb4e01?searchId=2708363076

Arthur M. Miller Report                                                Confidential

E(c)(2)(B);[142] NYSE American Rule 8.600E(c)(2)(B);[143] NYSE Texas Rule 8.600(c)(2)(B).[144]

iv.   Active Proxy Portfolio Shares. Active Proxy Portfolio Shares must disclose daily their portfolio holdings, including their ticker and CUSIP number "or other identifier." NYSE Rule 8.601(c)(3)(ii);[145] NYSE Arca Rule 8.601-E(c)(3)(ii);[146] NYSE Texas Rule 8.601(c)(3)(ii).[147]

v.    Stock Certificates. NYSE's Listed Stock Manual § 501.13 requires, among other things, that stock certificates have a "Cusip number and box." [148]

vi.   Index Warrant Announcements, NYSE's Listed Stock Manual § 904.04 provides a form for the announcement of stock and currency index warrants that requires providing the ticker and the CUSIP Number of the warrant.[149]

87.   I am not aware of any reference to FIGIs in any of these sets of rules.

**K.    Nasdaq Rules**

88.   Like the NYSE, Nasdaq has several subsidiaries, for securities the largest and most important of which is The Nasdaq Stock Market.  The rules of The Nasdaq Stock Market contain rules relating to the listing and trade processing of securities, and the reporting of positions, that specifically reference CUSIP Numbers.

i.    Rule 5210: Applying to List on the NASDAQ. For an initial listing of a security on The Nasdaq Stock Market, Rule 5210(g)(2) requires that the security "shall have a CUSIP number or foreign equivalent identifying the securities included in the file of eligible issues maintained by a Securities Depository in accordance with the rules and procedures of such securities depository [i.e., DTC]."[150]

ii.   Rules 5705, 5735, and 5750: Exchange-Traded Funds.   Under Rule 5705(b)(1)(F)(i)-(ii), exchange-traded index funds must provide on its website on a daily basis the ticker and "CUSIP or other identifier" for each of its portfolio holdings. The same rule is imposed on exchange-traded managed

---

[142] https://nysearcaguide.srorules.com/rules/b44a20787ccd1000a19890b11c2ac4f10292?searchId=2709642270
[143] https://nyseamericanguide.srorules.com/rules/c9fa8ff27cc31000a2e590b11c18cbab01b?searchId=2709651940
[144] https://nysetexasguide.srorules.com/rules/1eac0a3eea0545a99bbbffa76ce6e080?searchId=2709649841
[145] https://nyseguide.srorules.com/browse/763a94be7dbf10008c86000d3a8abb4e01?searchId=2708363076
[146] https://nysearcaguide.srorules.com/rules/57e5226e7da01000b535005056885db601?searchId=2709642270
[147] https://nysetexasguide.srorules.com/rules/776f6faeae0449c2a67deb33ce7dd3b7?searchId=2709650791
[148] https://nyseguide.srorules.com/browse/09013e2c85545ea4?searchId=2708363076
[149] https://nyseguide.srorules.com/browse/09013e2c85567aad?searchId=2708363076
[150] https://listingcenter.nasdaq.com/rulebook/nasdaq/rules/nasdaq-5200-series

Arthur M. Miller Report                                                    Confidential

portfolio funds, Rule 5735(c)(2)(B), and exchange-traded proxy portfolio funds, Rule 5750(c)(5)(B).[151]

    iii.  <u>Rule 11100: Scope of Uniform Practice</u>. Pursuant to Rule 11100(d) of the Equity Uniform Practice Code, CUSIP Numbers must be used on the Uniform Transfer Instruction Form, the Uniform Delivery Ticket, and the Uniform Comparison or Confirmation.[152]

89.    I am not aware of any reference to FIGIs in any of the rules of any of Nasdaq's subsidiaries, including The Nasdaq Stock Market.

**L.    NAIC**

90.    To help state insurance regulators monitor the claims-paying abilities of insurance companies operating within their jurisdiction, the National Association of Insurance Commissioners ("NAIC") requires insurance companies (which are not regulated by the SEC) nationwide to periodically report their holdings in various securities to its Securities Valuation Office. These reports require the use of CUSIPs, CINS, or PPNs (CGS Private Placement Numbers) only as securities identifiers.[153]

## VIII.  OTHER IDENTIFIERS NOT USED FOR THE PURPOSE OF TRADING, CLEARING, OR SETTLING TRANSACTIONS OR REGULATORY COMPLIANCE

91.    Currently, there are a range of identifiers used in the securities industry. However, not all identifier systems are created equal. Identifier systems that are used to process securities trades in countries other than the United States may not be used in the United States for that purpose. Some identifier systems target market sectors other than publicly traded securities, such as credit default swaps or loans. Still other identifier systems identify only entities or market participants, as opposed to financial instruments or transactions. Several identifiers are tied in varying degrees to the proprietary information and data services provided by various vendors, such as Bloomberg LLP, S&P Global, and LSEG,[154] and thus are not widely available to all market participants or the general public. In each of these circumstances, the identifier systems and the resulting identifiers would not be readily

---

[151] https://listingcenter.nasdaq.com/rulebook/nasdaq/rules/nasdaq-5700-series
[152] https://listingcenter.nasdaq.com/rulebook/nasdaq/rules/Nasdaq%20Equity%2011
[153] NAIC, "Purposes and Procedures Manual of the NAIC Investment Analysis Office" ¶ 155, p. 99 (p. 133 of PDF) (Dec. 2024): https://content.naic.org/sites/default/files/publications-ppm-manual.pdf
[154] London Stock Exchange Group.

Arthur M. Miller Report                                           Confidential

adaptable for broad-scale use by securities market participants for securities trade processing. Taken altogether, while there are many identifiers serving a variety of purposes, none can be used where CUSIP Numbers are required for the trade processing of publicly traded securities, and none are accepted across all the classes of publicly traded securities for required reporting purposes.

92.    Certain identifiers, in addition to CUSIP Numbers and similar identifiers provided by CGS, are discussed below; several of them are referenced in the rules and regulations described above. I have attempted to group them by their primary characteristic or function, although obviously in many cases there will be an overlap among these categories.[155]

**B.    Other Publicly Available U.S. Securities Identifiers Not Used for Securities Trade Processing**

93.    <u>Tickers</u>.    In its current form, a ticker is a one- to five-letter symbol (often an abbreviation of the issuer's name) for a publicly traded financial instrument. Because tickers are generally limited to four or five letters or numbers, they are easier to remember (and understand) than 9- or 12-character CUSIPs, ISINs, or FIGIs (described below). Tickers are used and routinely "mapped" to CUSIPs for the benefit of retail investors in entering stock transaction orders online.

94.    However, apart from exchange-traded securities, exchange-traded funds, market indices, and certain mutual fund shares, tickers are often inconsistently applied or nonexistent. For example, I am not aware of any agreed-upon tickers for specific U.S. Treasuries or for municipal securities. In addition, I understand that, subject to prior assignment and the five-letter limit, corporate issuers may select a ticker of their own making; tickers therefore may change as a result of corporate name changes or even solely for public relations purposes. Thus, for the actual trade processing of publicly traded securities by the "back office" systems of the finance community, tickers are not used.

95.    <u>Financial Instrument Global Identifiers</u> ("FIGIs") are a set of securities identifiers originally created by Bloomberg and currently allocated by The Object Management Group ("OMG"). Like CUSIP Numbers, the construction of FIGIs follow a set of rules; however, these rules are not the

---

[155] This identifiers in this list are included in the list of identifiers in Plaintiff Hildene Capital Management LLC's Responses and Objections to Defendant FactSet Research Systems Inc.'s Second Set of Interrogatories, at General Objection 4.

