# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
DINOSAUR FINANCIAL GROUP LLC, SWISS LIFE INVESTMENT MANAGEMENT HOLDING AG, and HILDENE CAPITAL MANAGEMENT, LLC, on behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

Civil Action No.: 22 Civ. 1860 (KPF)

S&P GLOBAL, INC., AMERICAN BANKERS ASSOCIATION, and FACTSET RESEARCH SYSTEMS INC.,

Defendants.

--------------------------------x

January 30, 2025
9:06 a.m.

* * * CONFIDENTIAL * * *

VIDEOTAPED DEPOSITION of JEFFREY MITNICK, held at the law offices of Wollmuth Maher & Deutsch LLP, 500 5th Avenue, New York, New York, before Judith Thaten, a Certified Livenote Reporter and Notary Public of the State of New York.

A P P E A R A N C E S

ON BEHALF OF PLAINTIFFS
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
BY: LYNDON TRETTER, ESQ.
ltretter@wmd-law.com
KYLIE SPENCER, ESQ.
kspencer@wmd-law.com

ON BEHALF OF DEFENDANT - S&P Global, Inc.
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166
BY: ERIC STOCK, ESQ.
estock@gibsondunn.com

ON BEHALF OF DEFENDANT - American Bankers Association
JONES DAY
555 S. Flower Street, 50th Floor
Los Angeles, California 90071
BY: CAROLINE MITCHELL, ESQ.
cnmitchell@jonesday.com

A P P E A R A N C E S (cont'd)

ON BEHALF OF DEFENDANT - FactSet Research Systems, Inc.
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave, NW, Suite 1300N
Washington, DC 20004
BY: SETH GREENSTEIN, ESQ.
sgreenstein@constantinecannon.com

ALSO PRESENT:
JONA KIM, ESQ., In-house Counsel, FactSet
RON MARRAZZO, Legal Video Specialist
Veritext Legal Solutions

IT IS HEREBY STIPULATED AND AGREED, by and among counsel for the respective parties hereto, that the filing, sealing and certification of the within deposition shall be and the same are hereby waived.

IT IS FURTHER STIPULATED AND AGREED that all objections, except to the form of the question, shall be reserved to the time of trial;

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed before any Notary Public with the same force and effect as if signed and sworn to before the court.

* * * *

CONFIDENTIAL - MITNICK

VIDEOGRAPHER: Good morning. We're now going on the record.

The time is approximately 9:06 a.m. It is the 30th of January 2025.

Please note that the microphones are sensitive and may pick up whispering and private conversations. Please mute your phones at this time.

Audio and video recording will continue to take place unless all parties agree to go off the record.

This is the video-recorded deposition of Jeffrey Mitnick in the matter of Dinosaur Financial Group LLC, et al., versus S&P Global, Inc., et al.

This case is filed in the United States District Court, Southern District of New York. Docket Number is 1860 (KPF).

The location of this

Page 6

CONFIDENTIAL - MITNICK

deposition is Wollmuth Maher & Deutsch located at 500 Fifth Avenue in New York City.

My name is Ron Marrazzo, representing Veritext Legal Solutions. Our court reporter is Judy Castore, from the firm Veritext Legal Solutions.

I'm not related to any party in this action, nor am I financially interested in its outcome.

All counsel attending live and remotely will be noted on the written transcript.

We can now swear in the witness and proceed.

J-E-F-F-R-E-Y M-I-T-N-I-C-K,

Having been duly sworn by a Notary Public within and for the State of New York, stated an address as 150 East 77th Street, Apartment 12E, New York, New York, was examined and testified as follows:

EXAMINATION BY MR. TRETTER:

Page 7

CONFIDENTIAL - MITNICK

Q Good morning, Mr. Mitnick.

A Good morning.

Q As I introduced myself, my name is Lyndon Tretter. I'm one of the counsel for the plaintiffs. And I am here to ask you a few questions today in the litigation against, among others, FactSet.

I know you are an attorney, so you've probably been to a lot of depositions. But have you ever had your own deposition taken before?

A No.

Q All right. So if, for any reason, you have any problem with any question of mine, I'm happy to rephrase it or ask it again, or we'll work things out.

