September 29, 2025

Hon. Katherine Polk Failla
United States District Court Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square, Room 618
New York, NY 10007
Failla_NYSDChambers@nysd.uscourts.gov

      Re:    *Dinosaur Financial Group LLC et al. v. S&P Global, Inc. et al.,* Case No. 1:22-cv-1860

Dear Judge Failla:

Pursuant to the parties' stipulation, Dkt No. 214, Defendants respond to Plaintiffs' September 18, 2025 letter-motion to seal related to their motion for class certification and appointment of class counsel. Dkt No. 224 ("Pls.' Letter Mot."). After reviewing Plaintiffs' positions as to the volume of materials Plaintiffs submitted with their motion, the parties disagree only as to redactions in a narrow set of documents: 12 exhibits, excerpts from 7 transcripts, 2 expert reports, and corresponding portions of Plaintiffs' motion for class certification.

This sealing dispute is narrow, but the principles at stake are not. The information Plaintiffs seek to make public includes sensitive business information—such as confidential contract terms, confidential strategic business practices, and non-public financial information—that, if disclosed, would cause concrete harm to the disclosing parties.

Courts in this Circuit apply a three-step test to determine if sealing is warranted. *See* Pls.' Letter Mot. at 4. At the third step, "the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-cv-4500-GHW, 2021 U.S. Dist. LEXIS 62974, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020)) (internal quotation marks omitted). This involves the consideration of "both 'the degree to which the subject matter is traditionally considered private rather than public,' as well as '[t]he nature and degree of the injury' to which the party resisting disclosure would be subjected were the privacy interest not protected. The latter inquiry entails 'consideration not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information.'" *Id.* at *13–14 (quoting *Amodeo*, 71 F.3d at 1051) (internal citations omitted).

"The demonstration of a valid need to protect the confidentiality of proprietary business information, such as internal analyses, business strategies, or customer negotiations, may be a legitimate basis to rebut the public's presumption of access to judicial documents." *SEC v. Telegram Grp., Inc.*, No. 19-cv-9439 (PKC), 2020 U.S. Dist. LEXIS 106592, at *8 (S.D.N.Y. June 17, 2020) (collecting cases). Courts in the Second Circuit routinely redact certain categories of information based on a finding that the need to protect proprietary business information overcomes the presumption of public access. *Id.* Relevant to Plaintiffs' objections, (1) the terms of

1

confidential agreements, (2) confidential strategic business practices, and (3) sensitive financial information are all categories of information that are properly redacted.[1]

**Confidential contractual terms**: Courts frequently grant motions to redact contractual terms where disclosure would harm a party or its business partners by disadvantaging future negotiations. *Dinosaur Financial Group LLC et al. v. S&P Global Inc. et al.*, No. 22-cv-1860 (Feb. 15, 2023), Dkt No. 96 (order granting sealing of Plaintiffs' Subscription Agreements); *Rubik's Brand Ltd. v. Flambeau, Inc.*, No. 17-CV-6559 (PGG) (KHP), 2021 U.S. Dist. LEXIS 53529, at *2 (S.D.N.Y. Mar. 22, 2021); *see also Capri Sun GmbH v. Am. Bev. Corp.*, No. 1:19-cv-01422 (PAE), 2021 U.S. Dist. LEXIS 121094, at *3–4 (S.D.N.Y. June 4, 2021) (granting motion to seal sensitive agreements with business counterparties).

Redactions to three contracts remain at issue: a template distribution agreement (Ex. 16), CGS's Web Display Addendum (Ex. 63), and a distribution agreement between CGS and a nonparty, the SEC (Ex. 39). CGS maintains each of these agreements as confidential information and makes them available only to entities that have filled out a "Use of Service Statement" and meet with a CGS employee to determine which type of agreement that entity needs. The CGS distribution agreement contains sensitive information, including definitions of service levels and applicable fees, and types of activities that trigger the need for a distribution rather than a subscription agreement. The confidential template agreement provides the starting point for CGS's negotiations with distributors and contains provisions incorporated into executed contracts that are currently in force. The sensitive nature of these agreements is confirmed by the Confidentiality clause in the agreement, which requires parties to agree that the agreement itself is confidential information that may not be disclosed to third parties. Ex. 16 ¶ 17. The Web Display Addendum likewise contains restrictions on the display of CGS data and is incorporated into active agreements with subscribers. Ex. 63 ¶ 3. The agreement with the SEC remains in force today.

