# EXHIBIT 6

Page 1

1

2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK

3    ----------------------------------x
     DINOSAUR FINANCIAL GROUP LLC,

4    SWISS LIFE INVESTMENT
     MANAGEMENT HOLDING AG, and

5    HILDENE CAPITAL MANAGEMENT,
     LLC, on behalf of themselves

6    and all others similarly
     situated,

7
                         Plaintiffs,
8
              -against-
9
                                      Civil Action No.:
                                      22 Civ. 1860 (KPF)
10

     S&P GLOBAL, INC., AMERICAN BANKERS
11   ASSOCIATION, and FACTSET RESEARCH
     SYSTEMS INC.,

12
                         Defendants.
13
     ----------------------------------x
14                     January 30, 2025
15                     9:06 a.m.
16

17              * * * CONFIDENTIAL * * *
18        VIDEOTAPED DEPOSITION of JEFFREY MITNICK, held
19   at the law offices of Wollmuth Maher & Deutsch LLP,
20   500 5th Avenue, New York, New York, before Judith
21   Thaten, a Certified Livenote Reporter and Notary
22   Public of the State of New York.
23

24

25

Page 2

```
1
2        A P P E A R A N C E S
3   ON BEHALF OF PLAINTIFFS
         WOLLMUTH MAHER & DEUTSCH LLP
4        500 Fifth Avenue
         New York, New York 10110
5        BY:  LYNDON TRETTER, ESQ.
              ltretter@wmd-law.com
6             KYLIE SPENCER, ESQ.
              kspencer@wmd-law.com
7
8   ON BEHALF OF DEFENDANT  - S&P Global, Inc.
         GIBSON DUNN & CRUTCHER LLP
9        200 Park Avenue, 47th Floor
         New York, New York 10166
10       BY:  ERIC STOCK, ESQ.
              estock@gibsondunn.com
11
12  ON BEHALF OF DEFENDANT - American Bankers
    Association
13       JONES DAY
         555 S. Flower Street, 50th Floor
14       Los Angeles, California 90071
         BY:  CAROLINE MITCHELL, ESQ.
15            cnmitchell@jonesday.com
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1
2        A P P E A R A N C E S (cont'd)
3
4   ON BEHALF OF DEFENDANT - FactSet Research
    Systems, Inc.
5        CONSTANTINE CANNON LLP
         1001 Pennsylvania Ave, NW, Suite 1300N
6        Washington, DC 20004
         BY:  SETH GREENSTEIN, ESQ.
7             sgreenstein@constantinecannon.com
8
9   ALSO PRESENT:
10       JONA KIM, ESQ., In-house Counsel, FactSet
11       RON MARRAZZO, Legal Video Specialist
         Veritext Legal Solutions
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
1
2        IT IS HEREBY STIPULATED AND AGREED, by and
3   among counsel for the respective parties hereto,
4   that the filing, sealing and certification of the
5   within deposition shall be and the same are hereby
6   waived.
7        IT IS FURTHER STIPULATED AND AGREED that all
8   objections, except to the form of the question,
9   shall be reserved to the time of trial;
10       IT IS FURTHER STIPULATED AND AGREED that the
11  within deposition may be signed before any Notary
12  Public with the same force and effect as if signed
13  and sworn to before the court.
14            * * * *
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
1        CONFIDENTIAL - MITNICK
2        VIDEOGRAPHER:  Good morning.
3   We're now going on the record.
4        The time is approximately
5   9:06 a.m.  It is the 30th of
6   January 2025.
7        Please note that the
8   microphones are sensitive and may
9   pick up whispering and private
10  conversations.  Please mute your
11  phones at this time.
12       Audio and video recording
13  will continue to take place unless
14  all parties agree to go off the
15  record.
16       This is the video-recorded
17  deposition of Jeffrey Mitnick in
18  the matter of Dinosaur Financial
19  Group LLC, et al., versus
20  S&P Global, Inc., et al.
21       This case is filed in the
22  United States District Court,
23  Southern District of New York.
24  Docket Number is 1860 (KPF).
25       The location of this
```

2 (Pages 2 - 5)

Page 6

CONFIDENTIAL - MITNICK

1    CONFIDENTIAL - MITNICK
2  deposition is Wollmuth Maher &
3  Deutsch located at
4  500 Fifth Avenue in New York City.
5    My name is Ron Marrazzo,
6  representing Veritext Legal
7  Solutions.  Our court reporter is
8  Judy Castore, from the firm
9  Veritext Legal Solutions.
10    I'm not related to any party
11  in this action, nor am I
12  financially interested in its
13  outcome.
14    All counsel attending live
15  and remotely will be noted on the
16  written transcript.
17    We can now swear in the
18  witness and proceed.
19  J-E-F-F-R-E-Y  M-I-T-N-I-C-K,
20    Having been duly sworn by a Notary Public
21  within and for the State of New York, stated an
22  address as 150 East 77th Street, Apartment 12E, New
23  York, New York, was examined and testified as
24  follows:
25  EXAMINATION BY MR. TRETTER:

