# EXHIBIT 14

Page 1

1
2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    ---------------------------------x
     DINOSAUR FINANCIAL GROUP LLC,
4    SWISS LIFE INVESTMENT
     MANAGEMENT HOLDING AG, and
5    HILDENE CAPITAL MANAGEMENT,
     LLC, on behalf of themselves
6    and all others similarly
     situated,
7
                        Plaintiffs,
8
              -against-
9
                                Civil Action No.:
                                22 Civ. 1860 (KPF)
10
     S&P GLOBAL, INC., AMERICAN BANKERS
11   ASSOCIATION, and FACTSET RESEARCH
     SYSTEMS INC.,
12
                        Defendants.
13
     ---------------------------------x
14                   February 5, 2025
15                   9:05 a.m.
16
17        VIDEOTAPED DEPOSITION of SCOTT J. PREISS, held
18   at the law offices of Wollmuth Maher & Deutsch LLP,
19   500 5th Avenue, New York, New York, before Judith
20   Thaten, a Certified Livenote Reporter and Notary
21   Public of the State of New York.
22
23
24
25

Page 2

```
1
2        A P P E A R A N C E S
3   ON BEHALF OF PLAINTIFFS
         WOLLMUTH MAHER & DEUTSCH LLP
4        500 Fifth Avenue
         New York, New York 10110
5        BY:  JOSHUA SLOCUM, ESQ.
             jslocum@WMD-LAW.com
6            KYLIE SPENCER, ESQ.
             kspencer@wmd-law.com
7
8   ON BEHALF OF DEFENDANT  - S&P Global, Inc.
         GIBSON DUNN & CRUTCHER LLP
9        200 Park Avenue, 47th Floor
         New York, New York 10166
10       BY:  ERIC STOCK, ESQ.
             estock@gibsondunn.com
11           STELLA CERNAK, ESQ.
             scernak@gibsondunn.com
12
13  ON BEHALF OF DEFENDANT - American Bankers
    Association
14       JONES DAY
         250 Vesey Street
15       New York, New York 10281
         BY:  ALEXANDER V. MAUGERI, ESQ.
16           amaugeri@jonesday.com
17
18
19
20
21
22
23
24
25
```

Page 3

```
1
2        A P P E A R A N C E S (cont'd)
3
4   ON BEHALF OF DEFENDANT - FactSet Research
    Systems, Inc.
5        SHINDER CANTOR LERNER LLP
         14 Penn Plaza, 19th Floor
6        New York, New York 10122
         BY:  JEFFREY I. SHINDER, ESQ.
7            jeffrey@scl-llp.com
8
9   ALSO PRESENT:
10       JONA KIM, ESQ., In-house Counsel, FactSet
11       RON MARRAZZO, Legal Video Specialist
         Veritext Legal Solutions
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
1
2       IT IS HEREBY STIPULATED AND AGREED, by and
3   among counsel for the respective parties hereto,
4   that the filing, sealing and certification of the
5   within deposition shall be and the same are hereby
6   waived.
7       IT IS FURTHER STIPULATED AND AGREED that all
8   objections, except to the form of the question,
9   shall be reserved to the time of trial;
10      IT IS FURTHER STIPULATED AND AGREED that the
11  within deposition may be signed before any Notary
12  Public with the same force and effect as if signed
13  and sworn to before the court.
14              * * * *
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
1           PREISS
2        VIDEOGRAPHER:  Good morning.
3    We are now going on the record.
4    The time is approximately
5    9:05 a.m.  This is the 5th of
6    February 2025.
7           Please note that the
8    microphones are sensitive and may
9    pick up whispering and private
10   conversations.  Please mute your
11   phones at this time.  Audio and
12   video recording will continue to
13   take place unless all parties
14   agree to go off the record.
15       This is video-recorded
16   deposition of Scott Preiss in the
17   matter of Dinosaur Financial Group
18   LLC, et al., versus S&P Global,
19   Inc., et al.
20       This case is filed in the
21   United States District Court,
22   Southern District of New York.
23   Docket Number is 1860 (KPF).
24       The location of this
25   deposition is Wollmuth Maher &
```

2 (Pages 2 - 5)

