**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

DINOSAUR FINANCIAL GROUP LLC,  :
HILDENE CAPITAL MANAGEMENT,  :          Case No. 1:22-cv-1860-KPF
LLC and SWISS LIFE INVESTMENT  :
MANAGEMENT HOLDING AG, on behalf  :
of themselves and all others similarly  :
situated,  :
                                                           :
                        Plaintiffs,  :
                                                           :
            -against-  :
                                                           :
S&P GLOBAL, INC., AMERICAN  :
BANKERS ASSOCIATION, and FACTSET  :
RESEARCH SYSTEMS INC.,  :
                                                           :
                        Defendants.  :
                                                           :
------------------------------------------------------- X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR LEAVE TO FILE REPLY EXPERT REPORTS**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

APPLICABLE STANDARD.................................................................................................. 3

ARGUMENT ......................................................................................................................... 4

I.   The Scheduling Order Does Not Permit Plaintiffs to Serve New Expert Reports With Their Reply on Class Certification. ................................................................................. 4

II.  Plaintiffs Fail to Show Good Cause to Justify Amending the Scheduling Order to Permit Expert Reply Reports ................................................................................................ 7

    A.   There is No Basis for Providing Plaintiffs With a Carte Blanche Right to Submit Reply Reports on Any Topic Addressed by Defendants' Papers. ................... 8

    B.   Plaintiffs Fail To Show Good Cause For Permitting New Expert Testimony on the Topics They Identified in Their Brief................................................................. 10

        1.   Bettina Bergmann ....................................................................................... 11

        2.   Frank Lenz .................................................................................................. 14

        3.   Einer Elhauge.............................................................................................. 16

    C.   Reply Reports Would Greatly Prejudice Defendants. ................................................ 23

III. If the Court Allows Reply Reports, It Should Take Corrective Steps to Remedy Prejudice to Defendants, and Cabin the Scope of Plaintiffs' Reply Expert Reports ........................... 25

CONCLUSION...................................................................................................................... 26

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Acetaminophen – ASD-ADHD Liability Litig.*,
    707 F. Supp. 3d 309 (S.D.N.Y. 2023) ................................................................... 9, 19

*Akeva LLC v. Mizuno Corp.*,
    212 F.R.D. 306 (M.D.N.C. 2002) ............................................................................ 6, 7

*Aniero Concrete Co., Inc. v. New York City Sch. Constr. Auth.*,
    2002 WL 257685 (S.D.N.Y. Feb. 22, 2002) ............................................................. 14

*Baker v. Urban Outfitters, Inc.*,
    254 F. Supp. 2d 346 (S.D.N.Y. 2003) ...................................................................... 22

*Bowman v. Int'l Bus. Mach. Corp.*,
    2013 WL 1857192 (S.D. Ind. May 2, 2013) ............................................................. 25

*Camarata v. Experian Info. Sols., Inc.*,
    2018 WL 1738335 (S.D.N.Y. Mar. 5, 2018) ............................................................. 10

*Cave Consulting Grp., Inc. v. OptumInsight, Inc.*,
    2018 WL 1938555 (N.D. Cal. Apr. 25, 2018) ............................................................. 6

*In re Disposable Contact Lens Antitrust Litig.*,
    No. 3:15-md-02626-HES-LLL (M.D. Fla. Aug. 15, 2017) ........................................ 26

*Ebbert v. Nassau Co.*,
    2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008) .......................................................... 13

*Ebewo v. Martinez*,
    309 F. Supp. 2d 600 (S.D.N.Y. 2004) ...................................................................... 24

*Elliot v. City of New York*,
    2020 WL 6782046 (S.D.N.Y. Nov. 18, 2020) ............................................................. 4

*Freeland v. AT&T Corp.*,
    238 F.R.D. 130 (S.D.N.Y. 2006) ............................................................................... 27

*Freeman v. Deebs-Elkenaney*,
    2024 WL 3634738 (S.D.N.Y. Aug. 1, 2024) ........................................................... 9, 22

*Garland v. Norfolk S. Ry. Co.*,
    2025 WL 461438 (W.D.N.Y. Feb. 11, 2025) ............................................................. 27

*Holmes v. Grubman*,
    568 F.3d 329 (2d Cir. 2009) ................................................................................. 4, 10

*Iowa Pub. Emps. Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    No. 1:17-cv-06221-KPF-SLC (S.D.N.Y. filed Aug. 16, 2017) ............................... 26, 27

*Kassner v. 2nd Ave. Delicatessen*,
  496 F.3d 229 (2d Cir. 2007)...................................................................................4

*Lidle v. Cirrus Design Corp.*,
  2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009) ..................................................6, 8, 9

*Loreley Fin. (Jersey) No. 3 Ltd. Wells Fargo. Sec., LLC*,
  412 F. Supp. 3d 392, 406 (S.D.N.Y. 2019).............................................................5

*In re: Mirena IUD Prods. Liab. Litig.*,
  169 F. Supp. 3d 396 (S.D.N.Y. 2016)....................................................................13

*Murray v. Roadway Exp., Inc.*,
  2010 WL 3023905 (E.D.N.Y. July 30, 2010) ..........................................................9

*Nanjing CIC Int'l Co. v. Schwartz*,
  2022 WL 170606 (W.D.N.Y. Jan. 19, 2022) ............................................................4

*NetFuel, Inc. v. Cisco Sys., Inc.*,
  2020 WL 1450570 (N.D. Cal. Mar. 25, 2020).................................................10, 18

*Panavision Imaging, LLC v. OmniVision Techs., Inc.*,
  2010 WL 11507881 (C.D. Cal. Apr. 19, 2010) ........................................................6

*Point Prods. A.G. v. Sony Music Ent., Inc.*,
  2004 WL 345551 (S.D.N.Y. Feb. 23, 2004)................................................9, 13, 16

*Primavera Familienstifung v. Akin*,
  130 F. Supp. 2d 450 (S.D.N.Y 2001).....................................................................18

*Ray v. Nat'l Collegiate Athletic Ass'n*,
  1:23-cv-00425-WBS-CSK (E.D. Cal. filed March 21, 2023)..................................26

*Reyna v. Target Corp.*,
  2022 WL 12399321 (S.D.N.Y. Oct. 21, 2022) .........................................................4

*Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*,
  2012 WL 2161022 (S.D.N.Y. June 5, 2012) ..........................................................17

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*,
  324 F. Supp. 3d 387 (S.D.N.Y. 2018)....................................................................25

*Sandata Techs., Inc. v. Infocrossing, Inc.*,
  2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007)...................................................11, 25

*Simmons v. Ford Motor Co.*,
  2021 WL 6062633 (S.D. Fla. Dec. 22, 2021)........................................................6, 7

*Stoyas v. Toshiba Corp.*,
  2022 WL 19406 (C.D. Cal. Jan. 3, 2022) .................................................................7

*Synthes Spine Co. v. Walden*,
  232 F.R.D. 460 (E.D. Pa. 2005)............................................................................14

*United States v. Starzecpyzel*,
 880 F. Supp. 1027 (S.D.N.Y. 1995)........................................................15

*Whalen v. CSH Transp., Inc.*,
 2016 WL 5660381 (S.D.N.Y. Sept. 29, 2016)......................................12

