# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------x

DINOSAUR FINANCIAL GROUP LLC, SWISS LIFE INVESTMENT MANAGEMENT HOLDING AG, and HILDENE CAPITAL MANAGEMENT, LLC, on behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

Civil Action No.: 22 Civ. 1860 (KPF)

S&P GLOBAL, INC., AMERICAN BANKERS ASSOCIATION, and FACTSET RESEARCH SYSTEMS INC.,

Defendants.

---------------------------------x

January 30, 2025
9:06 a.m.

* * * CONFIDENTIAL * * *

VIDEOTAPED DEPOSITION of JEFFREY MITNICK, held at the law offices of Wollmuth Maher & Deutsch LLP, 500 5th Avenue, New York, New York, before Judith Thaten, a Certified Livenote Reporter and Notary Public of the State of New York.

A P P E A R A N C E S

ON BEHALF OF PLAINTIFFS
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
BY: LYNDON TRETTER, ESQ.
ltretter@wmd-law.com
KYLIE SPENCER, ESQ.
kspencer@wmd-law.com

ON BEHALF OF DEFENDANT - S&P Global, Inc.
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166
BY: ERIC STOCK, ESQ.
estock@gibsondunn.com

ON BEHALF OF DEFENDANT - American Bankers Association
JONES DAY
555 S. Flower Street, 50th Floor
Los Angeles, California 90071
BY: CAROLINE MITCHELL, ESQ.
cnmitchell@jonesday.com

A P P E A R A N C E S (cont'd)

ON BEHALF OF DEFENDANT - FactSet Research Systems, Inc.
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave, NW, Suite 1300N
Washington, DC 20004
BY: SETH GREENSTEIN, ESQ.
sgreenstein@constantinecannon.com

ALSO PRESENT:
JONA KIM, ESQ., In-house Counsel, FactSet
RON MARRAZZO, Legal Video Specialist
Veritext Legal Solutions

IT IS HEREBY STIPULATED AND AGREED, by and among counsel for the respective parties hereto, that the filing, sealing and certification of the within deposition shall be and the same are hereby waived.

IT IS FURTHER STIPULATED AND AGREED that all objections, except to the form of the question, shall be reserved to the time of trial;

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed before any Notary Public with the same force and effect as if signed and sworn to before the court.

* * * *

CONFIDENTIAL - MITNICK

VIDEOGRAPHER: Good morning. We're now going on the record.

The time is approximately 9:06 a.m. It is the 30th of January 2025.

Please note that the microphones are sensitive and may pick up whispering and private conversations. Please mute your phones at this time.

Audio and video recording will continue to take place unless all parties agree to go off the record.

This is the video-recorded deposition of Jeffrey Mitnick in the matter of Dinosaur Financial Group LLC, et al., versus S&P Global, Inc., et al.

This case is filed in the United States District Court, Southern District of New York. Docket Number is 1860 (KPF).

The location of this

Page 14

CONFIDENTIAL - MITNICK

McGraw Hill.

Q Okay. Could you take me through your path when you were at -- your career path at the company?

A I'm not sure which company you are talking about.

Q McGraw Hill.

A Okay. I started in 1987 as a staff lawyer. And at a certain point in time, McGraw Hill split, such that the business known as Standard & Poor's, which was part of McGraw Hill, as well as various education publishing businesses, were split in two. So the company split in half.

And I elected to go with the portion of the company that included S&P and all the other financial information businesses.

And the name at some point changed to S&P Global.

Q What year around was that?

A I'm not sure.

Q Okay. At the time of the

Page 15

CONFIDENTIAL - MITNICK

split, what were your responsibilities?

A I handled M&A transactions. I handled minority investments, complex technology transactions.

I handled the review and drafting of distribution agreements, license agreements, publishing agreements.

Q Did there come a time when you had more responsibility for CGS's activities than other aspects of S&P's business?

A Over the years, I worked on a number of different matters all the time. At certain points in time, when there were major issues facing the CUSIP business, I would spend more time on those matters. But I wouldn't be able to delineate the percentages or time.

Q Okay. Today, in your role, what is your title today?

A Assistant general counsel and senior vice president for FactSet.

Page 16

CONFIDENTIAL - MITNICK

Q And do you perform services or work for FactSet not relating to CGS?

A I would say the overwhelming majority of my work is for CUSIP Global Services. That was what I was hired to do.

Q Okay. And what I'm trying to now find out is when did that concentration happen in your career, how far back in time?

A Well, in March 2022, S&P was required to sell CUSIP Global Services as a result of another transaction it was entering into. And at that point, S&P did not have any specific lawyers relating to CUSIP Global Services.

And at that time, during the transaction and while the transaction was pending, I was asked if I would consider leaving S&P to join the bidder who would prevail to purchase CUSIP Global Services.

Q So after that time, nearly

Page 17

CONFIDENTIAL - MITNICK

all of your work as an employee for FactSet related to CGS; is that correct?

A For the first 12 months, I did handle some specific FactSet transactional matters as well as my CUSIP responsibilities.

Q Okay. I would like to now focus on the time period prior to March of 2022.

And if you had to give a percentage of your time, am I correct that at that point, you were an employee of S&P?

A Correct.

Q Okay. And in that period, in the 2020s, let's say, how much of your time was devoted to CGS matters, and how much was devoted to other S&P matters?

A As you know, it's hard to calculate days and weeks and months of percentages.

But I would say 20 percent

Page 18

CONFIDENTIAL - MITNICK

for CUSIP Global Services; 80 percent other S&P matters.

Q Were there other attorneys besides yourself in-house at S&P that were assisting you on the CGS matters?

A Yes.

Q Who were they?

