# EXHIBIT 103



<div align="right">
Thomas Pinder
General Counsel
202.663.5028
TPinder@aba.com
</div>

*Via Electronic Submission*

Vanessa A. Countryman
Secretary
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549-1090

September 3, 2024

**Re: Proposed Rule: Financial Data Transparency Act Joint Data Standards,
File No. S7-2024-05 (August 2, 2024)**

Dear Ms. Countryman:

The American Bankers Association ("ABA")[1] appreciates the opportunity to comment on the proposal[2] by nine federal agencies ("Agencies")[3] to establish joint data standards for collections of information reported to the Agencies under Section 124 of the Financial Stability Act of 2010, which has been added pursuant to Section 5811 of the Financial Data Transparency Act of 2022 ("FDTA").[4]  We respectfully urge the Agencies to reconsider the proposed establishment of Bloomberg LP's Financial Instrument Global Identifier ("FIGI") as the common financial instruments identifier and to issue a revised Notice of Proposed Rulemaking that complies with the Administrative Procedure Act ("APA").  If the Agencies nonetheless choose to proceed with the current proposal, we respectfully request a 60-day extension of the 60-day comment period in order to be provided with a

---

[1] The ABA is the voice of the nation's $23.3 trillion banking industry, which is comprised of small, regional, and large banks that together employ more than 2 million people, safeguard $19.2 trillion in deposits, and extend nearly $11 trillion in loans.  The ABA is the owner of all rights to the CUSIP system or other identifier systems developed by CUSIP Global Services ("CGS"), including all rights in and to CGS's various commercial databases and the CGS Data.  Learn more at www.aba.com.  CGS, the operator of CUSIP, is managed on behalf of the ABA by FactSet Research Systems Inc., with a Board of Trustees that represents the voices of leading financial institutions.

[2] Financial Data Transparency Act Joint Data Standards, 89 Fed. Reg. 67,890 (proposed Aug. 22, 2024) (the "Proposed Rule").

[3] The Agencies include: the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the National Credit Union Administration, the Consumer Financial Protection Bureau, the Federal Housing Finance Agency, the Commodity Futures Trading Commission ("CFTC"), the Securities and Exchange Commission ("SEC"), and the Department of the Treasury.

[4] 12 U.S.C. § 5334(b).

<div align="right" style="border:2px solid black; background:yellow;">
**Exhibit
P- 513**
04/01/2025
</div>

reasonable and meaningful opportunity to comment on the Proposed Rule's establishment of FIGI as the common financial instruments identifier.

The Proposed Rule declines to consider the globally relied-upon, fungible Committee on Uniform Security Identification Procedures ("CUSIP") and the closely related International Securities Identification Number ("ISIN") financial instrument identification systems, although they have been and continue to be the standards for uniquely identifying financial instruments across many functions, including financial reporting.[5]  The ABA comments as owner of the CUSIP financial instrument identification system.

CUSIP's critical role has developed for nearly 60 years in close collaboration with market participants to cover a wide range of global financial instruments, including extensive equity issues, fixed income, derivatives, U.S./Canadian listed equity options and single stock futures, as well as loans, whether syndicated, municipal, corporate, or otherwise. Importantly, CUSIPs are the required means of identifying financial instruments for nearly every financial reporting form collected by the Agencies,[6] as well as the underlying identifier for a myriad of Agency operations including Treasury issuances, Treasury Auctions, and MBS CUSIP Aggregation to name just a few.

By proposing to designate FIGI as the exclusive common financial instruments identifier, we respectfully submit that the Agencies have acted both outside the FDTA's statutory mandate and arbitrarily and capriciously under the APA by: (i) overlooking the essential service CUSIP provides globally to financial services firms, corporations, regulators, investors, clearinghouses, and markets, including with respect to reporting, custody, settlement, clearance and risk monitoring; (ii) ignoring the negative and highly disruptive impact that designating FIGI would have on the connectivity and stability of the global financial markets; and (iii) failing to engage in any cost-benefit analysis.  To provide the Agencies with the necessary information and analysis to inform the rulemaking process, commenters will need to engage with stakeholders spanning the entire securities market ecosystem to gather data and information.  Accordingly, the allotted 60-day comment period does not provide us with a meaningful opportunity to present the Agencies with adequate feedback on the breadth and expected wide-reaching impact of the Proposed

---

[5] CUSIP identifiers, aside from identifying new issues, are globally used in trading, settlement, asset servicing and risk management.  CUSIPs have served financial services firms, corporations, regulators, clearinghouses, and investors across these functions for nearly 60 years.  No other financial instruments identifier compares to CUSIP and its closely related ISIN in coverage and utility.  For more information *see* https://www.cusip.com/index.html.

