**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X:
                             :

DINOSAUR FINANCIAL GROUP LLC,      :
HILDENE CAPITAL MANAGEMENT, LLC  :
and SWISS LIFE INVESTMENT        :
MANAGEMENT HOLDING AG, on behalf  :
of themselves and all others similarly situated, :
                             :

             Plaintiffs,        :   Case No. 1:22-CV-1860-KPF

                             :

    -against-             :   **ORAL ARGUMENT REQUESTED**

                             :

S&P GLOBAL, INC., AMERICAN        :
BANKERS ASSOCIATION, and FACTSET  :
RESEARCH SYSTEMS INC.,         :
                             :

            Defendants.    :
                             X

-------------------------------------------------------

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO**
**EXCLUDE TESTIMONY OF BETTINA BERGMANN**

## <u>TABLE OF CONTENTS</u>

I.      **Plaintiffs have not shown that Bergmann has qualifications to be an expert..............1**

II.     **Plaintiffs have not shown that Bergmann's purported methodology is reliable. ........2**

      A.      **Bergmann uses no reliable methodology to ascertain the facts about the data licensing practices of more than 120 NNAs operating around the world.........2**

      B.      **Bergmann's refusal to disclose her sources deprives defendants and the court of any means to test her opinions—and requires exclusion. ............................6**

      C.      **Plaintiffs admit Bergmann relied on hearsay without independently confirming its accuracy or reliability.................................................................8**

III.    **Bergmann's admissions confirm her testimony is irrelevant to this case. ...................9**

IV.     **Bergmann is an advocate, not an independent expert................................................10**

V.      **Conclusion.....................................................................................................................12**

i

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*523 IP LLC v. CureMD.com*,
  48 F. Supp. 3d 600 (S.D.N.Y. 2014)..................................................................................11

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002).............................................................................................6

*Brainchild Surgical Devices LLC v. CPA Glob. Ltd.*,
  144 F.4th 238 (4th Cir. 2025)...........................................................................................6

*Cacciola v. Selco Balers, Inc.*,
  127 F. Supp. 2d 175 (E.D.N.Y. 2001)........................................................................10-11

*Dallas & Mavis Forwarding Co. v. Stegall*,
  659 F.2d 721 (6th Cir. 1981).............................................................................................8

*Doucette v. Jacobs*,
  106 F.4th 156 (1st Cir. 2024) ..........................................................................................10

*Giorgi Glob. Holdings, Inc. v. Smulski*,
  2020 WL 2571177 (E.D. Pa. May 21, 2020) ....................................................................7

*Hayden v. Int'l Bus. Machs. Corp.*,
  2025 WL 1697021 (S.D.N.Y. June 17, 2025) ...................................................................3

*In re Mirena IUD Prods. Liab. Litig.*,
  169 F. Supp. 3d 396 (S.D.N.Y. 2016)...........................................................................6, 11

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ..........................................................................................................3

*LaBarge v. Joslyn Clark Controls, Inc.*,
  242 F. App'x 780 (2d Cir. 2007) .....................................................................................10

*Lippe v. Bairnco Corp.*,
  288 B.R. 678 (S.D.N.Y. 2003) .................................................................................1, 2, 10

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005)..............................................................................................8

*Pension Comm. of Univ. of Montr. Plan v. Banc of Am. Sec., LLC*,
  691 F. Supp. 2d 448 (S.D.N.Y. 2010)................................................................................2

*Rubinstein v. Marsh,*
  1987 WL 30608 (E.D.N.Y. 1987) ...................................................................................11

*S.E.C. v. Tourre,*
  950 F. Supp. 2d 666 (S.D.N.Y. 2013).................................................................................2

*Schansman v. Sberbank of Russia PJSC,*
  768 F. Supp. 3d 619 (S.D.N.Y. 2025)............................................................................ 7-8

*United States v. Mejia,*
  545 F.3d 179 (2d Cir. 2008)...............................................................................................8

## Rules

Fed. R. Civ. P. 26(a)(2)(B)(ii) ............................................................................................6

Fed. R. Evid. 702 ................................................................................................passim

Fed. R. Evid. 702(a) ..................................................................................................... 8, 9

