**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

DINOSAUR FINANCIAL GROUP LLC,      :
HILDENE CAPITAL MANAGEMENT,      :
LLC and SWISS LIFE INVESTMENT      :
MANAGEMENT HOLDING AG, on behalf      :
of themselves and all others similarly      :
situated,      :
     :
        Plaintiffs,      :     Case No. 1:22-CV-1860-KPF
     :
        -v-      :     <u>ORAL ARGUMENT REQUESTED</u>
     :
     :
S&P GLOBAL, INC., AMERICAN      :
BANKERS ASSOCIATION, and FACTSET      :
RESEARCH SYSTEMS INC.,      :
     :
        Defendants.      :
     :

------------------------------------------------------- X
-------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' REPLY TO**
**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE**
**TESTIMONY OF PLAINTIFFS' EXPERT FRANK LENZ**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT ................................................................................................................... 2

   A.  Lenz's Experience in Data Management Does Not Qualify Him to Opine on Licensing Policies or Innovation. .......................................................................................... 3

   B.  Lenz's Disguised and Untimely Factual Testimony Is Not Expert Opinion. ..................... 4

      1.  Lenz's Testimony About a Single Company's Business Practices Does Not Translate Into Market Expertise or Require Specialized Knowledge to Understand. ............................ 4

      2.  Lenz's Testimony About WM Daten Is Not Based on Sufficient, Reliable Facts. ........ 6

   C.  Lenz's Purported "Opinions" on Innovation and Competition in the German Market Fail Under the *Daubert* Standard. ..................................................................................... 8

      1.  Lenz's Statements on Innovation and Competition in the German Market Lack Foundation, Methodology, Causation, and Are Entirely Unreliable. .................................... 8

   D.  Lenz's Incorrect and Unsupported Testimony on the Practices of 120 NNAs Is Not Reliable Expert Opinion. ............................................................................................... 11

III.  CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES**                                                                                                                    **Page(s)**

*Averbach v. Cairo Amman Bank*,
   805 F. Supp. 3d 605 (S.D.N.Y. 2025)......................................................................................6

*B & R Supermarket, Inc. v. Visa Inc.*,
   2024 WL 4252031 (E.D.N.Y. Sept. 20, 2024) ........................................................................9

*Faison-Williams v. United States*,
   2025 WL 974831 (2d Cir. Apr. 1, 2025) ...............................................................................10

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)..................................................................................................................3

*Gill v. Arab Bank, PLC*,
   893 F. Supp. 2d 523 (E.D.N.Y. 2012) .....................................................................................6

*Gutierrez v. St. Teresa of Avila Church*,
   2025 WL 2403361 (S.D.N.Y. Aug. 19, 2025).......................................................................4, 9

*H. Daya Int'l Co., Ltd. v. Do Denim, LLC*,
   2023 WL 1340422 (S.D.N.Y. Jan. 31, 2023) ........................................................................10

*In re Digital Music Antitrust Litig.*,
   321 F.R.D. 64 (S.D.N.Y. 2017) ...............................................................................................5

*In re Lyondell Chem. Co.*,
   558 B.R. 661 (S.D.N.Y. 2016)..................................................................................................5

*Irish v. Tropical Emerald LLC*,
   2022 WL 2716182 (E.D.N.Y. July 13, 2022)...........................................................................2

*Modella v. Schiffahrtsgesellschaft Oltmann mbH & Co. KG*,
   --- F. Supp. 3d ---, 2025 WL 3628388 (E.D.N.Y. 2025) ........................................................10

*Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*,
   988 F. Supp. 2d 395 (S.D.N.Y. 2013)......................................................................................6

*SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., LLC*,
   467 F.3d 107 (2d Cir. 2006)......................................................................................................6

# TABLE OF AUTHORITIES

**CASES**                                                                                                                 **Page(s)**

*Tang Cap. Partners, LP v. BRC Inc.*,
    757 F. Supp. 3d 363 (S.D.N.Y. 2024)..................................................................................................2, 4

*United States v. Jones*,
    2018 WL 1115778 (S.D.N.Y. Feb. 27, 2018).....................................................................................2, 3

