# EXHIBIT 1

HIGHLY CONFIDENTIAL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

DINOSAUR FINANCIAL GROUP LLC, SWISS

LIFE INVESTMENT MANAGEMENT HOLDING AG,

and HILDENE CAPITAL MANAGEMENT, LLC, on

behalf of themselves and all others

similarly situated,

          Plaintiffs,

    vs.  Civil Action No. 22 Civ. 1860 (KPF)

S&P GLOBAL, INC., AMERICAN BANKERS

ASSOCIATION, and FACTSET RESEARCH

SYSTEMS INC.,

          Defendants.

------------------------------------x

       *** HIGHLY CONFIDENTIAL ***

    Videotape deposition of LAUREN J. STIROH,

Ph.D., held at the offices Shinder Cantor

Lerner, LLP, 14 Penn Plaza, New York, New

York 10122, on January 7, 2026, at 9:30 a.m.

before Maureen Ratto, a Registered

Professional Reporter, Certified Shorthand

Reporter within and for the State of New

York.

HIGHLY CONFIDENTIAL

Page 26

STIROH - Highly Confidential
or testimony that appeared to be inconsistent with each other?

MR. KOVACS: Vague and ambiguous.

A. There I think is some deposition testimony that I have reviewed that had either different information or incomplete information relative to what is seen in the Use of Service statements. And to the best of my recollection, I would -- I rely on the Use of Service Statements, not knowing if the deposition testimony is inaccurate, but having experienced it myself, it's my experience it's to the best of my recollection, as I sit in the chair, and a Use of Service Statement is I think I take to be something that is maybe given more thought to.

Q. And do you recall which deposition testimony you discounted because you felt that the Use of Service Statements were more accurate representations of whatever fact it might

Page 27

STIROH - Highly Confidential
have been?

MR. KOVACS: Objection, misstates her prior testimony. You can answer.

A. I don't remember any deposition statements, in particular, but I did rely on Use of Service Statements.

Q. Did you find some testimony more helpful than other testimony because of the witness who provided the testimony or because of who the witness may have been related to, meaning which party the witness was related to?

MR. KOVACS: Objection to form.

A. I don't know what that means. I've cited deposition testimony for various facts or understanding but have not I think ranked any of it.

Q. Take a look at page 9 of your Exhibit 2, which is the materials you relied on, and you see there about one third of the way down the page it says Publicly Available?

Page 28

STIROH - Highly Confidential
A. I see it, yes.

Q. And now, if you would kind enough to turn to page 13 of Exhibit 2 and you see up towards the top of the page it says Publicly Available Information?

A. I see that.

Q. Can you tell me what the difference is between the information in your Publicly Available starting on page 9 and Publicly Available Information starting on page 13?

A. Let me see if I can. I would have to check. I have a recollection that we have done this in other cases and there is a distinction. But as I sit here, I'll have to tell you that I don't recall what it is that puts it in the two categories. And maybe we will find a different way of doing that that gives you more information when I'm sitting in this chair. They're both publicly available.

Q. Fair enough. If you turn to

Page 29

STIROH - Highly Confidential
page 17 of Exhibit 2, which is the materials you relied upon, and do you see about three-fifths to three-quarters of the way down there is a reference to Morris, Virginia B. and Kenneth M. Morris?

A. I see the reference.

Q. And a publication of theirs. Is it fair to call that publication a brochure?

MR. KOVACS: Objection to form, lacks foundation.

A. And I don't know. If you had cause to call it that, I don't think I'd have a basis to object.

Q. Fair enough. I will call it a brochure.

Was that brochure sponsored by any of the Defendants, to your understanding or knowledge?

MR. KOVACS: Objection to form, that calls for speculation and lacks foundation.

A. I don't know.

8 (Pages 26 - 29)

HIGHLY CONFIDENTIAL

Page 30

STIROH - Highly Confidential

Q.   Was that brochure paid for by any of the Defendants?

MR. KOVACS:  Objection to form, calls for speculation and --

Q.   That's based on your understanding?

A.   I don't know.

Q.   Do you know whether either of the Morrises were employed by any of the Defendants at any time? And let me change that question.

Do you understand whether either of the Morrises were employed by any of the Defendants at any time?

MR. KOVACS:  Objection to form and lacks foundation and calling for speculation.

A.   I don't know.

Q.   Do you know whether any of the -- strike that. Let me do it again.

Do you understand whether either of the Morrises were working as independent consultants for any of the Defendants at any point in time?

