# EXHIBIT 10

ATTORNEYS EYES ONLY

**Page 1**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

DINOSAUR FINANCIAL GROUP LLC, SWISS

LIFE INVESTMENT MANAGEMENT HOLDING AG,

and HILDENE CAPITAL MANAGEMENT, LLC on

behalf of themselves and all others

similarly situated,

             Plaintiffs,        Civil Action No.

                            1:22-cv-1860 (KPF)

      vs.

S&P GLOBAL, INC., AMERICAN BANKERS

ASSOCIATION, and FACTSET RESEARCH

SYSTEMS INC,

        Defendants.

----------------------------------------x

             *** ATTORNEYS' EYES ONLY ***

            VIDEO-RECORDED DEPOSITION

              OF JENNIFER COLE

            BLOOMBERG, LP 30(B)(6)

             New York, New York

            Friday, March 7, 2025

Reported by:

Frank J. Bas, RPR, CRR

ATTORNEYS EYES ONLY

Page 22

J. COLE

later.

A. Okay.

Q. So the identifiers that we talked about a moment ago, why does Bloomberg provide them in the products and services it provides to customers?

A. Our clients need them.

Q. And do you understand why your clients need them?

A. Yes.

Q. What is your understanding of why they need them?

A. My understanding is they need them in order to transact trades between them and to understand that each party in a conversation are talking about the same instrument.

Q. Okay. So earlier I asked you a question about the data that Bloomberg licenses for use in the product suite.

A. Mm-hmm.

Q. And you said something to the effect, and I'm not here to mischaracterize it, there's a lot of different sources.

Page 23

J. COLE

A. Mm-hmm.



Page 24

J. COLE

Page 25

J. COLE

7 (Pages 22 - 25)

ATTORNEYS EYES ONLY

Page 26

J. COLE

[REDACTED]

Q. And CUSIP; you license data from CUSIP, correct?

A. Yes.

Q. And that data, is it incorporated into Bloomberg's products for subscribers to view or download?

A. It's a little bit different from the others.

Q. In what way?

A. We are licensed to receive the CUSIP data. For the most part we are not taking any of the data from the file itself. And the only data point that Bloomberg

Page 27

J. COLE

actually has within its products is the CUSIP number itself.

Q. So you said for the most part -- I want to make sure I got it -- we are not taking any of the data?

MR. ARENSON: Objection.

MR. WEINER: Let him ask the question.

MR. SHINDER: Yeah, I haven't finished the question.

Q. What did you mean by "for the most part" qualifier to that answer?

A. The CUSIP agreement covers multiple products. There is a linkage file for CINS to ISINs to CUSIPs where we may actually be getting the data from the file. Any other data we are not taking from the file, as I understand it from our data team.

Q. But you license the entire file, correct?

A. We do.

Q. And you're paying for the entire file, correct?

A. Correct.

Page 28

J. COLE

Q. Okay. Do you know when Bloomberg first entered into an agreement with CGS to access CGS data?

A. I believe it was 1992 on the agreement.

Q. Okay. When did Bloomberg first start developing the FIGI? I know you're not here to testify to that, but this is just for context.

MR. WEINER: Yeah, I mean you have another witness.

MR. SHINDER: Yeah, and I'm not gonna --

MR. WEINER: That's fine. If you can answer it.

MR. SHINDER: I don't intend to ask a lot of questions. It's just for context.

A. You would be much better talking to Steve. I don't know.

Q. You don't know? Okay. Do you know whether Bloomberg had an agreement with CGS at the time it started developing the FIGI?

A. I would think it would have to,

Page 29

J. COLE

since the agreement's 1992.

Q. Okay.

MR. SHINDER: We're going to move as quickly as we can through some large documents.

(Defendants' Exhibit 189, "CUSIP Electronic Distribution Agreement" was marked for identification).

MR. SHINDER: So I have marked as DX 189. So I put before the witness a document that has been marked as DX 189. It's entitled "CUSIP Electronic Distribution Agreement."

