# EXHIBIT 13

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

DINOSAUR FINANCIAL GROUP LLC, SWISS

LIFE INVESTMENT MANAGEMENT HOLDING AG,

and HILDENE CAPITAL MANAGEMENT, LLC, on

behalf of themselves and all others

similarly situated,

          Plaintiffs,   Civil Action No.

  vs.             22 Civ. 1860 (KPF)

S&P GLOBAL, INC., AMERICAN BANKERS

ASSOCIATION, and FACTSET RESEARCH

SYSTEMS INC.,

          Defendants.

------------------------------------x

      *** HIGHLY CONFIDENTIAL ***

   VIDEOTAPED DEPOSITION OF ROGER FAHY, held

at the offices Wollmuth Maher & Deutsch,

LLP, 500 5th Avenue, New York, New York

10110, on March 11, 2025, at 9:00 a.m.

before Maureen Ratto, a Registered

Professional Reporter and Certified

Shorthand Reporter.

Page 158

ROGER FAHY - HIGHLY CONFIDENTIAL

which you would review the CUSIP Distribution Agreement in your business role?

A. I can't say specifically, no.

Q. It's just a document you're generally familiar with?

A. Generally.

Q. Are you also generally familiar with the CUSIP Subscription Agreement?

A. Yes.

Q. What's the purpose of the CUSIP Subscription Agreement?

MR. SHINDER: I'll object to the extent it calls for a legal conclusion. You can answer.

A. A subscription agreement is one that a customer of CGS would enter into that would grant them rights to the CGS dataset.

Q. Do you have an understanding of what, if any, differences there are in the purpose of the distributor agreement and the subscription agreement?

Page 159

ROGER FAHY - HIGHLY CONFIDENTIAL

MR. SHINDER: I'll object to form and I object to the extent this calls for a legal conclusion.

A. I'm not sure of the differences between the agreements. I'm not a lawyer.

Q. The purpose is. I mean, why would someone have to enter in a distributor agreement versus a subscription agreement?

MR. SHINDER: Same objection.

A. A customer that enters into a distributor agreement as a specific use case typically there is distribution involved, and that's why you would need a distribution agreement as opposed to a subscription agreement.

Q. Would the licensing department at CGS be involved in determining whether someone has to enter a distribution agreement versus a subscription agreement?

MR. SHINDER: Objection to form, calls for speculation.

Page 160

ROGER FAHY - HIGHLY CONFIDENTIAL

A. Yeah, I'm not involved in those discussions.

(Plaintiff Exhibit 133A, CUSIP Subscription Agreement, Bates FRSI0000095, having been previously marked, is shown to the Deponent.)

(Exhibit 133B, CUSIP Services Attachment to Subscription Agreement, Bates, FRSI0000068 having been previously marked, is shown to the Deponent.)

Q. We're handing you two exhibits now, 133A and 133B.

Mr. Fahy, do you know what Exhibit 133A is?

A. Yes.

Q. What is Exhibit 133A?

A. It appears to be a subscription agreement.

Q. Do you know what 133B is?

A. This appears to be a Services Attachment to the CUSIP Subscription Agreement.

Q. What's the purposes -- purpose

Page 161

ROGER FAHY - HIGHLY CONFIDENTIAL

of the Services Attachment to the CUSIP Subscription Agreement?

MR. SHINDER: Object to form and I'll object to the extent this question calls for a legal conclusion.

A. I'm not sure. I leave it up to the legal team to determine what legal agreements need to be in place.

Q. Does the legal team determine what CGS services a subscriber elects to acquire through this agreement?

MR. SHINDER: Objection to form.

A. I'm sorry. Could you repeat the question?

Q. Sure. I'm trying to understand what you meant, you leave it up to the lawyers. You mean lawyers to draft the agreements, correct?

A. Yeah, and structure the agreements.

Q. As COO, do you have a general understanding of the different services

41 (Pages 158 - 161)

Page 162

ROGER FAHY - HIGHLY CONFIDENTIAL

and products that CGS offers customers?

A. Generally.

Q. And do you see that in Exhibit 133B there is a Section 1 called CGS Services and there's 20 subparagraphs under it?

A. Yes, I do.

Q. Do you understand these to be different services or products that CGS offers third parties?

A. Yeah, there's many different options for, you know, a diverse set of end users, different use cases.

Q. The first product is called CGS License. Do you see that?

A. Yes.

Q. What's your business understanding of what the CGS License product is?

A. As it states here, its service consists of CUSIP CINS and/or CGS ISIN identifiers and standard security descriptions provided by either CGS directly or via an authorized data

Page 163

ROGER FAHY - HIGHLY CONFIDENTIAL

vendor.

Q. So this is a service, as I think you just mentioned, CGS can provide directly or an authorized data vendor can provide a customer?