Arthur M. Miller Report                                                 Confidential

same as those for CUSIP Numbers. A FIGI is a string of twelve alphanumeric characters that are in part randomly generated. The first two characters identify the "Certified Provider"[156] of the specific FIGI. For most existing securities, those first two characters are "BB" reflect their assignment by the original creator of FIGIs, Bloomberg LP. The third character is always a "G," to identify the FIGI as a global identifier. Characters 4-11 are alphanumeric (less vowels), with the 12th digit operating as a check digit (in the same manner as a CUSIP Number's ninth digit and an ISIN's 12th digit).[157] Unlike CUSIP Numbers, FIGIs are not changed as a result of corporate actions (e.g., corporate mergers).[158]

96.     Aside from the length of the identifier, there are other factors that distinguish FIGIs from CUSIP Numbers.  The most important of these is the structure of how and when FIGIs are assigned, especially in the case of equities that are traded on multiple exchanges.  For those securities: (i) a separate FIGI is assigned to the security for each trading venue or exchange (the 10th and 11th characters are letters (not numbers) identifying the specific exchange or venue); (ii) a "Composite FIGI" is assigned to enable users to link the venue-specific FIGIs within the same country or market in order to obtain an aggregated  view for that security (only the 10th and 11th character will vary from the venue-specific FIGIs linked); and (iii) a "Share Class" FIGI is assigned to the generic security. Thus, for example, Apple's common stock has been assigned:

      i.     A Share Class FIGI of BBG001S5N8V8;

      ii.    A United States Composite FIGI of BBG000B9XRY4;

      iii.   A New York Stock Exchange National Market FIGI of BBG000B9XT70;

      iv.   A United Kingdom Composite FIGI of BBG00JPR0LW9; and

      v.    A London Stock Exchange FIGI of BBG00JPR0LX8.

97.     The stated benefits of this venue-level identification are that: (i) it enables regulators to better identify and monitor trading concerns either at a specific trading venue or on a more macro

---

[156] The OpenFIGI website identifies two "Certified Providers" of FIGIs that are authorized to assign FIGIs: Bloomberg LP and Kaiko, which I understand to be a digital asset service provider. https://www.openfigi.com/about/facilitators

[157] https://www.openfigi.com/assets-remix/figi-check-digit-iPRpD9JG.pdf The generic FIGI "share class" for Apple's common stock is BBG000B9XRY4, while the FIGI for Apple's 2.05% Note due 9/11/26 is BBG00Q5L6G35.  Compare with the CUSIP Numbers in ¶ 39 supra.  FIGIs for specific securities can be accessed via the FIGI Search engine at the OpenFigi.com site: https://www.openfigi.com/search,

[158] See OMG, "Allocation Rules for the Financial Instrument Global Identifier (FIGI) Standard," § 3.1, p. 14: https://www.openfigi.com/assets/local/figi-allocation-rules.pdf

Arthur M. Miller Report                                              Confidential

basis; and (ii) in a similar vein, allows parties such as market participants and academic researchers to conduct more venue-specific analyses.[159] It is largely due to these characteristics that Bloomberg has described FIGIs as part of a "data model," rather than simply a set of securities identifiers.[160] These purposes, and the resulting underlying construction of the FIGI identifiers, serve a function and purpose different from routine securities trade processing. This conclusion is supported by Bloomberg in its letter concerning the use of FIGIs for purposes of implementing the mandates of the Financial Data Transparency Act of 2022: "The national numbering agency identifiers, such as CUSIP and ISIN, on the other hand only provide a single flat expression of any financial instrument. In most cases, especially in execution, settlement, and clearance, data for other contextual views is neither needed nor present."[161]

98.     Just as, for the reasons outlined above, CUSIP Numbers are required for the trade processing of publicly traded securities, the converse is also true: other securities identifiers, including specifically FIGIs, cannot be used instead of CUSIP Numbers. Based upon DTC's Operational Arrangements Manual, I understand that FIGIs are not used by DTC in its trade processing of securities. The specified uses of CUSIP Numbers under the current regulatory systems of the SEC, FINRA, and the MSRB, as well as the mandated use of CUSIP Numbers by DTC for its operations mean that FIGIs and other identifiers currently cannot be used in lieu of CUSIP Numbers for that purpose.

**C.     Non-U.S. Securities Identifiers**

99.     <u>SEDOLs</u>. The London Stock Exchange (a subsidiary of LSEG) maintains a database of identifiers known as the Stock Exchange Daily Official List; these identifiers ("SEDOLs") are seven-character codes used for securities trade processing in the United Kingdom and Ireland. SEDOLs are primarily used on the London Stock Exchange and not in other venues. SEDOLs also form the basis for ISINs for securities domiciled in the United Kingdom, in the same manner as CUSIP

---

[159] Letter of Bloomberg, LP to the SEC, p. 10 (Dec. 17, 2024): https://www.sec.gov/comments/s7-2024-05/s7202405-548555-1571942.pdf
[160] Ibid, p. 5.
[161] Ibid, p. 5.

Arthur M. Miller Report                                             Confidential

Numbers serve as the basis for the ISINs of US-domiciled securities.[162] Apple's common stock SEDOL is B0YQ5W0.[163]

100.    Because SEDOLs have been created for the purpose of processing securities trades outside of the United States, they cannot be used by U.S. securities market participants for such purpose.

**D.    Product-Specific Identifiers**

101.    OCC Symbols. The Options Clearing Corporation ("OCC") has created a standardized symbology for trade processing of options traded on various exchanges. The construction of the OCC Symbols follows a defined 21-character format: The first six characters are the "Root Symbol" of the underlying stock or index (in the case of Apple, it is the ticker "AAPL", with two extra spaces). The next six digits represent the expiration date of the option in yymmdd format (year, month, day); they are followed by a "P" or "C" to represent a put or call. The last 8 digits represent the strike price of the option in mills (1/10 of $.01 x 1,000). Thus, a put of Apple common stock at a strike price of $227.50 with an expiration date of August 22, 2025 would be represented as "AAPL__ 250822P00227500." Because the OCC symbology is used to reference options rather than the underlying securities, I understand that this symbology is not used to identify the underlying securities themselves on which any options may be written.[164]

102.    Unique Swap Identifiers/Unique Transaction Identifiers. Under the Dodd Frank Act, the Commodities Futures Trading Commission ("CFTC") was charged (with others) with the regulation of swaps and other derivatives. As part of its supervision of the swaps clearing agencies and their participants,[165] in 2012 the CFTC issued regulations mandating that every swap be assigned (either by the counterparties or by a swap exchange) a 'Unique Swap Identifier," ("USI") along with

---

[162] See LSEG, "LSEG Symbology": https://www.lseg.com/content/dam/data-analytics/en_us/documents/fact-sheets/symbology-fact-sheet.pdf ; see also ANNA. https://anna-web.org/identifiers/
[163] https://www.londonstockexchange.com/market-stock/0R2V/apple-inc/overview
[164] See Interactive Brokers, "Option Symbology Initiative": https://www.ibkrguides.com/kb/en-us/article-972.htm. See also https://finance.yahoo.com/quote/AAPL/options/.
[165] I.e., ICE Clear Credit LLC, which primarily clears and settles credit default swaps ("CDSs"); and LCH SA, which also primarily clears and settles CDSs. See fn. 58 supra.

Arthur M. Miller Report                                    Confidential

the creation of a centralized data repository of these identifiers and other swap-related information.[166] This rule was amended in 2020 to mandate the use of "Unique Transaction Identifiers" ("UTIs"), the construct of which conforms to a global standard for such identifiers, ISO 23897.[167] A UTI can be up to 52 characters, and will include the Legal Entity Identifier of the reporting entity. Derivatives market participants must use UTIs in all of their CFTC-required reporting and recordkeeping. Depending upon when a swap was executed, then, it may have either a USI or a UTI. I understand that neither of these identifiers describe or otherwise directly cover any securities on which any derivative contract may be based.