A Thank you.

Q What did you do to prepare for today's deposition?

A To prepare for today's deposition, I met several times with my counsel over the phone and in person.

Page 8

CONFIDENTIAL - MITNICK

Q Did you review any documents in connection with your preparation?

A Yes.

Q Did any of the documents refresh your recollection as to past events?

A Generally, yes.

Q Okay. Is there anything that stands out in your mind that you hadn't thought about in a while but the documents brought you back to that period?

MR. GREENSTEIN: I'm going to object on the basis of work product privilege.

If you can answer the question without impinging on the privilege, you may.

A Could you repeat the question?

Q Yeah.

Is there anything that -- in the documents that brought you back and refreshed your recollection about

Page 9

CONFIDENTIAL - MITNICK

certain events that you may have forgotten?

A Not really, no.

Q Okay.

(Whereupon, a discussion was held off the record.)

MR. TRETTER: We're going to mark some exhibits, and I think we're starting with 121.

MR. GREENSTEIN: Before we begin, I do want to say something on the record, please.

MR. TRETTER: Sure.

MR. GREENSTEIN: As you know, Mr. Mitnick is hearing impaired. He has cochlear implants, which means, basically, without the apparatus that he wears, he cannot hear at all. With the apparatus, his hearing is better but not perfect.

And so it's important that when you ask him questions, please face Mr. Mitnick, because then he

Page 10

CONFIDENTIAL - MITNICK

will be able to read your lips and would be able to supplement what he hears through the apparatus with his ability to read lips.

Even so, there may be occasions where his perception of what you are trying to say is imperfect. And so -- and we'll do the best we can. And if there is any question, of course, Mr. Mitnick can follow up.

But there may be occasions where, candidly, he doesn't know what he doesn't know. So we'll just deal with that as we can.

MR. TRETTER: Okay.

MR. GREENSTEIN: Thank you.

MR. TRETTER: I appreciate that.

Let the record reflect I've twisted my chair as much as I can in your direction.

THE WITNESS: Thank you.

(LinkedIn profile of Jeffrey

Page 11

CONFIDENTIAL - MITNICK

Mitnick, was marked Plaintiffs Exhibit 121, for identification, as of this date.)

Q All right. Perhaps, you can identify for the record, Mr. Mitnick, what has been marked as Plaintiffs' Exhibit 121?

A It appears to be a printout of my LinkedIn page.

Q Did you create it?

A Yes.

Q And is it accurate?

A To my knowledge, it looks accurate.

Q I see that you graduated from a very fine school, Columbia.

A Yes.

Q Not that I graduated from that school. But I went to the University of Michigan.

The year of graduation is 1987; is that correct?

A Correct.

Q And you started with

Page 12

CONFIDENTIAL - MITNICK

S&P Global in April of 1992?

A Correct.

Q So what did you do in between?

A When I graduated Columbia, I started as a corporate associate at the law firm of Simpson Thacher & Bartlett in New York City. And I spent about four and a half to five years there before I left Simpson Thacher.

Q So you and I were in the same office at the same time.

A We may have been.

Q Okay. It was a big place.

Were you at One Battery Park Plaza?

A Yes, for a period.

Q I'm sorry, when did you leave Simpson?

When did you leave Simpson?

A 1992.

Q And you took that job with S&P?

A At the time, the organization

Page 13

CONFIDENTIAL - MITNICK

was called McGraw-Hill, Inc.

Q And what was your first position there?

A I was a staff counsel.

Q Did there come a time when you worked for McGraw Hill that you assumed responsibility for CUSIP Global Services?

(Clarification by the reporter.)

MR. TRETTER: CUSIP, C-U-S-I-P.

A I'm not sure what you mean by assumed responsibility.

Q Well, in your day-to-day job that you were advising, whatever work you were doing as an in-house counsel, did there come a time where you were doing some work for CGS, I will call it?