These facts distinguish the agreements at issue here from those in cases Plaintiffs cite. First, in *Saks Inc. v. Attachmate Corp.*, the agreement was automatically provided to any user who installed the software, did not contain pricing provisions, and was not subject to negotiations that would result in the agreement being tailored to the user. No. 14 Civ. 4902 (CM), 2015 U.S. Dist. LEXIS 52867, at *3 (S.D.N.Y. Apr. 17, 2015). Moreover, the *Saks* Court's decision to refuse to maintain documents under seal turned on the movant's admission "that most of the record it originally filed under seal should in fact have been filed openly in the first place." 2015 U.S. Dist. LEXIS 52867, at *45. Second, in *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, a plaintiff sought to redact information presented at a high level of generality, e.g., "millions of dollars" and "more than 99 percent." 2023 U.S. Dist. LEXIS 8010, at *48 (S.D.N.Y. Jan. 17, 2023). The court deemed that information was "too non-specific to reasonably be considered sensitive." *Id.* In contrast, the information in the contracts that Defendants seek to redact include terms disclosing how CGS determines fees based on facts particular to each distributor and the reasons CGS requires certain entities to enter distribution agreements.

---

[1] Defendants defer to Xignite regarding its justification for sealing, *see* Pls.' Letter Mot. to Seal App'x C, but also propose their own redactions because these documents disclose a nonparty's use of proprietary CGS Data, confidential conversations regarding a nonparty's compliance with CGS's licensing terms, and CGS's investigation process and compliance program. *See* Pls.' Letter Mot. at 5.

**Confidential strategic business practices**:  Information regarding confidential strategic business practices is justifiably redacted.  This includes strategies for communicating with clients, "client meeting preparation techniques, client phone calls transcription techniques, and website and social media account posting techniques," provided the business takes steps to maintain the confidentiality of these practices.  *Ramirez v. Temin & Co.*, No. 20 Civ. 6258 (ER), 2020 U.S. Dist. LEXIS 216034, at *18 (S.D.N.Y. Nov. 18, 2020).  Confidential enforcement policies and investigation information are likewise properly redacted.  *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015); *see also GoSmile, Inc. v. Levine*, 769 F. Supp. 2d 630, 649–50 (S.D.N.Y. 2011) (redacting "highly proprietary material concerning the defendants' marketing strategies, product development, costs and budgeting").  Disclosing such information "may provide valuable insights into a company's current business practices that a competitor would seek to exploit.'"  *Louis Vuitton Malletier S.A.*, 97 F. Supp. 3d at 511 (quoting *Encycl. Brown Prods., Ltd. v. Home Box Off., Inc.*, 26 F.Supp.2d 606, 614 (S.D.N.Y. 1998)).

Many of the redactions that Defendants request (and Plaintiffs oppose) concern confidential CGS business strategies. For instance, the contested redactions in Exhibits 22 and 42 concern a comprehensive best practices document authored and maintained as confidential by CGS.  This document explains best practices across a range of business operations, including (1) the processes CGS uses to gather information about prospective and existing subscribers, (2) how CGS uses information provided by the Subscriber to calculate the applicable fee, (3) the prerequisites for escalating a potential or existing subscriber's account, (4) the stages of the audit and compliance program, (5) how CGS selects potential subscribers to approach regarding a license agreement, (6) strategies for communications with clients, and (7) the cancellation process.  The best practices document in each exhibit also contains a disclaimer that the information in the document is confidential and is not to be distributed without prior written permission.