Page 7

1    CONFIDENTIAL - MITNICK
2    Q   Good morning, Mr. Mitnick.
3    A   Good morning.
4    Q   As I introduced myself, my
5  name is Lyndon Tretter.  I'm one of the
6  counsel for the plaintiffs.  And I am
7  here to ask you a few questions today
8  in the litigation against, among
9  others, FactSet.
10    I know you are an attorney,
11  so you've probably been to a lot of
12  depositions.  But have you ever had
13  your own deposition taken before?
14    A   No.
15    Q   All right.  So if, for any
16  reason, you have any problem with any
17  question of mine, I'm happy to rephrase
18  it or ask it again, or we'll work
19  things out.
20    A   Thank you.
21    Q   What did you do to prepare
22  for today's deposition?
23    A   To prepare for today's
24  deposition, I met several times with my
25  counsel over the phone and in person.

Page 8

1    CONFIDENTIAL - MITNICK
2    Q   Did you review any documents
3  in connection with your preparation?
4    A   Yes.
5    Q   Did any of the documents
6  refresh your recollection as to past
7  events?
8    A   Generally, yes.
9    Q   Okay.  Is there anything that
10  stands out in your mind that you hadn't
11  thought about in a while but the
12  documents brought you back to that
13  period?
14    MR. GREENSTEIN:  I'm going to
15  object on the basis of work
16  product privilege.
17    If you can answer the
18  question without impinging on the
19  privilege, you may.
20    A   Could you repeat the
21  question?
22    Q   Yeah.
23    Is there anything that -- in
24  the documents that brought you back and
25  refreshed your recollection about

Page 9

1    CONFIDENTIAL - MITNICK
2  certain events that you may have
3  forgotten?
4    A   Not really, no.
5    Q   Okay.
6    (Whereupon, a discussion was
7  held off the record.)
8    MR. TRETTER:  We're going to
9  mark some exhibits, and I think
10  we're starting with 121.
11    MR. GREENSTEIN:  Before we
12  begin, I do want to say something
13  on the record, please.
14    MR. TRETTER:  Sure.
15    MR. GREENSTEIN:  As you know,
16  Mr. Mitnick is hearing impaired.
17  He has cochlear implants, which
18  means, basically, without the
19  apparatus that he wears, he cannot
20  hear at all.  With the apparatus,
21  his hearing is better but not
22  perfect.
23    And so it's important that
24  when you ask him questions, please
25  face Mr. Mitnick, because then he

3 (Pages 6 - 9)

1        CONFIDENTIAL - MITNICK
2    will be able to read your lips and
3    would be able to supplement what
4    he hears through the apparatus
5    with his ability to read lips.
6        Even so, there may be
7    occasions where his perception of
8    what you are trying to say is
9    imperfect.  And so -- and we'll do
10   the best we can.  And if there is
11   any question, of course,
12   Mr. Mitnick can follow up.
13       But there may be occasions
14   where, candidly, he doesn't know
15   what he doesn't know.  So we'll
16   just deal with that as we can.
17       MR. TRETTER:  Okay.
18       MR. GREENSTEIN:  Thank you.
19       MR. TRETTER:  I appreciate
20   that.
21       Let the record reflect I've
22   twisted my chair as much as I can
23   in your direction.
24       THE WITNESS:  Thank you.
25       (LinkedIn profile of Jeffrey

1        CONFIDENTIAL - MITNICK
2    Mitnick, was marked Plaintiffs
3    Exhibit 121, for identification,
4    as of this date.)
5        Q   All right.  Perhaps, you can
6    identify for the record, Mr. Mitnick,
7    what has been marked as Plaintiffs'
8    Exhibit 121?
9        A   It appears to be a printout
10   of my LinkedIn page.
11       Q   Did you create it?
12       A   Yes.
13       Q   And is it accurate?
14       A   To my knowledge, it looks
15   accurate.
16       Q   I see that you graduated from
17   a very fine school, Columbia.
18       A   Yes.
19       Q   Not that I graduated from
20   that school.  But I went to the
21   University of Michigan.
22       The year of graduation is
23   1987; is that correct?
24       A   Correct.
25       Q   And you started with

1        CONFIDENTIAL - MITNICK
2    S&P Global in April of 1992?
3        A   Correct.
4        Q   So what did you do in
5    between?
6        A   When I graduated Columbia, I
7    started as a corporate associate at the
8    law firm of Simpson Thacher & Bartlett
9    in New York City.  And I spent about
10   four and a half to five years there
11   before I left Simpson Thacher.
12       Q   So you and I were in the same
13   office at the same time.
14       A   We may have been.
15       Q   Okay.  It was a big place.
16       Were you at One Battery Park
17   Plaza?
18       A   Yes, for a period.
19       Q   I'm sorry, when did you leave
20   Simpson?
21       When did you leave Simpson?
22       A   1992.
23       Q   And you took that job with
24   S&P?
25       A   At the time, the organization