Page 6

PREISS

1
2  Deutsch, located at
3  500 Fifth Avenue, New York City.
4      My name is Ron Marrazzo,
5  representing Veritext Legal
6  Solutions. Your court reporter is
7  Judy Castore from the firm
8  Veritext Legal solutions.
9      I'm not related to any party
10 in this action, nor am I
11 interested -- financially
12 interested in the outcome its
13 outcome.
14     If there are any objections
15 to this proceeding, you can state
16 them at the time of your
17 appearance.
18     All counsel attending
19 remotely and live will be noted on
20 the written transcript.
21     We can now swear in the
22 witness and proceed.
23 S-C-O-T-T J-A-Y P-R-E-I-S-S,
24     Having been duly sworn by a Notary Public
25 within and for the State of New York, stated an

Page 7

PREISS

1
2  address as 36 Lake Drive, Colts Neck, New Jersey,
3  was examined and testified as follows:
4  EXAMINATION BY MR. SLOCUM:
5      Q   Mr. Preiss, have you been
6  deposed before?
7      A   Never.
8      Q   Okay.
9          Have you given testimony in
10 any kind of trial or hearing?
11     A   I have not.
12     Q   Have you ever sworn an
13 affidavit or any kind of written
14 statement that's sworn under oath?
15     A   I don't recall.
16     Q   Okay. So I'm just going to
17 go over some basics for the deposition.
18         I'm going to ask questions,
19 and then you answer the questions.
20 Please wait for me to finish asking my
21 question, and I will wait for you to
22 finish your answer before asking the
23 next question. Okay?
24     A   Yes.
25     Q   That's important, because, as

Page 8

PREISS

1
2  you can see, all of our words are being
3  written down by the court reporter, and
4  we need to make her life easier.
5      Understood?
6      A   Yes.
7      Q   From time to time, we may
8  take breaks. If you need a break,
9  please don't hesitate to let me know.
10     If -- the only thing I would
11 ask is, if a question is pending, you
12 must answer the question before the
13 break. Okay?
14     A   Yes.
15     Q   Your counsel may make
16 objections on the record from time to
17 time. This is just something lawyers
18 do to preserve the record for the
19 court.
20     Unless your counsel instructs
21 you not to answer, you have to answer
22 the question. Understood?
23     A   Yes.
24     Q   Okay. Is there any reason,
25 medical or otherwise, that you cannot

Page 9

PREISS

1
2  give truthful and accurate testimony
3  today?
4      A   No.
5      Q   What did you do to prepare
6  for today's deposition?
7      A   I've been working many hours
8  in my day-to-day job. I have met with
9  counsel a number of times recently.
10     Q   Okay. Have you met with
11 anyone other than your counsel to
12 prepare for today's deposition?
13     A   No.
14     Q   Have you spoken to anyone
15 other than your counsel about today's
16 deposition?
17     A   No.
18     Q   Can you describe your
19 educational history after high school?
20     A   Sure.
21         After high school, I was
22 initially a full-time student at
23 Brooklyn College with a major in
24 accounting. Found that wasn't for me.
25         Started working full-time at

3 (Pages 6 - 9)

1          PREISS
2  Standard & Poor's, went back to school
3  at night to pursue a business degree
4  with a major in finance and economics
5  at Pace University.  Graduated there
6  1991 or so.
7          And then, while working
8  full-time, continued my education and
9  attended New York Law School, evening
10  class, from 1991 to 1995.
11      Q    Did you graduate from
12  New York Law School?
13      A    I did.
14      Q    Okay.  And did you get a
15  bachelor's degree at Pace?
16      A    I received a BBA from Pace,
17  yes.
18      Q    Do you have any other degrees
19  other than the two that you just
20  mentioned?
21      A    I have gone to executive
22  education training, leadership
23  training.  Those are certificated
24  programs at Columbia University, Darden
25  in Virginia, and also INSEAD in France.