*Williams v. East Meadow Union Free Sch. Dist.*,
 2025 WL 218829 (E.D.N.Y. Jan. 16, 2025) ............................................9

**Rules**

Fed. R. Civ. P. 16(b)(4).....................................................................1–4, 7, 10

Fed. R. Civ. P. 26(a) ..............................................................................6, 14

Fed. R. Civ. P. 26(a)(2)(B) ...................................................................14, 24

Fed. R. Civ. P. 26(a)(2)(D) ...................................................................1, 3, 7

## INTRODUCTION

Plaintiffs' motion for leave to serve three reply expert reports should be denied because Plaintiffs have failed to show good cause, as required by Fed. R. Civ. P. 16(b)(4). The Case Management Plan and Scheduling Order in this action ("Scheduling Order" or "Order")[1]—which was negotiated at length by the parties and ordered by the Court—unambiguously authorizes only two rounds of expert reports for class certification: one for Plaintiffs and one for Defendants. The Scheduling Order required Defendants to depose Plaintiffs' experts before filing their opposition to class certification, and to file *Daubert* motions to exclude Plaintiffs' experts concurrently with their opposition brief. Pursuant to that sequencing, Plaintiffs served six expert reports with their opening brief in support of class certification. Defendants then deposed Plaintiffs' experts and responded with three expert reports together with their brief in opposition to class certification, and filed *Daubert* motions to exclude certain opinions of Plaintiffs' experts with their opposition brief.

The Scheduling Order does not authorize Plaintiffs to add new expert opinions with their reply brief in support of class certification. Nor would it have been logical or fair to permit them to submit new opinions (or to revise the bases for their existing opinions) at this late stage after these experts were already deposed, *Daubert* motions were already filed, and Defendants responded to Plaintiffs' class certification motion.

Further, Rule 26(a)(2)(D)(ii) does not override a court-ordered two-stage expert schedule. Where, as here, a scheduling order permits only opening and opposing expert reports and sequences depositions and *Daubert* briefing before reply, a party seeking a third round of expert

---

[1] The Court entered the Scheduling Order on September 14, 2023. ECF No. 255-1. By negotiated, joint proposals of the parties, the Scheduling Order was amended several times to extend certain deadlines. ECF Nos. 255-2, 255-3. None of these iterations provided for reply expert reports.

reports must establish good cause and diligence under Rule 16(b)(4) to amend a scheduling order. Courts enforce such orders according to their plain terms, particularly in the class certification context.

Plaintiffs' motion does not even attempt to meet the "good cause" standard. Instead, Plaintiffs seek carte blanche permission to serve reply reports on virtually all topics addressed by Defendants' experts, class certification opposition, and *Daubert* motion papers—a move that was signaled by Plaintiffs **over a month before even seeing** any of those papers. Plaintiffs' motion clearly was not prompted by anything in Defendants' papers that could not have been anticipated at the time of Plaintiffs' experts' opening reports. Rather, Plaintiffs seek to provide revised opinions that could—and should—have been disclosed in their initial reports. That is not "good cause" to modify the Scheduling Order at this stage of the case, which requires diligence in preparing one's expert reports, not after-the-fact strategic revisions. Nor should Plaintiffs be permitted to advance their good cause argument for the first time in their reply filing, when Defendants would have no opportunity to respond to it.

Plaintiffs' true objective, beyond wanting the last word, is evident from the experts whose reports they seek to supplement, and the bulleted list of broad topics that they propose those experts address. Plaintiffs seek reply reports for the three experts, Einer Elhauge, Bettina Bergmann, and Frank Lenz, who are subject to *Daubert* motions regarding their opinions that purportedly support Plaintiffs' ▓▓▓▓▓ theory of common injury and damages. Plaintiffs' list, tellingly, focuses on those topics. But Plaintiffs do not explain why "good cause" exists to conduct a do-over of the expert testimony they rely upon for their class certification theory of injury. ECF No. 254 at 13–16 ("Pls. Br."). Plaintiffs do not explain why they did not include in their opening reports whatever opinions they intend to add in the requested reply reports, nor do they even suggest that any of the

topics responds to some new, unexpected methodology introduced in Defendants' expert reports. Rather, each of the topics listed was a wholly predictable subject of rebuttal and something that Plaintiffs' experts were obligated to fully address in their initial reports. Failing to adequately support opinions in initial reports is not "good cause" for new reports. Nor is adding new opinions on reply, and thereby depriving Defendants of the ability to respond, a proper use of a reply report. It simply indicates a lack of diligence in meeting expert disclosure obligations.

Allowing reply reports at this juncture would severely prejudice Defendants, who have already deposed Plaintiffs' experts and submitted their opposition and *Daubert* briefs based on Plaintiffs' existing submissions. By contrast, there is no prejudice from requiring Plaintiffs to rely on the theories and opinions that they have had years to create, and precluding them from retooling them now—especially given the failure of their opening brief to show good cause. Allowing Plaintiffs to revise expert theories now would reward a lack of diligence and undermine the finality of the Court's expert disclosure deadlines. For these reasons, the Court should deny Plaintiffs' motion to submit reply expert reports.

## APPLICABLE STANDARD

Where, as here, there is a court order governing the timing and sequence of expert disclosures, the order controls. Fed. R. Civ. P. 26(a)(2)(D). Under Federal Rule of Civil Procedure 16(b)(4), that scheduling order "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). In determining whether good cause exists, courts scrutinize the movant's diligence in attempting to comply with the existing schedule and the specific reasons offered for modification. *See Kassner v. 2nd Ave. Delicatessen*, 496 F.3d 229, 244 (2d Cir. 2007) (internal citation omitted); *see also* Fed. R. Civ. P. 16(b)(4) advisory committee's notes to 1983 amendment (explaining that "the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite

the diligence of the party seeking the" modification).  The party seeking modification cannot have acted diligently where the proposed schedule change is based on information that the party knew, or should have known, in advance of the motion.  *See Nanjing CIC Int'l Co. v. Schwartz*, 2022 WL 170606, at *9 (W.D.N.Y. Jan. 19, 2022).  The burden rests with the party seeking modification to justify it, and a lack of diligence defeats good cause.  *See Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009) (internal citations omitted).  Courts also balance the movant's justification against prejudice to other parties if the schedule were amended.  *Reyna v. Target Corp.*, 2022 WL 12399321, at *2 (S.D.N.Y. Oct. 21, 2022).  Courts typically only find good cause to allow an unauthorized expert reply report in a narrow set of circumstances not present here.  *See infra* Section II(A).

## ARGUMENT

### I.    The Scheduling Order Does Not Permit Plaintiffs to Serve New Expert Reports With Their Reply on Class Certification.

The Scheduling Order does not permit Plaintiffs to serve expert reports with their reply brief in support of class certification.  Plaintiffs assert that the Scheduling Order is ambiguous and that Plaintiffs "understood that expert reply reports were contemplated by the scheduling orders." Pls. Br. at 16.  That position cannot withstand scrutiny for two reasons.