A Amanda Samuel was a lawyer within the S&P market intelligence legal group. And she was involved in CUSIP matters. And I met with her often and discussed CUSIP matters with her.

There were other attorneys who were responsible for handling the day-to-day work, signing customer agreements. So those folks would have also been involved in supporting the CUSIP business.

Q Putting those folks aside, was there any attorney other than Amanda Samuel that had those responsibilities for CGS?

A Well, Amanda's supervisor at

Page 19

CONFIDENTIAL - MITNICK

the time, I believe his name was Adam Marchuck, was the head of that legal department business unit.

Q And in your responsibilities, your CGS-facing responsibilities, did you have any counterparts at the American Arbitration Association that you dealt with?

MR. GREENSTEIN: Objection to form.

A Yes.

Q Who were they?

A Over the years, I worked with many different people at the American Bankers Association.

Currently, the primary people I work with today are Tab Stewart, Karin Flynn, and Tom Greco.

Q And if we were to go back into the 1990s period or 2010s, what -- would the cast of characters be different?

MR. GREENSTEIN: Objection to form.

Page 20

CONFIDENTIAL - MITNICK

A They had a lot of people who came and went over the years. I remember Diane Poole, who I believe was there for many years.

Q Focusing now on yourself and your own work responsibilities, what kind of work did you do for CGS from -- in the 1990s and the aughts, the 2000s?

A At the very beginning, it was simply reviewing customer agreements and distribution agreements.

That was the primary job responsibility.

Q Okay. And did that change later, as to the 2010s and 2020s?

A Over time. I worked on more types of transactions, involving CUSIP Global Services, not necessarily customer agreements.

Q What were the examples -- without giving me any advice that you were giving, but what would be the examples, topic areas?

A One topic area would be

Page 21

CONFIDENTIAL - MITNICK

alliances to assign identifiers to new asset classes.

Q I understand that.

Anything else come to mind, topic-wise?

A I worked on a variety of agreements relating to CGS's role as the US national numbering agency and contracts with the Association of National Numbering Agencies.

Q Okay. Anything else that comes to mind?

A At the moment, no.

Q To whom did you report, over time, in -- when it was owned by -- when CGS was part of S&P?

A I had many bosses --

Q Sorry to hear that.

A -- over the 30 years.

So I could review...

Q Well, why don't you give me your direct supervisors over time.

A Okay. Catherine Rowan, Scott Bennett, Kate Brennan, Jonathan

Page 222

CONFIDENTIAL - MITNICK

the

Page 223

CONFIDENTIAL - MITNICK

Page 224

CONFIDENTIAL - MITNICK

Page 225

CONFIDENTIAL - MITNICK

CONFIDENTIAL - MITNICK

[redacted]

CONFIDENTIAL - MITNICK

[redacted]

CONFIDENTIAL - MITNICK

[redacted]

CONFIDENTIAL - MITNICK

[redacted]

Page 230

CONFIDENTIAL - MITNICK

Page 232

CONFIDENTIAL - MITNICK

Page 231

CONFIDENTIAL - MITNICK

Page 233

CONFIDENTIAL - MITNICK

Page 306

CONFIDENTIAL - MITNICK

[redacted]

MR. TRETTER: I don't have any further questions.

MR. GREENSTEIN: Okay. Why don't we take a short break and go and discuss, and we'll be back.

MR. TRETTER: Okay.

VIDEOGRAPHER: Time is 4:28 p.m. We're going off the record.

(Whereupon, a brief recess was taken.)

VIDEOGRAPHER: The time is 4:38 p.m. We're back on the record.

Page 307

MR. GREENSTEIN: The defendant has -- the defendants have no questions for you.

Thank you very much for your time and attention today, Mr. Mitnick.

THE WITNESS: Thank you.

MR. TRETTER: And I join in that. You're excused.

VIDEOGRAPHER: All right.

The time is still 4:38 p.m. We are going off the record. This concludes today's testimony.

Thank you.

(Time noted: 4:38 p.m.)

Page 308

DINOSAUR FINANCIAL GROUP LLC, et al.
vs. S&P GLOBAL, INC., et al.

1/30/2025 - JEFFREY MITNICK

ACKNOWLEDGEMENT OF DEPONENT

I, JEFFREY MITNICK, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted on the Errata to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

________________________ ______________

JEFFREY MITNICK Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS

______ DAY OF _______________, 20___.

_________________________

NOTARY PUBLIC

Page 309

C E R T I F I C A T I O N

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

I, JUDITH THATEN, Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That JEFFREY MITNICK, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that this transcript of such examination is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my ry, 2025.

________________________

JUDITH THATEN

ERRATA SHEET
VERITEXT REPORTING COMPANY
7 TIMES SQUARE
NEW YORK, NEW YORK 10036
212-279-9424

NAME OF CASE:
DATE OF DEPOSTION:
NAME OF DEPONENT:

| PAGE | LINE (S) | CHANGE | REASON |
|---|---|---|---|
| ~~12~~ | ~~2~~ | ~~McGraw-Hill, Inc.~~ | ~~This was the legal name when I joined~~ |
| p.15 | 24,25 | Capitalize title | |
| p.19 | 8 | Arbitration should be "Bankers" | |
| p.21 | 24 | Rowan to Roome | - correct last name |
| p.58 | 24 | Subsidize | |
| 68 | 10 | Observer should be Owner | |
| 79 | 11 | proprietary is correct | |
| p.83 | 14 | Remove "the" | |
| p.166 | 21 | Parity is correct | |
| p.174 | 10 | Issuer | |
| p.201 | 14 | Plain | |
| p.228 | 5 | Data feed | |

I declare under penalty and perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: February 18, 2025

Jeffrey Mitnick