[6] For example, Section 13(f) of the Securities Exchange Act of 1934 requires institutional investment managers to report to the SEC certain information with respect to accounts over which they exercise investment discretion.  15 U.S.C. § 78m(f).  The Exchange Act specifies that this collection of information must include, among other things, "the name of the issuer and the title, class, [and] CUSIP number. . . ."  *Id.* at § 78m(f)(A).  Similarly, the Department of Treasury requires entities controlling a position in a particular Treasury security (or securities) above a certain threshold to submit a "large position report," which requires disclosing "the CUSIP number for the security being reported."  17 CFR 420.3(f).

Rule.[7]  Thus, we respectfully submit that an extension of the comment period is necessary and appropriate.

**The Proposed Rule Exceeds the Statutory Mandate to the Agencies in the FDTA.**

The FDTA instructs the Agencies to establish "data standards" that "include common identifiers for collections of information reported to covered agencies or collected on behalf of the Council."[8]  Such common identifiers shall include a common nonproprietary "legal entity identifier" ("LEI") that is available under an open license for all entities required to report to covered agencies.[9]

The Agencies have proposed to establish FIGI as the common financial instruments identifier and declined to consider CUSIP.  Despite acknowledging that identifiers like CUSIP and ISIN are more "widely used," the Agencies chose FIGI because CUSIP and ISIN "are proprietary and not available under open license," while FIGI supposedly is not.[10]  The Agencies misconstrue the statute by imposing a requirement – that common identifiers be nonproprietary and available under an open license – that does not exist.[11]  This requirement applies only to LEIs.  A plain reading of the FDTA makes this clear: that "data standards . . . shall . . . include common identifiers . . . **which shall include a common nonproprietary legal entity identifier that is available under an open license** . . . ."[12]  If all common identifiers were required to be nonproprietary and available under an open license, the statutory language would not have singled out LEI in this manner.[13]  Thus, the Agencies' rationale to establish FIGI because it is nonproprietary and open license fails to follow Congressional intent.[14]

---

[7] "The legislative history of the APA suggests that '[matters] of great importance, or those where the public submission of facts will be either useful to the agency or a protection to the public, should naturally be accorded more elaborate public procedures.'"  TODD GARVEY, CONG. RSCH. SERV., R41546, A BRIEF OVERVIEW OF RULEMAKING AND JUDICIAL REVIEW 2 (Mar. 27, 2017) (citing Administrative Procedure Act: Legislative History, S. Doc. No. 248, 259 (1946); CHARLES H. KOCH JR., 1 ADMINISTRATIVE LAW AND PRACTICE 329-30 (2010 ed.)).

[8] 12 U.S.C. § 5334(c)(1)(A).

[9] *Id.*

[10] Proposed Rule at 67,897.

[11] Proposed Rule at 67,897.

[12] 12 U.S.C. § 5334(c)(1)(A) (emphasis added).

[13] The Agencies do not rely on the language in Subsection (c)(1)(B) to claim that a common financial instrument identifier is itself a purported "data standard" and therefore must nevertheless be "nonproprietary or made available under an open license" "to the extent practicable."  *Id.* at § 5334(c)(1)(B)(iv).  The Proposed Rule does not analyze the practicability of choosing FIGI as the single identifier for all financial instruments.  *See* Proposed Rule at 67,897.

[14] The Proposed Rule notes as rationale for choosing FIGI that FIGI "has been implemented as a U.S. standard (X9.145) by the ANSI Accredited Standards Committee X9 organization."  Proposed Rule at 67,897.  But it

3

Moreover, FIGI does not even satisfy the Agencies' interpretation that all common identifiers must be nonproprietary and available under an open license. OpenFIGI offers users access to a narrow set of data with limited utility, while the most useful fields (including the primary exchange on which the security is traded and distinguishing characteristics like call features, issuance volumes, etc.) are hidden behind a paywall, available only to users with a paid subscription to more complete reference data as accessible with a Bloomberg terminal.[15] By contrast, CUSIP's transparent, fair and non-discriminatory subscription provides users with over 60 different data elements for each of the covered tens of millions of financial instruments (depending on asset class), plus ongoing event-driven maintenance of this data resulting from corporate actions such as name changes, mergers, acquisitions and reverse splits.