Fed. R. Evid. 702(b).........................................................................................................9

Fed. R. Evid. 702(d).....................................................................................................9, 10

Fed. R. Evid. 703 ............................................................................................................8

In their opening brief, Defendants[1] explained how Bettina Bergmann fails to offer reliable and admissible expert testimony. She lacks the necessary qualifications under Rule 702 for the opinions she proffers, and those opinions are devoid of any reliable methodology. Bergmann puts forward nothing more than a series of factual assertions unsupported by the record, the bases of which she never disclosed, the accuracy of which she never verified, and the substance of which she admitted is irrelevant to this case. In their Opposition, Plaintiffs attempt to deflect from these glaring deficiencies—without defending Bergmann's methods—in the hopes of shoehorning her untested factual assertions into the record. Plaintiffs' inability to support Bergmann's statements is as telling as it is decisive, as Bergmann's *ipse dixit* is one of the linchpins of Plaintiffs' entire theory of class-wide harm. The Court should exclude Bergmann's testimony in its entirety.

## I.      Plaintiffs have not shown that Bergmann has qualifications to be an expert.

Defendants have established, and Plaintiffs have not rebutted, that Bergmann is patently unqualified to testify as an "industry expert" in this market. Plaintiffs' sole qualification for Bergmann's testimony is her supposed "practical experience." But a witness relying "solely on experience must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003) (cleaned up). When a

---

[1] All capitalized terms are as defined in the Glossary set forth in Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, ECF 320, or as otherwise defined therein. Citations to "Mot." are to Defendants' Motion to Exclude the Testimony of Bettina Bergmann ("Motion"), ECF 322, and citations to "Opp." are to Plaintiffs' Opposition thereto, ECF 340. Citations to exhibit numbers are to the exhibits attached to the Declaration of Patrick M. Kennedy accompanying this Reply.

proffered "industry expert" lacks the expertise necessary under Rule 702, that testimony should be excluded. *See, e.g.*, *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 677–78 (S.D.N.Y. 2013).

Bergmann has no firsthand experience working with identifiers for U.S. financial instruments or working for participants in this market. *See* ECF 323-2 ("Bergmann Dep.") 67:19-69:19. She has no experience in finance, data licensing, or managing financial data. *Id.* Her attenuated exposure to the use of ISINs in Europe as a litigator does not render Bergmann an "industry expert." *See* Mot. at 20-22. This case is thus nothing like those cited by Plaintiffs, where the industry expert had substantial experience in the relevant subject. *See, e.g.*, *Pension Comm. of Univ. of Montr. Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 463 (S.D.N.Y. 2010).

Plaintiffs' Opposition also concedes that Bergmann's report purports to offer "expert" opinions on subjects for which she "expressly disclaimed any expertise," *id.* at 480. For example, the Opposition claims she is not a regulatory expert, Opp. at 10, but Bergmann repeatedly opines that "financial market laws in Germany and the European Union require that ISINs be used in regulatory reporting." *E.g.*, ECF 323-1 ("Bergmann Rep.") at 1, 2, 3, 13. Bergmann cannot offer "expert" testimony on subjects for which she admits she has no expertise.

## II.     Plaintiffs have not shown that Bergmann's purported methodology is reliable.

### A.     Bergmann uses no reliable methodology to ascertain the facts about the data licensing practices of more than 120 NNAs operating around the world.

Bergmann's report does not offer proper expert opinion, but a series of unsupported factual assertions that Bergmann has neither the qualifications nor the methodology to defend. Mot. at 11-15. Even where expert testimony is based on experience, a court must determine whether the expert links her experience to the facts, *Lippe*, 288 B.R. at 686, and uses the "same

2

level of intellectual rigor that characterizes the practice of an expert in the relevant field," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Plaintiffs pin their class theory to Bergmann's baseless assertion that CGS's licensing policy is different from those of all other 120 NNAs operating across the globe. As is clear from her report, and confirmed at her deposition, Bergmann did *no investigation* to ensure the veracity of that assertion. Mot. at 11-12. She simply presumed that someone, most likely one of her clients, would have alerted her to any information contrary to her opinion. *Id.* That is not a reliable expert methodology and should be excluded.