*United States v. Mulder*,
    273 F.3d 91 (2d Cir. 2001)....................................................................................................................5

**RULES**

Fed. R. Evid. 702 ................................................................................................................. *passim*

## I.      **<u>INTRODUCTION</u>**

Defendants' motion to exclude Frank Lenz's "expert" testimony established that Lenz is a belated fact witness dressed in expert's clothing.  Plaintiffs do not offer him for an opinion in the area in which he might actually be qualified—technical data structuring and management—using him instead to relay alleged facts about the business practices of WM Daten, a German data provider and National Numbering Agency ("NNA") for which he previously did technical consulting work.  Those facts are, at worst, outdated, unreliable recollections, and at best, sourced almost entirely from public webpages requiring no specialized knowledge to understand.  The only portions that could be considered expert opinion lack any methodology, foundation, or reliable connection to his experience.

Plaintiffs' Opposition does nothing to rectify these fatal problems.  Plaintiffs draw no connection between Lenz's actual experience and his opinions.  His data management background, without more, does not qualify him to testify on licensing policies or their impacts on innovation—subjects in which Lenz claims neither experience nor expertise.[1]  Plaintiffs' contention that Lenz is an "experience-based" expert shedding light on the customs and practices of a foreign market is belied by their own submissions, which show his report is confined to alleged facts about one market participant's business operations (WM Daten), ECF 231-10 (Lenz Report) at ¶ 2; Ex-10 (Lenz Dep.) 188:16-24, not the broader German market—and even those facts he gets *<u>wrong</u>*.

Plaintiffs cannot wave away these problems by claiming Lenz's status as an experience-based expert subjects him to a more lenient *Daubert* standard.  Even experience-based experts must "explain how [their] experience leads to the conclusion reached, why that experience is a

---

[1] In contrast, Defendants' experts Cynthia Meyn and Jorge Contreras properly connect their opinions to their experience in financial data management and licensing, respectively.

sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Tang Cap. Partners, LP v. BRC Inc.*, 757 F. Supp. 3d 363, 390 (S.D.N.Y. 2024). Lenz makes no such showing.

Plaintiffs must establish by a preponderance of the evidence: that (1) Lenz's technical or specialized knowledge will help the trier of fact, (2) his testimony is based on sufficient facts or data, (3) it is the product of reliable principles and methods, and (4) he has reliably applied those principles and methods to the facts. Fed. R. Evid. 702(a)-(d). *Each* requirement is independent—a showing as to one does not relieve Plaintiffs from establishing the others. *See United States v. Jones*, 2018 WL 1115778, at *9 n.2 (S.D.N.Y. Feb. 27, 2018). The "sufficiency of an expert's basis" and the application of the expert's methodology are threshold questions of admissibility, not weight—and rulings to the contrary "are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 advisory committee's note to 2023 amendment. Plaintiffs' failure to satisfy each requirement renders Lenz's testimony inadmissible.

## II.     ARGUMENT

Lenz proffers two "opinions": (1) WM Daten allows use of German identifiers for free and without an end-user license, and (2) the absence of contractual limitations by WM Daten on German identifiers fosters competition and innovation. ECF 348 (Lenz Opp'n) at 1-2, 6-7. Lenz's data management experience alone does not qualify him to offer either opinion, and he has no other support for them. But even if he were qualified, the first "opinion" is simply a factual averment about WM Daten's business and licensing policies. Plaintiffs' failure to timely identify Lenz as a fact witness and their backdoor attempt to designate him an "expert" to introduce those facts after discovery closed is plainly improper. *See Irish v. Tropical Emerald LLC*, 2022 WL 2716182, at *8-9 (E.D.N.Y. July 13, 2022) (excluding expert factual testimony finding that even if expert witness testimony could be accepted as lay testimony it should have

2

been disclosed during fact discovery). Moreover, Plaintiffs cannot show Lenz is qualified to testify about the practices and policies of a company that never employed him and for which he no longer even consults. The second opinion—concerning the market impacts of WM Daten's alleged licensing policies—is one Lenz disqualified himself from offering. *See* Ex-10 75:12-17 (Q. "You are not, for example, saying that you are an expert on the market impacts of intellectual property licenses?" A. "Correct.").