Page 31

STIROH - Highly Confidential

MR. KOVACS:  Objection to form, lacks foundation and is calling for speculation.

A.   I don't know.

Q.   Have you had any communications with Jorge L. Contrares about this case?

A.   I have not.

Q.   Do you know that he has submitted a report on behalf of the Defendants in this case?

A.   I do.

Q.   Have you read that report?

A.   I have paged through it.

Q.   When did you page through it?

A.   In preparation for this deposition.

Q.   That was in the last week then?

A.   Yes.

Q.   So you didn't rely on any portion of that report for anything that you stated in your report?

A.   I did not rely on that report,

Page 32

STIROH - Highly Confidential

correct.

Q.   And we've established that you've communicated with Ms. Cynthia Meyn about this case, correct?

A.   Yes.

Q.   And that was on November 11, 2025; is that right?

A.   For purposes of my report, that is correct.  I've had a second conversation with her in preparation for this deposition.

Q.   What were the circumstances in which you had the conversation on November 11?

A.   What do you mean by "what were the circumstances"?

Q.   What caused you to have the conversation?

A.   I had an understanding that there were topics that would be covered by experts other than me for Defendants and that specifically the topics related to I think the use made of CUSIP identifiers by end users I have an

Page 33

STIROH - Highly Confidential

understanding was a topic that would be covered by Dr. Meyn and had a conversation with her on what the scope of her opinions was going -- she was anticipating was going to be prior to filing her report.

Q.   When was the second conversation?

A.   Sometime in December, to the best of my recollection.

Q.   Before Christmas or after Christmas?

A.   It was before Christmas.

Q.   Are you relying for your testimony here today on anything you learned in that second conversation with Ms. Meyn?

A.   I don't believe that I am. I have relied on the conversation that I had with her that -- where I had an understanding of what would be covered in her report and I have since reviewed her report and verified with her that those topics are, in fact, covered in her

9 (Pages 30 - 33)

HIGHLY CONFIDENTIAL

Page 34

STIROH - Highly Confidential
report and I have stated my statements are accurate in my report.

Q. And you referenced her report three times in your report; is that correct?

A. I haven't counted but it sounds about right.

Q. Okay. I will go through them so you can count as we go along. Let's turn first to page 21 of your report, which has been marked as Exhibit 518. And do you see at the end of footnote 123 there is a reference to your discussion with Ms. Meyn?

A. I see that, yes.

Q. And that footnote is dropped from a statement in paragraph 38. Do you see that?

A. Yes.

Q. And the statement in footnote 123 is, "I understand this is discussed in the expert report of industry expert Cynthia Meyn." Is that right? Did I read that correctly?

Page 35

STIROH - Highly Confidential

A. In footnote 123, yes, you have.

Q. What was "this" that you referred to in that sentence?

A. The fact that the identifiers that include more than 60 data elements have those additional data elements are necessary to identify the financial instrument reliably and accurately for many uses.

Q. And was that something that Ms. Meyn told you in her conversation with you on November 11th as well?

A. Yes.

Q. Do you know where Ms. Meyn makes that reference in her report?

MR. KOVACS: Object to form.

A. I have reviewed her report and to the best of my recollection, the reference appears several times but I couldn't give you a page number.

Q. If I put her report before you would you be able to quickly find the location of the basis for the statement

Page 36

STIROH - Highly Confidential
that you just told me you relied on --

MR. KOVACS: Objection.

Q. -- for her?

MR. KOVACS: Objection, form.

A. Surely not, in part because the report is long but also what I am relying on is my discussion, and then I am also telling you at the time was my understanding that the fact is discussed in her report and I've read the report and I had a subsequent discussion and I believe that to be true, but I couldn't show you the page number.

Q. Okay. And do you recall anything she wrote in her report which was consistent with what you just told me she told you on November 11th?

MR. KOVACS: Objection to form.

A. You're asking me do I recall what's in her report?

Q. Yes, that goes to that topic.

MR. KOVACS: Same objection. You can answer.

Page 37

STIROH - Highly Confidential

A. I don't recall specifically but the -- having had that conversation with Cynthia Meyn, understanding that she would be opining that you need more data than just the 9-digit identifier to use CUSIPs was something that I relied upon in preparing my report, and I believe she says that in her report and I have reviewed it since writing this and I think that that is true, but I couldn't tell you what page or paragraph.

Q. But you can't tell me the words she used either because you don't have a recollection of that, sitting here today; is that right?

MR. KOVACS: Objection to form.

A. The words that she used in our conversation?

Q. No, in her report.

MR. KOVACS: Same objection.