Q. Ms. Cole, I'm not actually going to be asking you specific questions about any portions of this.

A. Okay.

Q. Just tell me when you're -- if you are familiar with this, we can get to it. But take a moment --

A. I am. I am familiar with it.

Q. What is it?

A. This is the agreement between Bloomberg and CUSIP.

8 (Pages 26 - 29)

ATTORNEYS EYES ONLY

Page 30

J. COLE

Q. And is this the original agreement you spoke to a few moments ago between Bloomberg and CGS?

A. It's the earliest agreement I am aware of.

Q. Okay. And when you came into your role at Bloomberg, this was the operative agreement, correct, between Bloomberg and CGS?

MR. ARENSON: Objection.

Q. You can answer.

A. I believe so.

Q. Okay. You can set that aside.

(Defendants' Exhibit 190, Amendment No. 3 to CUSIP Electronic Distribution Agreement was marked for identification).

BY MR. SHINDER:

Q. So I have marked as Defendants' Exhibit 190 a document entitled Amendment No. 3 to CUSIP Electronic Distribution Agreement. The date on the front is January 1, 2012. You can take a moment and just tell me when you're ready.

A. I looked.

Page 31

J. COLE

Q. Ms. Cole, are you familiar with this document?

A. I am.

Q. What is it?

A. It's the amendment, the third amendment to the 1992 agreement between Bloomberg and CUSIP.

Q. Okay. You testified earlier you came into the role of managing this relationship --

A. Mm-hmm.

Q. -- in 2013?

A. That's correct.

Q. And you were a contributor to this -- the contract team up to that?

A. Correct.

Q. Were you a contributor to this agreement?

MR. ARENSON: Objection.

BY MR. SHINDER:

Q. Is that right?

A. I was --

MR. ARENSON: Objection.

BY MR. SHINDER:

Page 32

J. COLE

Q. You can answer.

A. I was working with my manager, who was working on it also prior to 2013.

Q. And you managed the implementation of this agreement when you assumed the role as a manager in '13? Would that be fair?

A. I managed the negotiation, yes.

Q. Okay. Let me take you to some portions of this. So I am taking you to page 13, paragraph 34. Is it paragraph or section number? I'll use whatever nomenclature, or paragraph it is. Unless you have a preference, Ms. Cole.

A. I don't have a preference.

Q. Paragraph it is. Paragraph 34.

A. Okay.

Q. If you look at 34(i)?

A. Mm-hmm.

THE COURT REPORTER: What page is that?

MR. SHINDER: 13.

Page 33

J. COLE

Did I read that correctly Ms. Cole?

A. Yes.

Q. Are you familiar with this provision?

A. Yes.

Q. What does it mean? As a business matter. I'm navigating the documents. I'm not asking you for legal conclusions.

9 (Pages 30 - 33)

ATTORNEYS EYES ONLY



Page 34

J. COLE

Page 35

J. COLE

Did I read that correctly?

A.  You did.

Q.  Do you understand this provision?

A.  I do.

Q.  As a business matter, what does it concern?

MR. ARENSON:  Objection.

MR. SHINDER:  Let me ask a better question.

MR. WEINER:  Sorry.  Objection for one is an objection for all, I assume that's what we're doing?

MR. SHINDER:  Yes.

MR. ARENSON:  Fair enough.

Page 36

J. COLE

MR. SHINDER:  I am going to ask a better question.

THE WITNESS:  Okay.

BY MR. SHINDER:

MR. LEE:  Objection.  The FIGI questions are supposed to be for Steve, who is going to be testifying later.

MR. SHINDER:  Yes.  And I'm asking -- I'm not going to ask detailed questions about the FIGI.  I'm just situating within the contract.  That's all I'm doing.

MR. WEINER:  It's just a caution.  Okay.

Page 37

J. COLE

MR. SHINDER:  Understood.  I'm not going to ask detailed questions about the FIGI.