A. Yes.

Q. Is the CGS license the entire CGS database that you described to me or some part of it?

MR. SHINDER: Objection to form.

A. We license all of our content. It's all of it.

Q. So if someone purchases CGS License they have access to the entire CGS database?

A. Yes, they do.

Q. And they can get that directly from CGS?

A. Yes, they can.

Q. They can get that from an authorized data vendor, in your view?

A. If they so choose.

Q. You see the second product

Page 164

ROGER FAHY - HIGHLY CONFIDENTIAL

offered is CGS CUSIP Masterfile, do you know what that is?

A. Yes.

Q. What's your business understanding of the product entitled CGS CUSIP Masterfile?

A. It is the universe of CGS data attributes delivered in a variety of different ways, depending on customer need.

Q. And this product or service indicates it's available exclusively through CGS; is that right?

A. Yeah, this is something that CGS offers. This is their product and we offer this.

Q. What's the difference between the CGS license product and the CGS CUSIP Masterfile product then, if any?

A. It states the differences right here in this document.

Q. And what are they?

A. We deliver -- CGS delivers a masterfile of data attributes, should a

Page 165

ROGER FAHY - HIGHLY CONFIDENTIAL

customer decide or need to take a direct file from us. And license covers usage whether they're coming directly or via an authorized data vendor.

Q. So if someone is getting a CGS license directly they, therefore, are getting the CGS CUSIP Masterfile?

A. They can, if they choose.

Q. Is the cost the same?

A. It depends on the use case.

Q. What do you mean by "depends on the use case"?

A. So if a customer wants access to this and has a license, then it depends on what their license is.

Q. So the license could be for -- could be for the entire CGS CUSIP Masterfile, it could be a some smaller portion of that; is that what you're --

A. Yes.

Q. -- distinguishing?

A. Yes.

Q. And would the price vary depending on whether the license is for

42 (Pages 162 - 165)

Page 166

ROGER FAHY - HIGHLY CONFIDENTIAL
the entire masterfile or some elements in the masterfile?

A. I think what I'm saying is the price is really dictated by the end users' use case and whether they choose to come in and take the CGS CUSIP Masterfile in its entirety and they have access to that if they wanted to, some choose to do that and also get it through a third party depending on the use case.

Q. And the use case, is that contingent on how many identifiers the user is downloading?

MR. SHINDER: Objection to form.

A. No, not necessarily. There is a number of -- it could be asset class.

Q. Is the number of identifiers being downloaded, could that be a use case for determining a price?

MR. SHINDER: Objection to form.

A. There's many factors that go into the pricing, depending on customer's

Page 167

ROGER FAHY - HIGHLY CONFIDENTIAL
need.

Q. Does everyone pay the same then for a CGS license?

A. No.

Q. Then how is it determined how much a particular customer has to pay for a CGS license?

A. There's many factors that go in but it could be a number of business lines, the regions in which they operate, the asset classes that they're interested in, and a number of identifiers, but one of those factors.

Q. Is there a set price list that CGS uses to determine the price for a CGS license or is it an individual by individual determination?

MR. SHINDER: Objection to form.

A. We have a transparent licensing model that is out on the open web and you can take a look for yourself and see what drives price.

Q. And that would be what's

Page 168

ROGER FAHY - HIGHLY CONFIDENTIAL
driving the different potential prices for the CGS license?

MR. SHINDER: Objection to form.

A. I would say it goes back to the customer's use case.

Q. And that information is on the CGS website?

A. No, not the customer's use case but the factors that go into the pricing model.

Q. Do you understand what the third product is the CGS CUSIP with ISIN linkage masterfile?

A. I have a general understanding of that, yes.

Q. What is your general understanding?

A. It's the CUSIP delivery that contains ISIN information.

Q. That's a product that's available exclusively through CGS?

A. I know it says that here but other data vendors provide mappings

Page 169

ROGER FAHY - HIGHLY CONFIDENTIAL
between ISIN and CUSIP, so I would argue with the exclusive qualification there.

Q. And that's a product that's updated in realtime by something called Pulse; is that right?

A. In near realtime, yes. It is a -- I'll clarify, it's near realtime. But yes, it's available regularly throughout the day.

Q. Are you familiar with the fourth product listed CGS CUSIP to GEOID Mapping File with ESG Scoring Add-on File?

A. Yes.

Q. What's your general understanding of that product?

A. That is a mapping file of the US Census Bureau's GEOID, which is a geolocation identifier to the CUSIP. That's mainly for the universe's US specific, since that ID is generated by the US Census Bureau.