103.    Unique Trade Identifiers. As part of the process of developing the rules for identification of swaps, the International Swap & Derivatives Association developed a set of protocols for assigning what ISDA termed "Unique Trade Identifiers" to swaps and other derivatives.[168] I understand that these protocols were supplanted by the CFTC rules mandating the use of UTIs enacted in 2020.

104.    RED Codes. For the credit default swaps ("CDS") markets, S&P Global will assign Reference Entity Data ("RED") Codes to "reference data," such as the entity for which default protection is provided, the particular credit obligations that that are the subject of the default protection, and credit events and other corporate actions, that are embedded in the terms of the swap agreement. RED Codes are also linked to various databases of S&P and other services offered.[169] A Fact Sheet published by S&P Global in 2022 states that RED index codes had been assigned to "10,000+" reference obligations, and "17,000+" reference entities. The Fact Sheet also states that DTCC has mandated the use of RED index codes for all credit default swap index trade confirmations.[170] The small number of obligations assigned RED codes and their primary purpose of

---

[166] CFTC, RIN 3038-AD19 (Dec. 20, 2011); 77 Fed. Reg. 2136, 2158 (Jan. 13, 2012).
[167] 17 CFR § 45.5; see also ISO, "ISO 23897" (2020): https://www.iso.org/standard/77308.html
[168] ISDA, "Unique Trade Identifier (UTI): Generation, Communication and Matching" (March 20, 2015): https://www.isda.org/a/CdiDE/2015-mar-20-uti-best-practice-v11.pdf
[169] https://www.spglobal.com/market-intelligence/en/solutions/products/red-cds
[170] S&P Global, "Reference Data: RED for CDS" (2022): https://view.highspot.com/viewer/66b0a30961c59e84cf5a5626

Arthur M. Miller Report                                                      Confidential

identifying reference data for derivative transactions mean that RED codes cannot substitute for CUSIP Numbers for the trade processing publicly traded securities.

105.    Loan IDs ("LoanX IDs"). I also understand that S&P provides reference identifiers for loans (not securities). Because LoanX IDs are limited to loans they cannot be used as a substitute for CUSIP Numbers for U.S. securities more generally. LoanX IDs are also linked to various databases of S&P and other services offered.[171]

106.    Morningstar IDs. Morningstar assigns Morningstar IDs (or "fund codes") to the mutual and exchange-traded funds in its database.[172]

107.    Because these identifier systems and the resulting identifiers have been created for purposes relating to financial instruments other than publicly traded securities (or, in the case of Morningstar IDs, a limited subset of the publicly traded securities markets), they cannot be used by U.S. and Canadian securities market participants for the general trade processing of securities.

**E.    Entity Identifiers**

108.    LEIs. Legal Entity Identifiers ("LEIs") are 20-character identifiers that are assigned to legal entities that are issuers of financial instruments.  They are based on the ISO 17442, "Financial services — Legal entity identifier (LEI)."[173] LEIs do not serve to identify specific securities or transactions.  Apple Inc.'s LEI is HWUPKR0MPOU8FGXBT394.[174]

109.    CIK IDs. As part of its EDGAR disclosure system, the SEC maintains a Central Index Key Identifier ("CIK") for each person or entity that files reports with the SEC.  Using the CIK on the EDGAR system links the viewer to filings made by or about the specific person or entity, but it does not identify the securities that may be the subject of the filings. Apple Inc.'s CIK is 0000320193.[175]

---

[171] https://cdn.ihsmarkit.com/www/pdf/Reference-Data-Loans.pdf
[172] https://lt.morningstar.com/1c6qh1t6k9/glossary/default.aspx?LanguageId=en-GB&group=M#:~:text=An%20identification%20code%20assigned%20to,for%20all%20relevant%20sales%20charges
[173] ISO 17442, pt. 1: https://www.iso.org/standard/78829.html ; pt. 2: https://www.iso.org/standard/79917.html
[174] See https://www.lei-lookup.com/record/HWUPKR0MPOU8FGXBT394/
[175] SEC, "CIK Lookup": https://www.sec.gov/search-filings/cik-lookup.

Arthur M. Miller Report                                          Confidential

110.    PermIDs. LSEG issues "Permanent Identifiers" ("PermIDs"), which are entity identifiers that can be used to link various public and proprietary databases operated by LSEG.  Apple Inc.'s PermID is 4295905573.[176]

111.    Markit IDs. IHS Markit, a subsidiary of S&P, issues entity identifiers that can be used to link various public and proprietary data and databases of S&P.[177]

112.    DUNs. Dun & Bradstreet Numbers ("DUNs") are nine-character entity identifiers primarily used on the business and credit information platform operated by Dun & Bradstreet.[178]

113.    Market Identifier Codes. As part of the effort to standardize the codes used for universal trade processing and reporting, the ISO has promulgated ISO 10383, which has assigned Market Identifier Codes (and an open source, related database) to exchanges, trading platforms, regulated or non-regulated markets, and trade reporting facilities.[179]

114.    Identifiers in this category do not speak at all to securities, or even financial instruments generally; in their present configuration they could not serve to identify individual securities for the purposes of securities trade processing.

**F.    Platform-Specific Identifiers**

115.    S&P Capital IQ IDs. I understand that S&P Capital IQ, the research division of S&P, assigns S&P Capital IQ IDs to a range of items, including companies, securities, and other entities within their database. These IDs are used for access to data specific information on the proprietary S&P Capital IQ platform.

116.    RICS. Refinitiv Instrument Codes (formerly Reuters Instrument Codes) ("RICs") are a set of securities identifiers generated by LSEG.  I understand that these identifiers are used primarily by Refinitiv customers to access information and data on the Refinitiv data platforms.[180]

---

[176] https://permid.org/
[177] https://cdn.ihs.com/www/pdf/ReferenceData-Maps.pdf.
[178] See https://www.dnb.com/en-us/smb/duns.html#:~:text=The%20Dun%20&%20Bradstreet%20D%E2%80%91U,loans%2C%20and%20so%20much%20more
[179] See ISO, ISO20022: https://www.iso20022.org/market-identifier-codes
[180] See LSEG, "LSEG Symbology": https://www.lseg.com/content/dam/data-analytics/en_us/documents/fact-sheets/symbology-fact-sheet.pdf

Arthur M. Miller Report                                                Confidential

117.    Identifiers in this category are generally tied to a specific information or service vendor platform. Generally, use of such a platform requires a subscription to the services provided.  As such, the identifiers associated with each platform would not be available to the various participants in the securities markets as a whole and could not serve as the "common language" for identifying securities.

*[Signature Page Follows]*

45

Arthur M. Miller Report                                           Confidential

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on August 14, 2025


August 14, 2025


Respectfully,

_Arthur M. Miller_

_____

Arthur M. Miller

Arthur M. Miller Report                                                    Confidential

## APPENDIX A

### List of Documents and Materials Relied Upon

**DOCUMENTS RECEIVED**

1. ABA, "*Security Identification System: Specification and Guides, Technical Bulletin*", (Jan. 1967). ABA-0000000195

2. ABA, "*Wall Street Agrees on a Uniform Way to Identify Stocks", "Banking*", (Sept. 1968). ABA-0000027456

3. Agreement between ABA and CGS, effective as of Sept. 15, 2014. ABA-0000028676

4. Deposition Testimony of Pers Ola Persson of FINRA, March 11, 2025.

5. Hildene Capital Management LLC's Responses and Objections to Defendant FactSet Research Systems Inc. Second Set of Interrogatories, March 14, 2025.