A I had a significant amount of other work I was responsible for. And CUSIP Global Services was one small portion of that work when I joined

Page 14

CONFIDENTIAL - MITNICK

McGraw Hill.
Q Okay. Could you take me through your path when you were at -- your career path at the company?
A I'm not sure which company you are talking about.
Q McGraw Hill.
A Okay. I started in 1987 as a staff lawyer. And at a certain point in time, McGraw Hill split, such that the business known as Standard & Poor's, which was part of McGraw Hill, as well as various education publishing businesses, were split in two. So the company split in half.
And I elected to go with the portion of the company that included S&P and all the other financial information businesses.
And the name at some point changed to S&P Global.
Q What year around was that?
A I'm not sure.
Q Okay. At the time of the

Page 15

CONFIDENTIAL - MITNICK

split, what were your responsibilities?
A I handled M&A transactions. I handled minority investments, complex technology transactions.
I handled the review and drafting of distribution agreements, license agreements, publishing agreements.
Q Did there come a time when you had more responsibility for CGS's activities than other aspects of S&P's business?
A Over the years, I worked on a number of different matters all the time. At certain points in time, when there were major issues facing the CUSIP business, I would spend more time on those matters. But I wouldn't be able to delineate the percentages or time.
Q Okay. Today, in your role, what is your title today?
A Assistant general counsel and senior vice president for FactSet.

Page 16

CONFIDENTIAL - MITNICK

Q And do you perform services or work for FactSet not relating to CGS?
A I would say the overwhelming majority of my work is for CUSIP Global Services. That was what I was hired to do.
Q Okay. And what I'm trying to now find out is when did that concentration happen in your career, how far back in time?
A Well, in March 2022, S&P was required to sell CUSIP Global Services as a result of another transaction it was entering into. And at that point, S&P did not have any specific lawyers relating to CUSIP Global Services.
And at that time, during the transaction and while the transaction was pending, I was asked if I would consider leaving S&P to join the bidder who would prevail to purchase CUSIP Global Services.
Q So after that time, nearly

Page 17

CONFIDENTIAL - MITNICK

all of your work as an employee for FactSet related to CGS; is that correct?
A For the first 12 months, I did handle some specific FactSet transactional matters as well as my CUSIP responsibilities.
Q Okay. I would like to now focus on the time period prior to March of 2022.
And if you had to give a percentage of your time, am I correct that at that point, you were an employee of S&P?
A Correct.
Q Okay. And in that period, in the 2020s, let's say, how much of your time was devoted to CGS matters, and how much was devoted to other S&P matters?
A As you know, it's hard to calculate days and weeks and months of percentages.
But I would say 20 percent

Page 18

CONFIDENTIAL - MITNICK

for CUSIP Global Services; 80 percent other S&P matters.

Q Were there other attorneys besides yourself in-house at S&P that were assisting you on the CGS matters?

A Yes.

Q Who were they?

A Amanda Samuel was a lawyer within the S&P market intelligence legal group. And she was involved in CUSIP matters. And I met with her often and discussed CUSIP matters with her.

There were other attorneys who were responsible for handling the day-to-day work, signing customer agreements. So those folks would have also been involved in supporting the CUSIP business.

Q Putting those folks aside, was there any attorney other than Amanda Samuel that had those responsibilities for CGS?

A Well, Amanda's supervisor at

Page 19

CONFIDENTIAL - MITNICK

the time, I believe his name was Adam Marchuck, was the head of that legal department business unit.

Q And in your responsibilities, your CGS-facing responsibilities, did you have any counterparts at the American Arbitration Association that you dealt with?

MR. GREENSTEIN: Objection to form.

A Yes.

Q Who were they?

A Over the years, I worked with many different people at the American Bankers Association.

Currently, the primary people I work with today are Tab Stewart, Karin Flynn, and Tom Greco.

Q And if we were to go back into the 1990s period or 2010s, what -- would the cast of characters be different?

MR. GREENSTEIN: Objection to form.

Page 20

CONFIDENTIAL - MITNICK

A They had a lot of people who came and went over the years. I remember Diane Poole, who I believe was there for many years.

Q Focusing now on yourself and your own work responsibilities, what kind of work did you do for CGS from -- in the 1990s and the aughts, the 2000s?

A At the very beginning, it was simply reviewing customer agreements and distribution agreements.

That was the primary job responsibility.