Other documents concern strategies relevant to specific business operations.  Some concern CGS's policies for communicating with clients.  Exhibit 24 contains internal correspondence regarding who is authorized to send letters notifying entities of the need for a license and a template email and letter used to correspond with such entities.  Exhibit 47 likewise contains email templates and internal correspondence reflecting strategy decisions informing the content of those templates.  These documents disclose the sequence of steps that CGS takes once it determines an entity is using CGS data without authorization.

Still others involve investigations into unauthorized use of CGS data, compliance reviews, audits, and CGS data distribution terminations.  Exhibits 54 and 62 describe the details of a project CGS implements to identify unauthorized use for CGS Data and the outcomes of that project, with specific information identifying nonparties.  Moreover, the contested redactions to Exhibit 43 involve internal correspondence between CGS employees regarding the policies relevant to negotiating a license with a potential subscriber and what triggers an investigation into an entity's use of CGS Data in breach of the license terms.  The challenged redactions to Exhibits 49 and 50 disclose the procedures by which CGS terminates such further unauthorized uses of CGS Data.

Indeed, one case Plaintiffs cite recognizes that details of auditing processes are permissibly redacted.  In *Saks*, the court "redact[ed] references in documents about how [Defendant] chooses which customers to audit and exactly what the auditing process entails" as well as "documents that describe the 'triggers' that would cause [Defendant] to investigate a customer's compliance and

3

possibly lead to a customer audit." 2015 U.S. Dist. LEXIS 52867, at *53.  The court reasoned that disclosing such information could harm the Defendant's business by "provid[ing] customers with a roadmap for evading audits and engaging in unauthorized use" of the product.  *Id.*

Disclosing CGS's communication, enforcement, negotiation, and compliance strategies would enable actual and potential subscribers to circumvent CGS's efforts to prevent unauthorized redistributions of its data services.  The relevance of these documents to Plaintiffs' claims is just one factor to consider in assessing whether the redactions are justified.  Here, the interest in public access is outweighed by the need to protect Defendants from competitive harm by maintaining the confidentiality of sensitive business strategies and information.

**Financial information:**   "[C]ourts in this Circuit routinely permit parties to redact sensitive financial information."  *Graczyk v. Verizon Communs., Inc.*, 2020 U.S. Dist. LEXIS 50812, at *22 (S.D.N.Y. Mar. 24, 2020) (collecting cases); *see also N. Star IP Holdings, LLC v. Icon Trade Servs., LLC*, 710 F. Supp. 3d 183, 211 (S.D.N.Y. 2024) ("[D]etailed financial information concerning a privately held business, not previously disclosed to the public, will in most cases warrant confidential treatment.") (quoting *Closed Joint Stock Co. "CTC Network" v. Actava TV, Inc.*, No. 15-CV-8681 (GBD) (BCM), 2016 WL 1364942, at *3 (S.D.N.Y. Mar. 28, 2016)) (internal quotation marks omitted).  Redaction is proper to prevent public disclosure of a party's "sources of revenue and the amount of its revenue and sales; quantitative details about [its] user base for certain offerings; quantitative details about usage of specific product features; specific revenue amounts from certain offerings."  *Kewazinga Corp.*, 2021 U.S. Dist. LEXIS 62974, , at *17; *see also Golden Unicorn Enter., Inc. v. Audible, Inc.*, No. 1:21-cv-07059-JMF, 2023 U.S. Dist. LEXIS 30690, at *1 (S.D.N.Y. Feb. 22, 2023) (granting Defendant's motion to redact information used in royalty calculations, returns percentages, and internal financial information concerning returns in Plaintiffs' motion for class certification).

Plaintiffs have largely agreed that documents containing specific financial information, like invoices, price books, and revenue figures should be redacted.  *See, e.g.*, App'x A, Rows 57–90, 97–98, 103–04.  Large portions of the deposition transcript excerpts are justifiably redacted for the same reason, as are redactions to the Plaintiffs' Brief and the Einer Elhauge report.