1        CONFIDENTIAL - MITNICK
2    was called McGraw-Hill, Inc.
3        Q   And what was your first
4    position there?
5        A   I was a staff counsel.
6        Q   Did there come a time when
7    you worked for McGraw Hill that you
8    assumed responsibility for CUSIP Global
9    Services?
10       (Clarification by the
11   reporter.)
12       MR. TRETTER:  CUSIP,
13   C-U-S-I-P.
14       A   I'm not sure what you mean by
15   assumed responsibility.
16       Q   Well, in your day-to-day job
17   that you were advising, whatever work
18   you were doing as an in-house counsel,
19   did there come a time where you were
20   doing some work for CGS, I will call
21   it?
22       A   I had a significant amount of
23   other work I was responsible for.  And
24   CUSIP Global Services was one small
25   portion of that work when I joined

Page 14

CONFIDENTIAL - MITNICK

1  McGraw Hill.
2  McGraw Hill.
3      Q   Okay.  Could you take me
4  through your path when you were at --
5  your career path at the company?
6      A   I'm not sure which company
7  you are talking about.
8      Q   McGraw Hill.
9      A   Okay.  I started in 1987 as a
10  staff lawyer.  And at a certain point
11  in time, McGraw Hill split, such that
12  the business known as Standard &
13  Poor's, which was part of McGraw Hill,
14  as well as various education publishing
15  businesses, were split in two.  So the
16  company split in half.
17      And I elected to go with the
18  portion of the company that included
19  S&P and all the other financial
20  information businesses.
21      And the name at some point
22  changed to S&P Global.
23      Q   What year around was that?
24      A   I'm not sure.
25      Q   Okay.  At the time of the

Page 15

CONFIDENTIAL - MITNICK

1  split, what were your responsibilities?
2  split, what were your responsibilities?
3      A   I handled M&A transactions.
4  I handled minority investments, complex
5  technology transactions.
6      I handled the review and
7  drafting of distribution agreements,
8  license agreements, publishing
9  agreements.
10      Q   Did there come a time when
11  you had more responsibility for CGS's
12  activities than other aspects of S&P's
13  business?
14      A   Over the years, I worked on a
15  number of different matters all the
16  time.  At certain points in time, when
17  there were major issues facing the
18  CUSIP business, I would spend more time
19  on those matters.  But I wouldn't be
20  able to delineate the percentages or
21  time.
22      Q   Okay.  Today, in your role,
23  what is your title today?
24      A   Assistant general counsel and
25  senior vice president for FactSet.

Page 16

CONFIDENTIAL - MITNICK

1      Q   And do you perform services
2      Q   And do you perform services
3  or work for FactSet not relating to
4  CGS?
5      A   I would say the overwhelming
6  majority of my work is for CUSIP Global
7  Services.  That was what I was hired to
8  do.
9      Q   Okay.  And what I'm trying to
10  now find out is when did that
11  concentration happen in your career,
12  how far back in time?
13      A   Well, in March 2022, S&P was
14  required to sell CUSIP Global Services
15  as a result of another transaction it
16  was entering into.  And at that point,
17  S&P did not have any specific lawyers
18  relating to CUSIP Global Services.
19      And at that time, during the
20  transaction and while the transaction
21  was pending, I was asked if I would
22  consider leaving S&P to join the bidder
23  who would prevail to purchase CUSIP
24  Global Services.
25      Q   So after that time, nearly

Page 17

CONFIDENTIAL - MITNICK

1  all of your work as an employee for
2  all of your work as an employee for
3  FactSet related to CGS; is that
4  correct?
5      A   For the first 12 months, I
6  did handle some specific FactSet
7  transactional matters as well as my
8  CUSIP responsibilities.
9      Q   Okay.  I would like to now
10  focus on the time period prior to March
11  of 2022.
12      And if you had to give a
13  percentage of your time, am I correct
14  that at that point, you were an
15  employee of S&P?
16      A   Correct.
17      Q   Okay.  And in that period, in
18  the 2020s, let's say, how much of your
19  time was devoted to CGS matters, and
20  how much was devoted to other S&P
21  matters?
22      A   As you know, it's hard to
23  calculate days and weeks and months of
24  percentages.
25      But I would say 20 percent