1          PREISS
2      Q    Do you have any other
3  professional certifications other than
4  the ones you just mentioned?
5      A    I do not.
6      Q    Describe your work -- excuse
7  me.  Withdrawn.
8          Describe your work history
9  after you got your -- well, after you
10  got your bachelor's degree.
11      A    Okay.  Well, as I stated
12  before, I was working full-time and
13  going to school in the evenings.
14          So once I received my
15  bachelor's degree, I had various
16  positions while at CUSIP Service Bureau
17  and later CUSIP Global Services, at
18  that time, operated for the American
19  Bankers Association by S&P Global.
20          Those positions included
21  operation supervisor, assistant
22  manager, and various other managerial
23  roles.
24      Q    Okay.  You mentioned CUSIP
25  Service Bureau and CUSIP Global

1          PREISS
2  Services.
3          Was there a name change at
4  some point in time?
5      A    There was a rebranding to
6  CUSIP Global Services at some time.
7      Q    When was that?
8      A    I don't recall.
9      Q    Was it in the 1990s?
10      A    I believe it was later.
11      Q    In the 2000s?
12      A    Probably.
13      Q    Okay.  So after you got your
14  degree from Pace, you went to work at
15  what's now known as CGS; is that right?
16      A    I was already there.
17      Q    You were already there.
18          You started working there
19  during college?
20      A    Actually, between
21  Brooklyn College and Pace University.
22      Q    Okay.  When did you begin
23  working with CGS?
24      A    February 1st, 1982.
25      Q    What is your current position

1          PREISS
2  title?
3      A    The current title is senior
4  vice president global head, CUSIP
5  Global Services.
6      Q    Okay.  Are you -- so you were
7  the senior-most executive at CUSIP
8  Global Services?
9      A    That's correct.
10      Q    How long have you had that
11  position?
12      A    Since July 1st, 2015.
13      Q    Who was your predecessor?
14      A    James Taylor.
15          Not the singer.
16      Q    Okay.  What was your position
17  prior to becoming the head of CGS?
18      A    I believe it was vice
19  president CUSIP Global Services, but
20  it's been some time.
21      Q    Were you the chief operating
22  officer?
23      A    So there is a distinction
24  between internal titles and external.
25  That was an approved external title for

Page 14

PREISS

1
2 a number of years.
3    Q    Say that again.
4    A    Chief operating officer of
5 CGS was an approved external title for
6 a number of years while at S&P.
7    Q    What is the difference
8 between an external title and an
9 internal title?
10    A    Not very much.  One is
11 reflected on internal HR systems, and
12 one is reflected on business cards and
13 stationary.
14    Q    Okay.
15    A    Common practice.
16    Q    During the time when you had
17 the external title of chief operating
18 officer, did you have the roles and
19 responsibilities normally associated
20 with a chief operating officer?
21        MR. SHINDER:  Objection to
22    form.
23    A    I wouldn't really know what
24 those are.
25    Q    Okay.  When did you -- when

Page 15

PREISS

1
2 did you obtain the title of chief
3 operating officer?
4    A    I don't -- I don't recall
5 with precision.
6    Q    Was it in the 2000s?
7    A    Yes.
8    Q    Okay.  And was Mr. Taylor the
9 head of CGS during the entire time that
10 you held that position?
11    A    Yes.
12    Q    So he was the head of CGS
13 before 2010?
14    A    Before 2015.
15    Q    And before 2010; is that
16 right?
17    A    Correct.
18    Q    Okay.  Do you know how long
19 Mr. Taylor was the head of CGS?
20    A    Not with precision, no.
21    Q    Do you have an estimate?
22    A    25 years.
23    Q    As the current head of CGS,
24 do you understand all the various
25 facets of its business?

Page 16

PREISS

1
2        MR. SHINDER:  Objection to
3    form.
4    A    "All" is an extremely broad
5 term.
6    Q    How would you describe it?
7    A    How would I describe "all"?
8    Q    How would you describe your
9 knowledge and understanding of CGS's
10 various business operations?
11    A    I came up through data
12 operations, and my background was very
13 much in data, associated with financial
14 instruments and their issuers.  And
15 over the years, I have held several
16 roles throughout data operations.
17        And eventually -- much of the
18 work is about building and developing
19 talent within the CGS business.  So
20 over the years, I have touched upon
21 many of the functions that are part of
22 any business, and in this case, CGS.
23    Q    Okay.
24        Is it fair to say that you
25 know what a CUSIP is?