*First*, it does not square with the plain language of the Scheduling Order, which does not authorize reply reports.  *See Elliot v. City of New York*, 2020 WL 6782046, at *4 (S.D.N.Y. Nov. 18, 2020) (internal citations omitted) (holding that interpretation of a court order must first be resolved by applying its plain language).  The Scheduling Order sets forth a full sequence of deadlines for briefing on class certification, including expert disclosures and depositions, and *Daubert* motions to exclude.  ECF No. 255-3.  The Order expressly provides that Plaintiffs may file expert reports with their opening brief in support of class certification, and that Defendants

may file expert reports in support of their opposition to class certification. *Id.* at 3. The Order then sets the deadline for "Plaintiffs' reply in support of class certification, including any motions to exclude expert testimony relating to class certification." *Id.* at 2. It says nothing about "supporting expert reports" on reply, in contrast to the language used with respect to Plaintiffs' opening motion and Defendants' opposition deadlines. *Id.* at 3. That formulation remained consistent through multiple amended Scheduling Orders over the last two years (ECF Nos. 255-1, 255-2, 255-3), reflecting the parties' shared understanding that expert reply reports were not permitted. Accordingly, the Court should interpret the Scheduling Order consistent with its plain text. *Loreley Fin. (Jersey) No. 3 Ltd. Wells Fargo. Sec., LLC*, 412 F. Supp. 3d 392, 406 (S.D.N.Y. 2019) (striking supplemental declaration not contemplated by the scheduling order).

*Second*, it would be illogical to construe the Scheduling Order to permit additional expert reports with Plaintiffs' reply brief. The Scheduling Order set a deadline for depositions of Plaintiffs' experts prior to Defendants' service of their opposition brief to class certification and rebuttal expert reports, and required Defendants to serve their *Daubert* motions with their opposition brief. That sequence would make no sense if the Scheduling Order anticipated reply expert reports. Defendants would not have agreed to file *Daubert* motions prior to completing disclosures of expert opinions, because such a schedule would have unfairly forced Defendants to challenge opinions of which they had no notice. That the parties set the expert deposition and *Daubert* deadlines for a date that **preceded** Plaintiffs' reply brief demonstrates that both sides understood that there would be no further expert reports served with the reply brief (as the plain language of the Order provides).[2] Plaintiffs should not be able to obtain from the Court a

---

[2] *See Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) (rejecting plaintiffs' late expert disclosures where they "had as much a role" as defendants in negotiating schedule where

scheduling sequence that Defendants would have rejected if Plaintiffs had sought it at the outset.

This two-stage expert schedule is also one that courts routinely enforce when agreed to by the parties—and it can make particular sense where expert reports are filed together with class certification briefing. *See, e.g.*, *Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *3–4 (S.D.N.Y. Dec. 18, 2009) (contemplating only two rounds of expert reports, one per side); *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, 2018 WL 1938555, at *4 (N.D. Cal. Apr. 25, 2018) ("The schedule in this case called for two rounds of reports, and absent a need for supplementation within the meaning of Rule 26[(e)], the Court will hold to that structure."); *Simmons v. Ford Motor Co.*, 2021 WL 6062633, at *3 (S.D. Fla. Dec. 22, 2021) (refusing "rebuttal experts outside the scope of the Court's scheduling order" because there would be "little to no opportunity to depose said experts before the motion for class certification would be ripe for review"); *Panavision Imaging, LLC v. OmniVision Techs., Inc.*, 2010 WL 11507881, at *2 (C.D. Cal. Apr. 19, 2010) (noting that scheduling order consisted of opening expert reports and rebuttal reports).

Against this backdrop, it is irrelevant whether expert replies are "routine" in antitrust cases. Pls. Br. at 10. While courts sometimes accept scheduling orders proposed by the parties that provide for three-stage expert disclosures in antitrust cases, that is not what the parties ***agreed to and the Court authorized*** in this antitrust case for class certification. Here, the parties proposed— and the Court accepted—a Scheduling Order that only permitted two rounds of reports.

Plaintiffs' reliance on Rule 26(a)(2)(D)(ii) is misplaced, Pls. Br. at 10, because the 30-day deadline for rebuttal evidence in that rule expressly only applies "[a]bsent a stipulation or a court order." Fed. R. Civ. P 26(a)(2)(D); *see Akeva L.L.C.*, 212 F.R.D. at 310. That is not the case here,

---

each side had only one round of expert disclosures and holding that "when there is a discovery plan covering expert disclosures, the plan controls" and not Rule 26(a) deadlines).

where the permitted timing and sequencing of expert disclosures for Plaintiffs' class certification motion were clearly set forth in the Court's Scheduling Order. Permission to submit reply reports when not authorized under the scheduling order is governed by the good cause requirement of Rule 16(b)(4), pursuant to which Courts regularly enforce the terms of two-stage scheduling orders and strike unauthorized replies. *See, e.g., Simmons*, 2021 WL 6062633, at *2 (striking expert rebuttal reports filed with class certification where "none of the Court's four scheduling orders, which were adopted versions of the parties' own proposed orders, provided for Plaintiffs' rebuttal experts"); *Stoyas v. Toshiba Corp.*, 2022 WL 19406, at *2–3 (C.D. Cal. Jan. 3, 2022) (striking expert reply report on class certification where schedule did not provide for reply reports).

## II. Plaintiffs Fail to Show Good Cause to Justify Amending the Scheduling Order to Permit Expert Reply Reports

Plaintiffs do not even attempt to carry their burden of identifying any specific subject matter for which good cause exists and instead offer a non-exclusive grab-bag of "issues" that they intend their experts to address. Pls. Br. at 13–16. Plaintiffs vaguely claim "fairness" dictates that they be permitted to serve reply reports on topics addressed by Defendants' papers (Pls. Br. at 1, 13), because their "need to rebut the specific points raised by defendants and their experts only became certain with the filing . . . of defendants' papers opposing class certification and seeking to exclude plaintiffs' experts." *Id*. at 16. That statement is belied by Plaintiffs' conduct during class certification expert discovery, where Plaintiffs signaled that they anticipated seeking leave for reply reports ***prior to*** even receiving Defendants' opposition papers and expert reports. Stock Decl. Ex. A. In any event, stating that Plaintiffs' purported "need" for rebuttal only "became certain" once Defendants' papers were filed is plainly insufficient to show good cause, especially given Plaintiffs' failure to point to any new and unanticipated methodology in Defendants' reports.

Defendants explain below why: (1) there is no basis to grant Plaintiffs a carte blanche right

to serve new expert reports on all topics addressed in Defendants' opposition and related papers;
(2) Plaintiffs have failed to meet the good cause standard for *any* of the topics listed on pages 13–
16 of Plaintiffs' opening brief; and (3) Defendants would be greatly prejudiced by any reply report.

### A.    There is No Basis for Providing Plaintiffs With a Carte Blanche Right to Submit Reply Reports on Any Topic Addressed by Defendants' Papers.

If the good cause standard is to have any meaning with respect to a request to serve reply

reports, that standard must be addressed by reference to the specific subject matter that is proposed

for the reply report.  The applicable case law does not support granting Plaintiffs a blank check to

serve reply expert reports on any topic addressed in Defendants' expert reports, opposition to class

certification, or *Daubert* motions.  *See, e.g., Lidle*, 2009 WL 4907201, at *4–6.