**The Proposed Rule's Designation of FIGI is Arbitrary and Capricious.**

Under the APA, agency action will be set aside if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[16] In determining whether an agency's action is arbitrary and capricious, courts look to whether the "agency [has] examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made," or "failed to consider an important aspect of the problem."[17] In particular, courts have found that consideration of a regulation's economic impacts and "costs and benefits" are a necessary part of reasoned decision-making.[18]

*Barring examination of the relevant data and articulation of a satisfactory explanation for their action, including a rational connection between the facts found and the choice made, the Agencies are proposing to engage in an arbitrary and capricious rulemaking.* The Proposed Rule does not provide any analysis of the potential economic impact of establishing FIGI as the common financial instruments identifier. It notes only that FIGI is "a global non-proprietary identifier available under an open license" and that it "provides free and open access and coverage across all global asset classes, real-time availability, and

---

fails to even acknowledge that CUSIP has been an approved U.S. standard (X9.6) by the ANSI Accredited Standards Committee X9 organization (and its predecessors) since 1976. FIGI was only recently approved in 2019.

[15] Bloomberg does not publicly disclose the pricing model for Bloomberg terminals, but it is generally understood that Bloomberg terminals are priced per individual user per annum. *See* Tim Bohen, A Guide to the Cost of a Bloomberg Terminal, STOCKSTOTRADE (Oct. 25, 2023), https://stockstotrade.com/cost-of-bloomberg-terminal/.

[16] 5 U.S.C. § 706(2)(A).

[17] *Motor Vehicle Mfrs. Ass'n of U.S., Inc.* v. *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

[18] *See Mexican Gulf Fishing Co.* v. *U.S. Dep't of Commerce*, 60 F.4th 956, 973 (5th Cir. 2023); *see also Michigan* v. *EPA*, 576 U.S. 743, 753 (2015) (holding that a statutory requirement that an agency determine whether "regulation is appropriate and necessary" is not "an invitation to ignore cost").

4

flexibility for use in multiple functions."[19]  This conclusory (and, as noted above, incorrect) statement falls short of the basic requirement under the APA that the Agencies "examine the relevant data and articulate a satisfactory explanation for its action."[20]  In the Proposed Rule, the Agencies have failed to undertake any prudent factual analysis of the economic impact and to consider the disruptive and destabilizing impact this policy choice would have on U.S. and global markets.[21]

The Agencies attempt to sidestep this obligation by claiming that the Proposed Rule "only applies to the Agencies themselves – it does not apply to any other entities."[22]  This reading ignores that seven of the nine Agencies will have to promulgate Agency-specific rules, applicable to the financial entities under their jurisdiction, to implement any final data standards and common identifiers.[23]  Meaning, the Proposed Rule necessarily *will* force a change throughout the financial markets.  The Agencies therefore have unreasonably and inappropriately punted the legally required assessment of the costs and benefits of the rule by ignoring the ultimate impact of the Proposed Rule – that it is intended to apply to collections of information reported by financial entities to the Agencies.  To cure this deficiency, the Agencies must publish a revised Notice of Proposed Rulemaking that includes the appropriate analysis.  Extending the comment period, while not substituting for the Agencies' obligations under the APA, will permit commenters to assist the Agencies in assessing the economic impact of the Proposed Rule as it pertains to common financial instruments identifiers.  A 60-day comment period is not sufficient to provide the Agencies with a proper economic assessment of the Proposed Rules' inexplicable endorsement of FIGI.

*Barring further due diligence, the Agencies have failed to consider an important aspect of the problem resulting in an arbitrary and capricious rulemaking.*  FIGI and CUSIP are not interchangeable.  By the very terms of the Proposed Rule, the Agencies have proposed to establish FIGI over CUSIP with no regard to the significant and transformational economic impacts on financial services firms, corporations, regulators investors, and the markets.  CUSIP has been proven to offer significant benefits to agencies and the public, which FIGI is simply incapable of replicating.  While a more substantive review of the effects of the Proposed Rule is necessary, establishing FIGI would have obvious harmful impacts not considered by the Agencies.  *First*, CUSIPs are fungible because each security has exactly

---

[19] Proposed Rule at 67,897.