Plaintiffs' attempt to re-characterize Defendants' critiques of Bergmann's report as "factual disputes" ignores that Defendants challenge the complete absence of any *methodology* in her "opinion," which is the core inquiry for a *Daubert* motion. *Hayden v. Int'l Bus. Machs. Corp.*, 2025 WL 1697021, at *5 (S.D.N.Y. June 17, 2025). There are no "factual disputes" to resolve here, because Bergmann did not include factual support for her assertions.

Moreover, to reliably compare CGS to other NNAs, Bergmann would have first needed to understand CGS's licensing policy. She plainly does not. Bergmann claims that "CGS is the only NNA in the world that *requires a license for the use of the ISINs it issues*." Opp. at 11 (emphasis added); Bergmann Rep. at 27. But CGS *does not* require, and has *never* required, a license for mere *use* of an ISIN, or any CGS Identifier. CGS requires a license only to *access* CGS Data—the CGS Identifier(s) and up to 60+ related descriptive data fields—in bulk download or datafeed format, "either directly from CGS or indirectly through one of CGS' authorized data vendors / information providers." Ex-10 (FRSI00000092); Ex-11 (Fahy Tr.) 162:18–163:24. No license is required to use CGS-issued ISINs, and such ISINs can be accessed by anyone, including Ms. Bergmann, from public sources, *see* Bergmann Rep. at 10 n.10 ("For

3

instance, the shares of Apple Inc. have the ISIN US0378331005"), ████████████ ████████████████████████ without a CGS license, ECF 323-5 at 20:3-9. This is not a "factual dispute." It is a foundational defect in Bergmann's methodology.

But even if she *had* understood CGS's licensing, Bergmann would still have no basis for a comparison because she *admitted* that she has "not studied all of the 120 NNAs," Bergmann Dep. 184:6-18—contradicting her statement in her report that "I have reviewed the policies of each of the NNAs in the European Union and Asia," Bergmann Rep. at 27. Plaintiffs cannot gloss over this admission by claiming Bergmann "monitor[ed] licensing developments among NNAs," Opp. at 12, as Bergmann admitted (and Plaintiffs do not dispute) that her "monitoring" was nothing more than passively waiting for someone to inform her if another NNA had "started a licensing business" similar to CGS—without actually investigating the facts. Bergmann Dep. 184:6-18, 188:8-15. In an effort to salvage her contentions, Bergmann cites conversations she claims to have had with representatives of ANNA and ISO at some point between 2004, Bergmann Rep. at 25 n.63, and 2020, Bergmann Dep. 185:11-14—not when she prepared her report. Nor does Bergmann's report disclose what ANNA or ISO supposedly told her—an omission that, given Bergmann's failure to grasp CGS's licensing policy, is crucial to assessing the reliability of Bergmann's "method."

Bergmann thus has never done a comprehensive study of the licensing practices in 120 countries around the world, with the rigor *Daubert* and Rule 702 demand. She instead gestures to a handful of undisclosed conversations over a 20+ year period. That is not an "expert" methodology.

Bergmann's reliance on the European Commission Commitments Decision does nothing to salvage her opinion. That decision is 15 years old, and the statement Bergmann relies on

4

speaks only to licensing fees regarding "use of" ISINs in countries *within the European Union*, not any of the approximately 100 NNAs outside that region. Mot. at 12. Plaintiffs make no attempt to rebut this obvious deficiency. The EC case's outcome, if anything, reinforces that Plaintiffs' "basic license" theory, ECF 352 at 6, is meritless. To provide European users with the basic information in the "ISIN record" (similar to the "basic license" Plaintiffs contrive here), CGS was required to create an entire new product offering and two new licenses. *See* Commitments Decision[2] at 23-25. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