### A.    Lenz's Experience in Data Management Does Not Qualify Him to Opine on Licensing Policies or Innovation.

Plaintiffs' main contention, that Lenz's "decades of hands-on experience" renders his testimony reliable, ECF 348 at 2-5, 8-13, 16-17, conflates experience with reliability. An expert's experience may be relevant under Rule 702(b), but it does not excuse the separate requirements of Rules 702(c) and (d). *See Jones*, 2018 WL 1115778, at *9 n.2. Experience-based experts cannot circumvent those requirements by invoking their background without connecting that experience to the reliability of their principles and conclusions. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Plaintiffs do nothing to connect Lenz's experience to the factual assertions and opinions he offers. Plaintiffs try to spin Lenz's technical expertise as "hands-on experience in the German financial identifier use market," repeating that talismanic formulation some 20 times. ECF 348 at 1-5, 8-10, 12-13, 16-19. But Lenz himself does not claim to be a market expert. To the contrary, he made clear his career has been almost exclusively as a business analyst focused on the *technical* design and structure for processing financial identifier data—modeling, classification, identification, and mapping rules for data systems. ECF 231-10 at ¶¶ 6-9; Ex-10

59:20-24; 61:5-67:17; 105:4-12.  At WM Daten, his consulting role was "to support the IT department regarding the specific use of [financial] data in the system"; he was only "presented with the contracts" to understand permitted data uses and was not involved in "setting the terms of any of the intellectual property licensing arrangements."  Ex-10 61:5-63:15; 70:2-16.  Lenz admits he has no expertise in intellectual property or the market impacts of licensing, and his "experience" with licenses is limited to understanding what financial data a contract allows a bank to use.  Ex-10 74:2-75:17.

Plaintiffs' failure to connect Lenz's technical data-processing experience to his conclusions about WM Daten's licensing practices and their market impacts is dispositive.  *See Tang Cap. Partners*, 757 F. Supp. 3d at 390; *Gutierrez v. St. Teresa of Avila Church*, 2025 WL 2403361, at *4 (S.D.N.Y. Aug. 19, 2025) (excluding expert report "not based on reliable methods or the application of [the expert's] decades of experience to the facts of this case.").

**B.      Lenz's Disguised and Untimely Factual Testimony Is Not Expert Opinion.**

Plaintiffs attempt to justify Lenz's untimely factual testimony by recasting it as expert opinion on "the operation of a market and industry practices," contending such testimony is routinely admitted.  ECF 348 at 8.  That argument fails for multiple reasons.

1.      Lenz's Testimony About a Single Company's Business Practices Does Not Translate Into Market Expertise or Require Specialized Knowledge to Understand.

In a strained attempt to convert an unqualified fact witness into an expert, Plaintiffs portray Lenz's factual recitations about a single company's (WM Daten) practices as "expert testimony on the operation of the German financial identifier use market."  ECF 348 at 8-9.  But Plaintiffs cannot support this recharacterization, and their reliance on cases involving industry experts opining on industry-wide customs and practices is unavailing.  Lenz offers no opinion on general customs or industry-wide practices, much less those within complex regulatory

4

regimes—his testimony is limited to his understanding of WM Daten's practices. That is not

proper expert testimony. Rule 702 requires expert testimony to "actually help the factfinder

understand facts that are *outside common understanding*." *In re Lyondell Chem. Co.*, 558 B.R.

661, 667 (S.D.N.Y. 2016) (citation omitted) (emphasis in original). None of Lenz's testimony

about WM Daten—whether it permits use of German identifiers without charge or a license, or

allows others to develop products using that data without contractual limitations—requires

specialized knowledge or is difficult for a layperson to comprehend. ECF 348 at 1-2, 6-7. These

are straightforward factual assertions about what one company charges and what restrictions it

imposes, facts which require no expert testimony to understand (and for which no fact witness

was ever disclosed). *See In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 75 (S.D.N.Y. 2017)

("expert testimony is not helpful if it simply addresses 'lay matters which a jury is capable of

understanding and deciding without the expert's help.'") (citing *United States v. Mulder*, 273

F.3d 91, 101 (2d Cir. 2001)).