A. I'm sorry. If you don't mind just asking that question again.

Q. Let me ask it again. I have

10 (Pages 34 - 37)

HIGHLY CONFIDENTIAL

Page 38

STIROH - Highly Confidential
no problem doing that.

Sitting here today, you don't have a recollection as to the words or the substance of the words in her report that go to the description that you just told me you were relying on from your conversation on November 11th; is that right?

MR. KOVACS:  Objection to form.  That's misstating her testimony. You can answer.

A.   As you just tested, then it is not right. I do have a recollection that the substance is there. I could not tell you what the specific words are or where they appear, sitting here without the report in front of me.

Q.   Fair enough. Let's turn down to page 39, and if you look at the bottom of the page you see footnote 220?

A.   Yes.

Q.   And, again, does it state, "I understand that this" -- let me do it again.

Page 39

STIROH - Highly Confidential

Is this what it says in footnote 220, "I understand this is discussed in the expert report of industry expert Cynthia Meyn."

A.   It says that, yes.

Q.   And, again, do you know what "this" is referring to? And I have no problem if you go and read the text up above in paragraph 68 to which footnote 220 was dropped.

A.   It is substantively the same topic that we just discussed that more than just the nine digits of a CUSIP are required for identifying precisely the instrument being used.

Q.   Okay. And now, since we're on page 39 of your report, which we've marked as Plaintiffs' Exhibit 518, would you look at footnote 221, please?

A.   Yes.

Q.   And does that read, "I understand that the need for CGS data beyond the identifier for various industry participants is discussed in the

Page 40

STIROH - Highly Confidential
expert report of industry expert Cynthia Meyn."

A.   It says that, yes.

Q.   And the need for CGS data beyond the identifier for various industry participants was the subject of your conversation on November 11th with Ms. Meyn; is that right?

A.   That is correct.

Q.   And you have since looked at her report. Did you look for anything in her report that supported the statement that the need for CGS data beyond the identifier for various industry participants is there?

A.   I have since looked at her report and in my view it is there, yes.

Q.   And can you point me to where in her report it is?

MR. KOVACS:  Objection to form.

A.   I would give the same answer. To the best of my recollection, it's referenced several times in her report. I

Page 41

STIROH - Highly Confidential
don't have a specific cite in mind.

Q.   Other than your conversation on November 11 and the conversation you had in December with Ms. Meyn, have you or your staff had other communications with Ms. Meyn or her staff concerning this case?

MR. KOVACS:  Object to perform.

MR. ARENSON:  I'm not asking for the substance of it, I'm just asking whether they occurred.

MR. KOVACS:  I know but I just want to be clear, she indicated that she relied on one conversation, which you're entitled to disclose.

So you can answer the question to the extent something was relied upon.

MR. ARENSON:  She can answer the question to the extent whether they exist in the first place.

Then after that I may or may not

11 (Pages 38 - 41)

HIGHLY CONFIDENTIAL

Page 42

STIROH - Highly Confidential
follow up with whether there is anything she relied on.

MR. KOVACS: That's not what we agreed to in the expert stipulation --

MR. ARENSON: I think that --

MR. KOVACS: Let's not interrupt each other.

MR. ARENSON: I'm sorry. I apologize. I do apologize.

MR. KOVACS: I am truly trying to follow the agreement that we laid out and which is supposed to be predicated on what is relied upon. And to the extent that she relied upon a conversation, that's fair game.

So why don't you reask the question and we can go from there.

Q. Let me reask the question.

Have you or your team had any communications with Ms. Meyn or her staff concerning this case, other than your conversation with Ms. Meyn on November

Page 43

STIROH - Highly Confidential
11, 2025 and your conversation with her in December of last year?

MR. KOVACS: I'll make the same objection. You can answer the question. Go ahead.

A. I have not had any further conversations with Ms. Meyn or her staff.

Q. What about your team?

A. I don't have that knowledge.

Q. Have you heard of Dennis W. Carlton?

A. I have.

Q. Is he a well-respected economist?

MR. KOVACS: Objection to form.

A. I believe so but you're asking me for the opinions of others. I have not heard that he is not a well-respected economist. He is a well-known economist.

Q. Have you heard of Jeffrey M. Perloff?

A. I have.

Q. Is he a well-respected

Page 44

STIROH - Highly Confidential
economist?

MR. KOVACS: Objection to form.