BY MR. SHINDER:

10 (Pages 34 - 37)

ATTORNEYS EYES ONLY



11 (Pages 38 - 41)

ATTORNEYS EYES ONLY



Veritext Legal Solutions

212-267-6868                    www.veritext.com                    516-608-2400

ATTORNEYS EYES ONLY



Page 46

J. COLE

Page 47

J. COLE

anything that our customers have asked for in their file.

Q. Okay. Let me take you to page 5, the fee schedule. Does this describe the fees Bloomberg paid to CGS for the various products that Bloomberg licensed from it?

A. I believe so.

Q. If you go to the next page, subsection B. There are various royalty fees depicted there. At the bottom of 955 or page 6 carrying over to page 7, 956. Do you see that?

A. I do.

Q. Can you explain those fees?

A. They're CUSIPs fees. But they require us to pay, in addition to the license, a royalty based on the number of installed terminals that we have.

Q. If you go to the next page at the bottom there's something called Level 3 services?

A. Yes.

Q. Do you understand what Level 3 services are?

Page 48

J. COLE

MR. SHINDER: Why don't we take a quick break. I want to take stock.

THE VIDEOGRAPHER: Off the record. The time is 10:01 a.m.

(Recess.)

THE VIDEOGRAPHER: Back on the record. The time is 10:22 a.m.

(Defendants' Exhibit 191, Order Schedule No. 2 was marked for identification).

MR. SHINDER: So we have marked and put before the witness DX 191. It is a document entitled Order Schedule No. 2.

Page 49

J. COLE

It has a date of January 1, 2019.

Just take a moment. I'm not actually going to have any detailed questions on it.

(The witness reviews document.)

THE WITNESS: Okay.

BY MR. SHINDER:

Q. Ms. Cole, do you recognize DX 191?

A. Yes.

Q. What is it?

A. It's the updated order schedule to our CUSIP agreement.

Q. And you managed the negotiations of this agreement, is that right?

A. In part, I had people on my team working on it as well.

Q. Okay. And is it still in effect?

A. Yes.

Q. And if you just go to page 10.

A. Yes.

Q. That's your signature?

A. It's my DocuSign signature. Yes.

Q. Okay. Thank you. You can set that aside. I want to switch gears and show you

13 (Pages 46 - 49)

ATTORNEYS EYES ONLY

Page 138

J. COLE

THE COURT REPORTER: Okay. Do you want to order a rough draft?

MR. WEINER: Sure.

THE COURT REPORTER: Thank you.

THE VIDEOGRAPHER: Okay. Off the record at 12:54 p.m. EST. This concludes today's proceeding.

---

(Time noted: 12:54 p.m. EST)

Page 139

CERTIFICATE

STATE OF NEW YORK    )

COUNTY OF NEW YORK    )

I, FRANK J. BAS, a Certified Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That the witness whose testimony is hereinbefore set forth, was duly sworn by me and that such testimony given by the witness was taken down stenographically by me and then transcribed.

I further certify that I am not related by blood or marriage to any of the parties in this matter and that I am in no way interested in the outcome of this matter.

That any copy of this transcript obtained from a source other than the court reporting firm, including from co-counsel, is uncertified and may not be used at trial.

IN WITNESS WHEREOF, I have hereunto set my hand this 19th day of March, 2025.

*Frank J. Bas*

FRANK J. BAS, RPR, CRR

Page 140

----------------INDEX----------------

WITNESS        EXAMINATION BY        PAGE

JENNIFER COLE      MR. SHINDER        7, 130

MR. ARENSON        68

---------------- EXHIBITS------------------

(Exhibits retained by the court reporter.)