Q. Is that a product that customers can only get exclusively from

43 (Pages 166 - 169)

Page 266

DINOSAUR FINANCIAL GROUP LLC, et al.
vs. S&P GLOBAL, INC., et al.
3/11/2025 - ROGER FAHY
        ACKNOWLEDGEMENT OF DEPONENT
        I, ROGER FAHY, do hereby declare
that I have read the foregoing transcript,
I have made any corrections, additions, or
changes I deemed necessary as noted on the
Errata to be appended hereto, and that the
same is a true, correct and complete
transcript of the testimony given by me.

_____  _____
ROGER FAHY                 Date
*If notary is required

    SUBSCRIBED AND SWORN TO BEFORE ME THIS
    _____ DAY OF _____, 20___.

    _____
    NOTARY PUBLIC

Page 267

DINOSAUR FINANCIAL GROUP LLC, et al.
vs. S&P GLOBAL, INC., et al.
3/11/2025 - ROGER FAHY
        E R R A T A  S H E E T
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____

_____  _____
ROGER FAHY                 Date

68 (Pages 266 - 267)

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2)  Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

ERRATA SHEET
VERITEXT REPORTING COMPANY
7 TIMES SQUARE
NEW YORK, NEW YORK 10036
212-279-9424


NAME OF CASE: Dinosaur v. S&P
DATE OF DEPOSTION: March 11, 2025
NAME OF DEPONENT: Roger Fahy


PAGE LINE (S)          CHANGE                    REASON

39 | 22-24 |They need an agreement for portions of it. There is also a
free lookup service. | Reason for Change: Punctuation missing.
53 | 9 | Karen should be spelled Karin | Misspelling
54 | 8 | Karen should be spelled Karin | Misspelling
82 |3-5| market participants assign dummy CUSIPs. | Clarification
138 | 11, 16, 19-20, 24 | Should be SNL instead of S & L financial |
Misspelling
146 | 8 | They do although I am not sure. I think it's voluntary |
Missing my answer
182 | 3 | I would say we offer a lot | Clarification
184 | 15 | I view it from | misplaced words.
201 | 16 | a sales management system | Clarification
211 | 4 | only use the US ISIN records, | Clarification
226 | 9 | firm called Delinian | Clarification
234 | 23| Karen should be spelled Karin | Misspelling
236 | 3 | Karen should be spelled Karin | Misspelling
237 | 2 | of their data feed | Clarification
241 | 8 | do not have a required | Clarification
245 | 2 | I don't. Think you need to speak to | Clarification



I declare under penalty and perjury under the laws of the United States
of America that the foregoing is true and correct.

Dated: May 14, 2025                    _____
                                             Roger Fahy

## CONSTANTINE CANNON LLP

**Sarah Bayer**
(212) 350-2782
sbayer@constantinecannon.com

NEW YORK | WASHINGTON | SAN FRANCISCO

April 22, 2025

**By Email**

Client Services - New York
Veritext Legal Solutions
7 Times Square, Suite 1604
New York, New York 10036
ClientServicesNY@veritext.com

Re:    *Dinosaur Financial Group LLC, et al. v. S&P Global, Inc., et al.*, Case No. 22-CV-1860-KPF, U.S. District Court, Southern District of New York

Dear Veritext:

Pursuant to ¶ 23 of the Stipulated Protective Order (Dkt. 125) in this case, this letter provides FactSet Research Systems Inc.'s confidentiality designations for the deposition testimony of Roger Fahy taken on March 11, 2025. Please find the designations as follows:

| Page:Line | Designation |
|---|---|
| 16:22 – 48:9 | Confidential |
| 48:16 – 55:18 | Highly Confidential |
| 56:8 – 96:8 | Highly Confidential |
| 96:15 – 103:23 | Highly Confidential |
| 104:5 – 111:4 | Confidential |
| 111:11 – 111:21 | Confidential |
| 112:3 – 134:22 | Highly Confidential |
| 135:5 – 150:10 | Highly Confidential |
| 152:19 – 160:3 | Confidential |
| 160:13 – 179:13 | Confidential |

CONSTANTINE CANNON LLP

April 22, 2025

NEW YORK | WASHINGTON | SAN FRANCISCO

Page 2

| Page:Line | Designation |
|---|---|
| 179:19 – 187:24 | Confidential |
| 188:12 – 190:12 | Confidential |
| 190:18 – 192:6 | Confidential |
| 192:16 – 193:22 | Confidential |
| 194:4 – 203:5 | Confidential |
| 203:16 – 209:17 | Confidential |
| 209:23 – 212:25 | Confidential |
| 213:15 – 214:13 | Confidential |
| 215:14 – 227:10 | Confidential |
| 227:16 – 232:2 | Confidential |
| 232:8 – 238:10 | Highly Confidential |
| 239:7 – 245:18 | Confidential |
| 245:24 – 259:24 | Confidential |

If you have any questions, please do not hesitate to contact me.

Sincerely,

*/s/ Sarah Bayer*
Sarah Bayer

cc:    Counsel of Record