**SEC REGULATIONS**

**(AVAILABLE AT: HTTPS://WWW.ECFR.GOV)**

6. 17 CFR § 230.144A

7. 17 CFR § 230.900-905

8. 17 CFR § 240.3b-4(b)

9. 17 CFR § 240.13d-101 &-102

10. 17 CFR §§ 240.13e-3(d)(1) & 240.100 Schedule 13E-3

11. 17 CFR §§ 240.13e-4(g)(1) & 240.102 Schedule 13E-4F

12. 17 CFR §§ 240.13e-4(c)(2); 240.14d-3(a)(1); 240.14d-100 Schedule TO

13. 17 CFR §§ 240.14d-9; 240.14d-101 Schedule 14D-9; 240.14-1(b); 240.14d-102 Schedule 14D-1F; 240.14d-103 Schedule 14D-9F

14. 17 CFR § 240.15c3(b)(4)(iv)

15. 17 CFR § 240.17ad-22(e)18(iv)(A)(

16. 17 CFR § 240.17Ad-16(a)

17. 17 CFR § 240.17Ad-19(c)(3)-(5)

18. 17 CFR § 270.2a-7(h)(10)(i)(B)(3)

19. 17 CFR § 270.6c-11(c)(1)(i)(B)

20. 17 CFR § 275.204A-1(b)(1)(i)(A) & -1(b)(2)(i)(A)

21. 17 CFR § 420.3(f) & -4(c)(1)

Arthur M. Miller Report                                                    Confidential

22.  17 CFR § 403.5(d)(2)(i)

**SEC ON-LINE FORMS**

23.  SEC, Form 13F, "*Information Required of Institutional Investment Managers*",
     17 CFR § 240.13f-1(a)(1) & § 249.325, September 30, 2025, available at
     http://www.sec.gov/about/forms/form13f.pdf

24.  SEC, "*Form CB, Tender Offer/Rights Offering Notification Form*", 17 CFR § 230.801(4)
     & § 239.800; Form CB, available at https://www.sec.gov/files/formcb.pdf

25.  SEC, "*Form N-CEN, Annual Report for Registered Investment Companies*",
     17 CFR § 270.30a-1 & § 274.101; Form N-CEN, OMB Control No. 3235-0729, available
     at https://www.sec.gov/files/formn-cen.pdf

26.  SEC, "*Form N-MFP, Monthly Schedule of Portfolio Holdings of Money Market Funds*",
     17 CFR § 270.30b1-7 & § 274.201, available at https://www.sec.gov/files/formn-mfp.pdf

27.  SEC, "*Form N-PORT, Company Act Release No. 35000, 88 FR 70436*",
     17 CFR § 270.30b1-9 & § 274.150, December 11, 2023, available at
     https://www.sec.gov/files/formn-port.pdf

28.  SEC, "*Form N-PX, Annual Report of Proxy Voting Record*", 17 CFR § 240.14Ad-1(a) &
     § 270.30b1-4; Form N-PX per §§ 249.326 & 274.129, available at
     https://www.sec.gov/files/formnpx.pdf

29.  SEC, "*Form PF, Reporting Form for Investment Advisers to Private Funds*", 17 CFR §
     275.204(b)(1)(a) & § 279.9; Form PF, available at https://www.sec.gov/files/formpf.pdf

30.  SEC, "*Short Position and Short Activity Reporting by Institutional Investment Managers
     (Final Rule, Release No. 34-98738)*", 17 CFR § 240.13f-2 & § 249.332 (Form SHO
     Information Tables), Oct. 13, 2023, available at
     https://www.sec.gov/files/rules/final/2023/34-98738.pdf

31.  SEC, "*Form X-17F-1A, Missing/Lost/Stolen/Counterfeit Securities Report*",
     17 CFR § 240.17f-1(c)(2); 17 CFR § 249.1200; Form X-17F-1A, Item 9 (CUSIP
     Number), OMB Control No. 3235-0037, available at https://www.sec.gov/files/formx-
     17f-1a.pdf

**SEC RELEASES AND FINAL RULES**

32.  SEC, "*Release No. 34-82321*", Dec. 14, 2017, 82 FR 60433, Dec. 20, 2017, available at
     https://www.govinfo.gov/content/pkg/FR-2017-12-20/pdf/2017-27342.pdf

Arthur M. Miller Report                                          Confidential

33. SEC, "*Electronic Submission of Applications for Orders under the Advisers Act and the Investment Company Act*", Form 13F and Form ADV-NR; Amendments to Form 13F, Aug. 29, 2022, available at https://www.sec.gov/files/rules/final/2022/34-95148.pdf

34. SEC, "*Final Rule, Enhanced Reporting of Proxy Votes by Registered Management Investment Companies; Reporting of Executive Compensation Votes by Institutional Investment Managers*", Release No. 33-11131, Nov. 2, 2022, available at https://www.sec.gov/files/rules/final/2022/33-11131.pdf

35. SEC, "*Reporting of Securities Loans (Final Rule, Release No. 34-98737)*", 17 CFR § 240.10c-1a(c)(2), Oct. 13, 2023, available at https://www.sec.gov/files/rules/final/2023/34-98737.pdf

36. SEC, "*Form PF; Reporting Requirements for All Filers and Large Hedge Fund Advisers*", Final Rule, Release No. IA-6546, Feb. 8, 2024, available at https://www.sec.gov/files/rules/final/2024/ia-6546.pdf

37. SEC, "*Order Approving a Proposed Rule Change, as Modified by Partial Amendment No. 1, to Adopt the FINRA Rule 6500 Series*" (Securities Lending and Transparency Engine (SLATE™)), Release No. 34-102093, Jan. 2, 2025, available at https://www.sec.gov/files/rules/sro/finra/2025/34-102093.pdf

### OTHER SEC-RELATED MATERIALS

38. Securities Act of 1933, 15 U.S.C. § 77b, Definitions, available at https://www.law.cornell.edu/uscode/text/15/77b

39. Securities Act of 1933, 15 U.S.C. § 77c, Exemptions, available at https://www.law.cornell.edu/uscode/text/15/77c

40. Securities Act of 1933, 15 U.S.C. § 77f, Registration of Securities, available at https://www.law.cornell.edu/uscode/text/15/77f

41. Securities Exchange Act of 1934, 15 U.S.C. § 78q, Records and reports, available at https://www.law.cornell.edu/uscode/text/15/78q

42. Public Law 94-29, "*Securities Acts Amendments of 1975, 89 Stat. 97*", June 4, 1975, available at https://www.congress.gov/94/statute/STATUTE-89/STATUTE-89-Pg97.pdf

43. SEC, "*CIK Lookup*", available at https://www.sec.gov/search-filings/cik-lookup

44. SEC, "*Clearing Agencies*", available at https://www.sec.gov/about/divisions-offices/division-trading-markets/clearing-agencies

Arthur M. Miller Report                                                Confidential

45. SEC, "*Remarks of Homer H. Budge. Chairman, Securities and Exchange Commission*", June 20, 1969, available at https://www.sec.gov/news/speech/1969/062069budge.pdf

**FINRA AND MSRB RULES AND MATERIAL**

46. FINRA, "*Trade Reporting and Compliance Engine (TRACE)*", available at https://www.finra.org/filing-reporting/trace

47. FINRA, "*Frequently Asked Questions (FAQ) about the Trade Reporting and Compliance Engine (TRACE)*", Question 3.1.41, available at https://www.finra.org/filing-reporting/trace/faq