Q Okay. And did that change later, as to the 2010s and 2020s?

A Over time. I worked on more types of transactions, involving CUSIP Global Services, not necessarily customer agreements.

Q What were the examples -- without giving me any advice that you were giving, but what would be the examples, topic areas?

A One topic area would be

Page 21

CONFIDENTIAL - MITNICK

alliances to assign identifiers to new asset classes.

Q I understand that.

Anything else come to mind, topic-wise?

A I worked on a variety of agreements relating to CGS's role as the US national numbering agency and contracts with the Association of National Numbering Agencies.

Q Okay. Anything else that comes to mind?

A At the moment, no.

Q To whom did you report, over time, in -- when it was owned by -- when CGS was part of S&P?

A I had many bosses --

Q Sorry to hear that.

A -- over the 30 years.

So I could review...

Q Well, why don't you give me your direct supervisors over time.

A Okay. Catherine Rowan, Scott Bennett, Kate Brennan, Jonathan



Page 22

CONFIDENTIAL - MITNICK

Martin, Tasha Matharu.

Q Were these people that were also in the S&P legal department?

A Yes.

Q Okay. Did you have any reporting lines within CGS?

A No.

Q With whom -- did you have contact with other CGS executives?

A Yes.

Q And who were your primary points of contact within CGS?

A At what point in time?

Q Let's start in the 1990s.

A Jim Taylor was the head of -- at that time, it was called CUSIP -- the CUSIP Service Bureau.

Q Okay.

A Scott Preiss, who is currently the head of CUSIP Global Services.

Today I work closely with Roger Fahy, Matt Bastian, Darren Purcell, Dave Hunter.

Page 23

CONFIDENTIAL - MITNICK

Q Okay. I'm not -- this is not a test. Those are the main people that come to mind today?

A Correct, yes.

Q Okay. That's all I have that with that exhibit.

(Document, Bates-stamped FRSI02646291 through FRSI02646294, was marked Plaintiffs Exhibit 122, for identification, as of this date.)

MR. TRETTER: Plaintiffs' Exhibit 122 --

MS. MITCHELL: Could you please wait until we have the exhibit before you proceed?

MR. TRETTER: Sure.

Okay?

MS. MITCHELL: Yes. Fine. Thank you.

Page 24

CONFIDENTIAL - MITNICK

Page 25

CONFIDENTIAL - MITNICK



Page 26

CONFIDENTIAL - MITNICK

Page 28

CONFIDENTIAL - MITNICK

Page 27

CONFIDENTIAL - MITNICK

Page 29

CONFIDENTIAL - MITNICK



Page 30

CONFIDENTIAL - MITNICK

[redacted]

Page 32

CONFIDENTIAL - MITNICK

[redacted]

Page 31

CONFIDENTIAL - MITNICK

[redacted]

Page 33

CONFIDENTIAL - MITNICK

[redacted]

9 (Pages 30 - 33)

Veritext Legal Solutions
212-279-9424 www.veritext.com 212-490-3430



Page 34

CONFIDENTIAL - MITNICK

Page 36

CONFIDENTIAL - MITNICK

Page 35

CONFIDENTIAL - MITNICK

Page 37

CONFIDENTIAL - MITNICK

10 (Pages 34 - 37)

Veritext Legal Solutions
212-279-9424 www.veritext.com 212-490-3430



Page 38

[redacted]

Page 40

[redacted]

Page 39

CONFIDENTIAL - MITNICK

[redacted]

Page 41

CONFIDENTIAL - MITNICK

[redacted]

11 (Pages 38 - 41)

Veritext Legal Solutions
212-279-9424 www.veritext.com 212-490-3430



Page 42

CONFIDENTIAL - MITNICK

Page 44

CONFIDENTIAL - MITNICK

Page 43

CONFIDENTIAL - MITNICK

Page 45

CONFIDENTIAL - MITNICK



Page 94

CONFIDENTIAL - MITNICK

[redacted]

Page 95

CONFIDENTIAL - MITNICK

[redacted]

Page 96

CONFIDENTIAL - MITNICK

[redacted]

Page 97

CONFIDENTIAL - MITNICK

[redacted]