In this regard, Plaintiffs demand damages in the amount of CGS's total licensing revenue – "the full amount of license fees paid by each Class member during the Class Period."  Pls.' Mem. of Law in Support of their Mot. for Class Cert. and Appointment of Class Counsel at 38, Dkt. No. 222.  That financial information has been maintained as confidential by CGS, and is highly competitively sensitive information regardless of how Plaintiffs want to use it.  Plaintiffs have agreed to redact the amount of revenue in other portions of their class certification filings.  App'x A, Rows 62, 63, 67–68, 73–75 (agreeing to redact dollar figures in tables 2–8 of Alan Schachter's report, which disclose S&P's revenue by time period and from various sources); *see also* App'x A, Rows 76–89 (agreeing to redact FactSet's total revenue reported as well as revenue by category and specific time period).

Regarding the deposition transcripts, Plaintiffs' only protest is that Defendants propose "to redact almost the entirety of each deposition transcript of its witnesses."  Pls.' Letter Mot. at 3.  This is both inaccurate and ignores the fact that the parties' present dispute concerns only excerpts,

not entire transcripts. Defendants have provided specific justifications for each redaction to the deposition transcript excerpts attached to Plaintiffs' brief. *See* Updated App'x B.

Defendants have submitted narrowly tailored redactions and justifications to support each redaction Plaintiffs challenge. Because Defendants' interest in protecting their confidential, competitively sensitive business strategies and information outweighs the interest in public access, Defendants respectfully request the Court maintain the redactions Defendants proposed in each document.

Finally, Defendants attach to this motion a copy of Plaintiffs' Appendix B with a new column reflecting Defendants' positions. As background, the parties exchanged initial redactions on September 4, 2025. Plaintiffs responded to Defendants' initial redactions on September 9, 2025, claiming that Defendants' redactions were "facially overinclusive," and providing just two specific examples of redactions they challenged. Ex. 1 at 1 (September 9 Letter From Grant Bercari to Ellison Snider).[2] The parties met and conferred on September 10, 2025, at which time Defendants expressed a willingness to consider adjusting redactions, including to Plaintiffs' brief, if Plaintiffs would provide specific examples where they believed the redactions were overbroad. Later that day, Plaintiffs replied that they "decline to undertake a line-by-line identification because that is not required as part of the sealing stipulation." Ex. 2 at 10 (E-mail correspondence RE: Dinosaur, et al. v. S&P Global et al. – Deposition Transcript Exhibits). Plaintiffs then did just that, filing a line-by-line list of their objections with their letter motion to seal.

At 11:01 a.m. on September 18, 2025, Plaintiffs provided Defendants with a version of Appendix B that contained a column entitled "Defendants' Redaction Justification Plaintiffs' Version." In that column, Plaintiffs had drafted justifications "based on [Defendants'] insert" and requested that Defendants revise and complete the chart within seven hours. Ex. 2 at 3–4. Because Plaintiffs did not afford Defendants sufficient time to comply with their unexpected request, Defendants asked Plaintiffs to remove these columns and stated that they would address Plaintiffs' objections in this response to the letter motion and have done so here.

Respectfully submitted,

| /s/ Eric J. Stock | /s/ Jeffrey Shinder | /s/ David Kiernan |
|---|---|---|
| Eric J. Stock | Jeffrey I. Shinder | David C. Kiernan |
| GIBSON, DUNN & CRUTCHER LLP | SHINDER CANTOR LERNER | JONES DAY |
| 200 Park Avenue, 47th Fl. | 14 Penn Plaza, Suite 1900 | 555 California Street, 26th Fl. |
| New York, NY 10166 | New York, NY 10122 | San Francisco, CA 94104 |
| Tel.: (212) 351-2301 | Tel.: (646) 960-8601 | Tel.: (415) 626-3939 |
| estock@gibsondunn.com | jeffrey@scl-llp.com | dkiernan@jonesday.com |
| Attorney for Defendant S&P Global, Inc. | Attorney for Defendant FactSet Research Systems, Inc. | Attorney for Defendant American Bankers Association |

---

[2] Exhibits 1 and 2 are attached to the declaration of Keagan H. Potts which accompanies this motion.