Page 18

CONFIDENTIAL - MITNICK

1    CONFIDENTIAL - MITNICK
2  for CUSIP Global Services; 80 percent
3  other S&P matters.
4      Q   Were there other attorneys
5  besides yourself in-house at S&P that
6  were assisting you on the CGS matters?
7      A   Yes.
8      Q   Who were they?
9      A   Amanda Samuel was a lawyer
10 within the S&P market intelligence
11 legal group.  And she was involved in
12 CUSIP matters.  And I met with her
13 often and discussed CUSIP matters with
14 her.
15         There were other attorneys
16 who were responsible for handling the
17 day-to-day work, signing customer
18 agreements.  So those folks would have
19 also been involved in supporting the
20 CUSIP business.
21     Q   Putting those folks aside,
22 was there any attorney other than
23 Amanda Samuel that had those
24 responsibilities for CGS?
25     A   Well, Amanda's supervisor at

Page 19

1    CONFIDENTIAL - MITNICK
2  the time, I believe his name was Adam
3  Marchuck, was the head of that legal
4  department business unit.
5      Q   And in your responsibilities,
6  your CGS-facing responsibilities, did
7  you have any counterparts at the
8  American Arbitration Association that
9  you dealt with?
10     MR. GREENSTEIN:  Objection to
11     form.
12     A   Yes.
13     Q   Who were they?
14     A   Over the years, I worked with
15 many different people at the American
16 Bankers Association.
17         Currently, the primary people
18 I work with today are Tab Stewart,
19 Karin Flynn, and Tom Greco.
20     Q   And if we were to go back
21 into the 1990s period or 2010s, what --
22 would the cast of characters be
23 different?
24     MR. GREENSTEIN:  Objection to
25     form.

Page 20

1    CONFIDENTIAL - MITNICK
2      A   They had a lot of people who
3  came and went over the years.  I
4  remember Diane Poole, who I believe was
5  there for many years.
6      Q   Focusing now on yourself and
7  your own work responsibilities, what
8  kind of work did you do for CGS from --
9  in the 1990s and the aughts, the 2000s?
10     A   At the very beginning, it was
11 simply reviewing customer agreements
12 and distribution agreements.
13         That was the primary job
14 responsibility.
15     Q   Okay.  And did that change
16 later, as to the 2010s and 2020s?
17     A   Over time.  I worked on more
18 types of transactions, involving CUSIP
19 Global Services, not necessarily
20 customer agreements.
21     Q   What were the examples --
22 without giving me any advice that you
23 were giving, but what would be the
24 examples, topic areas?
25     A   One topic area would be

Page 21

1    CONFIDENTIAL - MITNICK
2  alliances to assign identifiers to new
3  asset classes.
4      Q   I understand that.
5         Anything else come to mind,
6  topic-wise?
7      A   I worked on a variety of
8  agreements relating to CGS's role as
9  the US national numbering agency and
10 contracts with the Association of
11 National Numbering Agencies.
12     Q   Okay.  Anything else that
13 comes to mind?
14     A   At the moment, no.
15     Q   To whom did you report, over
16 time, in -- when it was owned by --
17 when CGS was part of S&P?
18     A   I had many bosses --
19     Q   Sorry to hear that.
20     A   -- over the 30 years.
21         So I could review...
22     Q   Well, why don't you give me
23 your direct supervisors over time.
24     A   Okay.  Catherine Rowan,
25 Scott Bennett, Kate Brennan, Jonathan

6 (Pages 18 - 21)



Page 22

```
1          CONFIDENTIAL - MITNICK
2  Martin, Tasha Matharu.
3      Q    Were these people that were
4  also in the S&P legal department?
5      A    Yes.
6      Q    Okay.  Did you have any
7  reporting lines within CGS?
8      A    No.
9      Q    With whom -- did you have
10 contact with other CGS executives?
11     A    Yes.
12     Q    And who were your primary
13 points of contact within CGS?
14     A    At what point in time?
15     Q    Let's start in the 1990s.
16     A    Jim Taylor was the head of --
17 at that time, it was called CUSIP --
18 the CUSIP Service Bureau.
19     Q    Okay.
20     A    Scott Preiss, who is
21 currently the head of CUSIP Global
22 Services.
23         Today I work closely with
24 Roger Fahy, Matt Bastian,
25 Darren Purcell, Dave Hunter.
```

Page 23

```
1          CONFIDENTIAL - MITNICK
2      Q    Okay.  I'm not -- this is not
3  a test.  Those are the main people that
4  come to mind today?
5      A    Correct, yes.
6      Q    Okay.  That's all I have that
7  with that exhibit.
8         (Document, Bates-stamped
9      FRSI02646291 through FRSI02646294,
10     was marked Plaintiffs Exhibit 122,
11     for identification, as of this
12     date.)
13        MR. TRETTER:  Plaintiffs'
14     Exhibit 122 --
15        MS. MITCHELL:  Could you
16     please wait until we have the
17     exhibit before you proceed?
18        MR. TRETTER:  Sure.
19     Okay?
20        MS. MITCHELL:  Yes.  Fine.
21     Thank you.
```