Page 17

PREISS

1
2    A    It's fair to say.
3    Q    What is a CUSIP?
4    A    A CUSIP is a nine-character
5 identifier that uniquely identifies a
6 financial instrument and its issuer.
7    Q    What is the purpose of a
8 CUSIP?
9    A    The purpose of a CUSIP is to
10 provide certainty and reliability to
11 financial market participants
12 worldwide, that they know precisely
13 what instrument, what issuer they're
14 speaking about.  And that often entails
15 going beyond that number itself to
16 other discrete data fields that help
17 uniquely identify a security and its
18 issuer.
19    Q    So is it your testimony that
20 in addition to the CUSIP you require
21 additional data to uniquely identify a
22 security?
23        MR. SHINDER:  Objection to
24    form.
25    A    Can you repeat the question?

PREISS

1
2    A    There is a data quality/data
3  governance role that applies to CUSIP
4  issuance, and also to issuance of
5  what's known as L-E-I, or legal entity
6  identifiers.
7        And some of our non-US
8  employees do play a role, certainly
9  with regard to data quality.
10    Q    Okay.  What does "data
11  quality" mean?
12    A    Data quality can mean a
13  second set of eyes, a second set of
14  checks on the voracity of data, the
15  timeliness, the accuracy of data, how
16  does it match up against a primary
17  source document.
18    Q    Okay.  And you mentioned that
19  CGS has people that are involved in
20  licensing.
21    A    Correct.
22    Q    Okay.  How many employees are
23  involved in licensing, approximately?
24    A    Directly, I would say four or
25  five.

PREISS

1
2    Q    What about indirectly?
3    A    There are support functions,
4  and licensing is also, in part, part of
5  the role of sales representatives.
6        So could be another 15 to 20
7  that have support functions that touch
8  licensing.
9    Q    Okay.  15 to 20 sales
10  representatives or total?
11    A    No.  In total.
12    Q    How many sales
13  representatives are there,
14  approximately?
15    A    I believe 13.
16    Q    Okay.  And CGS has contracts
17  that it calls "distribution
18  agreements," right?
19    A    Correct.
20    Q    What are those?
21    A    It's not something I deal
22  with on a daily basis.  My broad
23  understanding of "distribution
24  agreements" are licensing agreements
25  between CGS and a distributor, a

PREISS

1
2  downstream distributor of CGS data.
3    Q    Does CGS consider those
4  downstream distributors that you just
5  described to be its authorized
6  distributors?
7    A    Once they sign an appropriate
8  agreement, yes.
9    Q    Describe your job
10  responsibilities as the head of CGS.
11    A    Do you have a few hours?
12    Q    At a high level.
13    A    My role within CGS, first and
14  foremost, is to ensure that CUSIP
15  Global Services is meeting, and
16  hopefully exceeding, the needs and the
17  emerging needs of global market
18  participants, i.e. our customers.
19        I couldn't be prouder of the
20  106 CGS employees worldwide and the
21  evolution of the CGS business, the
22  discipline and the professionalism put
23  forth by those employees and to serve
24  the markets with distinction.
25        So ensuring that the CUSIP

PREISS

1
2  database and our products and our
3  services and our customer support
4  provide the mechanism for so many
5  market functions, on a daily, on an
6  hour-by-hour, on an tick-by-tick basis,
7  when it comes to functions like
8  trading, settlement, clearance,
9  reconciliation, asset setup.
10        First and foremost, my
11  responsibility is to make sure that CGS
12  is fulfilling its market role.
13
14
15
16
17
18
19
20
21
22
23
24
25



Veritext Legal Solutions
212-279-9424          www.veritext.com          212-490-3430



Veritext Legal Solutions
212-279-9424                    www.veritext.com                    212-490-3430







Page 150

1            PREISS

Page 152

1    PREISS
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 151

1            PREISS

Page 153

1    PREISS
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

39 (Pages 150 - 153)





Veritext Legal Solutions
212-279-9424          www.veritext.com          212-490-3430



Veritext Legal Solutions
212-279-9424                    www.veritext.com                    212-490-3430