Rather, where the operative scheduling order provides for only one set of expert reports for

the plaintiffs, and one set for the defendants, courts evaluate (and regularly deny) a plaintiff's

request for reply expert reports based on the specific subject matter proposed for the report, under

the following principles.  *First*, to potentially justify a reply report, a plaintiff must show that the

defendant's expert introduced a new methodology or analysis that was unforeseeable and thus

could not be addressed at the time of the initial reports, and regularly deny requests for reply reports

that do not meet that standard.[3]  *Second*, a plaintiff seeking a reply report must show that the

content of the reply report is directly responsive to such new methodology/analysis raised by the

---

[3] *See Lidle*, 2009 WL 4907201, at *5 (denying request for reply with respect to subject matter where "[t]here is no reason that [plaintiff's expert] could not have conducted [certain] tests before his initial report was drafted"); *Williams v. East Meadow Union Free Sch. Dist.*, 2025 WL 218829, at *6 (E.D.N.Y. Jan. 16, 2025) (excluding reply reports where party advancing them "offer[ed] no explanation as to why" they failed to account for certain information "in [the] initial report before discovery closed"); *Murray v. Roadway Exp., Inc.*, 2010 WL 3023905, at *1–2 (E.D.N.Y. July 30, 2010) (finding no good cause to amend scheduling order to permit expert report "addressing matters that could and should have been the subject of an earlier report").

defendant, and deny such requests where that is not the case.[4]  *Third*, courts will not permit an expert reply report that seeks to introduce new affirmative evidence, analyses, or opinions.[5] *Fourth*, courts will not permit a reply report under circumstances that impose unfair prejudice on the defendant(s).[6]

Against this backdrop, Plaintiffs desire for a broad open-ended right of reply—presumably out of concern that their initial reports were simply inadequate—is the antithesis of "good cause." *See, e.g., Freeman v. Deebs-Elkenaney*, 2024 WL 3634738, at *7 n.8 (S.D.N.Y. Aug. 1, 2024) (excluding an "untimely" "supplemental [expert] affidavit" intended to "cure the issues in her expert report" since it threatened to "wreak havoc on docket control"); *NetFuel, Inc. v. Cisco Sys., Inc.*, 2020 WL 1450570, at *5 (N.D. Cal. Mar. 25, 2020) (denying leave to submit expert supplemental reports where it would give Plaintiffs a "second bite" to cure "significant deficiencies").  Orderly litigation requires a fixed schedule, and the schedule agreed upon by the parties here contemplates that each side would have only one round of expert reports.  Plaintiffs were required to exercise diligence in setting forth their case in that round of reports—particularly where, as here, reply reports were not contemplated by the schedule.  *Camarata v. Experian Info.*

---

[4] *See Lidle*, 2009 WL 4907201, at *5 (finding that "the door for a reply report was opened" to respond to a new methodology introduced by the defendant, but denying plaintiff's request because the proposed reply report did not directly address that particular point).

[5] *In re Acetaminophen – ASD-ADHD Liability Litig.*, 707 F. Supp. 3d 309, 363 (S.D.N.Y. 2023) ("A rebuttal report is not the proper avenue to introduce entirely new analyses or opinions"); *Point Prods. A.G. v. Sony Music Ent., Inc.*, 2004 WL 345551, at *10–11 (S.D.N.Y. Feb. 23, 2004) (excluding late expert affidavits containing "factual claims never before placed in evidence," and noting that alleged importance of the evidence "underscore[s] the inexcusable quality of its delayed submission").

[6] *See Williams*, 2025 WL 218829, at *7 ("Allowing these supplemental reports would inevitably necessitate reopening expert discovery on damages . . . potentially leading to further depositions, reports, and motion practice, thereby resulting in increased time and resources to an already lengthy litigation that is nearing an end.").

*Sols., Inc.*, 2018 WL 1738335, at \*2 (S.D.N.Y. Mar. 5, 2018) (chastising party for waiting to "address all appropriate subjects of expert testimony under the claim that it is merely serving a reply or rebuttal expert report"); *Holmes*, 568 F.3d at 334–35.[7]

Plaintiffs' evident objective for these reply reports—to rehabilitate expert witnesses crucial to their motion for class certification—further supports the conclusion that Plaintiffs have not (and indeed cannot) show good cause. As Plaintiffs concede in their supporting declaration, they wanted to serve "reply" reports ***before*** they saw Defendants' expert reports or *Daubert* motions. ECF No. 255 ¶¶ 5–8. In fact, Plaintiffs first signaled that they wanted to file reply reports following the deposition of Plaintiffs' experts, when the deficiencies with those experts' reports became clear to them. *Id.*; Stock Decl. Ex. A. That backdrop contradicts the reasoning Plaintiffs now offer in this pending motion. *See* Pls. Br. at 13 (claiming that "plaintiffs' experts should have an opportunity to rebut" the issues raised by Defendants).

The Court should therefore reject Plaintiffs' open-ended request to rewrite the scheduling order in their favor. *Sandata Techs., Inc. v. Infocrossing, Inc.*, 2007 WL 4157163, at \*8 (S.D.N.Y. Nov. 16, 2007) (denying reply reports "when none were permitted" as an attempt by a party to "gain unfair advantage" and "hav[e] the last word").

### B.    Plaintiffs Fail To Show Good Cause For Permitting New Expert Testimony on the Topics They Identified in Their Brief.

While Plaintiffs seek an improper open-ended right of reply, they also fail to meet the good cause standard for any of the prospective subject matters of their proposed reply reports.

---

[7] Plaintiffs conclusorily state that they were "diligent in bringing this issue before the Court," Pls. Br. at 16, but that assertion rings hollow given that they moved only after briefing was well underway and after their experts' depositions were complete. Moreover, Rule 16(b)(4)'s diligence inquiry requires Plaintiffs to show that any proposed topic for reply could not reasonably have been expected to be addressed at the time of the opening reports. *See supra* at 8–9.

### 1.     Bettina Bergmann

Plaintiffs have not shown good cause to serve a reply expert report from Bettina Bergmann. Bergmann is a lawyer in Germany, with a long track record ██████████████ ████████████████████████████.[8]  Bergmann provided purported "expert" testimony in this case—applying no apparent expert methodology—regarding ████████████████ ████████████████████████.  As Plaintiffs' motion notes, Defendants moved to exclude Bergmann's "expert" report for a host of reasons, including that ████████████ ████████████████████████ and that her ████████████████████████████ ████████████████████████████ provides an insufficient basis for her conclusions.  Pls. Br. at 15.  As explained below, Bergmann's "expert" report is essentially a vehicle for Plaintiffs to introduce new facts into the record about ██████████████████ ████████████████████—long after fact discovery has closed and under the guise of a purported expert.

Plaintiffs' request for a reply report from Bergmann does not come close to meeting the "good cause" standard.  Plaintiffs' proposed topics include ██████████████████████ ████████████████████████████████"—topics which could and should have been detailed in Bergmann's initial "expert" report (if there was, in fact, such a basis).  *See Whalen v. CSH Transp., Inc.*, 2016 WL 5660381, at *3 (S.D.N.Y. Sept. 29, 2016) ("[T]he obvious purpose of the report requirement is to disclose to the adverse party the opinions of the expert witness, the bases for those opinions and the qualifications of the expert to render those opinions.").  Plaintiffs' implicit acknowledgement that they failed to act with diligence and

---

[8] The CGS business was previously owned by Defendant S&P Global but is now owned by Defendant FactSet Research Systems.

include in Bergmann's opening report enough to sustain it against a *Daubert* challenge does not provide "good cause" for a new report. Plaintiffs can address ███████████████ and the ███████████████████████████ in their opposition to Defendants' *Daubert* motion.