[20] *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43.

[21] The House Appropriations Committee recently clarified that the SEC should be mindful of "Congressional intent [to] avoid disrupting the U.S. capital markets" when implementing the FDTA.  H.R. Rep. No. 118-556, at 78-79 (2024).

[22] Proposed Rule at 67,901, 67,903.

[23] The Agencies are required under the FDTA to establish "rules . . . that establish data standards for . . . the collections of information reported to each covered agency *by financial entities* under the jurisdiction of the covered agency."  12 U.S.C. § 5334(b)(1)(A) (emphasis added).

one CUSIP identifier that represents the same security regardless of the venue where it is traded. Not so with FIGI; for example, with respect to common stock, there is a different FIGI number for the same security for each exchange on which the security trades and for each country in which it trades. The Agencies themselves have previously determined that fungibility is critical for minimizing trade failures, ensuring transparent reporting, and monitoring and assessing systemic risk.[24] *Second*, aside from fungibility, FIGI is not interchangeable with CUSIP. Accessing the CUSIP database (or its subsets) provides users more than 60 critical reference data fields for each security. By comparison, as noted above, OpenFIGI offers users access to a narrow set of data with limited utility, while the most useful fields (including the primary exchange on which the security is traded and distinguishing characteristics like call features, issuance volumes, etc.) are hidden behind a paywall, available only to users with a paid subscription to more complete reference data as accessible with a Bloomberg terminal. Thus, as a result of the Agencies' implicit – and erroneous – conclusion that FIGI and CUSIP are interchangeable, they have failed to consider or explain "relevant and significant issues"[25] that would be created as a result of the material differences between and lack of interchangeability of the two identifiers.

To provide a meaningful opportunity to comment and give feedback to the Agencies, including to assess the full impact of the Proposed Rule, commenters would require significantly more time than 60 days. Each instance where CUSIP would be replaced with FIGI has its own potential economic impact given how widely CUSIP is used, each with its own different stakeholders, risks, and potential disruption. To fully analyze the wide-ranging global impacts across many stakeholders, as a matter of administrative law, 60 days is simply not enough time.

For these reasons, we respectfully urge the Agencies to reconsider the proposed establishment of FIGI as the common financial instruments identifier and to issue a revised Notice of Proposed Rulemaking that complies with the APA. Otherwise, the Agencies risk saddling each individual Agency with the task of promulgating regulations that disrupt the entire ecosystem of financial reporting, absent any statutory mandate to do so, all without first considering the economic impacts and costs and benefits of such a decision. If the Agencies nonetheless choose to proceed with the Proposed Rule, we respectfully submit that the 60-day comment period be extended by an additional 60 days.

---

[24] *See* SEC, CFTC, Form PF; Reporting Requirements for All Filers and Large Hedge Fund Advisers, 89 Fed. Reg. 17,984, 18019 (Mar. 12, 2024) ("[A] fungible identifier is preferable because it will allow for more consistent reporting of assets than a nonfungible identifier . . . resulting in more effective monitoring and assessment of systemic risk. We are not adopting a change to permit the substitution of FIGI for CUSIP."). In promulgating this rule, the SEC and CFTC also "consulted with FSOC to gain input on these amendments to help ensure that Form PF constitutes to provide FSOC with information it can use to assess systemic risk." *Id.* at 17,987.

[25] 5 U.S.C. § 553(b), (c); *S.C. ex rel. Tindal* v. *Block,* 717 F.2d 874, 885 (4th Cir. 1983).

6

We have enjoyed a constructive and productive dialogue with the SEC for decades and stand ready to work with the SEC and its staff on a holistic review of the impact of common financial instrument identifiers.  If you have any questions, please contact the undersigned.


Respectfully,


Thomas Pinder,
General Counsel
American Bankers Association


cc:    Gary Gensler, Chair
        Hester M. Peirce, Commissioner
        Caroline A. Crenshaw, Commissioner
        Mark T. Uyeda, Commissioner
        Jaime Lizárraga, Commissioner
        Megan Barbero, General Counsel
        Jessica Wachter, Director, Division of Economic Risk and Analysis
        Haoxiang Zhu, Director, Division of Trading and Markets
        Natasha Vij Greiner, Director, Division of Investment Management
        Erik Gerding, Director, Division of Corporation Finance
        David Bottom, Chief Information Officer
        Austin Gerig, Chief Data Officer

7