Plaintiffs' Opposition attempts to sweep these deficiencies under the rug by arguing the underlying factual issues, without defending Bergmann's lack of methodology. Opp. at 12. What matters here is that Bergmann does not provide reliable expert opinion. She has no basis for her conclusions, let alone to qualify them as "expert" testimony. And, unsurprisingly, her conclusions are wrong. *See* Mot. at 13-14. As Defendants previously explained, it is inaccurate for Bergmann to claim no other NNA has a licensing policy like CGS, when (a) Bergmann does not understand CGS's licensing policy in the first place, *see id.* at 24; (b) the global member association, ANNA, creates and monetizes a database of ISINs and other descriptive data from all NNAs, just as CGS does, and imposes comparable licensing restrictions, *id.* at 13-14; and (c) multiple other individual NNAs contain licensing requirements much like CGS's, *see, e.g., id.* at 14 (citing Stiroh Rep. ¶ 124) (discussing the NNA for Spain).

Lastly, Plaintiffs' retreat to the "other five supporting facts" for Bergmann's opinion on "usage restrictions and usage fees" is a red herring. Opp. at 2. Bergmann's opinion concerning

---

[2] *See* Mot. at 7 n.4 (defining "Commitments Decision").

the NNAs—not the other "supporting facts" Plaintiffs cite in their Opposition—is the backbone of the yardstick method utilized by Plaintiffs' economic expert, Prof. Elhauge, and which Plaintiffs rely upon for their class certification argument. *See* Mot. at 8. Moreover, the serious methodological flaws identified in Defendants' Motion infect all the proffered opinions in Bergmann's report, not just her opinion on the NNAs, making her testimony inadmissible in its entirety. *E.g.*, Mot. at 15-20.

> **B.      Bergmann's refusal to disclose her sources deprives defendants and the court of any means to test her opinions—and requires exclusion.**

The problem is not just that Bergmann's factual assertions are unsupported—it is also that she refuses to disclose the bases for those assertions. Rule 26 requires experts to disclose "the facts or data considered" in forming their opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). This rule "ensures parties have the information they need to assess an expert's opinions and to effectively cross-examine [her]." *Brainchild Surgical Devices LLC v. CPA Glob. Ltd.*, 144 F.4th 238, 256 (4th Cir. 2025). When an expert refuses, the remedy is exclusion. Mot. at 19; *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 470-72 (S.D.N.Y. 2016) ("[B]ecause she will not fully disclose many facts underlying her personal participation, such as the contents of conversations, she will not be allowed to testify as to" the relevant subject).

Bergmann relies almost exclusively on hearsay from her trade-association clients and their members, and repeatedly refused to disclose either the source or the content of what they told her. The Court cannot conduct a "rigorous examination of the facts on which the expert relies" if the expert refuses to disclose what those facts are. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).

Plaintiffs' justifications for Bergmann's nondisclosure fail. First, Plaintiffs claim the members of Bergmann's trade-association clients are publicly available, but Defendants and the

6

Court should not be forced to guess which of the hundreds of members of the six trade associations she represents[3] was the source of the specific factual assertions in Bergmann's report. Moreover, Bergmann frequently relies on *double* hearsay, where Bergmann's clients learned information from unnamed others and by hearsay passed it to her. *E.g.*, Mot. at 19-20; Bergmann Dep. 113:11-18. It is insufficient to disclose the name of her trade-association clients in the aggregate, and not the actual source of the information or even the information itself. *See, e.g.*, Bergmann Dep. 35:8-21. It is likewise no defense that Bergmann selectively disclosed *some* sources for *some* assertions; Bergmann "has created a black box that she will open only when she finds it helpful." Mot. at 20.

Next, Plaintiffs attempt to justify Bergmann's nondisclosure by claiming Bergmann did not rely on her interviews with "ISIN users," Opp. at 22—contradicting Bergmann's report, which cites these interviews under "[r]elevant expertise in CGS's licensing and identifier markets." Bergmann Rep. at 3, 8. Moreover, the argument renders Plaintiffs' Opposition internally contradictory. On the one hand, Bergmann claims discussions with her clients and their members while litigating against CGS constitute sufficient experience to render her an "industry expert." On the other hand, Bergmann claims she did not rely on these conversations, to shield her sources from meaningful scrutiny. Plaintiffs and Bergmann cannot have it both ways.