Nearly all of Lenz's assertions about WM Daten cite its public website as their source—

something any layperson could access and comprehend without expert explanation. *See* ECF

231-10 at 12-13 n.18-21; Ex-10 109:13-112:12. Lenz simply presents facts concerning the

publicly available terms of service for the "Securities Register," a tool intended for general

public use. *Id.* The few statements not citing the website recite similarly basic facts requiring no

expert analysis (*e.g.*, that WM Daten's customers must disclose end users who disseminate their

data). ECF 231-10 at ¶ 42. Any layperson could present this material, and no value is added by

a purported "expert"; especially one who does not relay accurate information, as discussed *infra*

Section II.B.2.

Plaintiffs cite inapposite cases, falling into two categories (neither of which supports

Plaintiffs' position): (1) cases involving testimony on complex, multi-jurisdictional regulatory frameworks—not the practices of a single company; and (2) cases where customs-and-practices evidence was adduced to show a party's intent, knowledge, or state of mind—an issue not present here. *See Averbach v. Cairo Amman Bank*, 805 F. Supp. 3d 605, 634 (S.D.N.Y. 2025) (expert testimony on complex regulatory framework applicable to banks); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 537 (E.D.N.Y. 2012) (banking industry standards relevant to bank's state of mind); *Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 403 (S.D.N.Y. 2013) (custom and practice to determine a party's knowledge); *SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 124 (2d Cir. 2006) (custom and practice to determine a party's intent). Lenz bears no resemblance to the experts in those cases. He offers no testimony about regulatory context, general customs, or industry-wide practices (apart from a single footnote about NNAs generally, discussed below). He testifies solely on WM Daten's practices.

        2.      Lenz's Testimony About WM Daten Is Not Based on Sufficient, Reliable <u>Facts.</u>

Even if Lenz's factual assertions about WM Daten were a proper subject for expert testimony (they are not), they independently fail under Rule 702(b) because they are not sufficiently rooted in reliable information. When Lenz was not simply reading a public website, he was offering dated and spotty recollections of WM Daten's practices, with no supporting evidence. *See* Ex-10 26:19-28:19; 35:10-41:17. His only consulting work for WM Daten in the past 15 years was a brief stint providing security master training. ECF 231-10 at 24-25; ECF 348 at 5. By his own admission, Lenz reviewed no contracts when preparing his testimony, instead basing his opinion on his memory of contracts he had seen as a consultant—some from decades ago. Ex-10 30:9-17; 88:21-89:15; 207:2-212:12. Though Plaintiffs claim Lenz did not base his

opinions on any contracts, ECF 348 at 8, his deposition testimony belies that assertion, as Plaintiffs cannot explain how else Lenz could know what restrictions WM Daten does or does not impose on data recipients.  *Cf. id.*; Ex-10 26:19-28:19; 29:22-33:6; 35:10-41:17; 144:18-148:7.

Worse, as Plaintiffs' evidence shows, Lenz gets important facts about WM Daten's practices *wrong*.  At his deposition, he testified that WM Daten provides free credentials upon request to access enhanced Securities Register functionalities, including the ability to download up to 20,000 identifiers—assertions appearing nowhere in his report.  Ex-10 114:14-119:2; 121:17-122:21; 217:2-17.  He provided no source for this testimony, seemingly pulling it from memory.  *Id.*  When Defendants tried to verify these claims, WM Daten's own employees refuted them, confirming that the only free data access service is the publicly accessible Securities Register, and that additional services are reserved for paid subscribers.  ECF 328 (Garrett Decl.) at ¶¶ 10-12; ECF 328-1 (Garrett Decl. Ex. A).