A. I have no information to the contrary.

Q. Have Dennis Carlton and Jeffrey Perloff written a textbook on modern industrial organization?

A. I believe they have written it many times. There are many editions of it.

Q. Is their most recent edition the Fourth Edition from 2025?

A. I believe there is probably a more recent one but I don't know for certain.

Q. Have you relied on their book from time to time?

A. I have.

Q. Have you heard of Hal R. Varian.

A. I have.

Q. Do you know Dr. Varian?

A. I may have encountered him at

Page 45

STIROH - Highly Confidential
Harvard. I don't recall having met him. I have read his textbook in microeconomics.

Q. Okay. Was he for years the chief economist at Google?

MR. KOVACS: Objection to the extent that's calling for speculation.

A. I don't actually know that.

Q. Do you know whether he was the chief economist at Google?

MR. KOVACS: Same objection.

A. I think that was the question I had meant to answer the last time. I don't know what his employment history or titles were at any of the places. I know the name because he wrote a textbook that I have read.

Q. Let's make sure that we're talking about the same terms in this case.

May we refer to CUSIP Global Services as CGS?

A. I believe I will understand you if you use that term, yes.

12 (Pages 42 - 45)

HIGHLY CONFIDENTIAL

Page 46

STIROH - Highly Confidential

Q. Do you use that term also?

A. I do.

Q. So both of us are on the same page as far as that goes; is that right?

A. As far as we can tell, I think, yes.

Q. Do you define the term CUSIP as a 9-character alphanumeric code that uniquely identifies certain financial instruments in the United States and Canada?

A. I believe you are reading from my report and I'll look at the same pages.

Q. I don't mind. It won't be true throughout the definition section that I'll go through, but this is page 17, paragraph 29.

A. Okay.

Q. So let's try it again. Do you define a CUSIP as a 9-character alphanumeric code that uniquely identifies certain financial instruments in the United States and Canada?

Page 47

STIROH - Highly Confidential

A. I do.

Q. Do you, on page 18 and paragraph 32, if you want to turn to that, do you define an ISIN, that's I-S-I-N for the court reporter, as an "identifier that can be used globally to uniquely identify financial instruments", continuing on, "assigned by national numbering agencies or substitute numbering agencies in over 120 countries"?

A. In my report it is two sentences. I do define an ISIN as an identifier that can be used globally to uniquely identify financial instruments. And then I say "they are assigned by NNAs or SNAs in over 120 countries.

Q. And at the bottom of page 18, up to the top of page 19 do you say that, "A CGS ISIN is an ISIN issued by CGS as the national numbering agency for the United States, Canada, and a number of other countries in the Caribbean, Central America and South America"?

Page 48

STIROH - Highly Confidential

A. I think you weren't reading directly and if I can ask you to go a little bit slower to catch up.

Q. At some point I did begin reading from your report but I started out by paraphrasing slightly, so let me ask it again.

That is, "A CGS ISIN is an ISIN issued by CGS as the national numbering agency for the United States, Canada and a number of other countries in the Caribbean, Central America and South America"?

A. I don't mean to argue with you on things that are --

Q. That's why we're doing this definitionally.

A. If they're not relevant. I have set out the way that I'm going to use terms. And I understand that CGS does issue CGS ISINs for the United States, Canada and a number of other countries.

Whether that makes CGS the NNA

Page 49

STIROH - Highly Confidential

as opposed to an SNA for those other countries, I don't think I have that information in front of me. But if the import is just: Has CGS issued them? Yes, I agree.

Q. And so if I modify my question as follows, let's see if you can answer it now.

Is a CGS ISIN an ISIN issued by CGS as either the national numbering agency or a substitute numbering agency for the United States, Canada and a number of other countries in the Caribbean, Central America and South America?

A. In my understanding, that is correct.

Q. Continuing on page 19, paragraph 34, is a CINS a 9-character identifier developed by CGS for use in international markets -- my words -- which is the same as CUSIPs for the same financial instruments, except for the first character which is replaced by a

13 (Pages 46 - 49)

HIGHLY CONFIDENTIAL

Page 106

STIROH - Highly Confidential identifiers and additional descriptive data.

I don't know what specific words of the license agreement CGS would point to to say where that is true but it is my understanding that that is what is, in fact, licensed.

Q.   And your understanding that additional data is licensed, the additional data to which you're referring is different from the standard security descriptions that are specifically stated in section 1.1 of the Services Attachment; is that right?

MR. KOVACS:  Objection to form, misstating her testimony.

A.   I don't know that it is different. My understanding is that the data that get licensed to subscribers include more than the -- I call it a raw identifier, perhaps you'll know what I mean -- and that there is no, to my understanding, separate license for the additional descriptors and just the

Page 107

STIROH - Highly Confidential identifier.