EXHIBITS                            PAGE

Defendants' Exhibit 188, subpoena        10

Defendants' Exhibit 189, "CUSIP Electronic   29
Distribution Agreement"

Defendants' Exhibit 190, Amendment No. 3 to  30
CUSIP Electronic Distribution Agreement

Defendants' Exhibit 191, Order Schedule     48
No. 2

Defendants' Exhibit 192, data distribution   50
agreement

Defendants' Exhibit 193, "Moody's Analytics  57
Amendment to Data Distribution Agreement"

Defendants' Exhibit 194, Bloomberg          63
Short-Term Bank Yield Index redistribution
service schedule

Plaintiffs' Exhibit 350, Bloomberg monthly   80
report

Plaintiffs' Exhibit 351, Email with         83
attachment

Plaintiffs' Exhibit 352, Email with         87
attachment

Plaintiffs' Exhibit 353, Email with         88
attachment

Plaintiffs' Exhibit 354, Email             90

Plaintiffs' Exhibit 355, Email             93

Page 141

----------- EXHIBITS CONTINUED -----------

Plaintiffs' Exhibit 356, Email             94

Plaintiffs' Exhibit 357, Email with        96
attachment

Plaintiffs' Exhibit 358, letter dated      100
November 15, 2021

Plaintiffs' Exhibit 359, Bloomberg         104
Agreement

Plaintiffs' Exhibit 360, "Bloomberg        107
Agreement"

Plaintiffs' Exhibit 361, "Bloomberg Data   112
License Agreement"

Plaintiffs' Exhibit 362, "Bloomberg Per    115
Security Data License Agreement"

Plaintiffs' Exhibit 363, "Bloomberg Bulk   118
Data License Agreement"

Plaintiffs' Exhibit 364, "Server API       121
Customer Agreement"

Plaintiffs' Exhibit 365, "Bloomberg Master   123
Services Agreement (EPS)"

Plaintiffs' Exhibit 366, "Master Index     126
Services License Agreement"

------ PREVIOUSLY MARKED EXHIBITS -----------

Plaintiffs' Exhibit 29, Bates FRSI00061701   81
through 61702 (native document)

ATTORNEYS EYES ONLY

Page 142

Gregg Weiner, Esq.

gregg.weiner@ropesgray.com

                March 19, 2025

RE:   Dinosaur Financial Group Et Al  v. S&P Global Et Al

    3/7/2025, Jennifer Cole , Bloomberg 30(b)(6) (#7176932)

    The above-referenced transcript is available for

review.

    Within the applicable timeframe, the witness should

read the testimony to verify its accuracy. If there are

any changes, the witness should note those with the

reason, on the attached Errata Sheet.

    The witness should sign the Acknowledgment of

Deponent and Errata and return to the deposing attorney.

Copies should be sent to all counsel, and to Veritext at

cs-ny@veritext.com.

 Return completed errata within 30 days from

receipt of testimony.

  If the witness fails to do so within the time

allotted, the transcript may be used as if signed.


        Yours,

        Veritext Legal Solutions

Page 143

Dinosaur Financial Group Et Al  v. S&P Global Et Al

Jennifer Cole , Bloomberg 30(b)(6) (#7176932)

        E R R A T A  S H E E T

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____


_____  _____

Jennifer Cole , Bloomberg 30(b)(6)        Date

Page 144

Dinosaur Financial Group Et Al  v. S&P Global Et Al

Jennifer Cole , Bloomberg 30(b)(6) (#7176932)

        ACKNOWLEDGEMENT OF DEPONENT

    I, Jennifer Cole , Bloomberg 30(b)(6), do hereby declare that I

have read the foregoing transcript, I have made any

corrections, additions, or changes I deemed necessary as

noted above to be appended hereto, and that the same is

a true, correct and complete transcript of the testimony

given by me.


_____  _____

Jennifer Cole , Bloomberg 30(b)(6)            Date

*If notary is required

        SUBSCRIBED AND SWORN TO BEFORE ME THIS

        _____ DAY OF _____, 20___.


        _____

        NOTARY PUBLIC

37 (Pages 142 - 144)

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2)  Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.