48. FINRA, "*6530 Reporting Securities Loan Information*", available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6530

49. FINRA, "*6730 Transaction Reporting*", available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6730

50. FINRA, "*6760 Obligation to Provide Notice*", available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6760

51. FINRA, "*7730 Trade Reporting and Compliance Engine (TRACE)*", available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/7730

52. FINRA, "*11100 Scope of Uniform Practices*", available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/11100

53. FINRA, "*11210 Confirmations Sent by Each Party*", available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/11210

54. FINRA, "*11310 Book-Entry Settlement*", available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/11310

55. FINRA, "*11360 Units of Delivery*", available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/11360

56. FINRA, "*11550 Assignments and Powers of Substitution*", available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/11550

57. FINRA, "*11840 Rights and Warrants*", available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/11840

58. FINRA, "*11870 Customer Account Transfers*", available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/11870

Arthur M. Miller Report                                    Confidential

59. MSRB Rule Book, October 1, 2024, available at
    https://www.msrb.org/sites/default/files/2024-10/MSRB-Rule-Book-October-1-2024.pdf

60. MSRB, "*MSRB Form G-32*", available at https://www.msrb.org/MSRB-Form-G-32

61. MSRB, "*Rule IF-1, MSRB Rule Book, RTRS Web User's Manual*", available at
    https://www.msrb.org/sites/default/files/RTRSWeb-Users-Manual.pdf

62. MSRB, "*SHORT System Web User Interface Manual*", available at
    https://www.msrb.org/sites/default/files/SHORT-System-Web-User-Interface-
    Manual.pdf

63. MSRB, "*Notice 2017-25, MSRB Rule G-34(a)(i)*", December 15, 2017, available at
    https://www.msrb.org/sites/default/files/2017-25.pdf

64. MSRB, "*MSRB Glossary of Municipal Securities Terms*", August, 2013, available at
    https://www.msrb.org/sites/default/files/2022-08/MSRB-Glossary-of-Municipal-
    Securities-Terms-Third_Edition-August-2013.pdf

65. MSRB, "*Milestones in Municipal Securities Regulation*", available at
    https://www.msrb.org/Milestones-Municipal-Securities-Regulation#1970

**DTCC MATERIALS**

66. DTCC, "*2024 Annual Report*", available at
    https://www.dtcc.com/annuals/2024/files/DTCC-Annual-Report-2024-Print.pdf

67. DTTC, "*Q1 2025 Financial Statements*", available at https://www.dtcc.com/-
    /media/Files/Downloads/legal/financials/2025/DTCC-Financial-Statements-Q1-2025.pdf

68. DTCC, "*DTC Operational Arrangements*", April, 2025, available at
    https://www.dtcc.com/~/media/files/downloads/legal/issue-
    eligibility/eligibility/operational-arrangements.pdf

69. DTCC, "*DTC Member Directories*", August 1, 2025, available at https://www.dtcc.com/client-
    center/dtc-directories

70. DTCC, "*ClaimConnect™ Service Guide*", December 5, 2024, available at
    https://www.dtcc.com/-/media/Files/Downloads/legal/service-guides/ClaimConnect.pdf

71. DTCC, "*Custody Service Guide*", March 28, 2023, available at https://www.dtcc.com/-
    /media/Files/Downloads/legal/service-guides/Custody.pdf

72. DTCC, "*Settlement Service Guide*", July 14, 2025, available at https://www.dtcc.com/-
    /media/Files/Downloads/legal/service-guides/Settlement.pdf

Arthur M. Miller Report                                               Confidential

73. DTCC, "*Fixed Income Clearing Corporation Government Securities Division Rulebook*",
Rule 2A § 7(e) & Rule 18 § 2, June 5, 2025, available at
https://www.dtcc.com/~/media/Files/Downloads/legal/rules/ficc_gov_rules.pdf

74. DTCC, "*Fixed Income Clearing Corporation Mortgage-Backed Securities Division
Clearing Rules*", Rule 2A § 5(e), June 5, 2025, available at https://www.dtcc.com/-
/media/Files/Downloads/legal/rules/ficc_mbsd_rules.pdf

75. DTCC, "*Underwriting Implementation of the New Issue Information Dissemination
System (NIIDS) for Municipal Securities*", April 9, 2008, available at
https://www.dtcc.com/-/media/Files/pdf/2008/4/9/3349-08.pdf

**RULES OF NYSE AND NASD**

76. NYSE Regulation, "*Rules: All NYSE Group Exchanges*", available at
https://www.nyse.com/regulation/rules

77. NYSE Listed Company Manual, Rules, "*Rule 8.600 Managed Fund Shares*", available at
https://nyseguide.srorules.com/rules/d80923e47dd410009dcf000d3a8abb4e01?searchId=
2708363076

78. NYSE Listed Company Manual, Rules, "*Rule 8.601 Active Proxy Portfolio Shares*",
available at
https://nyseguide.srorules.com/browse/763a94be7dbf10008c86000d3a8abb4e01?searchId
=2708363076

79. NYSE Listed Company Manual, "*501.13 Other Requirements*", available at
https://nyseguide.srorules.com/browse/09013e2c85545ea4?searchId=2708363076.

80. NYSE Listed Company Manual, "*904.04 Foreign Currency Warrants and Currency
Index Warrants and Stock Index Warrants Membership Circular*", available at
https://nyseguide.srorules.com/browse/09013e2c85567aad?searchId=2708363076

81. NYSE American Guide, Rules, "*Rule 8.600E Manged Fund Shares*", available at
https://nyseamericanguide.srorules.com/rules/c9fa8ff27cc31000a2e590b11c18cbab01b?s
earchId=2709651940

82. NYSE American Guide, Rules, "*Rule 226*", available at
https://nyseamericanguide.srorules.com/rules/09013e2c853aa5f5?searchId=2709656276

83. NYSE American Guide, Rules, "*Rule 227 Equities*", available at
https://nyseamericanguide.srorules.com/rules/09013e2c853aa5f6?searchId=2709654989

Arthur M. Miller Report                                        Confidential

84. NYSE American Guide, Rules, "*Rule 776",* available at
    https://nyseamericanguide.srorules.com/rules/09013e2c853aa70b?searchId=2709657199

85. NYSE American Guide, Rules, "*Rule 777 Depository Eligibility*", available at
    https://nyseamericanguide.srorules.com/rules/09013e2c853aa70c?searchId=2709654224

86. NYSE Arca Guide, "Rules, *"Rule 7.60-E*", available at
    https://nysearcaguide.srorules.com/rules/b44a1f6a7ccd1000bfdc90b11c2ac4f1026f?searchId=2709640840

87. NYSE Arca Guide, Rules, "*Rule 7.62-E*", available at
    https://nysearcaguide.srorules.com/rules/b44a1f747ccd100085e090b11c2ac4f10271?searchId=2709638745

88. NYSE Arca Guide, Rules, "*Rule 8.600-E Managed Fund Shares*", available at
    https://nysearcaguide.srorules.com/rules/b44a20787ccd1000a19890b11c2ac4f10292?searchId=2709642270

89. NYSE Arca Guide, Rules, "*Rule 8.601-E Active Proxy Portfolio Shares*", available at
    https://nysearcaguide.srorules.com/rules/57e5226e7da01000b535005056885db601?searchId=2709642270

90. NYSE Texas Guide, Rules, "*Rule 1*", available at
    https://nysetexasguide.srorules.com/rules/bca182487d5e1000a1c7005056885db604?searchId=2709648932

91. NYSE National Guide, "*Rule 7.60*", available at
    https://nysenationalguide.srorules.com/browse/2e3576ba7d071000953a90b11c18c902037?searchId=2709254794