25 (Pages 94 - 97)

Veritext Legal Solutions
212-279-9424 www.veritext.com 212-490-3430



Page 98

CONFIDENTIAL - MITNICK

[redacted]

Page 100

CONFIDENTIAL - MITNICK

[redacted]

Page 99

CONFIDENTIAL - MITNICK

[redacted]

Page 101

CONFIDENTIAL - MITNICK

[redacted]



Page 102

CONFIDENTIAL - MITNICK

[redacted]

Page 104

CONFIDENTIAL - MITNICK

[redacted]

Page 103

CONFIDENTIAL - MITNICK

[redacted]

Page 105

CONFIDENTIAL - MITNICK

[redacted]

27 (Pages 102 - 105)

Veritext Legal Solutions
212-279-9424 www.veritext.com 212-490-3430



CONFIDENTIAL - MITNICK

Q Okay. That's all I had on that one.

A Okay.

(Document, Bates-stamped

CONFIDENTIAL - MITNICK

FRSI01755311 through FRSI01755353, was marked Plaintiffs Exhibit 126, for identification, as of this date.)

CONFIDENTIAL - MITNICK

CONFIDENTIAL - MITNICK



Page 110

CONFIDENTIAL - MITNICK

[redacted]

Page 111

CONFIDENTIAL - MITNICK

[redacted]

Page 112

CONFIDENTIAL - MITNICK

[redacted]

Page 113

CONFIDENTIAL - MITNICK

[redacted]

29 (Pages 110 - 113)

Veritext Legal Solutions
212-279-9424 www.veritext.com 212-490-3430

Page 182

CONFIDENTIAL - MITNICK

A F T E R N O O N S E S S I O N

(Time noted: 1:25 p.m.)

J-E-F-F-R-E-Y M-I-T-N-I-C-K,

Resumed, having been previously sworn by a Notary Public within and for the State of New York, was further examined and testified under oath as follows:

VIDEOGRAPHER: The time is 1:25 p.m. We are back on the record.

CONTINUED EXAMINATION BY MR. TRETTER:

Welcome back from lunch. We're going to mark our next exhibit. We'll ask the reporter to mark it, please.

(Document, Bates-stamped SPGI-0000034219 through SPGI-0000034223, was marked Plaintiffs Exhibit 132, for identification, as of this date.)

Page 183

CONFIDENTIAL - MITNICK

Page 184

CONFIDENTIAL - MITNICK

Page 185

CONFIDENTIAL - MITNICK



CONFIDENTIAL - MITNICK

CONFIDENTIAL - MITNICK

CONFIDENTIAL - MITNICK

CONFIDENTIAL - MITNICK

Q Okay. That's all I have on that.

(Whereupon, a discussion was held off the record.)

(Document, Bates-stamped FRSI00000073 through FRSI00000082, was previously marked Plaintiffs Exhibit 15, for identification, and referenced.)

(Document, Bates-stamped FRSI00000083 through FRSI00000091, was previously marked Plaintiffs Exhibit 16, for identification, and referenced.)

Q Mr. Mitnick, I'm going to show you a couple of documents that were marked at somebody else's deposition.

So there is P-15 and P-16.

A Okay. Thank you.

Page 190

CONFIDENTIAL - MITNICK

Page 192

CONFIDENTIAL - MITNICK

Page 191

CONFIDENTIAL - MITNICK

Page 193

CONFIDENTIAL - MITNICK



Page 194

CONFIDENTIAL - MITNICK

Page 196

CONFIDENTIAL - MITNICK

Page 195

CONFIDENTIAL - MITNICK

Page 197

CONFIDENTIAL - MITNICK

50 (Pages 194 - 197)

Veritext Legal Solutions
212-279-9424 www.veritext.com 212-490-3430



Page 198

CONFIDENTIAL - MITNICK

Page 200

CONFIDENTIAL - MITNICK

Page 199

CONFIDENTIAL - MITNICK

Page 201

CONFIDENTIAL - MITNICK

51 (Pages 198 - 201)

Veritext Legal Solutions

212-279-9424 www.veritext.com 212-490-3430

Page 202

CONFIDENTIAL - MITNICK

[redacted]