Page 24

CONFIDENTIAL - MITNICK

Page 25

CONFIDENTIAL - MITNICK

7 (Pages 22 - 25)



Page 26

CONFIDENTIAL - MITNICK

Page 27

CONFIDENTIAL - MITNICK

Page 28

CONFIDENTIAL - MITNICK

Page 29

CONFIDENTIAL - MITNICK

8 (Pages 26 - 29)



212-279-9424          Veritext Legal Solutions          212-490-3430
www.veritext.com



Page 34
1    CONFIDENTIAL - MITNICK

Page 36
1    CONFIDENTIAL - MITNICK

Page 35
1    CONFIDENTIAL - MITNICK

Page 37
1    CONFIDENTIAL - MITNICK

10 (Pages 34 - 37)





Page 42

1        CONFIDENTIAL - MITNICK
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 43

1        CONFIDENTIAL - MITNICK
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 44

1        CONFIDENTIAL - MITNICK
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 45

1        CONFIDENTIAL - MITNICK
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

12 (Pages 42 - 45)



Page 94

1          CONFIDENTIAL - MITNICK

Page 95

1          CONFIDENTIAL - MITNICK

Page 96

1          CONFIDENTIAL - MITNICK

Page 97

1          CONFIDENTIAL - MITNICK

25 (Pages 94 - 97)



Page 98
1    CONFIDENTIAL - MITNICK

Page 99
1    CONFIDENTIAL - MITNICK

Page 100
1    CONFIDENTIAL - MITNICK

Page 101
1    CONFIDENTIAL - MITNICK

26 (Pages 98 - 101)



Veritext Legal Solutions
212-279-9424          www.veritext.com          212-490-3430



Page 106

1          CONFIDENTIAL - MITNICK

22    Q   Okay.  That's all I had on
23  that one.
24    A   Okay.
25       (Document, Bates-stamped

Page 107

1          CONFIDENTIAL - MITNICK
2    FRSI01755311 through FRSI01755353,
3    was marked Plaintiffs Exhibit 126,
4    for identification, as of this
5    date.)

Page 108

1          CONFIDENTIAL - MITNICK
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 109

1          CONFIDENTIAL - MITNICK
2
3
4
5

28 (Pages 106 - 109)



Page 110
1        CONFIDENTIAL - MITNICK

Page 112
1        CONFIDENTIAL - MITNICK

Page 111
1        CONFIDENTIAL - MITNICK

Page 113
1        CONFIDENTIAL - MITNICK



Page 182

1     CONFIDENTIAL - MITNICK
2     A F T E R N O O N   S E S S I O N
3         (Time noted: 1:25 p.m.)
4   J-E-F-F-R-E-Y   M-I-T-N-I-C-K,
5         Resumed, having been previously sworn by a
6   Notary Public within and for the State of New York,
7   was further examined and testified under oath as
8   follows:
9         VIDEOGRAPHER:  The time is
10    1:25 p.m.  We are back on the
11    record.
12  CONTINUED EXAMINATION BY MR. TRETTER:
13        Welcome back from lunch.
14    We're going to mark our next
15    exhibit.  We'll ask the reporter
16    to mark it, please.
17        (Document, Bates-stamped
18    SPGI-0000034219 through
19    SPGI-0000034223, was marked
20    Plaintiffs Exhibit 132, for
21    identification, as of this date.)

Page 183

1     CONFIDENTIAL - MITNICK

Page 184

1     CONFIDENTIAL - MITNICK

Page 185

1     CONFIDENTIAL - MITNICK

Veritext Legal Solutions
212-279-9424     www.veritext.com     212-490-3430



Page 186
1     CONFIDENTIAL - MITNICK

Page 188
1     CONFIDENTIAL - MITNICK

Page 187
1          CONFIDENTIAL - MITNICK

Page 189
1          CONFIDENTIAL - MITNICK
2     Q    Okay.  That's all I have on
3 that.
4          (Whereupon, a discussion was
5     held off the record.)
6          (Document, Bates-stamped
7     FRSI00000073 through FRSI00000082,
8     was previously marked Plaintiffs
9     Exhibit 15, for identification,
10    and referenced.)
11         (Document, Bates-stamped
12    FRSI00000083 through FRSI00000091,
13    was previously marked Plaintiffs
14    Exhibit 16, for identification,
15    and referenced.)
16    Q    Mr. Mitnick, I'm going to
17 show you a couple of documents that
18 were marked at somebody else's
19 deposition.
20         So there is P-15 and P-16.
21    A    Okay.  Thank you.
22
23
24
25

Veritext Legal Solutions
212-279-9424          www.veritext.com          212-490-3430



Veritext Legal Solutions
212-279-9424          www.veritext.com          212-490-3430