Page 238

PREISS

5    Q   Okay.
6        (Document, Bates-stamped
7    FRSI01173328, FRSI01173329, and
8    attachment, was marked Plaintiffs
9    Exhibit 156, for identification,
10   as of this date.)
11   Q   Please take a moment to look
12   at that, Mr. Preiss.
13       MR. SLOCUM:  While you do, I
14   will note that it is an email from
15   you to yourself dated
16   November 9th, 2020, begins with
17   the Bates Number FRSI01173328.
18   And it includes an attachment.
19   A   Okay.
20   Q   Okay.  So I put before you
21   Plaintiffs' Exhibit 156.  Do you
22   recognize that document?
23   A   I do now.
24   Q   What is it?
25   A   The document is a PowerPoint

Page 239

PREISS

2    deck meant to inform and help with the
3    flow of the business meeting between
4    executives at that time of S&P as well
5    as CGS and ABA.
6    Q   You described the business
7    meetings between the ABA and CGS under
8    FactSet's ownership as high-level
9    meeting of executives, including CFOs
10   from FactSet and the ABA.
11       So my question is what was it
12   like under S&P's ownership?
13   A   So I believe I also referred
14   to those meetings have evolved into
15   what we see today with FactSet.
16       If I turn the clock back a
17   decade or so, this was, I would say, a
18   meeting that wasn't attended by as many
19   people on both sides.  And it was meant
20   to be a quicker walk-through of the
21   state of the business, perhaps on a
22   more frequent basis.
23       I do note that this was --
24   this deck and this meeting was during
25   the height of the pandemic, which is

Page 240

PREISS

2    explaining why I would email that deck
3    to myself for printing.  And I am
4    assuming this was a virtual meeting.
5        I also recognize components
6    of this deck from topics that we
7    typically share with the CUSIP board of
8    trustees.
9    Q   And how was this deck
10   prepared?
11   A   So except for the slides on
12   financial review, any of the numbers,
13   this deck is largely, if not
14   exclusively, the topics and the points
15   that we share with our board of
16   trustees, in the format that we use
17   with our board of trustees.
18       And my recollection is that's
19   exactly what this is.
20       And so those slides are
21   prepared in advance of a CUSIP board of
22   trustees meeting.  And Roger Fahy, our
23   head of product, typically takes the
24   lead in compiling input from the rest
25   of the team.

Page 241

PREISS

2    Q   Now, you carved out from your
3    answer "the slides after financial
4    review."
5        Why was that?
6    A   That would not, in my
7    experience, be shared with the board of
8    trustees, as they serve in an advisory
9    role rather that a fiduciary one.
10   Q   Okay.
11       The financial results slides
12   look very similar to the letter that we
13   looked at to the ABA about the royalty
14   calculation.
15       Are those drawn from the same
16   sources?
17   A   It appears the same to me.  I
18   cannot be certain.
19   Q   Okay.  So at the meetings
20   with the ABA, was a PowerPoint of this
21   nature always presented?
22       MR. SHINDER:  Objection to
23   form.
24   A   In my recollection, it was
25   not.

61 (Pages 238 - 241)

Page 242

```
1              PREISS
2        This was an indication of the
3  time that this meeting was held during
4  the height of the pandemic, and, in
5  fact, as I review this, reflects on how
6  very proud we were and remain at
7  CUSIP's uninterrupted service of the
8  financial markets during that difficult
9  time.
10   Q   Let's see.
11        Was this presentation to the
12  ABA created in the ordinary course of
13  business?
14    A   I'm not sure what that means,
15  but I suppose so.
16    Q   Is it part of CGS's business
17  practices to prepare a report like this
18  for the ABA?
19    A   It was -- as I just
20  mentioned, it was part of our business
21  practice to prepare a document like
22  this for our board of trustees
23  meetings.
24        And my recollection is we
25  used much of the same information to
```

Page 243

```
1              PREISS
2  help guide our business meeting with
3  the ABA.
4    Q   Okay.  And did you and your
5  team take care to make sure that the
6  information in this presentation was
7  accurate?
8    A   I believe so.
9    Q   Including on the financial
10  slides, would you take care to ensure
11  that those financial reports are
12  accurate as displayed here?
13    A   At the time, I certainly
14  would have taken care to make sure they
15  were accurate.
16    Q   Was this document prepared by
17  people with knowledge of its contents?
18    A   Prepared and contributed to,
19  yes.
20    Q   And was it prepared at or
21  around time of the meeting with the ABA
22  in November of 2020?
23    A   In the weeks and even months
24  prior to that, yes.
25        MR. SLOCUM:  Okay.
```