Further, Plaintiffs fail to establish good cause for Bergmann to submit a reply report on the sole substantive topic Plaintiffs describe in their application for a Bergmann reply report— Bergmann's opinions about ████████████████████████████████████████████ Pls. Br. at 5; ECF No. 255-5 at 24; ECF No. 255-7 at 3. Plaintiffs seek to offer this "opinion" to support their ████████ theory of common injury, which as Defendants' *Daubert* motions demonstrate, was ████████████████████████████████████████ ████████████████████. At her deposition, and through their rebuttal experts, Defendants established that Bergmann's conclusions about ███████████████████ are completely unsubstantiated. Pls. Br. at 15; ECF No. 255-9 at 11–15. But Plaintiffs point to no new and unexpected methodology or analysis in Defendants' reports on this topic; to the contrary, Defendants established that there was no foundation for Bergmann's assertion. Bergmann cannot belatedly build that foundation now.

Moreover, any attempt to add to Bergmann's opinions about ███████████████ ██████████████ in a reply report would likely require introducing new facts and evidence, which is impermissible and an improper use of a reply report. *Point Prods. A.G.*, 2004 WL 345551, at *10–13 (excluding late expert affidavits containing factual claims never before raised). Bergmann's inability to identify a specific basis in her report for her conclusions confirms that none exist.

Finally, to the extent that Plaintiffs seek to supplement Bergmann's report with ███████████ ██████████████, that is not an appropriate use of an expert report. One reason (among many)

that Defendants questioned the reliability of Bergmann's report was her ██████████
████████████████████████████████████████████. ECF No. 255-9 at 19–
20. Plaintiffs indicated at a meet and confer that they are interested in explaining that this ████
██████████████████████. However, Plaintiffs have not proffered Bergmann as an
expert on ████████. Any discussion of legal issues can be made in Plaintiffs' opposition to
Defendants' *Daubert* motion—it is no justification for a new report. *Ebbert v. Nassau Cnty.*, 2008
WL 4443238 at *13–14 (E.D.N.Y. Sept. 26, 2008) (internal citations omitted) (experts cannot offer
legal conclusions); *In re: Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 477 (S.D.N.Y.
2016) (preventing expert from "opin[ing] on foreign regulatory issues" because expert was
"admittedly not an expert in the laws of foreign jurisdictions, and therefore [wa]s not qualified to
testify on those subjects").

Regardless, whether Bergmann's ████████████████████ can be justified
under ████████ is irrelevant. Under black letter U.S. law, Defendants are entitled to a full
disclosure of the bases for Bergmann's opinions so that Defendants can fully test and challenge
those opinions. Rule 26 mandates disclosure of all information, whether confidential or not, that
a testifying expert "generates, reviews, reflects upon, reads, and/or uses in connection with the
formulation of his opinions, even if such information is ultimately rejected." *Synthes Spine Co. v.
Walden*, 232 F.R.D. 460, 463 (E.D. Pa. 2005); *see also* Fed. R. Civ. P. 26(a) Advisory Committee
Notes to the 2010 Amendment ("[T]he intention is that 'facts or data' be interpreted broadly to
require disclosure of any material considered by the expert, from whatever source, that contains
factual ingredients."). Here, the ████████████ Bergmann considered is the alleged
factual ingredients for her testimony. An expert cannot ████████████ that and still proffer
reliable testimony. That Bergmann cannot ████████████████ because of her

13

claimed ███████████████, if anything, further supports the reasons why her "opinions" in this case should be excluded. *Aniero Concrete Co., Inc.  N.Y.C. Sch. Constr. Auth.*, 2002 WL 257685, at *2 (S.D.N.Y. Feb. 22, 2002) (noting that the "Rule 26(a)(2)(B) disclosure requirement trumps the substantial protection otherwise accorded" certain privileged material) (collecting cases).

### 2.    Frank Lenz

Plaintiffs also failed to show good cause to serve a reply report for Frank Lenz.  Like Bergmann, Lenz's report seeks to belatedly supplement the factual record in this case with a ████████████████████████████████████████████████████ ██████████████████████████████████. ECF No. 255-6.  Essentially, Plaintiffs proffer Lenz to state that ████████████████████████████████, which Plaintiffs and Professor Elhauge cite to support their now discredited ████████ theory of class-wide injury and damages.  ECF No. 255-4 ¶ 76; ECF No. 255-6 at ¶¶ 13, 24–29, 35, 44.  Defendants moved to exclude Lenz's "expert" opinions because his opinions were unreliable and unsubstantiated, and because he was offered to supplement the factual record about a third party— instead of disclosing that third party as a relevant fact witness on Plaintiffs' Rule 26 initial disclosures—which is improper expert evidence.  ECF No. 255-10 at 2, 12–13.[9]

As with Bergmann, there is no basis for allowing a reply report from Lenz on Plaintiffs' proposed topic as to whether Lenz had ████████████████████ Pls. Br. at 16.  Lenz was obligated to provide his opinions, together with all of his evidence in support, in his opening

---

[9] A proposed reply report is only Plaintiffs' latest attempt to resuscitate Lenz's expert opinion to support class certification. This request for a do-over via a reply report comes after Plaintiffs have already attempted to improperly modify broad swaths of Lenz's deposition testimony through an excessively substantive errata sheet.  *See* Defs' Ex. B.

report and cannot now cure omissions that resulted from a lack of diligence.  Further, the good cause standard does not permit a reply report merely to provide additional bases supporting ████████.  Moreover, ████████ is a legal argument for Plaintiffs' counsel to make in opposition to the *Daubert* motion, not for the expert to self-conclude.  *United States v. Starzecpyzel*, 880 F. Supp. 1027, 1031 (S.D.N.Y. 1995) (noting that the *Daubert* reliability inquiry is a "purely legal question").

Nor have Plaintiffs shown good cause for a reply report on the substantive topic that Plaintiffs propose—i.e., ████████████████████████████████ (Pls. Br. at 16).  Indeed, that is the ***same topic*** addressed in Lenz's initial report.  Plaintiffs point to no new, unforeseeable methodology by Defendants' experts on this topic, nor do they propose that the Lenz report be narrowly limited to responding to such new Defendants-sponsored methodology.  Their silence on these points underscores a lack of diligence on their part in offering opinions capable of withstanding factual scrutiny in the first instance, and forecloses any claim of good cause.

Moreover, even if Plaintiffs had pointed to something new or unexpected in Defendants' reports on this topic, a Lenz reply report would still be unwarranted under the circumstances present here.  Lenz's deposition and Defendants' expert reports show that Lenz, who has not ████████████████████ for over a decade, mischaracterizes the ████████████████████ ████ and omits key information on how ████████████████████████ ████.  ECF No. 255-10 at 8–11, 15.  Any reply report from Lenz would undoubtedly introduce further factual evidence about the practices of third-party ████████.  That would be improper for at least three reasons.