Finally, Bergmann cannot hide behind the European General Data Protection Regulation ("GDPR"). Merely citing GDPR is not sufficient to satisfy the burden of shielding discoverable information; a formal showing is required under comity principles. *See, e.g.*, *Giorgi Glob. Holdings, Inc. v. Smulski*, 2020 WL 2571177, at *2 (E.D. Pa. May 21, 2020); *Schansman v.*

---

[3] For example, the French Asset Management Association has "over 440 members, . . . rang[ing] from very small companies to global leaders." https://www.afg.asso.fr/en/faq/.

*Sberbank of Russia PJSC*, 768 F. Supp. 3d 619, 629-30 (S.D.N.Y. 2025). Bergmann has not, and cannot, make that showing here.

### C. Plaintiffs admit Bergmann relied on hearsay without independently confirming its accuracy or reliability.

Plaintiffs invoke Rule 703 to justify Bergmann's reliance on out-of-court statements, but Rule 703 governs what an expert may consider, not whether the resulting testimony is reliable. Expert testimony may not serve as a mere "conduit" for hearsay. *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (requiring experts to apply "experience and a reliable methodology to the inadmissible materials") (internal quotations and citation omitted). Bergmann has not demonstrated, and cannot demonstrate, that her reliance on inadmissible hearsay was reasonable, because she has no expert experience and applies no methodology. She identifies out-of-court statements and adopts them as her conclusions without applying any methodology. That is not analysis—it is transmission. Mot. at 15-16; *Nimely v. City of New York*, 414 F.3d 381, 398–99 (2d Cir. 2005).

Testimony that merely adopts hearsay adds nothing that the jury cannot evaluate itself. Mot. at 12-13; Fed. R. Evid. 702(a). Bergmann based her opinions primarily on information "fed" to her by her clients and did no independent investigation. *E.g.*, Bergmann Dep. 48:2-10. Plaintiffs do not dispute this. That failure to verify is particularly egregious here, where Bergmann is relying on biased sources who have litigated against CGS for years. *Dallas & Mavis Forwarding Co. v. Stegall*, 659 F.2d 721, 722 (6th Cir. 1981) (holding that permitting the opinions of biased witnesses to be heard through expert testimony "would cloak it with undeserved authority that could unduly sway a jury.").

Plaintiffs cannot rectify Bergmann's methodological deficiencies by referring to record evidence that Bergmann herself neither relied upon nor even read. *E.g.*, Opp. at 17. Bergmann

8

admitted she "ha[s] not reviewed any confidential information any of the Defendants produced in this case" and "counsel for Plaintiffs did not provide me with any documents or information I relied on in reaching my opinions in this report." Bergmann Rep. at 8 n.7.

Contrary to Plaintiffs' contentions, Defendants provided compelling proof of Bergmann's failure to verify her sources or do any independent investigation. Defendants explained in detail how Bergmann obtained Exhibit 8 to her report *from her client*, who in turn had obtained the chart *from an unknown source*, and attached it to her report *without confirming or even reading its contents*. Mot. at 17-18. Plaintiffs have no defense for this egregiously unreliable conduct other than to downplay Bergmann's reliance on the exhibit and her knowledge of the applicable regulations. *See* Opp. at 16-17. But the problem that renders her testimony inadmissible is not limited to her lack of knowledge concerning Exhibit 8—it is the complete lack of "intellectual rigor" underlying Bergmann's report. *See* Mot. at 10.

## III.    Bergmann's admissions confirm her testimony is irrelevant to this case.

Defendants' Motion established how, by Bergmann's own admission, her testimony is not tied to the facts of this case, making it inadmissible under Rule 702(a), (b), and (d). Mot. at 23-27. Plaintiffs cannot dismiss Bergmann's admission by asserting she was purportedly "defending against the claim that she is biased." Opp. at 23. Regardless of her motivation, what matters here is the substance of her testimony—in which she unambiguously conceded that her experience with the EC case (her sole claim to supposed expertise) "doesn't have anything to do with the US." Bergmann Dep. 52:13-15.[4] Bergmann also admitted that she did not review the discovery