In response, Plaintiffs proffer the declaration of Georg Eisel—whose employment with WM Daten ended in 2008, and who describes only casual conference interactions with WM Daten since that time.  ECF 310 (Eisel Decl.) at ¶¶ 1-2.[2]  Adding more previously-undisclosed fact testimony from a witness lacking meaningful foundation *exacerbates* rather than fixes the improper and untimely factual nature of Lenz's testimony.  Eisel does not describe the source of any information on WM Daten's practices since the end of his employment there—more than 18 years ago—on which he purports to testify, instead simply citing his own "recall".  *Cf. id.* ¶¶ 1-4.  But even if his vague and unsubstantiated testimony were credited, *it confirms that Lenz was wrong*: WM Daten does not offer the functionality Lenz described and has not offered anything

---

[2] Defendants reserve all rights with respect to the Eisel declaration, which constitutes previously undisclosed late fact witness testimony—including the rights to exclude his testimony and to seek discovery from him.

resembling it since 2024—well before his report and his deposition testimony. *Id.* at ¶¶ 3-4. That Lenz was willing to offer unsupported and unverified facts at his deposition underscores his lack of current, reliable knowledge and shows why his testimony would not aid the jury.

Plaintiffs downplay this problem by claiming WM Daten's website features are "*irrelevant*." ECF 348 at 12. If so, then so too is Lenz's testimony. WM Daten's website and Securities Register are the main focus of Lenz's report. *See* ECF 231-10 at ¶¶ 24, 26-27 (describing accessing WM Daten's "Basic Financial Instruments Data" only through WM Daten's Securities Register website). At his deposition, Lenz testified that "[t]he basis of [his] report is only the WM data" from the Securities Register, since this is the "only thing" his report opines is "publicly available, free, and unrestricted." Ex-10 110:21-112:7; 121:13-24. It is therefore fatal to Lenz's reliability that his assertions about this website's functionality are wrong. His knowledge is plainly neither "current," nor reliable. *Cf.* ECF 348 at 11.

**C.    Lenz's Purported "Opinions" on Innovation and Competition in the German Market Fail Under the *Daubert* Standard.**

The only portion of Lenz's report that could be characterized as an "opinion" is confined to four paragraphs where he asserts that WM Daten's licensing policies caused an "increase in" innovation in the German market for financial data services. His report offers no support for this assertion, and his deposition confirmed he has none. He candidly admitted he "didn't care about the causal relationship" between those policies and any increase in innovation, did not attempt to establish an "increase" as compared to anything or to identify other possible causes, and employed no methodology to reach his opinion. Ex-10 194:6-201:17; 203:5-13. Plaintiffs nonetheless contend this opinion is admissible because Lenz relies on his experience. That argument fails on both the facts and the law.

1.    Lenz's Statements on Innovation and Competition in the German Market Lack Foundation, Methodology, Causation, and Are Entirely Unreliable.

Neither Lenz's report nor Plaintiffs' Opposition explains how years of managing data services and observing product introductions qualify Lenz to draw quantitative or causal conclusions about one company's licensing policies and their alleged effect on innovation.  ECF 348 at 17.  The most Plaintiffs can point to is Lenz's cryptic notes on new data products in Table 1.0, but that table lacks methodology, substance, and does not establish any increase in innovation.  ECF 348 at 17; ECF 231-10 at ¶ 47, Table 1.0.  Simply listing in a table a handful of products that Lenz is aware of does not provide the requisite connection between his experience and his conclusion; this disconnect is fatal.  *See supra* Section II.A; *Gutierrez*, 2025 WL 2403361, at *4.

Apart from this disconnect, Lenz's opinion on innovation fails for lack of methodology and substance.  Lenz contends there was a *quantifiable* impact (*i.e.*, an "increase," "more") on innovation in the German market that was *caused* by ("has enabled," "has led," "drives," "leads to") WM Daten's licensing policies.  ECF 231-10 at ¶¶ 44-47.  To be admissible, such conclusions require economic analysis, not anecdotal observations.  *See B & R Supermarket, Inc. v. Visa Inc.*, 2024 WL 4252031, at *18 (E.D.N.Y. Sept. 20, 2024) (expert opinion admissible when supported by economic methodology and training in "assessing economic and competitive responses and behavior").