It's rather my understanding that what CGS licenses is access to the CGS data that includes the 9 or 12-digit codes, plus additional information.

Q.   And let's now turn to the Order Schedule which is part of Plaintiffs' Exhibit 16 on page ending in control number 84 and, again, the CGS License there in (i) or (1).  Are you with me?

A.   I am.

Q.   Is there any reference in that item to "additional information"?

(Fire alarm announcement.)

MR. KOVACS:  Objection to form.

Maybe we should go off the record for just one second.

VIDEOGRAPHER:  We are now off the record. The time on the record is 11:51 a.m.

(Brief recess is taken.)

VIDEOGRAPHER:  We are now back

Page 108

STIROH - Highly Confidential on the record. The time on the video monitor is 11:51 a.m.

Q.   Dr. Stiroh, I believe we were talking about Order -- the Order Schedule to the Distribution Agreement which -- and the first page of which you will find with the control number of FRSI-84, and is part of Plaintiffs' Exhibit 16.

Under 7.A.(i) or (1) there is the CGS License which we've been talking about, correct?

A.   Yes.

Q.   Good. Where in that CGS License, the Order Schedule, does it say that it includes other information beyond CUSIP, CINS and/or CGS ISIN identifiers and standard security descriptions?

MR. KOVACS:  Objection to form.

A.   I don't know what part of the document refers to the additional data.

It is my understanding that every license that or every subscriber has access to both the 9-digit or

Page 109

STIROH - Highly Confidential 12-digit codes and the additional data, and I'm not aware of any license just for the additional data, separate from the identifiers.

Q.   And what does the additional data consist of?

A.   There are up to 60 different fields that, from our conversation earlier this morning, our understanding is they are necessary for the precise identification of certain financial instruments for certain uses.

Q.   And what is the source of your information that the additional data consisting of 60 different fields is part of the CGS License referenced under 7.A.(i) or (1) of the Order Schedule?

MR. KOVACS:  Objection to form, misstates her testimony, and to the extent you're calling for a legal conclusion.

A.   It is my understanding that that is the information that gets received by subscribers, including class

28 (Pages 106 - 109)

HIGHLY CONFIDENTIAL

Page 110

STIROH - Highly Confidential members, including the named Plaintiffs in this matter.

Q.   My question is, "What is the source of your understanding?"  So I'll repeat it.

What is the source of your understanding?

A.   So my understanding comes from, in part, what I see in the record. And I have seen that that is what is being received from the Use of Service Statements that the putative class members have signed.

Q.   And you don't know whether the Use of Service Statement is part of the Distribution Agreement or not; is that right?

MR. KOVACS:  Objection, form.

A.   I don't know from a legal standpoint whether it would be considered part of the agreement as opposed to a separate document.

My understanding is the Use of Service Statements indicate the data that

Page 111

STIROH - Highly Confidential are being used by different subscribers, including putative class members, and they inform me as to what information is received by class members through the licenses that they enter into with CGS.

Q.   And similarly, you don't know whether the Use of Service Statement is part of the Subscription Agreement, correct?

MR. KOVACS:  Objection, form.

A.   That is correct.  From a legal standpoint, I don't know if it is considered part of or an additional document.

Q.   Okay. And you said that your understanding that the additional data in the 60 different fields is part of the CGS License is based on the record.

What, other than Use of Service Statement, is part of the record on which you base that understanding?

A.   Also it would come from deposition testimony that talks about what I would call a product but CGS may

Page 112

STIROH - Highly Confidential call a service that is provided to putative class members. I don't recall a specific deponent, but it is consistent with what I have seen in the record and referred to throughout my report, that what gets -- that what is received is information that is broader than the 9 or 12-digit identifier.  And it is my understanding that the additional information is necessary for certain uses for certain end users to actually use the data.

Q.   And does that additional information that you are referencing, which is the 60 different fields or so, come from CGS or from third-party data vendors --

MR. KOVACS:  Objection.

Q.   -- or, as you say, authorized data vendors?

MR. KOVACS:  Objection to form, that is an incomplete hypothetical.

A.   The CGS data, as I understand

Page 113

STIROH - Highly Confidential it and as I have used that term, comes from CGS and it is in a CGS data file. I understand to be part of the class, as has been defined, one of the requirements is that end users receive a data feed or a data download from an authorized distributor of those data.