92. NYSE Texas Guide, Rules, "*Rule 8.600 Managed Fund Shares*", available at
    https://nysetexasguide.srorules.com/rules/1eac0a3eea0545a99bbbffa76ce6e080?searchId=2709649841

93. NYSE Texas Guide, Rules, "*Rule 8.601 Active Proxy Portfolio Shares*", available at
    https://nysetexasguide.srorules.com/rules/776f6faeae0449c2a67deb33ce7dd3b7?searchId=2709650791

94. Nasdaq Listing Center, "*Rule 5200 Series General Procedures and Prerequisites for Initial and Continued Listing on The Nasdaq Stock Market*", available at
    https://listingcenter.nasdaq.com/rulebook/nasdaq/rules/nasdaq-5200-series

Arthur M. Miller Report                                            Confidential

95. Nasdaq Listing Center, "*Rule 5700 Series Requirements for Listing Other Securities on The Nasdaq Global Market*", available at https://listingcenter.nasdaq.com/rulebook/nasdaq/rules/nasdaq-5700-series

96. Nasdaq Listing Center, "*Rule 1100, Scope of Uniform Practices*", available at https://listingcenter.nasdaq.com/rulebook/nasdaq/rules/Nasdaq%20Equity%2011

**U.S. TREASURY AND FEDERAL RESERVE BANK OF NEW YORK MATERIALS**

97. U.S. Department of the Treasury, Sale and Issue of Marketable Treasury Securities, 31 CFR §§ 356.0(a); 356.10; 356.13; 356.31(a)(1)

98. U.S. Department of the Treasury, Book Entry System, 31 CFR § 357.0(a)

99. U.S. Department of the Treasury, "*Summary of Treasury Securities Outstanding*", July 2025, available at https://fiscaldata.treasury.gov/datasets/monthly-statement-public-debt/summary-of-treasury-securities-outstanding

100. U.S. Department of the Treasury, "*FS Form 5179 Security Transfer Request, OMB No. 1530-0042*", Bureau of the Fiscal Service, August 2022, available at https://treasurydirect.gov/forms/sec5179.pdf

101. U.S. Department of the Treasury, TreasuryDirect "*Buying a Treasury Marketable Security*", available at https://treasurydirect.gov/marketable-securities/buying-a-marketable-security/

102. Federal Reserve Bank of New York, Markets, "*Treasury Debt Auctions & Buybacks as Fiscal Agent*", available at https://www.newyorkfed.org/markets/treasury-debt-auctions-and-buybacks-as-fiscal-agent

103. Federal Reserve Financial Services, "*Treasury Auctions*", available at https://www.frbservices.org/treasury-services/auctions.html

104. Federal Reserve Bank of New York, "*Domestic Market Operations overview*", available at https://www.newyorkfed.org/markets/domestic-market-operations

105. Federal Reserve Bank of New York, "*Treasury securities markets (monetary policy implementation)*", available at https://www.newyorkfed.org/markets/domestic-market-operations/monetary-policy-implementation/treasury-securities

106. Federal Reserve Bank of New York, "*SOMA Holdings*", July 30, 2025, available at https://www.newyorkfed.org/markets/soma-holdings

Arthur M. Miller Report                                        Confidential

107. Federal Reserve Bank of New York, "*Primary dealer network*", available at
https://www.newyorkfed.org/markets/primarydealers

108. Federal Reserve Bank of New York, "*Standing Repo Facility counterparties*", available
at https://www.newyorkfed.org/markets/standing-repo-facility-counterparties

109. Federal Reserve Bank of New York, "*Reverse Repo counterparties*", available at
https://www.newyorkfed.org/markets/rrp_counterparties

## CGS AND S&P MATERIALS

110. CGS, "*Inside the CGS Identification System*", available at
https://experience.cusip.com/inside-the-cusip-system

111. CGS, "*Processes: Assigning CUSIP/CINS/ISIN*" available at
https://www.cusip.com/pdf/Processes%20-%20CUSIP_Template_2019.pdf

112. CGS, "*Supporting efficient global capital markets*", available at
https://www.cusip.com/identifiers.html#/CUSIP

113. CGS "*Supporting efficient global capital markets: CINS*", available at
https://www.cusip.com/identifiers.html#/CINS

114. CGS "*Supporting efficient global capital markets: ISIN*", available at
https://www.cusip.com/identifiers.html#/ISIN

115. CGS, "CGS History: 1972", available at https://www.cusip.com/about/history.html

116. V. Morris & K. Morris, "*CUSIP: A Common Language for Efficient Markets*", available
at https://experience.cusip.com/brochure/cusip-a-common-language-for-efficient-markets

117. S&P Global Market Intelligence, "*Reference Entity Data (RED) for CDS*", available at
https://www.spglobal.com/market-intelligence/en/solutions/products/red-cds

118. S&P Global, "*Reference Data: RED for CDS, Factsheet*", available at
https://view.highspot.com/viewer/66b0a30961c59e84cf5a5626

## OTHER

119. ANNA, "*Official Website*", available at https://anna-web.org/.

120. ANNA, "*Identifiers*", available at https://anna-web.org/identifiers/

121. ANNA, "*About ANNA Members*", available at https://anna-web.org/anna-members/

122. Herman W. Bevis, SEC Historical Society, "*BASIC Interindustry Teamwork*", part 1,
April 1, 1974, available at
https://www.sechistorical.org/collection/papers/1980/1984_0401_BasicTeamwork_1.pdf

Arthur M. Miller Report                                           Confidential

123. Herman W. Bevis, SEC Historical Society, "*Basic-Interindustry Teamwork*", part 2, April 1974, available at https://www.sechistorical.org/collection/papers/1980/1984_0401_BasicTeamwork_2.pdf

124. Bloomberg, "*Letter of Bloomberg, LP to the SEC*", Dec. 17, 2024, available at https://www.sec.gov/comments/s7-2024-05/s7202405-548555-1571942.pdf

125. CDS, "*ISIN Issuance and ISIN Eligibility Services*", available at https://www.cds.ca/issuers/issuer-services/isin-issuance-and-isin-eligibility-services

126. CFTC, *"Unique Transaction Identifiers"*, 17 CFR § 45.5

127. CFTC, "*Swap Data Recordkeeping and Reporting Requirements; Final Rule*", RIN 3038-AD19, Jan. 13 2012, available at https://www.cftc.gov/LawRegulation/FederalRegister/FinalRules/2011-33199.html

128. Dun & Bradstreet, "*D-U-N-S Number, Start Here*", available at https://www.dnb.com/en-us/smb/duns.html#:~:text=The%20Dun%20&%20Bradstreet%20D%E2%80%91U,loans%2C%20and%20so%20much%20more

129. IHS Markit, "*Reference Data Loans*", available at https://cdn.ihsmarkit.com/www/pdf/Reference-Data-Loans.pdf

130. IHS Markit, "*Reference Data Maps*", available at https://cdn.ihs.com/www/pdf/ReferenceData-Maps.pdf

131. Interactive Brokers, "*Option Symbology Initiative*", available at https://www.ibkrguides.com/kb/en-us/article-972.htm

132. IRS, "*Notice 2010-28"*, March 23, 2010, available at https://www.irs.gov/pub/irs-drop/n-10-28.pdf

133. ISDA, "*Unique Trade Identifier (UTI) Generation, Communication and Matching (Version 11.0)*", March 20, 2015, available at https://www.isda.org/a/CdiDE/2015-mar-20-uti-best-practice-v11.pdf

134. ISO, "*ISO 2022, Market Identifier Codes (MIC) list*", available at https://www.iso20022.org/market-identifier-codes