Page 204

CONFIDENTIAL - MITNICK

[redacted]

Page 203

CONFIDENTIAL - MITNICK

[redacted]

Page 205

CONFIDENTIAL - MITNICK

[redacted]

Page 206

CONFIDENTIAL - MITNICK

[redacted]

Page 207

CONFIDENTIAL - MITNICK

[redacted]

Page 208

CONFIDENTIAL - MITNICK

[redacted]

Page 209

CONFIDENTIAL - MITNICK

[redacted]

Page 210

CONFIDENTIAL - MITNICK

Page 212

CONFIDENTIAL - MITNICK

Page 211

Page 213

CONFIDENTIAL - MITNICK

MR. GREENSTEIN: Objection.
Calls for legal conclusion.
Objection to form.

CONFIDENTIAL - MITNICK

MR. TRETTER: Do you have the witness's answer?

MS. COURT REPORTER: Yes, sir.

CONFIDENTIAL - MITNICK

CONFIDENTIAL - MITNICK

CONFIDENTIAL - MITNICK

Page 218

CONFIDENTIAL - MITNICK

Page 220

CONFIDENTIAL - MITNICK

Page 219

CONFIDENTIAL - MITNICK

Page 221

CONFIDENTIAL - MITNICK



Page 222

CONFIDENTIAL - MITNICK

Page 224

CONFIDENTIAL - MITNICK

Page 223

CONFIDENTIAL - MITNICK

Page 225

CONFIDENTIAL - MITNICK



Page 226

CONFIDENTIAL - MITNICK

Page 228

CONFIDENTIAL - MITNICK

Page 227

CONFIDENTIAL - MITNICK

Page 229

CONFIDENTIAL - MITNICK

58 (Pages 226 - 229)

Veritext Legal Solutions
212-279-9424 www.veritext.com 212-490-3430



Page 230

CONFIDENTIAL - MITNICK

Page 232

CONFIDENTIAL - MITNICK

Page 231

CONFIDENTIAL - MITNICK

Page 233

CONFIDENTIAL - MITNICK

59 (Pages 230 - 233)

Veritext Legal Solutions
212-279-9424 www.veritext.com 212-490-3430



Page 234

CONFIDENTIAL - MITNICK

[redacted]

Page 236

CONFIDENTIAL - MITNICK

[redacted]

Page 235

CONFIDENTIAL - MITNICK

[redacted]

Page 237

CONFIDENTIAL - MITNICK

[redacted]

60 (Pages 234 - 237)

Veritext Legal Solutions
212-279-9424 www.veritext.com 212-490-3430



Page 242

CONFIDENTIAL - MITNICK

Page 243

CONFIDENTIAL - MITNICK

Page 244

CONFIDENTIAL - MITNICK

MR. GREENSTEIN: Objection to form.

Q Okay. Okay. Maybe I am thinking of something else.

MR. TRETTER: That's all I have for the moment.

MR. GREENSTEIN: While there is a break in the action, let me -- while we get the next document, let me just --

VIDEOGRAPHER: I'm sorry, let me read us off. Unless you want to go on the record.

MR. GREENSTEIN: No, this is on the record.

VIDEOGRAPHER: Okay. Sorry.

MR. GREENSTEIN: I was just going to say before you get the next -- I don't want forget to do this.

We're designating this

Page 245

CONFIDENTIAL - MITNICK

deposition as highly confidential for further review. And we do want the opportunity to review and submit an errata and sign.

As long as there was a second or two, I thought I would get that on.

MR. TRETTER: That's fine. We'll mark these next two.

(Document, Bates-stamped FRSI00000095 through FRSI00000099, was marked Plaintiffs Exhibit 133A, for identification, as of this date.)

(Document, Bates-stamped FRSI00000068 through FRSI00000072, was marked Plaintiffs Exhibit 133B, for identification, as of this date.)