Page 194

1          CONFIDENTIAL - MITNICK

Page 196

1          CONFIDENTIAL - MITNICK



Page 195

1          CONFIDENTIAL - MITNICK

Page 197

1          CONFIDENTIAL - MITNICK

Veritext Legal Solutions
212-279-9424          www.veritext.com          212-490-3430

Page 198
1          CONFIDENTIAL - MITNICK

Page 200
1          CONFIDENTIAL - MITNICK

Page 199
1          CONFIDENTIAL - MITNICK

Page 201
1          CONFIDENTIAL - MITNICK





Page 202
1          CONFIDENTIAL - MITNICK

Page 204
1          CONFIDENTIAL - MITNICK

Page 203
1          CONFIDENTIAL - MITNICK

Page 205
1          CONFIDENTIAL - MITNICK

Veritext Legal Solutions
212-279-9424          www.veritext.com          212-490-3430

Page 206

1        CONFIDENTIAL - MITNICK

Page 208

1        CONFIDENTIAL - MITNICK

Page 207

1        CONFIDENTIAL - MITNICK

Page 209

1        CONFIDENTIAL - MITNICK



Veritext Legal Solutions
212-279-9424                    www.veritext.com                    212-490-3430



Page 210
1     CONFIDENTIAL - MITNICK

Page 212
1     CONFIDENTIAL - MITNICK

Page 211

Page 213
1     CONFIDENTIAL - MITNICK

23          MR. GREENSTEIN:  Objection.
24     Calls for legal conclusion.
25          Objection to form.

54 (Pages 210 - 213)



Page 214

1          CONFIDENTIAL - MITNICK
2              MR. TRETTER:  Do you have the
3      witness's answer?
4              MS. COURT REPORTER:  Yes,
5      sir.

Page 216

CONFIDENTIAL - MITNICK

Page 215

CONFIDENTIAL - MITNICK

Page 217

CONFIDENTIAL - MITNICK





Veritext Legal Solutions
212-279-9424          www.veritext.com          212-490-3430

Page 226

1     CONFIDENTIAL - MITNICK



Page 228

1     CONFIDENTIAL - MITNICK

Page 227

1     CONFIDENTIAL - MITNICK

Page 229

1     CONFIDENTIAL - MITNICK



Page 230
1          CONFIDENTIAL - MITNICK

Page 232
1          CONFIDENTIAL - MITNICK

Page 231
1          CONFIDENTIAL - MITNICK

Page 233
1          CONFIDENTIAL - MITNICK

59 (Pages 230 - 233)



Veritext Legal Solutions
212-279-9424          www.veritext.com          212-490-3430



Page 242

1              CONFIDENTIAL - MITNICK

Page 243

1              CONFIDENTIAL - MITNICK

Page 244

1              CONFIDENTIAL - MITNICK
2
3
4
5          MR. GREENSTEIN:  Objection to
6      form.
7      Q    Okay.  Okay.  Maybe I am
8  thinking of something else.
9          MR. TRETTER:  That's all I
10     have for the moment.
11         MR. GREENSTEIN:  While there
12     is a break in the action, let
13     me -- while we get the next
14     document, let me just --
15         VIDEOGRAPHER:  I'm sorry, let
16     me read us off.  Unless you want
17     to go on the record.
18         MR. GREENSTEIN:  No, this is
19     on the record.
20         VIDEOGRAPHER:  Okay.  Sorry.
21         MR. GREENSTEIN:  I was just
22     going to say before you get the
23     next -- I don't want forget to do
24     this.
25         We're designating this

Page 245

1              CONFIDENTIAL - MITNICK
2      deposition as highly confidential
3      for further review.  And we do
4      want the opportunity to review and
5      submit an errata and sign.
6          As long as there was a second
7      or two, I thought I would get that
8      on.
9          MR. TRETTER:  That's fine.
10     We'll mark these next two.
11         (Document, Bates-stamped
12     FRSI00000095 through FRSI00000099,
13     was marked Plaintiffs Exhibit
14     133A, for identification, as of
15     this date.)
16         (Document, Bates-stamped
17     FRSI00000068 through FRSI00000072,
18     was marked Plaintiffs Exhibit
19     133B, for identification, as of
20     this date.)
21
22
23
24
25

62 (Pages 242 - 245)



Page 246

CONFIDENTIAL - MITNICK

Page 248

CONFIDENTIAL - MITNICK

Page 247

CONFIDENTIAL - MITNICK

Page 249

CONFIDENTIAL - MITNICK

Veritext Legal Solutions
212-279-9424    www.veritext.com    212-490-3430



Page 250
1          CONFIDENTIAL - MITNICK

Page 252
1          CONFIDENTIAL - MITNICK

Page 251
1          CONFIDENTIAL - MITNICK

16    Q    Okay.  Thank you.
17         That's all I had on those
18 exhibits.
19         (Document, Bates-stamped
20    FRSI01398120 through FRSI01398127,
21    was marked Plaintiffs Exhibit 134,
22    for identification, as of this
23    date.)