Page 244

```
1              PREISS
```

Page 245

```
1              PREISS
```





Veritext Legal Solutions

212-279-9424          www.veritext.com          212-490-3430



Page 274

1          PREISS

Page 275

1          PREISS

Page 276

1          PREISS
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 277

1          PREISS
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

70 (Pages 274 - 277)



Page 278

1          PREISS

Page 280

1          PREISS
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 279

1          PREISS

Page 281

1          PREISS
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

71 (Pages 278 - 281)



Veritext Legal Solutions

212-279-9424          www.veritext.com          212-490-3430



Veritext Legal Solutions
212-279-9424    www.veritext.com    212-490-3430



Page 290

1          PREISS

Page 291

1          PREISS

Page 292

1    PREISS
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 293

1    PREISS
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Veritext Legal Solutions
212-279-9424          www.veritext.com          212-490-3430



Page 294

1            PREISS

Page 296

1            PREISS

Page 295

1            PREISS

Page 297

1            PREISS

75 (Pages 294 - 297)

Page 334

1 DINOSAUR FINANCIAL GROUP LLC, et al.
  vs. S&P GLOBAL, INC., et al.
2 2/5/2025 - SCOTT J. PREISS
3    ACKNOWLEDGMENT OF DEPONENT
4   I, SCOTT J. PREISS, do hereby declare
5 that I have read the foregoing transcript,
6 I have made any corrections, additions, or
7 changes I deemed necessary as noted on the
8 Errata to be appended hereto, and that the
9 same is a true, correct and complete
10 transcript of the testimony given by me.
11
12 _____  _____
13 SCOTT J. PREISS          Date
14 *If notary is required
15
16   SUBSCRIBED AND SWORN TO BEFORE ME THIS
17 _____ DAY OF _____, 20___.
18
19
20 _____
21 NOTARY PUBLIC
22
23
24
25

Page 335

1
2    C E R T I F I C A T I O N
3
  STATE OF NEW YORK  )
4           ) ss.:
  COUNTY OF NEW YORK )
5
6   I, JUDITH THATEN, Shorthand Reporter
7 and Notary Public within and for the State
8 of New York, do hereby certify:
9   That SCOTT J. PREISS, the witness
10 whose deposition is hereinbefore set
11 forth, was duly sworn by me and that this
12 transcript of such examination is a true
13 record of the testimony given by such
14 witness.
15   I further certify that I am not
16 related to any of the parties to this
17 action by blood or marriage and that I am
18 in no way interested in the outcome of
19 this matter.
20   IN WITNESS WHEREOF, I have hereunto
21 set my _____y,
22 2025.
23
24 _____
   JUDITH THATEN
25

Page 336

1
2    I N D E X
3 WITNESS          PAGE
   SCOTT J. PREISS
4   Examination by:
     MR. SLOCUM    7
5
   E X H I B I T S
6 PLAINTIFFS'        PAGE
   Exhibit 144 Document, Bates-stamped    53
7     FRSI01174590 through FRSI01174592
   Exhibit 145 Document, Bates-stamped    73
8     FRSI0462810 and attachment
   Exhibit 146 Document, Bates-stamped    99
9     FRSI00200709 and attachment
   Exhibit 147 Document, Bates-stamped    118
10    FRSI01676960 through FRSI01676962
   Exhibit 148 Document, Bates-stamped    126
11    FRSI01675995 through FRSI01675998
   Exhibit 149 Document, Bates-stamped    140
12    FRSI01676189 through FRSI01676193
   Exhibit 150 Document, Bates-stamped    165
13    FRSI01478045 through FRSI01478046
   Exhibit 151 Document, Bates-stamped    172
14    SPGI-0000033645 through
     SPGI-0000033646
15 Exhibit 152 Document, Bates-stamped    179
     FRSI01146831 through FRSI01146839
16 Exhibit 153 Document, Bates-stamped    198
     FRSI01146989 through FRSI01146990
17 Exhibit 154 Document, Bates-stamped    221
     FRSI01464303 through FRSI01464305
18 Exhibit 155 Document, Bates-stamped    231
     FRSI00268871 through FRSI00268872
19 Exhibit 156 Document, Bates-stamped    238
     FRSI01173328, FRSI01173329, and
20    attachment
   Exhibit 157 Document, Bates-stamped    250
21    FRSI1413379 through FRSI01413380
   Exhibit 157A PowerPoint    250
22
23
24
25