First, any information that Lenz seeks to introduce in a reply expert report could have and should have been included in his initial report. Plaintiffs must have reasonably anticipated that Defendants would challenge the accuracy of Lenz's opinions about how ██████████████ ██████, and he should have presented the full factual basis (to the extent such facts even exist) for his opinions at the outset. *See* ECF No. 255-10 at 21–23 (errata revising witness testimony underscores witness unreliability). Second, introducing new evidence in a reply report is an improper use of such a report. *Point Prods. A.G*, 2004 WL 345551, at *10–13 (excluding late expert submission which contained new factual assertions never before raised). Indeed, allowing Lenz to add additional evidence in a new reply would either prevent Defendants from adequately responding or require further expert submissions and briefing from Defendants. Third, allowing Lenz to introduce still new facts on reply would greatly compound the prejudice that Defendants already point to in their *Daubert* motion—i.e., that Lenz is being used by Plaintiffs to supplement the record about the practices of a third party whose identity was not provided in Plaintiffs' Rule 26 disclosures, after discovery has already closed, thus preventing Defendants from taking discovery of that third party to verify or contradict Lenz's claims. ECF No. 255-10 at 2, 12–13.

### 3.    Einer Elhauge

Plaintiffs also fail to establish good cause for a reply expert report from Einer Elhauge.[10] Plaintiffs provide a bullet point list of twelve potential topics that they want Elhauge to address, none of which warrants a reply report. Pls. Br. at 13–15.[11] Indeed, the topics themselves

---

[10] Notably, Plaintiffs have already revised Elhauge's report twice since its initial filing—a corrected report was served on September 4, 2025 and an errata for the report was served on October 20, 2025, the night before his deposition. ECF No. 255-4 at 88.

[11] Plaintiffs have thus far refused to represent that their expert reply reports would be limited to the (already overbroad) topics listed in their opening brief. To the extent that, in their reply brief on this motion, Plaintiffs attempt to sandbag Defendants with additional proposed topics for a reply

underscore that Plaintiffs were not diligent in disclosing their expert opinions with their opening reports. *Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79–81 (S.D.N.Y. 2012) (finding no good cause to amend expert discovery deadlines in light of Plaintiffs' lack of diligence).

**Topics related to the flaws in Elhauge's damages model and** ███████ **theory of injury.** Elhauge's damages opinions, and assumptions underlying them, suffer from a set of fundamental and entirely foreseeable defects that Plaintiffs should have addressed in the opening reports, and which Plaintiffs cannot now attempt to cure through a reply.

- **Elhauge's deposition testimony disavowing Plaintiffs'** ██████ **theory** and **admitting that** ██████████ **is required** (Plaintiffs' fifth and seventh bullet points). These topics relate to Elhauge's deposition testimony on common injury and damages. At his deposition, Elhauge ███████████████████ and acknowledged that ████████████████ ██████████████████████████████████████. ECF No. 255-7 at 17–22; ECF No. 255-8 at 6–11. Elhauge also effectively conceded that ██████████████████ for Plaintiffs to demonstrate injury. ECF No. 255-7 at 16–18.

Plaintiffs' desire to undo or explain away damaging admissions at a deposition does not constitute good cause for a reply report. *NetFuel, Inc.*, 2020 WL 1450570, at *2 (prohibiting supplemental expert reports designed to cure "significant deficiencies"). Plaintiffs could have questioned Elhauge at his deposition to clarify this testimony if they believed clarifications were warranted; otherwise, the transcript speaks for itself. If Plaintiffs dispute Defendants' position,

---

report, that would be improper, and such new topics should not be considered by the Court. Likewise, to the extent Plaintiffs save for their reply their explanations of the good cause justifying any of their proposed topics, the Court should not consider any such belated explanation—or should grant Defendants the opportunity to respond.

they can debate in their briefs what Elhauge's statements at deposition mean. *See Primavera Familienstifung v. Akin*, 130 F. Supp. 2d 450, 529 (S.D.N.Y 2001), *amended on other grounds*, 137 F. Supp. 2d 438 (S.D.N.Y. 2001) ("Malkiel relies almost exclusively on his interpretation of deposition testimony by witnesses in this case.  In so doing, he does not serve as an expert but, rather, seeks to supplant the role of counsel in making argument at trial, and the role of the jury interpreting the evidence.").  Moreover, it would be improper for Elhauge to use a reply expert report to articulate new opinions, not disclosed in his initial report or deposition, relating to these topics.



- **Whether Elhauge had a "███████████" for his ███████████** (sixth bullet). Elhauge uses ███████████████████████████ discussed in ███████████████, and the ███████████████████████ discussed in ███████████, as ███████████████████████████ ███████████████████████████.  ECF No. 255-8 at 4, 13–20.  Defendants critique Elhauge for, among other things, his failure to provide the requisite economic foundation for a yardstick opinion, specifically, an explanation as to why ███████████████████████████████ ███████████████████████████████████████████████████████. *Id.*

Plaintiffs do not contend that Defendants' critique could not have been anticipated by Elhauge.  Whether a damages expert has a "███████████████" for his model is a general topic that Plaintiffs should have anticipated Defendants would address in their reports, and Elhauge was obligated to supply a sufficient basis for his ███████ opinion in his initial report.  *See* ECF No. 255-8 at 13–17 (Elhauge conducted no independent investigation of facts underlying his conclusions).  If Plaintiffs contend that Elhauge provided a sufficient basis for his ███████ model in his 71-page report, then they can explain why in their *Daubert* opposition brief.  However, Elhauge himself offered no basis in his opening report (other than relying on other experts) as to

why any of the 120 countries ███████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████. Any reply report articulating a new basis for his opinion

that purports to fix these flaws would be improper. *In re Acetaminophen – ASD-ADHD Prods.*

*Liab. Litig.*, 707 F. Supp.3d at 363 ("A rebuttal report is not the proper avenue to introduce entirely

new analyses or opinions").

- **Economic implications of** ███████████████████████████████████

████████████████████████████████████████████████████ (twelfth bullet).

In his report (which as noted he later disavowed), Elhauge contends that, absent the challenged

conduct, █████████████████████████ to the putative class members, all of whom

████████████████████████████████████████.[12] ECF No. 255-

4 ¶ 78. But, neither Elhauge nor Plaintiffs challenge ████████████████████████

████████████████. ECF No. 255-7 at 25. Thus, Elhauge fails to address an obvious

follow-up question: ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████? And, ███████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████

███████████████████████████ makes this an obvious issue for Elhauge to have addressed in

---

[12] The term "████████████████████," as used in Defendants' opposition to class certification, refers to a "█████████████████████████████████████████████████." ECF No. 255-7 at vii.  This term is interchangeable with "Third-Party Data Vendor" as used in Plaintiffs' Memorandum of Law in Support of Their Motion for Class Certification and Appointment of Class Counsel.  ECF No. 222 at viii.

his opening report. ██████████████████████████████████████████

████████████████. ECF No. 255-7 at 6–12. ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████. *Id.* at 11. In contrast, ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████. *Id.* Plaintiffs should have

therefore anticipated Defendants asking Elhauge: ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████? *Id.* at 25–30. Plaintiffs

do not argue in their brief (nor could they) that they could not have anticipated this argument in

Elhauge's opening expert report. And without that, they have no "good cause."

- **Damages model does not** ██████████████████████ **and/or** ██████████

██████████ (ninth and tenth bullets). These topics go to the heart of Elhauge's damages model

and whether it shows class-wide injury. He addressed the issue of ██████████ in his opening

report, and Defendants argue that his handling of this issue was deficient. Plaintiffs do not point

to new methodologies by Defendants' experts that they could not have anticipated. Instead, they

should have expected Defendants to scrutinize core assumptions of Elhauge's model and included

in his report all support for such assumptions that they wanted in the record.