---

[4] In their Opposition, Plaintiffs incorrectly assert that Defendants have mischaracterized Bergmann's testimony. But the Motion quotes Bergmann directly and attaches the entire deposition transcript as an exhibit. The testimony speaks for itself, and it supports Defendants' position that Bergmann should be excluded.

record because "it had no relevance for me," and that she "cannot give any opinion or view on what's happening in the US" because the U.S. was "an entirely different thing." Bergmann Dep. 50:13-15; 52:16-20.[5]

Plaintiffs' claim that it was unnecessary for Bergmann to review the discovery record, Opp. at 23, only reinforces why Bergmann's testimony is irrelevant and inadmissible. Rule 702 requires that expert testimony "reflect[] a reliable application of the principles and methods *to the facts of the case*." Fed. R. Evid. 702(d) (emphasis added); *Doucette v. Jacobs*, 106 F.4th 156, 170 (1st Cir. 2024) (excluding expert testimony for the witness's "failure to ground her conclusions in the specifics of the record—or even to consider key aspects of the record"); *LaBarge v. Joslyn Clark Controls, Inc.*, 242 F. App'x 780, 782 (2d Cir. 2007).

Moreover, Plaintiffs' argument directly contradicts their assertion that Bergmann is qualified to testify that Germany is a reasonable benchmark for the U.S. case. *See* Opp. at 15 (claiming Bergmann is qualified to "opine on the conditions in one but-for market in this case"); *id.* at 10. Without reviewing the discovery record or having any understanding of the U.S. market, Bergmann has no basis to opine on whether the German market—or, indeed, *any* market—is a reasonable comparator to the U.S.

## IV.    Bergmann is an advocate, not an independent expert.

To be admissible, expert testimony must be helpful to the fact finder. Fed. R. Evid. 702(a). However, as Defendants established in their Motion, testimony is not helpful if the proffered expert cannot opine "with the detachment and independence that one would expect from an expert witness offering views as a professional." *Lippe*, 288 B.R. at 688-89. "When expert witnesses become partisans, objectivity is sacrificed to the need to win." *Cacciola v. Selco*

---

[5] Plaintiffs claim the latter testimony was "not cited by Defendants," when in fact it was quoted verbatim. Mot. at 24.

*Balers, Inc.*, 127 F. Supp. 2d 175, 183–84 (E.D.N.Y. 2001) (quoting *Rubinstein v. Marsh*, 1987 WL 30608, at *7 (E.D.N.Y. 1987)). Accordingly, courts in this circuit have excluded witnesses offering "irrelevant advocacy rather than helpful expert testimony." *523 IP LLC v. CureMD.com*, 48 F. Supp. 3d 600, 648 (S.D.N.Y. 2014); *see also Mirena*, 169 F. Supp. 3d at 440 (that an opinion was "prepared solely for litigation . . . weighs against reliability").

Plaintiffs cannot sidestep this well-settled law by their mere denial that Bergmann is assisting Plaintiffs' counsel or financially interested in the U.S. case. Opp. at 9. Neither argument is ever stated in Bergmann's report or any supporting documents. Nor is it apparent that she is financially disinterested. Bergmann's European clients have members that are *part of the putative class*, including putative class representative Swiss Life, and that otherwise could potentially benefit financially from an outcome favorable to the Plaintiffs. *See* Bergmann Dep. 53:18-22. Moreover, Plaintiffs' denial cannot end the inquiry.

Plaintiffs fail to address that Bergmann's bias is evident not only from her decades-long opposition to CGS, but also from her own words at her sworn deposition. Plaintiffs have no response to Bergmann's testimony that it "would be great" if Plaintiffs prevailed in the U.S. case, Bergmann Dep. 54:1-4, or to the clear bias in her *admittedly* speculative testimony about CGS, *e.g.*, *id.* 215:17-22. Nor do Plaintiffs address that Bergmann attached exhibits to her report authored by her European clients—who have been adverse to CGS for decades—containing obviously biased statements. *See* Mot. at 28.

Bergmann's bias is not merely an independent substantive basis for her exclusion as an expert. It reinforces the broader problem with her methodology: her failure to independently verify information "fed" to her from her clients, who were biased against CGS from years of actively opposing them in litigation.