Lenz's deposition confirms this deficiency.  He admitted he "didn't care about the causal relationship" between licensing policies and new product introductions, and employed no methodology to assess whether such a relationship existed.  Ex-10 201:6-17.  He made no effort to compare innovation in the German market to any other market or to historical levels.  Ex-10 194:6-198:10; 201:2-17; 203:5-13.  Without accounting for alternative explanations—such as different regulatory environments, market sizes, or technological developments—or applying

9

any accepted analytic principles, his "opinions" are unreliable speculation that cannot assist the factfinder. *Modella v. Schiffahrtsgesellschaft Oltmann mbH & Co. KG*, --- F. Supp. 3d ---, 2025 WL 3628388, at *7 (E.D.N.Y. 2025) ("[I]f an expert fails to adequately account for obvious alternative explanations, the testimony is not reliable.") (quoting *Faison-Williams v. United States*, 2025 WL 974831, at *3 (2d Cir. Apr. 1, 2025)).

The only purported support for Lenz's opinion—Table 1.0—underscores the lack of foundation for his opinions.  Table 1.0 provides no helpful information to the factfinder: it merely lists a handful of entities with vague product descriptions and ambiguous "[s]upport" statements.  ECF 231-10 at ¶ 47, Table 1.0.  Nowhere does Lenz connect WM Daten's policies to the availability of any of these products, or explain why other factors—such as regulatory changes, available capital, or technological developments—can be excluded as explanations.

During his deposition, Lenz admitted Table 1.0 is just an anecdotal list of software products he knew of because he had "interacted with them at some point."  Ex-10 213:19-214:24.  He conceded he used no systematic process or methodology to create it.  Ex-10 214:16-24.  Although he testified that "each software company that wants to build a database involving the WM data *has to have a contract with WM Daten*," he did not know the contract terms for the listed companies.  Ex-10 208:8-21; 211:10-212:12.

Without knowledge of market dynamics, causal relationships, or the licensing terms that provided the purported incentives, Lenz has no reliable basis or methodology to conclude that WM Daten's licensing policies fostered the products in Table 1.0—let alone an increase in innovation generally.  His statements concerning "innovation" thus fail Rule 702's reliability requirements.  *See H. Daya Int'l Co., Ltd. v. Do Denim, LLC*, 2023 WL 1340422, at *5 (S.D.N.Y. Jan. 31, 2023) (excluding expert where the court could not "discern any reliable

10

methodology").

**D.    Lenz's Incorrect and Unsupported Testimony on the Practices of 120 NNAs Is Not Reliable Expert Opinion.**

Lenz's lone assertion regarding the practices of the 120 NNAs worldwide—buried in a footnote—states he is "only aware of two—CGS and LSEG—who charge usage fees after issuing security identifiers." ECF 231-10 at ¶ 39 n.27. This opinion is without foundation, uninformative on its face, and refuted by Lenz's own deposition testimony.

Plaintiffs' attempt to anchor Lenz's NNA familiarity in his "decades of experience" fails for the same reasons discussed in Section II.A. ECF 348 at 16. Lenz admitted his experience is limited to just three European NNAs, and that he did not know or review the policies of other NNAs. Ex-10 87:22-89:15.

Most critically, Lenz's own testimony—and Plaintiffs' Opposition—refutes the substance of his assertion. Lenz admitted during his deposition that the characterization of CGS in his report was also wrong. Ex-10 188:16-192:6. He acknowledged that CGS charges for data feeds and downloads, not for use of identifiers as he had claimed (ECF 231-10 at ¶ 39 n.27); and he conceded that CGS's terms of service for its free ISIN lookup tool state that users may use the data pulled from that system without further charge, contrary to his report (*id.*). Ex-10 188:16-192:6. Thus, Lenz acknowledged at deposition that CGS's practices mirror WM Daten's: both offer free lookup tools and charge for enhanced data feeds—precisely the opposite of the distinction his report tries to draw. Moreover, Plaintiffs concede that Lenz's characterization of U.K.'s NNA, LSEG, was also inaccurate, "not[ing]" that "LSEG charges for the use of SEDOLs . . . they do not charge for the use of SEDOL-based ISINs," ECF 348 at 16 n.9, contrary to Lenz's report. ECF 231-10 at ¶ 39 n.27. Plaintiffs' repeated corrections of Lenz's statements confirm his testimony about the practices of 120 NNAs is based on inaccuracies, rendering it

11

unreliable and unhelpful to the trier of fact.