Q.   I think my question is a little bit different, so let me try and clarify it.

You say that the CGS License, which is in the Order Schedule to the Distribution Agreement or in the Services Attachment to the Subscription Agreement, includes additional data for 60 different fields. And I'm now asking whether that additional data that you say is included within the CGS License in the Order Schedule of the Services Attachment comes from CGS or from authorized data vendors, using your terminology?

MR. KOVACS:  Objection to form, that misstates prior testimony, and calling for a legal

29 (Pages 110 - 113)

HIGHLY CONFIDENTIAL

Page 114

STIROH - Highly Confidential conclusion, and it's an incomplete hypothetical.

A.   To the best of my understanding, the CGS data is gathered and maintained by CGS and CGS makes those data available to subscribers and authorize some subscribers to also redistribute the data.

The data that is received by class members I understand comes from third-party authorized redistributors or CUSIP web access, so long as they are not paying for CUSIP web access.

Q.   And is that information that subscribers are receiving from authorized data vendors, using your terminology, or third-party data vendors, using other people's terminology, CGS data or data separately sourced by the authorized data vendors or third-party data vendors?

MR. KOVACS:   Objection to form.

A.   I'd have to say I don't think I'm understanding what it is you're

Page 115

STIROH - Highly Confidential asking me.

I understand that CGS has a database that it licenses and the database includes more than a 9-digit or 12-digit code and it is that additional data that has value to putative class members.

Q.   But what I'm asking is whether this CGS License that is in the Order Schedule or in the Services Attachment, when it includes additional data, as you say it does, can be obtained by subscribers without being CGS data?

MR. KOVACS:   Objection to form.

Q.   Meaning that it comes from CGS.

MR. KOVACS:   Same objection.

Q.   Even if indirectly.

MR. KOVACS:   Same objection.

A.   Subscribers can obtain CGS data directly from CGS.

Q.   But now I'm talking about indirectly.

Page 116

STIROH - Highly Confidential

A.   Okay.

Q.   Whether this license, that is in 7.A.(i) of the Order Schedule or 1.1 of the Services Attachment, when it includes additional data, as you say it does, includes data that a subscriber receives which is sourced from some entity other than CGS?

MR. KOVACS:   Objection, incomplete hypothetical.

A.   Can you clarify for me what you mean by "sourced from some entity other than CGS"?

Q.   Let me try and make it concrete.

Let's for this hypothetical assume that the source of the data that the subscriber receives is Bloomberg, which is an authorized third-party data vendor, combining our two definition of the third party.  Are you still with me?

A.   I believe so.

Q.   So let's assume that Bloomberg takes information relating to a

Page 117

STIROH - Highly Confidential particular CUSIP and creates -- generates all of that itself. Are you still with me?

A.   No.

Q.   So let me start there.

Are you aware that Bloomberg gathers data relating to CUSIPs that include not necessarily the same fields as CGS data but includes information relating to the CUSIP and the issuer and the type of instrument?

MR. KOVACS:   Objection to form, lacks foundation, and you're calling for speculation.

A.   Not all of what you said has meaning for me. I'm aware that Bloomberg gathers data and has a product that it also licenses to its users.

(Fire alarm announcement.)

MR. ARENSON:   Let's go off the record a moment.

VIDEOGRAPHER:   We are now off the record. The time on the video monitor is 12:02 p.m.

30 (Pages 114 - 117)

HIGHLY CONFIDENTIAL

Page 294

STIROH - Highly Confidential

monitor is 4:38 p.m.

(Recess is taken.)

VIDEOGRAPHER:  We are now back on the record. The time on the video monitor is 4:51 p.m.

MR. ARENSON:  I have no further questions. I pass the witness.

MR. KOVACS:  And I have no questions for the witness either.

MR. ARENSON:  In that case we are at the end of the deposition but I want to give you an opportunity to see if you want to have the witness review and then sign?

MR. KOVACS:  Yes, I appreciate that.  Yes, the witness will review and sign.

MR. ARENSON:  And also in accordance with our stipulation, this is all confidential going forward for some period of time unfortunately.

Page 295

STIROH - Highly Confidential

MR. KOVACS:  That's exactly right. We will follow the appropriate stipulations in the case.

MR. ARENSON:  In that case, Dr. Stiroh, thank you for your time and effort and conversation. I appreciate it.

THE WITNESS:  Thank you very much.

VIDEOGRAPHER:  That concludes the testimony today of Dr. Lauren Stiroh.  We're now off the record. The time on the video monitor is 4:52 p.m.

(The proceedings were adjourned at 4:52 p.m.)