135. ISO, *"ISO 6166:2021"*, available at https://www.iso.org/standard/78502.html

136. ISO, "*ISO 17442-1:2020 Financial services, Legal Entity Identifier (LEI) – Part 1: Assignment*", Aug. 2020, available at https://www.iso.org/standard/78829.html

Arthur M. Miller Report                                          Confidential

137. ISO, "*ISO 17442-2:2020 Financial services, Legal Entity Identifier (LEI) – Part 2: Application in digital certificates*", Aug. 2020, available at https://www.iso.org/standard/79917.html

138. ISO, "*ISO 23897:2020, Unique Transaction Identifier (UTI)*", Aug. 3, 2020, available at https://www.iso.org/standard/77308.html

139. LEILookup.com, "*Search LEI Records: Apple*", available at https://www.lei-lookup.com/record/HWUPKR0MPOU8FGXBT394/

140. LSEG, "*LSEG Symbology*", available at https://www.lseg.com/content/dam/data-analytics/en_us/documents/fact-sheets/symbology-fact-sheet.pdf

141. London Stock Exchange, "*Apple Inc., Overview*", available at https://www.londonstockexchange.com/market-stock/0R2V/apple-inc/overview

142. Morningstar, "*Glossary*", available at https://lt.morningstar.com/1c6qh1t6k9/glossary/default.aspx?LanguageId=en%E2%80%91GB&group=M

143. NAIC, "*Purposes and Procedures Manual of the NAIC Investment Analysis Office*", December 2024, available at https://content.naic.org/sites/default/files/publications-ppm-manual.pdf

144. OpenFIGI, "*Facilitators*", available at https://www.openfigi.com/about/facilitators

145. OpenFIGI, "*FIGI Check Digit*", available at https://www.openfigi.com/assets-remix/figi-check-digit-iPRpD9JG.pdf

146. OpenFIGI, "*FIGI Search*", available at https://www.openfigi.com/search

147. OpenFIGI, "*FIGI Allocation Rules*", July 9, 2022, available at https://www.openfigi.com/assets/local/figi-allocation-rules.pdf

148. Optimizeronline, "*Mr. CUSIP dies at 94, The Shareholder Services Optimizer, vol 14, # 1*", 1stQ. 2008 available at https://optimizeronline.com/wp-content/uploads/2008_Q1.pdf

149. The Options Clearing Corporation (OCC), "*Clearing*", available at https://www.theocc.com/clearance-and-settlement/clearing

150. PermID, "*Home Page*", available at https://permid.org/Optimizeronline, "*Mr. CUSIP dies at 94, The Shareholder Services Optimizer, vol 14, # 1*", 1stQ. 2008 available at https://optimizeronline.com/wp-content/uploads/2008_Q1.pdf

Arthur M. Miller Report                                    Confidential

151. San Diego Unified School District, "*Official Statement, 2009 General Obligation Bonds (Election of 2008, Series B) Qualified School Construction Bonds (Tax Credit Bonds)*", April 2009, available at EMMA/MSRB: https://emma.msrb.org/MS280663-MS279758-MD567449.pdf

152. SIFMA, "*2025 Capital Markets Fact Book*", July 2025, available at https://www.sifma.org/resources/research/statistics/fact-book/

153. SIFMA, "*US Municipal Bonds Statistics*", Aug. 4, 2025, available at https://www.sifma.org/resources/research/statistics/us-municipal-bonds-statistics/

154. SIFMA, Statistics, "*US Commercial Paper Statistics*", Aug. 4, 2025, available at https://www.sifma.org/resources/research/statistics/us-money-market-instruments-statistics/; https://www.sifma.org/resources/archive/research/statistics/

155. U.S. Census Bureau, "*Statistical Abstract of the United States, 98th Edition (1977), Table Nos. 873 & 874*", available at https://www2.census.gov/library/publications/1977/compendia/statab/98ed/1977-07.pdf

156. Wex Definitions, "domestic corporation", available at https://www.law.cornell.edu/wex/domestic_corporation

157. Yahoo Finance, "*Apple Inc. (AAPL) Options Chain*", available at https://finance.yahoo.com/quote/AAPL/options/

## APPENDIX B

## <u>Curriculum Vitae</u>

### ARTHUR M. MILLER
**Managing Director**
**SEDA Experts, LLC | 1185 6th Avenue, New York, NY 10036**
**O: 646 626 4556 | M: 917 856 5428**
**amiller@sedaexperts.com**
**www.sedaexperts.com**

P. O. Box 1206
Washington, CT  06793

### EXPERTISE IN PUBLIC FINANCE

With over 43 years of experience in public finance, Arthur is an industry-recognized expert and thought leader in many aspects of state and local government and nonprofit financing. He has served on the Board of Directors of the Municipal Securities Rulemaking Board, where he was Vice Chair for two years, as well as serving for many years on the Municipal Executive and Policy Committees of SIFMA and predecessor organizations. He has been awarded the Chairman's Achievement Award for extraordinary service to the industry. He has been a frequent panelist at many municipal finance legal seminars, and has authored or co-authored several legal studies outlines.

A 38-year employee of Goldman Sachs, where he was a Managing Director, Arthur provided expertise to clients and regulatory entities, and to the firm in a wide range of roles and positions, including client finance strategies, quantitative analytics, municipal market research (with credit for several published articles), tax and securities law, tax policy, municipal market regulations and new product development.

### CORE COMPETENCIES

Finance Strategy Development | Tax Law | New Product Development | Investment Banking | Regulatory Compliance

### PRIOR EMPLOYMENT

Goldman, Sachs & Co., New York, NY
**Managing Director**                        February 1985 - February 2023
Public Sector & Infrastructure Group, Investment Banking Division
Co-Head, Public Finance Strategies & Analytics Groups, 1985 - 2023
Fixed Income Research Group, 1989 - 1997
Public Finance Markets Strategist, 1996 - 1999
Firm-Wide New Product Development Group, 1985 - 1993.

59

Arthur M. Miller Report                                              Confidential

## ADDITIONAL RELEVANT EXPERIENCE

Associate Attorney, Tax Department, Mudge Rose Guthrie Alexander & Ferdon,
    New York, New York
Specialist in tax-exempt finance, arbitrage and advance refundings

## EDUCATION

**Master of Law (LL.M.), Taxation-** New York University, 1982

**Juris Doctor (J.D.)-** Duke University School of Law, 1978
Honors: Graduation with Distinction.
Research & Managing Editor, Duke Law Journal

**Master of Arts (M.A.), History-** University of North Carolina, 1976

**Artium Baccalaureus (A.B.), History-** Princeton University, 1973

## PROFESSIONAL ACTIVITIES

Member, Board of Directors, Municipal Securities Rulemaking Board, 2014 – 2018, Vice Chair,
2016-2018, Chair of Finance Committee, 2015-2016

Member, Securities Industry & Financial Markets Association, 1985 - 2014, 2018 - 2022 (including
predecessor organizations).
    Member of Municipal Executive Committee, 2019 - 2022.
    Chair of Municipal Policy Committee, 2002 - 2014.
    Recipient of the 2003 Chairman's Achievement Award for Extraordinary Service to the
    Industry

Member, National Association of Bond Lawyers, 1985 – present
    Recipient, 2023 Bernard P. Friel Medal for Distinguished Service to the Public Finance Industry

Consultant - U.S. Treasury with respect to tax policy and arbitrage rules, 1991 - 1993.

Chairman, American Bar Association Tax Section Committee on Tax-Exempt Financing, Task
Force on Tax Reform, 1985 - 1986.