Page 246

CONFIDENTIAL - MITNICK

[redacted]

Page 248

CONFIDENTIAL - MITNICK

[redacted]

Page 247

CONFIDENTIAL - MITNICK

[redacted]

Page 249

CONFIDENTIAL - MITNICK

[redacted]

63 (Pages 246 - 249)

Veritext Legal Solutions
212-279-9424 www.veritext.com 212-490-3430



Page 250

CONFIDENTIAL - MITNICK

Page 252

CONFIDENTIAL - MITNICK

Page 251

CONFIDENTIAL - MITNICK

Q Okay. Thank you.

That's all I had on those exhibits.

(Document, Bates-stamped FRSI01398120 through FRSI01398127, was marked Plaintiffs Exhibit 134, for identification, as of this date.)

Page 253

CONFIDENTIAL - MITNICK

64 (Pages 250 - 253)

Veritext Legal Solutions
212-279-9424 www.veritext.com 212-490-3430

Page 254

CONFIDENTIAL - MITNICK

Page 256

CONFIDENTIAL - MITNICK

Page 255

CONFIDENTIAL - MITNICK

Page 257

CONFIDENTIAL - MITNICK

Page 306

CONFIDENTIAL - MITNICK

MR. TRETTER: I don't have any further questions.

MR. GREENSTEIN: Okay. Why don't we take a short break and go and discuss, and we'll be back.

MR. TRETTER: Okay.

VIDEOGRAPHER: Time is 4:28 p.m. We're going off the record.

(Whereupon, a brief recess was taken.)

VIDEOGRAPHER: The time is 4:38 p.m. We're back on the record.

Page 307

MR. GREENSTEIN: The defendant has -- the defendants have no questions for you.

Thank you very much for your time and attention today, Mr. Mitnick.

THE WITNESS: Thank you.

MR. TRETTER: And I join in that. You're excused.

VIDEOGRAPHER: All right.

The time is still 4:38 p.m. We are going off the record. This concludes today's testimony.

Thank you.

(Time noted: 4:38 p.m.)

Page 308

DINOSAUR FINANCIAL GROUP LLC, et al. vs. S&P GLOBAL, INC., et al.
1/30/2025 - JEFFREY MITNICK

ACKNOWLEDGEMENT OF DEPONENT

I, JEFFREY MITNICK, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted on the Errata to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

______________________ ______________
JEFFREY MITNICK Date
*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS
______ DAY OF _______________, 20___.

________________________
NOTARY PUBLIC

Page 309

C E R T I F I C A T I O N

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

I, JUDITH THATEN, Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That JEFFREY MITNICK, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that this transcript of such examination is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my [illegible] ry, 2025.

_______________________
JUDITH THATEN

INDEX

| WITNESS | PAGE |
|---|---|
| JEFFREY MITNICK | |
| Examination by: | |
| MR. TRETTER | 6 |

EXHIBITS

(Retained by Veritext Legal Solutions)

| PLAINTIFFS' | PAGE |
|---|---|
| Exhibit 121 LinkedIn profile of Jeffrey Mitnick | 11 |
| Exhibit 122 Document, Bates-stamped FRSI02646291 through FRSI02646294 | 23 |
| Exhibit 123 Document, Bates-stamped FRSI01632489 through FRSI01632540 | 60 |
| Exhibit 124 Document, Bates-stamped FRSI01625139 through FRSI01625148 | 86 |
| Exhibit 125 Document, Bates-stamped FRSI01755476.000001 through FRSI01755476.000031 | 92 |
| Exhibit 126 Document, Bates-stamped FRSI01755311 through FRSI01755353 | 107 |
| Exhibit 127 Document, Bates-stamped FRSI00237800 through FRSI00237813 | 119 |
| Exhibit 128 Document, Bates-stamped FRSI01742746 through FRSI0724749 | 133 |
| Exhibit 129 Connecticut Attorney General Meeting dated March 23, 2009 | 137 |
| Exhibit 130 Document, Bates-stamped FRSI01637291 | 150 |
| Exhibit 131 Document, Bates-stamped FRSI00132527 and PowerPoint titled CUSIP Global Services Implementation of the EC Commitments, dated May 9th, 2011 | 154 |
| Exhibit 132 Document, Bates-stamped SPGI-0000034219 through SPGI-0000034223 | 182 |