Page 253
1          CONFIDENTIAL - MITNICK
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

64 (Pages 250 - 253)



Page 254
1          CONFIDENTIAL - MITNICK

Page 256
1          CONFIDENTIAL - MITNICK

Page 255
1          CONFIDENTIAL - MITNICK

Page 257
1          CONFIDENTIAL - MITNICK

Veritext Legal Solutions
212-279-9424          www.veritext.com          212-490-3430

Page 306

```
 1        CONFIDENTIAL. - MITNICK

[redacted]

12        MR. TRETTER:  I don't have
13  any further questions.
14        MR. GREENSTEIN:  Okay.  Why
15  don't we take a short break and go
16  and discuss, and we'll be back.
17        MR. TRETTER:  Okay.
18        VIDEOGRAPHER:  Time is
19  4:28 p.m.  We're going off the
20  record.
21        (Whereupon, a brief recess
22  was taken.)
23        VIDEOGRAPHER:  The time is
24  4:38 p.m.  We're back on the
25  record.
```

Page 308

```
 1  DINOSAUR FINANCIAL GROUP LLC, et al.
    vs. S&P GLOBAL, INC., et al.
 2  1/30/2025 - JEFFREY MITNICK
 3      ACKNOWLEDGEMENT OF DEPONENT
 4     I, JEFFREY MITNICK, do hereby declare
 5  that I have read the foregoing transcript,
 6  I have made any corrections, additions, or
 7  changes I deemed necessary as noted on the
 8  Errata to be appended hereto, and that the
 9  same is a true, correct and complete
10  transcript of the testimony given by me.
11
12  _____  _____
13  JEFFREY MITNICK        Date
14  *If notary is required
15
16     SUBSCRIBED AND SWORN TO BEFORE ME THIS
17  _____ DAY OF _____, 20___.
18
19
20  _____
21  NOTARY PUBLIC
22
23
24
25
```

Page 307

```
 1
 2        MR. GREENSTEIN:  The
 3  defendant has -- the defendants
 4  have no questions for you.
 5        Thank you very much for your
 6  time and attention today,
 7  Mr. Mitnick.
 8        THE WITNESS:  Thank you.
 9        MR. TRETTER:  And I join in
10  that.  You're excused.
11        VIDEOGRAPHER:  All right.
12        The time is still 4:38 p.m.
13  We are going off the record.  This
14  concludes today's testimony.
15        Thank you.
16        (Time noted: 4:38 p.m.)
17
18
19
20
21
22
23
24
25
```

Page 309

```
 1
 2        C E R T I F I C A T I O N
 3
    STATE OF NEW YORK )
 4               ) ss.:
    COUNTY OF NEW YORK )
 5
 6        I, JUDITH THATEN, Shorthand Reporter
 7  and Notary Public within and for the State
 8  of New York, do hereby certify:
 9        That JEFFREY MITNICK, the witness
10  whose deposition is hereinbefore set
11  forth, was duly sworn by me and that this
12  transcript of such examination is a true
13  record of the testimony given by such
14  witness.
15        I further certify that I am not
16  related to any of the parties to this
17  action by blood or marriage and that I am
18  in no way interested in the outcome of
19  this matter.
20        IN WITNESS WHEREOF, I have hereunto
21  set my                           ry,
22  2025.
23
24  _____
        JUDITH THATEN
25
```

78 (Pages 306 - 309)

Page 310

1
2          I N D E X
3   WITNESS                    PAGE
    JEFFREY MITNICK
4      Examination by:
          MR. TRETTER        6
5
       E X H I B I T S
6   (Retained by Veritext Legal Solutions)
    PLAINTIFFS'              PAGE
7   Exhibit 121 LinkedIn profile of Jeffrey    11
       Mitnick
8   Exhibit 122 Document, Bates-stamped        23
       FRSI02646291 through FRSI02646294
9   Exhibit 123 Document, Bates-stamped        60
       FRSI01632489 through FRSI01632540
10  Exhibit 124 Document, Bates-stamped        86
       FRSI01625139 through FRSI01625148
11  Exhibit 125 Document, Bates-stamped        92
       FRSI01755476.000001 through
12     FRSI01755476.000031
    Exhibit 126 Document, Bates-stamped        107
13     FRSI01755311 through FRSI01755353
    Exhibit 127 Document, Bates-stamped        119
14     FRSI00237800 through FRSI00237813
    Exhibit 128 Document, Bates-stamped        133
15     FRSI01742746 through FRSI01724749
    Exhibit 129 Connecticut Attorney General   137
16     Meeting dated March 23, 2009
    Exhibit 130 Document, Bates-stamped        150
17     FRSI01637291
    Exhibit 131 Document, Bates-stamped        154
18     FRSI00132527 and PowerPoint titled
       CUSIP Global Services Implementation
19     of the EC Commitments, dated May 9th,
       2011
20  Exhibit 132 Document, Bates-stamped        182
       SPGI-0000034219 through
21     SPGI-0000034223
22
23
24
25