Page 337

1
2    E X H I B I T S (cont'd)
   PLAINTIFFS'        PAGE
3 Exhibit 158 Document, Bates-stamped    283
     FRSI01481129 through FRSI01481130
4 Exhibit 159 Document, Bates-stamped    287
     ABA-0000001526 through
5     ABA-0000001527
   Exhibit 160 Document, Bates-stamped    299
6     SPGI-0000012533 through
     SPGI-0000012535
7 Exhibit 161 Document, Bates-stamped    311
     FRSI00565700, FRSI00565701, and
8     attachment
   Exhibit 162 Document, Bates-stamped    327
9     FRSI00174034 through FRSI00174038
   Exhibit 163 Document, Bates-stamped    329
10    FRSI01776754 through FRSI01776764
11
12   (PREVIOUSLY MARKED)
13 Exhibit 88 Document, Bates-stamped    214
     FRSI00201117 through FRSI00201119
14 Exhibit 88A Excel spreadsheet    215
15
16
17
18
19
20
21
22
23
24
25

85 (Pages 334 - 337)

Page 338

1
2          INSTRUCTIONS TO WITNESS
3      Please read your deposition over
4  carefully and make any necessary corrections.   You
5  should state the reason in the appropriate space on
6  the errata sheet for any corrections that are made.
7      After doing so, please sign the errata
8  sheet and date it.
9      You are signing same subject to the
10  changes you have noted on the errata sheet, which
11  will be attached to your deposition.
12      It is imperative that you return the
13  original errata sheet to the deposing attorney
14  within thirty (30) days of receipt of the deposition
15  transcript by you. If you fail to do so, the
16  deposition transcript may be deemed to be accurate
17  and may be used in court.
18
19
20
21
22
23
24
25

Page 339

1  DINOSAUR FINANCIAL GROUP LLC, et al.
   vs. S&P GLOBAL, INC., et al.
2  2/5/2025 - SCOTT J. PREISS
3      E R R A T A  S H E E T
4  PAGE_____ LINE_____ CHANGE_____
5  _____
6  REASON_____
7  PAGE_____ LINE_____ CHANGE_____
8  _____
9  REASON_____
10  PAGE_____ LINE_____ CHANGE_____
11  _____
12  REASON_____
13  PAGE_____ LINE_____ CHANGE_____
14  _____
15  REASON_____
16  PAGE_____ LINE_____ CHANGE_____
17  _____
18  REASON_____
19  PAGE_____ LINE_____ CHANGE_____
20  _____
21  REASON_____
22
23  _____   _____
24  SCOTT J. PREISS          Date
25

Veritext Legal Solutions
212-279-9424          www.veritext.com          212-490-3430

ERRATA SHEET
VERITEXT REPORTING COMPANY
7 TIMES SQUARE
NEW YORK, NEW YORK 10036
212-279-9424


NAME OF CASE: **Dinosaur Fin. Group v. S&P Global**
DATE OF DEPOSTION: February 5, 2025
NAME OF DEPONENT: Scott Preiss


PAGE   LINE (S)        CHANGE                  REASON
18__|__12 ___630 data elements_|___should be 60-65 data elements

____|_____|_____|_____

_29_|___5____|"on character code"      _|s/b "9-character code"____

49__|___17___|"identification schemers" |s/b "identification schemas"
155__|___8____|____"inside"_____|s/b "insight"_____

_196|___15___|_____"35 years"_____|__s/b "5 years"_____
319__|__18___|"data prices"_____  __|_s/b "data practices" (?)

_329 |_22____|___"S&P"_____ s/b "sp" reference to S Preiss

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

                        _____


I declare under penalty and perjury under the laws of the United States
of America that the foregoing is true and correct.

Dated: April 22, 2025          _Scott J. Preiss_____
                                Scott Preiss