- **Improper use of an** ██████████████████ (eleventh bullet). Elhauge's model

assumes that ████████████████████████████████████████. He surely could

have anticipated that Defendants would critique key assumptions underlying his analysis, and his opening report should have included his full defense of them. Plaintiffs do not suggest that Defendants' critiques could not have been anticipated.

Given the substantial deficiencies with Elhauge's damages and injury analysis and his admissions at deposition, there is a serious risk that Plaintiffs intend to use an Elhauge reply report to pivot to an entirely new damages model. Defendants would be substantially prejudiced by new opinions from Elhauge on this topic. Defendants pressed Plaintiffs during the discovery period to properly define their damages theory to ensure that Defendants could pursue all necessary discovery. But Plaintiffs repeatedly assured Defendants during (and again after) discovery that they were pursuing no damages theory other than their ██████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████. ECF No. 255-7 at 23. Defendants relied on these repeated representations in conducting discovery and in submitting their own expert testimony. Given that Plaintiffs ██████████████████████████████████████████████████████████ ██████████████ *Id.*, it would be highly prejudicial to allow Plaintiffs to reverse their position at this late stage, in a reply report. A shift in that theory would be manifestly unfair to Defendants, and would likely require reopening discovery. If Elhauge were permitted to do this, the schedule would need to be adjusted to provide Defendants the opportunity for their experts to respond, the opportunity to depose Elhauge on this new model, the opportunity to reply to Plaintiffs' new class certification theories, and the opportunity to supplement or re-write their already-filed *Daubert* motion. *Freeman*, 2024 WL 3634738, at *7 n.8 (finding that late expert submission would "wreak havoc on docket control"). No new opinion on this topic should be permitted.

██████████████ (first bullet). An expert's qualifications go to the very core of what *Daubert*

briefing is designed to test. *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 352 (S.D.N.Y. 2003) ("Rule 702 requires a trial court to make an initial determination as to whether the proposed witness qualifies as an expert."). It was foreseeable that █████████████████████████ ████████, and thus, Plaintiffs cannot establish good cause to shore up Elhauge's ████████████.

████████████ (second bullet). Plaintiffs should have anticipated that Defendants would closely scrutinize Elhauge's ████████████ and supporting analysis. Plaintiffs, tellingly, offer no explanation as to why Defendants' challenge to Elhauge's ████████████ argument was unanticipated or constitutes a new or unexpected methodology.

████████████ **assumptions,** and ████████████ **conclusions** (third and fourth bullets). Much like Elhauge's ████████████ analysis, Plaintiffs should have anticipated that Defendants would respond to Elhauge's opinion about ████████████, and the ████████████████████. Each of Plaintiffs' proposed "questions" should have been answered by Elhauge's initial report— these are not new issues raised by Defendants, but deficiencies identified by them. Again, Plaintiffs neither explain why Defendants' experts' rebuttals on these topics could not have been anticipated nor claim Defendants introduced a methodology Elhauge could not have reasonably anticipated.

████████████ **or** ████████████████████ **in the class** (eighth bullet). Plaintiffs' complaint disclaimed class membership for government or Defendants' parents, subsidiaries and affiliates. *See* Second Amended Complaint, ¶ 139. Whether Elhauge's analysis ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. That Defendants' experts addressed the topic can hardly be surprising. Moreover, Plaintiffs do not explain how or whether it is important to their case on class certification to rebut Defendants' expert on this topic. And if

it is important, Plaintiffs do not explain why they cannot adequately address it in their reply brief, without a new expert report.

Overall, this is not a case of Defendants' experts introducing a new methodology or analysis that was unforeseeable. All these bullet point issues should have been fully addressed at the time of Plaintiffs' experts' initial reports. Plaintiffs' failure to do so, and their belated change of litigation strategy, is insufficient as a matter of law to establish good cause.

### C.    Reply Reports Would Greatly Prejudice Defendants.

Failing to demonstrate "good cause," Plaintiffs instead argue that their request is based on a general principle of "fairness." *See* Pls. Br. at 1. But there is nothing fair about rigging a schedule to let Plaintiffs re-do their expert reports and damages theory after Defendants have already deposed those experts, opposed class certification, exposed their deficiencies, and filed *Daubert* motions based on them. Tellingly, Plaintiffs seek reply reports for the three experts who were subject to *Daubert* motions filed by Defendants (even though Plaintiffs already have an opportunity to oppose those motions). Plaintiffs' contention that Defendants will not suffer prejudice from these belated do-over expert reports because Defendants previously had an opportunity to depose Plaintiffs' experts (Pls. Br. at 17) ignores the obvious. Those depositions were necessarily limited to the experts' *initial* reports—not any opinion, analysis, methodology, or evidence to be included in these *new* reports Plaintiffs seek to submit. Likewise, Defendants' opposition to class certification and *Daubert* motions were limited to Plaintiffs' *existing* expert opinions and record evidence, and could not have addressed argument or testimony not yet created.

The purpose of the expert disclosure obligations under Rule 26 is to "prevent the practice of 'sandbagging' an opposing party with new evidence." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004). It is designed to elicit "the testimony the witness is expected to present during direct examination" and "incentiv[ize] [ ] full disclosure" to "help in preparing for a

deposition of the witness."  Rule 26(a)(2)(B) Advisory Committee Notes on 1993 amendment.
The Rules encourage full disclosure in advance of depositions, so that parties can test expert
witnesses with a complete understanding of their opinions and analyses.  Plaintiffs' application for
reply reports conflicts with these bedrock principles.

Indeed, Courts have denied similar attempts by parties "to gain an unfair advantage by
submitting two [expert reply reports], when none were permitted, and [ ] have[] the last word,"
after "deposition[s] ha[ve] been completed and the deadline for completion of."  *Sandata Techs.,
Inc.*, 2007 WL 4157163, at *8; *see also Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 324 F.
Supp. 3d 387, 395 (S.D.N.Y. 2018) (precluding new expert testimony submitted on reply in
support of class certification motion on ground that parties "cannot solely wait to respond to
deficiencies [ ] raise[d] in [an] opposition").  Permitting expert reply reports is undeniably
prejudicial where it "prevent[s] [Defendants] from deposing [Plaintiffs' experts] on [] revised and
supplemented opinions, or, if permitted, would [cause Defendants] to [incur] the expense of
conducting [further] deposition[s]."  *Sandata Techs, Inc.*, 2007 WL 4157163, at *8.  Courts outside
this Circuit have similarly found that late expert submissions—after the filing of an opposition to
class certification and completion of expert depositions—is undeniably prejudicial because it
would "g[ive] the plaintiffs the opportunity to wait for defendants to show their expert cards" and
"contribute to further delay, expense, and complication in an already long, expensive, and
complicated lawsuit."  *Bowman v. Int'l Bus. Mach. Corp.*, 2013 WL 1857192, at *5 (S.D. Ind.
May 2, 2013).  It is even worse when reply reports are proposed after *Daubert* motions have been
filed.