11

**V.      Conclusion**

Defendants' motion to exclude the testimony of Bettina Bergmann should be granted.

Dated: April 15, 2026

Respectfully submitted,

| | | |
|---|---|---|
| */s/ Eric J. Stock* | */s/ Jeffrey I. Shinder* | */s/ David C. Kiernan* |
| Eric J. Stock | Jeffrey I. Shinder | JONES DAY |
| Jefferson E. Bell | Ellison A. Snider (*pro hac vice*) | David C. Kiernan (*pro hac vice*) |
| Esther Lifshitz | SHINDER CANTOR LERNER LLP | Caroline N. Mitchell (*pro hac vice*) |
| GIBSON, DUNN & CRUTCHER LLP | 14 Penn Plaza, 19th Floor | Kapri Saunders (*pro hac vice*) |
| 200 Park Avenue | New York, NY 10122 | Paul Hines (*pro hac vice*) |
| New York, NY 10166 | Tel.: (646) 960-8601 | 555 California Street, 26th Floor |
| Tel.: (212) 351-2301 | jeffrey@scl-llp.com | San Francisco, CA 94104 |
| Fax: (212) 716-0801 | esnider@scl-llp.com | Tel.: (415) 626-3939 |
| estock@gibsondunn.com | | Fax: (415) 875-5700 |
| jbell@gibsondunn.com | James J. Kovacs (*pro hac vice*) | dkiernan@jonesday.com |
| elifshitz@gibsondunn.com | Keagan H. Potts (*pro hac vice*) | cnmitchell@jonesday.com |
| | SHINDER CANTOR LERNER LLP | ksaunders@jonesday.com |
| *Attorneys for Defendant S&P Global Inc.* | Tel.: (646) 960-8601 | |
| | 600 14th Street NW, 5th Floor | Alexander V. Maugeri |
| | Washington, D.C. 20005 | Amanda L. Dollinger |
| | james@scl-llp.com | 250 Vesey Street |
| | kpotts@scl-llp.com | New York, NY 10281 |
| | | Tel.: (212) 326-3939 |
| | W. Stephen Cannon (*pro hac vice*) | Fax: (212) 755-7306 |
| | Seth D. Greenstein (*pro hac vice*) | amaugeri@jonesday.com |
| | Patrick Kennedy (*pro hac vice*) | adollinger@jonesday.com |
| | CONSTANTINE CANNON LLP | |
| | Tel.: (202) 204-3500 | *Attorneys for Defendant American Bankers Association* |
| | 1001 Pennsylvania Avenue NW, Suite 1300N | |
| | Washington, D.C. 20004 | |
| | scannon@constantinecannon.com | |
| | sgreenstein@constantinecannon.com | |
| | pkennedy@constantinecannon.com | |
| | | |
| | Sarah Bayer | |
| | CONSTANTINE CANNON LLP | |
| | 230 Park Avenue, 17th Floor | |
| | New York, NY 10169 | |
| | Tel.: (212) 350-2700 | |
| | sbayer@constantinecannon.com | |
| | | |
| | *Attorneys for Defendant FactSet Research Systems Inc.* | |

## SIGNATURE CERTIFICATION

Pursuant to Section 8.5(b) of the Electronic Case Filing Rules and Instructions of the Southern District of New York, I certify that all other signatory parties have consented to the filing of this document.

*/s/ Eric J. Stock*_____

Eric J. Stock

**WORD COUNT CERTIFICATION**

Pursuant to Rule 4(B) of the Court's Individual Rules of Practice in Civil Cases,

Defendants certify that this computer-generated Memorandum of Law was prepared using

Microsoft Windows and Microsoft Word. The total number of words in this Memorandum,

exclusive of the caption, table of contents, table of authorities, the signature block, and this

certificate of compliance is 3,493, which is in accordance with the maximum 3,500 words as

permitted under Local Civil Rule 7.1.

*/s/ Eric J. Stock*_____

Eric J. Stock

## **CERTIFICATE OF SERVICE**

I certify that on April 15, 2026, I caused the foregoing to be served on all counsel of record via ECF.

*/s/ Eric J. Stock*_____

Eric J. Stock

16