### III.   CONCLUSION

For the foregoing reasons, Lenz's testimony fails to satisfy multiple requirements of Rule 702 and should be excluded in its entirety.

Dated: April 15, 2026

Respectfully submitted,

| | | |
|---|---|---|
| */s/ Eric J. Stock* | */s/ Jeffrey I. Shinder* | */s/ David C. Kiernan* |
| Eric J. Stock | Jeffrey I. Shinder | JONES DAY |
| Jefferson E. Bell | Ellison A. Snider (*pro hac vice*) | David C. Kiernan (*pro hac vice*) |
| Esther Lifshitz | SHINDER CANTOR LERNER LLP | Caroline N. Mitchell (*pro hac vice*) |
| GIBSON, DUNN & CRUTCHER LLP | 14 Penn Plaza, 19th Floor | Kapri Saunders (*pro hac vice*) |
| 200 Park Avenue | New York, NY 10122 | Paul Hines (*pro hac vice*) |
| New York, NY 10166 | Tel.: (646) 960-8601 | 555 California Street, 26th Floor |
| Tel.: (212) 351-2301 | Fax: (646) 960-8625 | San Francisco, CA 94104 |
| Fax: (212) 716-0801 | jeffrey@scl-llp.com | Tel.: (415) 626-3939 |
| estock@gibsondunn.com | esnider@scl-llp.com | Fax: (415) 875-5700 |
| jbell@gibsondunn.com | | dkiernan@jonesday.com |
| elifshitz@gibsondunn.com | James J. Kovacs (*pro hac vice*) | cnmitchell@jonesday.com |
| | Keagan H. Potts (*pro hac vice*) | ksaunders@jonesday.com |
| *Attorneys for Defendant S&P Global Inc.* | 600 14th Street NW, 5th Floor | |
| | Washington, D.C. 20005 | Alexander V. Maugeri |
| | james@scl-llp.com | Amanda L. Dollinger |
| | kpotts@scl-llp.com | 250 Vesey Street |
| | | New York, NY 10281 |
| | W. Stephen Cannon (*pro hac vice*) | Tel.: (212) 326-3939 |
| | Seth D. Greenstein (*pro hac vice*) | Fax: (212) 755-7306 |
| | Patrick Kennedy (*pro hac vice*) | amaugeri@jonesday.com |
| | CONSTANTINE CANNON LLP | adollinger@jonesday.com |
| | 1001 Pennsylvania Ave. NW, Suite 1300N | |
| | Washington, D.C. 20004 | *Attorneys for Defendant American Bankers Association* |
| | Tel.: (202) 204-3500 | |
| | scannon@constantinecannon.com | |
| | sgreenstein@constantinecannon.com | |
| | pkennedy@constantinecannon.com | |
| | | |
| | Sarah Bayer | |
| | 230 Park Avenue, 17th Floor | |
| | New York, NY 10169 | |
| | Tel.: (212) 350-2700 | |
| | | |
| | *Attorneys for Defendant FactSet Research Systems, Inc.* | |

12

## **SIGNATURE CERTIFICATION**

Pursuant to Section 8.5(b) of the Electronic Case Filing Rules and Instructions of the Southern District of New York, I certify that all other signatory parties have consented to the filing of this document.

*/s/ David C. Kiernan*
David C. Kiernan

## WORD COUNT CERTIFICATION

Pursuant to Rule 4(B) of the Court's Individual Rules of Practice in Civil Cases, Defendants certify that this computer-generated Memorandum of Law was prepared using Microsoft Windows and Microsoft Word.  The total number of words in this Memorandum, exclusive of the caption, table of contents, table of authorities, the signature block, and this certificate of compliance is 3,492, which is in accordance with the maximum 3,500 words as permitted under Local Civil Rule 7.1.

*/s/ David C. Kiernan*
David C. Kiernan

14

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on April 15, 2026, I caused the foregoing to be served on all counsel of record via ECF.

*/s/ David C. Kiernan*
David C. Kiernan