Page 296

C E R T I F I C A T E

I, MAUREEN M. RATTO, a Registered Professional Reporter, do hereby certify that prior to the commencement of the examination, Lauren J. Stiroh, Ph.D. was sworn by me to testify the truth, the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a true and accurate transcript of the proceedings as taken stenographically by and before me at the time, place and on the date hereinbefore set forth.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in this action.

_____

MAUREEN M. RATTO, RPR

License No. 817125

Page 297

I N D E X

WITNESS:  LAUREN J. STIROH,        7
Ph.D.
DIRECT EXAMINATION BY        7
MR. ARENSON

E X H I B I T S

Plaintiffs' Exhibit 518, Expert  9
Report of Lauren J. Stiroh,
Ph.D. dated November 26, 2025
Plaintiffs' Exhibit 519,        154
document labeled Quote for
Hildene Capital Management,
Bates FRSI00087277
Plaintiffs' Exhibit 520, CUSIP   160
Global Services Subscription
Agreement, Bates FRSI00370172 to
00370184
Plaintiffs' Exhibit 521,        164
document labeled Quote for Swiss
Life CUSIP, Bates FRSI00134497
to 00134513
Plaintiffs' Exhibit 522, excerpt 211
from Modern Industrial
Organization, Fourth Edition

75 (Pages 294 - 297)

HIGHLY CONFIDENTIAL

Page 298

Plaintiffs' Exhibit 523, tab     249
Total PL, Bates FRSI01585245
Plaintiffs' Exhibit 524,       261
document with attached Sub Book
Price, Bates FRSI00128199 to
00128200

    PREVIOUSLY MARKED EXHIBITS
Exhibit 133A, document Bates     58
stamped FRSI00000095 through
00000099,
Plaintiffs' Exhibit 133B       65
document Bates stamped
FRSI00000068 through 00000072
Plaintiffs' Exhibit 30, document 68
Bates stamped FRSI00000092
through 00000094,
Plaintiffs' Exhibit 15, document 72
Bates stamped FRSI00000073
through 00000082,
Plaintiffs' Exhibit 16, document 73
Bates stamped FRSI00000083
through 00000091

Page 299

JAMES J. KOVACS, ESQ.
James@scl-llp.com
        January 15, 2026
RE: DINOSAUR FINANCIAL GROUP LLC, et al.
    S&P GLOBAL, INC., et al.
    1/7/2026, Lauren J. Stiroh, Ph.D. (#7807054)
    The above-referenced transcript is available for
review.
    Within the applicable timeframe, the witness should
read the testimony to verify its accuracy. If there are
any changes, the witness should note those with the
reason, on the attached Errata Sheet.
    The witness should sign the Acknowledgment of
Deponent and Errata and return to the deposing attorney.
Copies should be sent to all counsel, and to Veritext at
cs-ny@veritext.com.
    Return completed errata within 30 days from
receipt of testimony.
    If the witness fails to do so within the time
allotted, the transcript may be used as if signed.



        Yours,
        Veritext Legal Solutions

Page 300

DINOSAUR FINANCIAL GROUP LLC, et al.
S&P GLOBAL, INC., et al.
1/7/2026 - Lauren J. Stiroh, Ph.D. (#7807054)
        E R R A T A  S H E E T
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
_____   _____
Lauren J. Stiroh            Date

Page 301

DINOSAUR FINANCIAL GROUP LLC, et al.
S&P GLOBAL, INC., et al.
1/7/2026 - Lauren J. Stiroh, Ph.D. (#7807054)
        ACKNOWLEDGEMENT OF DEPONENT
    I, Lauren J. Stiroh, do hereby declare that I
have read the foregoing transcript, I have made any
corrections, additions, or changes I deemed necessary as
noted above to be appended hereto, and that the same is
a true, correct and complete transcript of the testimony
given by me.

_____   _____
Lauren J. Stiroh            Date
*If notary is required
        SUBSCRIBED AND SWORN TO BEFORE ME THIS
        _____ DAY OF _____, 20___.