Lecturer, SIFMA, Bond Market Association, American Bar Association, National Association of
Bond Lawyers, PLI and other seminars and workshops

Author and Co-Author of Numerous Professional Outlines, Course Materials and Commentary (see
addendum)

Arthur M. Miller Report                                                                  Confidential

## COMMUNITY

Trustee, St. Andrew's School, Middletown, Delaware, 2003 - 2014.
Member, Finance & Audit Committee, 2001 - present.
Chair, Personnel Committee, 2010 - 2014.
Co-Chair, Land Use Planning Committee, 2005 - 2014.

Trustee, Cathedral School of St. John the Divine, New York, NY, 2007 - 2011, Finance
Committee, 2007 - 2011.

Trustee, Convent of the Sacred Heart, New York, NY-2003 - 2008. Chair of Finance Committee,
2004 - 2008, Investment Committee, 2001 - 2008, Audit Committee, 2005 - 2008.

Princeton University Rowing Association: Trustee, 1980 - present, President, 1986-1994, Vice
President, 1994 – present

## Addendum: Selected List of Authored Publications

"Let Me Check With My Desk", National Association of Bond Lawyers Workshop, October 2022
(primary author; co-author: L Birchall)

Note: after a global settlement with the SEC on published research, limitations were placed on
employees that were the investment banking (private side) of Goldman Sachs, precluding such
employees (including me) from publishing articles to be made available for distribution to investing
clients. Thus, subsequent research and analysis was limited to internal use.

Arthur M. Miller Report                                              Confidential

## APPENDIX C

### Litigation & Deposition Experience

I served as a 30(b)(6) third party deposition witness on October 21, 2021 on behalf of Goldman Sachs & Co. LLC, in Preston Hollow Capital, LLC v. Nuveen LLC, et al., Case # N19C-10-107, New Castle County Superior Court, Delaware.
https://courtconnect.courts.delaware.gov/cc/cconnect/ck_public_qry_doct.cp_dktrpt_frames

In April-August 2024, I served as a consultant to plaintiff's counsel in a FINRA arbitration proceeding in which an investor brought a complaint against a major municipal bond investment bank and two of its principals for misrepresentations, omissions, and lack of suitability in connection with the purchase of tax-exempt bonds. The case was settled prior to commencement of the hearing before the arbitration panel. WR Investments, Inc. v. Hilltop Securities, Inc. et al.

I am currently serving as an expert witness for the defense in a South Carolina State Circuit Court suit brought by a broker-dealer against a municipal entity for compensation based upon a theory of quantum meruit. Carolina Municipal Securities, Inc. v. Cassatt Water Company, Inc. et al., Case No. 2016-CP-28-00907 (5th Judicial Circuit, SC).

Arthur M. Miller Report                                              Confidential

## APPENDIX D

### Asset Classes For Which CGS will Issue Identifiers

Equity
1.  American Depository Receipts
2.  Common Shares
3.  Exchanged-Traded Funds
4.  Indices
5.  Limited Partnerships
6.  Listed Options: US and Canada
7.  Single-Stock Options
8.  Mutual Funds
9.  Preferred Shares
10. Real Estate Investment Trusts
11. Rights
12. Unit Investment Trusts
13. Warrants

Debt
14. Asset-Backed Securities
15. Bankers Acceptances
16. Certificates of Deposit
17. Collateralized Debt Obligations
18. Commercial Paper
19. Corporate Bonds
20. Medium-Term Notes
21. Mortgage-Backed Securities
22. Municipal Bonds
23. Structured Products
24. Syndicated Loans
25. U.S. Federal Government Agencies
26. U.S. Treasuries: Bonds, Bills, Notes

Other
27. Capital Securities (Hybrids)
28. Credit Derivatives (CLIPS)
29. Derivatives
30. Equity-Linked Notes (Hybrids)
31. Hedge Funds
32. Restricted Issues: 144A Reg D & Reg S Private Securities
33. Trust Preferred (Hybrids)
34. Variable Annuities and Other Insurance-Related Vehicles

Source: CGS: https://www.cusip.com/identifiers.html#/CUSIP

Arthur M. Miller Report                                         Confidential

## APPENDIX E


### Other References to CUSIP Numbers in the Code of Federal Regulations

Securities and Exchange Commission

| | |
|---|---|
| 17 CFR § 230.134(a)(21) | Communication Not Deemed a Prospectus. A free-writing prospectus can include a CUSIP Number or ticker symbol. |
| 17 CFR § 230.172(a)(2) | Delivery of Prospectuses. Confirmation of an allocation of securities may include CUSIP Number. |
| Schedule 14N | Shareholders submitting names of nominees for boards of directors of must identify the voting securities, including their CUSIP Numbers, and the number of shares owned by the nominees.[181] |
| Form N-CR | Money market funds must report the default or insolvency of any portfolio security (or any credit backstop of the security) comprising 0.5% or more of the portfolio value, identifying the security by name and providing "and at least two identifiers, if available (*e.g.*, CUSIP, ISIN, CIK, LEI)." [182] |
| Form N-CSR | In connection with the submission to the SEC of a certified shareholder report of certain registered management investment companies, the registrant may report certain divestitures of the securities of unaffiliated issuers holdings, identified by "exchange ticker symbol [and] CUSIP Number."[183] |
| Form N-RN | Registered management investment companies and business development companies that hold than 15% of their portfolio invested in "illiquid" assets must file Form N-RN, identifying those illiquid investments by "the CUSIP (if any), and at least one other identifier, if available (*e.g.*, ISIN, Ticker, or other unique identifier (if ticker and ISIN are not available)) (indicate the type of identifier used)."[184] |
| Form TA-2 | Securities Transfer agents must annually file a summary of the number of securities for which the reporting entity acted as a transfer agent, broken down by asset class and type of service, with "debt securities . . . counted as one issue per CUSIP."[185] |

---

[181] 17 CFR §§ 240.14n-1(a) & -2(a); 240.14n-101 Schedule 14N.

[182] 17 CFR §§ 270.30b1-8 & 274.222 Form N-CR; SEC Form N-CR, Item B.1, p. 5: https://www.sec.gov/files/formn-cr.PDF.

[183] 17 CFR §§ 270.30b2-1(a); 249.331 Form N-CSR & 274.128 Form N-CSR; SEC Form N-CSR, Items 6(b)(3) & (6), pp. 9-10: https://www.sec.gov/files/formn-csr.pdf

[184] 17 CFR §§ 270.30b1-10 & 274.223 Form N-RN; SEC Form N-RN, Item B.3, p. 4: https://www.sec.gov/files/formn-rn.pdf.

[185] 17 CFR §§ 240.17Ac2-2(a) & 249b.102 Form TA-2; SEC Form TA-2 II.C.4.3, p. 13: https://www.sec.gov/files/formta-2.pdf

Arthur M. Miller Report                                    Confidential

Office of the Comptroller of Currency
12 CFR § 9.18(b)(4)(I)(3)

Commodities Futures Trading Commission
17 CFR § 1.25(d)(1)&(8)(i)

17 CFR § 1.27(a)(4)&(b)(2)

17 CFR § 17.00

17 CFR § 30.7(h)(2(iv)

Tennessee Valley Authority
18 CFR § 1314.8

Housing and Urban Development
24 CFR § 811.110(c)

Income Tax Regulations
26 CFR § 1.142(f)(4)-1(c)(5)

26 CFR § 1.165-12(c)(3)(ii)

26 CFR § 1.671-5(c)(2)(1)(D)

26 CFR § 1.1012-1(e)(4)&(7)

26 CFR § 1.6031(c)-1 T(a)(5)

26 CFR § 1.6045-1(c) & (d)

26 CFR § 1.6045A-1(b)(1)(v)

26 CFR § 1.6045B-1(a)(ii)

26 CFR § 1.6049-7(b),(e)&(f)