EXHIBITS (cont'd)

| PLAINTIFFS' | PAGE |
|---|---|
| Exhibit 133A Document, Bates-stamped FRSI00000095 through FRSI00000099 | 245 |
| Exhibit 133B Document, Bates-stamped FRSI00000095 through FRSI00000099 | 245 |
| Exhibit 134 Document, Bates-stamped FRSI01398120 through FRSI01398127 | 251 |
| Exhibit 135 Document, Bates-stamped FRSI01599990 through FRSI01600001 | 257 |
| Exhibit 136 Document, Bates-stamped FRSI01597549 through FRSI01597593 | 259 |
| Exhibit 137 Document, Bates-stamped FRSI01626079 through FRSI01626081 | 265 |
| Exhibit 138 Document, Bates-stamped FRSI01601166 through FRSI01601195 | 269 |
| Exhibit 139 Document, Bates-stamped FRSI01755432 through FRSI01755433 | 276 |
| Exhibit 140 Document, Bates-stamped FRSI01608801 through FRSI01608805 | 282 |
| Exhibit 141 Document, Bates-stamped FRSI01609317 through FRSI01609322 | 284 |
| Exhibit 142 Document, Bates-stamped FRSI01608475 through FRSI01608506 | 286 |
| Exhibit 143 Document, Bates-stamped FRSI000644947 through FRSI000644953 | 288 |
| (PREVIOUSLY MARKED) | |
| Exhibit 15 Document, Bates-stamped FRSI00000073 through FRSI00000082 | 189 |
| Exhibit 16 Document, Bates-stamped FRSI00000083 through FRSI00000091 | 189 |
| Exhibit 94 Document, Bates-stamped FRSI01708981 through FRSI0708983 | 297 |

INSTRUCTIONS TO WITNESS

Please read your deposition over carefully and make any necessary corrections. You should state the reason in the appropriate space on the errata sheet for any corrections that are made.

After doing so, please sign the errata sheet and date it.

You are signing same subject to the changes you have noted on the errata sheet, which will be attached to your deposition.

It is imperative that you return the original errata sheet to the deposing attorney within thirty(30) days of receipt of the deposition transcript by you. If you fail to do so, the deposition transcript may be deemed to be accurate and may be used in court.

DINOSAUR FINANCIAL GROUP LLC, et al. vs. S&P GLOBAL, INC., et al.

1/30/2025 - JEFFREY MITNICK

ERRATA SHEET

PAGE_____ LINE_____ CHANGE________________

____________________________________________

REASON______________________________________

PAGE_____ LINE_____ CHANGE________________

____________________________________________

REASON______________________________________

PAGE_____ LINE_____ CHANGE________________

____________________________________________

REASON______________________________________

PAGE_____ LINE_____ CHANGE________________

____________________________________________

REASON______________________________________

PAGE_____ LINE_____ CHANGE________________

____________________________________________

REASON______________________________________

PAGE_____ LINE_____ CHANGE________________

____________________________________________

REASON______________________________________

________________________ ______________

JEFFREY MITNICK Date

ERRATA SHEET
VERITEXT REPORTING COMPANY
7 TIMES SQUARE
NEW YORK, NEW YORK 10036
212-279-9424

NAME OF CASE:
DATE OF DEPOSTION:
NAME OF DEPONENT:

| PAGE | LINE (S) | CHANGE | REASON |
|---|---|---|---|
| ~~12~~ | ~~2~~ | ~~McGraw-Hill, Inc.~~ | ~~This was the legal name when I joined~~ |
| p.15 | 24,25 | Capitalize title | |
| p.19 | 8 | Arbitration should be "Bankers" | |
| p.21 | 24 | Rowan to Roome | - correct last name |
| p.58 | 24 | Subsidize | |
| p.68 | 10 | Observer should be Owner | |
| p.79 | 11 | proprietary is correct | |
| p.83 | 14 | Remove "the" | |
| p.166 | 21 | Parity is correct | |
| p.174 | 10 | Issuer | |
| p.201 | 14 | Plain | |
| p.228 | 5 | Data feed | |

I declare under penalty and perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: February 18, 2025

Jeffrey Mitnick