Page 311

1
2          E X H I B I T S (cont'd)
    PLAINTIFFS'              PAGE
3   Exhibit 133A Document, Bates-stamped       245
       FRSI00000095 through FRSI00000099
4   Exhibit 133B Document, Bates-stamped       245
       FRSI00000095 through FRSI00000099
5   Exhibit 134 Document, Bates-stamped        251
       FRSI01398120 through FRSI01398127
6   Exhibit 135 Document, Bates-stamped        257
       FRSI01599990 through FRSI01600001
7   Exhibit 136 Document, Bates-stamped        259
       FRSI01597549 through FRSI01597593
8   Exhibit 137 Document, Bates-stamped        265
       FRSI01626079 through FRSI01626081
9   Exhibit 138 Document, Bates-stamped        269
       FRSI01601166 through FRSI01601195
10  Exhibit 139 Document, Bates-stamped        276
       FRSI01755432 through FRSI01755433
11  Exhibit 140 Document, Bates-stamped        282
       FRSI01608801 through FRSI01608805
12  Exhibit 141 Document, Bates-stamped        284
       FRSI01609317 through FRSI01609322
13  Exhibit 142 Document, Bates-stamped        286
       FRSI01608475 through FRSI01608506
14  Exhibit 143 Document, Bates-stamped        288
       FRSI000644947 through
15     FRSI000644953
16       (PREVIOUSLY MARKED)
17  Exhibit 15  Document, Bates-stamped        189
       FRSI00000073 through FRSI00000082
18  Exhibit 16  Document, Bates-stamped        189
       FRSI00000083 through FRSI00000091
19  Exhibit 94  Document, Bates-stamped        297
       FRSI01708981 through FRSI0708983
20
21
22
23
24
25

Page 312

1          INSTRUCTIONS TO WITNESS
2       Please read your deposition over
3   carefully and make any necessary corrections.   You
4   should state the reason in the appropriate space on
5   the errata sheet for any corrections that are made.
6       After doing so, please sign the errata
7   sheet and date it.
8        You are signing same subject to the
9   changes you have noted on the errata sheet, which
10  will be attached to your deposition.
11      It is imperative that you return the
12  original errata sheet to the deposing attorney
13  within thirty(30) days of receipt of the deposition
14  transcript by you. If you fail to do so, the
15  deposition transcript may be deemed to be accurate
16  and may be used in court.
17
18
19
20
21
22
23
24
25

Page 313

1   DINOSAUR FINANCIAL GROUP LLC, et al.
    vs. S&P GLOBAL, INC., et al.
2   1/30/2025 - JEFFREY MITNICK
3        E R R A T A   S H E E T
4   PAGE_____ LINE_____ CHANGE_____
5   _____
6   REASON_____
7   PAGE_____ LINE_____ CHANGE_____
8   _____
9   REASON_____
10  PAGE_____ LINE_____ CHANGE_____
11  _____
12  REASON_____
13  PAGE_____ LINE_____ CHANGE_____
14  _____
15  REASON_____
16  PAGE_____ LINE_____ CHANGE_____
17  _____
18  REASON_____
19  PAGE_____ LINE_____ CHANGE_____
20  _____
21  REASON_____
22
23  _____  _____
24  JEFFREY MITNICK          Date
25

79 (Pages 310 - 313)

ERRATA SHEET
VERITEXT REPORTING COMPANY
7 TIMES SQUARE
NEW YORK, NEW YORK 10036
212-279-9424

NAME OF CASE:
DATE OF DEPOSTION:
NAME OF DEPONENT:

| PAGE | LINE (S) | CHANGE | REASON |
|---|---|---|---|
| ~~12~~ | ~~2~~ | ~~McGraw-Hill, Inc.~~ | This was the legal name when I joined |
| p.15 | 24,25 | Capitalize title | |
| p.19 | 8 | Arbitration should be "Bankers" | |
| p.21 | 24 | Rowan to Rroome — correct last name | |
| p.58 | 24 | Subsidize | |
| 68 | 10 | Observer should be Owner | |
| 79 | 11 | priprietary is correct | |
| p.83 | 14 | Remove "the" | |
| p.166 | 21 | Parity is correct | |
| p.124 | 10 | Issuer | |
| p.201 | 14 | Plain | |
| p.228 | 5 | Data feed | |

I declare under penalty and perjury under the laws of the United States
of America that the foregoing is true and correct.

Dated: February 18, 2025

Jeffrey Mithnick