Plaintiffs do not cite a single case to the contrary.  Almost all of their cases involve
situations where the parties mutually agreed to allow reply expert reports, as reflected in their

stipulated scheduling orders. The parties here have no such agreement—instead, they agreed to only two sets of reports. Allowing expert reply reports now would cause havoc in the schedule. In the few cases cited where courts have permitted a plaintiff to file a reply expert report that was not provided for in the schedule, courts have—for obvious reasons—also granted defendants the opportunity to attempt to cure any prejudice, including by allowing them to depose plaintiffs' experts again, file a sur-reply in opposition to class certification, and/or submit expert sur-reply reports. *Ray v. Nat'l Collegiate Athletic Ass'n*, 1:23-cv-00425-WBS-CSK (E.D. Cal. filed March 21, 2023), ECF Nos. 111 at 2 n.1, 128 at 4 n.4 (noting that defendants had an opportunity to depose plaintiffs' expert following plaintiffs' submission of supplemental report); *In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-02626-HES-LLL (M.D. Fla. Aug. 15, 2017), ECF No. 577, 668 (granting defendants a sur-reply with supplemental declarations as well as additional depositions of plaintiffs' experts); *cf. Iowa Pub. Emps. Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 1:17-cv-06221-KPF-SLC (S.D.N.Y. filed Aug. 16, 2017), ECF Nos. 476, 487, 506, 507 (allowing defendants a sur-reply and reply expert reports in opposition to class certification following plaintiffs serving expert reply reports). These authorities underscore that it would be unduly prejudicial to Defendants to allow expert reply reports without significant curative measures—measures that would require an overhaul of the existing schedule (almost four years after this case was filed) potentially including the re-opening of discovery, including foreign third-party subpoenas.

## III.    If the Court Allows Reply Reports, It Should Take Corrective Steps to Remedy Prejudice to Defendants, and Cabin the Scope of Plaintiffs' Reply Expert Reports

No additional reports should be permitted, especially given the failure of Plaintiffs to provide any good faith basis for such reports in their opening brief on this motion. But if the Court does permit Plaintiffs to file reply expert reports of some type, Defendants request that the Court

grant appropriate relief to cure prejudice to Defendants to the extent possible.

Defendants respectfully request that, should the Court permit reply reports, that the Court also: (1) expressly limit the scope of any reply reports to only rebuttal (i.e., confined to directly addressing Defendants' experts' rebuttal arguments using only the opinions, analyses, and evidence already presented in Plaintiffs' experts' opening reports) on those particular topics (and for those particular experts) for which Plaintiffs have demonstrated good cause, (2) prohibit any citations to new evidence, sources, or methodologies, (3) impose a word-count limitation on such new report(s) that reflects the limited scope, (4) permit Defendants additional depositions of the affected expert, (5) allow Defendants to address any changes by submitting revised *Daubert* motions; and (6) permit Defendants to file a short sur-reply to Plaintiffs' motion for class certification addressing the new testimony and potential admissions by the expert at the new depositions (and, if necessary, a short expert declaration rebutting any new material).[13]  Should Plaintiffs or their experts advance a new class-wide injury or damages theory, Defendants reserve the right to move to strike it.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.

---

[13] Courts in this district routinely recognize that sur-replies are required to respond to expert reply reports where the opposition papers were filed before service of the reply report. *See Iowa Pub. Emps. Ret. Sys.*, No. 1:17-cv-06221-KPF-SLC (S.D.N.Y. filed Aug. 16, 2017), ECF Nos. 476, 487, 506, 507 (allowing defendants a sur-reply and reply expert reports in opposition to class certification following plaintiffs serving expert reply reports); *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 138 (S.D.N.Y. 2006) (granted defendants sur-reply with expert report, and denying plaintiff's motion to strike sur-reply reports on the ground that any inconvenience was "of [plaintiffs'] own creation"); *cf. Garland v. Norfolk S. Ry. Co.*, 2025 WL 461438 (W.D.N.Y. Feb. 11, 2025) (mitigating prejudice to Defendant from Plaintiffs' belated supplemental report by allowing Defendant to "have Plaintiff reinterviewed or re-examined by . . . rehabilitation expert, re-depose Plaintiff about all relevant issues since the date of his July 8, 2022, deposition to the present, and re-depose [Plaintiffs' expert]").

Respectfully submitted,

*/s/ Eric J. Stock*
Eric J. Stock
Jefferson E. Bell
Esther Lifshitz
GIBSON, DUNN &
CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 351-2301
Fax: (212) 716-0801
estock@gibsondunn.com
jbell@gibsondunn.com
elifshitz@gibsondunn.com

*Attorneys for Defendant*
*S&P Global Inc.*

*/s/ Jeffrey I. Shinder*
Jeffrey I. Shinder
Ellison A. Snider (pro hac vice)
SHINDER CANTOR LERNER LLP
14 Penn Plaza, 19th Floor
New York, NY 10122
Tel.: (646) 960-8601
Fax: (646) 960-8625
jeff@scl-llp.com
esnider@scl-llp.com

James J. Kovacs (pro hac vice)
Keagan H. Potts (pro hac vice)
SHINDER CANTOR LERNER LLP
600 14th St. NW, 5th Floor
Washington, DC 20005
Tel.: (646) 960-8611
Fax: (646) 960-8625
james@scl-llp.com
kpotts@scl-llp.com

W. Stephen Cannon (pro hac vice)
Seth D. Greenstein (pro hac vice)
Patrick Kennedy
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave. NW, Suite 1300 N
Washington, D.C. 20004
Tel.: (202) 204-3500
Fax: (202) 204-3501
scannon@constantinecannon.com
sgreenstein@constantinecannon.com
pkennedy@constantinecannon.com

Sarah Bayer (pro hac vice)
CONSTANTINE CANNON LLP
335 Madison Ave.
230 Park Ave, 17th Floor
New York, NY 10169
Tel.: (212) 350-2782
Fax: (212) 350-2701
sbayer@constantinecannon.com

*Attorneys for Defendant FactSet Research*
*Systems, Inc.*

*/s/ David C. Kiernan*
David C. Kiernan (pro hac vice)
Caroline M. Mitchell (pro hac vice)
Paul C. Hines (pro hac vice)
Kapri Saunders (pro hac vice)
JONES DAY
555 California St., 26th Fl.
San Francisco, CA 94104
Tel.: (415) 626-3939
Fax: (415) 875-5700
dkiernan@jonesday.com
cnmitchell@jonesday.com
phines@jonesday.com
ksaunders@jonesday.com

Michelle K. Fischer (pro hac vice)
901 Lakeside Avenue
Cleveland, OH 44114
Tel.: (216) 586-3939
Fax: (216) 579-0212
mfischer@jonesday.com

Alexander V. Maugeri
Amanda L. Dollinger
250 Vesey Street
New York, NY 10281
Tel.: (212)326-3939
Fax: (212) 755-7306
amaugeri@jonesday.com
adollinger@jonesday.com

*Attorneys for Defendant American*
*Bankers Association*

**WORD COUNT CERTIFICATION**

Defendants certify that the total number of words in this memorandum of law, exclusive of the caption, table of contents, table of authorities, and signature block, is 8640, pursuant to Rule 4(B) of the Court's Individual Rules of Practice in Civil Cases and Local Civil Rule 7.1.

*/s/ Eric J. Stock*
Eric J. Stock

\*  *Pursuant to Section 8.5 of the SDNY ECF Rules and Instructions, electronic signatures are being used on consent of all parties.*