        _____
        NOTARY PUBLIC

76 (Pages 298 - 301)

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

ERRATA SHEET
VERITEXT REPORTING COMPANY
7 TIMES SQUARE
NEW YORK, NEW YORK 10036
212-279-9424

NAME OF CASE: Dinosaur Financial Group, et al. v. S&P Global, Inc., et al.
DATE OF DEPOSTION: January 7, 2026
NAME OF DEPONENT: Dr. Lauren Stiroh

DEPOSITION OF LAUREN STIROH

| PAGE:LINE | ORIGINAL | CHANGE | REASON |
|---|---|---|---|
| 33:3 | covered by Dr. Meyn and had a | covered by **Ms.** Meyn and had a | To correct the record |
| 34:2 | report and I have stated my statements | report and I have **confirmed** my statements | To correct the record |
| 35:8 | have those additional data elements are | **which** are | To correct the record |
| 38:13 | As you just tested, then it is | As you just **stated**, then it is | To correct the record |
| 47:18 | or SNAs in over 120 countries. | or SNAs in over 120 countries". | Stenographic error |
| 55:3 | testimony and I think it's may be | testimony, and I think it may be | Stenographic error |
| 95:19 | was included with Plaintiffs counsel's | was included with Plaintiffs' counsel's | Stenographic error |
| 130:3 | I don't understand that there | I don't understand there | To correct the record |
| 135:10 | somebody who receives the CGS from | somebody who receives the CGS **data** from | To correct the record |
| 136:6 | indirect authorized data vendor | **direct** authorized data vendor | Stenographic error |
| 138:6 | report. As of figure 24, I haven't got | report. As of figure 2.4, I haven't got | Stenographic error |
| 233:10 | without any additional price to get a | without any additional price. **T**o get a | Stenographic error |

| 235:12 | download or bulk data feed to get a | download or bulk data feed. **To** get a | Stenographic error |
|---|---|---|---|
| 235:13 | benchmark price. For that you would have | benchmark price, **f**or that, you would have | Stenographic error |
| 247:20 | It is intended to show why it | It is intended to show **what I** | To correct the record |
| 258:23 | It i not necessarily the same. | It i**s** not necessarily the same. | Stenographic error |
| 273:18 | industry, if there is such a thing. Apply | industry, if there is such a thing. **My** | Stenographic error |
| 274:23 | at the part of I did not rely on and see | at the part **that** I did not rely on and see | To correct the record |

I declare under penalty and perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: February __4__, 2026

Lauren Stiroh

# CONSTANTINE CANNON LLP

**Sarah Bayer**
(212) 350-2782
sbayer@constantinecannon.com

NEW YORK | WASHINGTON | SAN FRANCISCO

January 22, 2026

**By Email**

Client Services - New York
Veritext Legal Solutions
7 Times Square, Suite 1604
New York, New York 10036
ClientServicesNY@veritext.com

> Re:    *Dinosaur Financial Group LLC, et al. v. S&P Global, Inc., et al.*, Case
> No. 22-CV-1860-KPF, U.S. District Court, Southern District of New York

Dear Veritext:

   Pursuant to ¶ 23 of the Stipulated Protective Order (Dkt. 125) in this case, this letter provides FactSet Research Systems Inc.'s confidentiality designations for the deposition testimony of Lauren J. Stiroh, Ph.D, taken on January 7, 2026.  Please find the designations as follows:

| Page:Line | Designation |
|---|---|
| 58:25-65:8 | Confidential (starting with "And by the way…") |
| 66:7-67:11 | Confidential |
| 67:24-71:14 | Confidential |
| 72:3-73:4 | Confidential (starting with "And the first page…") |
| 73:11-94:15 | Confidential |
| 95:6-107:15 | Confidential |
| 108:4-117:19 | Confidential |
| 120:6-124:9 | Confidential |
| 124:10-128:13 | Highly Confidential |

230 PARK AVE., FLOOR 17,, NEW YORK, NY 10169  TELEPHONE: 212-350-2700  FACSIMILE: 212-350-2701  HTTP://WWW.CONSTANTINECANNON.COM

A LIMITED LIABILITY PARTNERSHIP

# CONSTANTINE CANNON LLP

Client Services - New York
January 22, 2026
Page 2

NEW YORK | WASHINGTON | SAN FRANCISCO

| Page:Line | Designation |
|---|---|
| 154:2-159:16 | Confidential (starting with "The document…") |
| 159:21-164:17 | Confidential (starting with "which says…") |
| 164:24-167:19 | Confidential |
| 194:7-198:16 | Highly Confidential |
| 199:19-203:8 | Confidential |
| 222:4-223:7 | Confidential |
| 247:6-249:13 | Highly Confidential |
| 249:22-252:3 | Highly Confidential |
| 257:18-259:24 | Confidential |
| 261:22-264:12 | Highly Confidential |
| 264:13-271:8 | Confidential |

If you have any questions, please do not hesitate to contact me.


Sincerely,


*/s/ Sarah Bayer*
Sarah Bayer