# EXHIBIT 14

HIGHLY CONFIDENTIAL

Page 1

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

DINOSAUR FINANCIAL GROUP, )
LLC, SWISSLIFE INVESTMENT )
MANAGEMENT HOLDING AG, and )
HILDENE CAPITAL MANAGEMENT, )
LLC, on behalf of ) Civil Action No.
themselves and all others )
similarly situated, ) 1:22-cv-1860 (KPF)
)
    Plaintiffs, )
)
    vs. )
)
S&P GLOBAL, INC., AMERICAN )
BANKERS ASSOCIATION, and )
FACTSET RESEARCH SYSTEMS, )
INC., )
)
    Defendants. )

HIGHLY CONFIDENTIAL

VIDEO RECORDED DEPOSITION OF BETTINA BERGMANN

Friday, October 24, 2025, 8:43 a.m.

Constantine Cannon LLP

1001 Pennsylvania Avenue NW

Washington, DC

Reported By: Marjorie Peters, FAPR, RMR, CRR, RSA

Job Number: Veritext NY 7596648

HIGHLY CONFIDENTIAL

Page 46

sometimes the interviews were only about understanding and not collecting facts.

Q. Okay.

A. Because when you start with this case, it's not -- I think it's not easy to understand in the beginning, unless you are a financial institution.

Q. So just getting a clear record on this.

The identity of the users that you interviewed over the course of the European investigation that you're relying upon in some way for this report, you cannot disclose them, per European law; correct?

MR. BLAD: Object to form.

A. Yes. You said "relied upon," but I do not read "relied upon" in this sentence you are citing in footnote 7.

And I do not know what you mean by "relied upon." "Relied upon" means someone tells me factual content, and I rely upon it. For instance, he says --

MR. BLAD: If you don't understand

Page 47

what he means by "relied upon," you can --

A. Yep.

But "relied upon," to me, has to do with the type of evidence. We have the same term in Germany, you know, for evidence. But I'm not sure that it is exactly what I mean.

I think if you strike out what -- these specific interviews that I used to understand the content and the context, you would probably still come to the same conclusions.

This is what I would say in Germany, for instance, if I were in a criminal procedure, and the state attorney rejected access to certain parts of the file, or the state attorney would tell me, he would say, you don't need to know this because I'm not -- in my final decision against you, I'm not relying on this fact.

Q. So I just want to make sure -- I appreciate that answer.

So are you testifying that you did not rely upon the interviews you had with users over the course of the European investigation to come to

Page 48

these conclusions in this case?

A. You know, actually, I can't tell. I would have to go through all my notes back to 2008.

I can tell you in general that these interviews helped me understand the context, and that I was mostly fed with information by my clients.

And that I'm not sure that any interview, specific interview, makes a difference for my report, whether or not I had it.

Q. Okay. Thank you.

So you mention -- staying with footnote 7, I'm going to now move forward, Ms. Bergmann, in the first sentence.

You go on to say, I have not -- I have -- strike that.

"I have intentionally not disclosed in this report or to Plaintiffs' counsel any confidential information of S&P I obtained directly from S&P or indirectly from the European Commission during the Commission's investigation."

A. Mm-hmm.

Page 49

Q. Do you see that?

A. Yes.

Q. Why were you careful not to do that?

MR. BLAD: Object to the form. I think she has answered this multiple times, but...

A. S&P redlined a lot of information. In most cases, we haven't even seen it. In some cases, we learned it from S&P or otherwise, or it was not all redlined.

I'm trying to respect the confidentiality, also, of S&P information, as far as I received S&P information.

Q. Okay. Thank you.

Let's go to the next sentence. You go on to say, "In addition, I have not reviewed any confidential information any of the Defendants produced in this case."

A. Mm-hmm.

Q. Do you see that?

A. Yes.

Q. Have you reviewed any of the discovery that was produced in this case?

13 (Pages 46 - 49)

HIGHLY CONFIDENTIAL

Page 50

A.   Of the discovery?

Q.   Yes.

A.   No.

Q.   When you say "confidential information any of the Defendants produced in this case," what are you referring to in that sentence?

A.   As far as I know, I have not reviewed any information of the Defendants produced in this case, actually, whether confidential or nonconfidential, because I have not read the Replies, I have not read any of the -- any of the documents produced.  None of them.

Q.   Why not?

A.   Why not?  Because I think -- it had no relevance for me, actually.  I needed to know the fact of the Complaint, and to me, that was sufficient.  And the general contents, I knew that from press releases, for instance, but I haven't read it.

Q.   Okay.  Thank you.

So we've talked a bit about clients you represent in Europe --

Page 51

A.   Yes.

Q.   -- regarding CGS's licensing practices; correct?

A.   Mm-hmm.

Q.   You've represented those clients since about 2008; correct?

A.   Mm-hmm.

Q.   Are they paying you with respect to your -- the work you're doing on their behalf related to CGS?

A.   In Europe, yes.

Q.   They paid you consistently since 2008 for that work?

A.   Yes.

Q.   Okay.

About how much have you been paid for that work in Europe?

MR. BLAD:  I'm going to object to form.  Can we hold that question?  I'm not sure why it's relevant and whether it's protected.  I'd like to think about that.

MR. SHINDER:  Okay.  I will say for

Page 52

the record, we think it goes to bias, and her ability to be an impartial expert in this case.

MR. BLAD:  Why is that?

MR. SHINDER:  That she's being compensated in Europe to represent clients on similar issues with respect to --

MR. BLAD:  Okay.

MR. SHINDER:  -- the European market.

THE WITNESS:  You can also ask me directly about why you're asking this question, because I think I'm not biased.  Why is that?  Because one thing -- first, my clients are associations, and the case was in Europe, it doesn't have anything to do with the US, in my view.

Here, you're applying US law, and even if I oppose to the licensing system of CGS, I cannot give any opinion or view on what's happening in the US.  To me, this is an entirely different thing.  I'm not a US lawyer.

BY MR. SHINDER:

Q.   Okay.

Page 53

A.   And regarding the amount of fees, actually, I can't tell.  I can't tell.

In the beginning, of course, it was a lot, but I think it was about 1/10 or perhaps 1/100 of what the clients of S&P earned in that case.

Q.   Do you have any basis to understand what S&P --

A.   I know what firms they retained, and how many lawyers worked on the case and how the Commission was actually really angry about S&P at a certain point.  Yes.

Q.   Okay.

A.   I can only guess.  I don't know.

Q.   So let's talk about your clients in Europe.

A.   Mm-hmm.

Q.   Do you know whether any of their members are also members of the putative class in this case?

A.   Actually, I don't know.

Q.   Okay.

A.   I don't know all their members.

14 (Pages 50 - 53)

HIGHLY CONFIDENTIAL

Page 54

Q. Do you have an opinion as to whether they would benefit, your clients in Europe, if the Plaintiffs were to prevail in this case?

A. Actually, that would be great, but I think not, because in my view, this is still a US case. It would be great if they could benefit, but I don't think so. We have to continue fighting in the EU, that's why I'm still working with my clients in the EU on the case on different aspects of it.

Q. Just a few more questions, and then we can take a break.

A. Mm-hmm.

Q. Have you reviewed any of the expert reports that the Plaintiffs submitted in this case?

A. I have reviewed the report of Frank Lenz, but that's all.

Q. Have you spoken to him.

A. No.

Q. So you have not reviewed the report of Mr. Elhauge?

A. No.

Q. Have you spoken to him?

Page 55

A. No.

Q. Have you spoken, I'm not sure I asked this, to any of the other experts the Plaintiffs submitted in this case?

A. No, hm-mmm.

Q. Okay.

A. And regarding Frank Lenz, I must make clear that I only read his final report. I didn't have any contact with him. I didn't read any drafts. I only read the final product.

Q. Okay. Just one last question before we take a break.

Did you think it would be inappropriate for you to review any of the discovery materials in this case given your representation of clients against CGS's licensing practices in Europe?

MR. BLAD: Object to form.

A. I don't know what benefit I would have from that, actually.

MR. SHINDER: Okay. Let's take a quick break.

THE WITNESS: Mm-hmm.

Page 56

MR. SHINDER: Make sure you take that off because --

THE VIDEOGRAPHER: The time is 9:39 a.m. Eastern. We're now off the record.

Microphones, everyone.

(RECESS, 9:39 a.m. - 10:02 a.m.)

THE VIDEOGRAPHER: This is the beginning of media unit number 2 of the video-recorded deposition of Ms. Bettina Bergmann. The time is 10:02 a.m. Eastern. We are now back on the record.

Counsel, you may proceed.

BY MR. SHINDER:

Q. Okay. Ms. Bergmann, staying with Exhibit 1, I want to turn your attention to Exhibit A.

A. My CV.

Q. Yeah. You just answered my first question.

So that's a fair and accurate summary of your work history; is that right?

A. It's a very short CV.

Page 57

Q. Yeah, but it's --

A. Do you have something else? This is my Exhibit 1.

Q. Oh, I have it here, and this is my outline.

A. Okay. Good.

Q. Is there anything missing in terms --

A. In my CV?

Q. -- in terms of your work history?

A. No. Nothing significant. Of course, you can always add things.

Q. Okay.

A. Nothing significant, I would say.

Q. This was taken from your law firm's website; is that right?

A. I guess, yes. I changed it a little bit because on my law firm's website, there is no birth date, for instance.

Q. Now, it says you studied law and economics at the Free University of Berlin --

A. Mm-hmm.

Q. -- where you received a doctorate

15 (Pages 54 - 57)

HIGHLY CONFIDENTIAL

Page 254

CERTIFICATE OF COURT REPORTER

I, Marjorie Peters, Fellow of the Academy of Reporting, Registered Merit Reporter, Certified Realtime Reporter, Realtime Systems Administrator, and Notary Public in the District of Columbia, before whom the foregoing deposition was taken, do hereby certify that the witness was placed under oath according to the law; that the foregoing transcript is a true and correct record of the testimony given; that said testimony was taken by me stenographically and thereafter reduced to typewriting under my direction, and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

I further certify that signature was not waived by the witness.

IN WITNESS WHEREOF, I have hereunto set my

'ber, 2025.

_Marjorie Peters_

Marjorie Peters, FAPR, RMR, CRR, RSA

My commission expires October 31, 2029.

Page 255

ERRATA SHEET

IN RE: DINOSAUR FINANCIAL GROUP v S&P GLOBAL et al

DEPONENT: Bettina Bergmann

RETURN BY: 30 days

===========================

PAGE/LINE        CORRECTION AND REASON

(DATE)        (DEPONENT SIGNATURE)

NOTARY PUBLIC:

65 (Pages 254 - 255)

212-267-6868                                                            516-608-2400

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

***Dinosaur Financial Group LLC, et al. vs. S&P Global, Inc., et al.***
**Case No. 22-CV-1860 (KPF)**

**Bettina Bergmann Errata Sheet**

I have read the transcript of my deposition taken on October 24, 2025, and except for the following corrections the transcript of my testimony is true, correct, and complete to the best of my recollection.

| Page | Line | From | To | Reason |
|---|---|---|---|---|
| 36 | 3 | GDP | GDPR | Transcription Error |
| 108 | 12 | can't | can | Transcription Error |
| 108 | 18 | always have | always need ISINs | Clarification |
| 111 | 8 | Bloomberg -- FIGI | Bloomberg FIGI | Transcription Error |
| 131 | 22 | instruments, | information, | Clarification |
| 183 | 5 | license. | ISINs. | Transcription Error |
| 205 | 21 | I can't say I know. I can't | I can't say I know. I can | Transcription Error |
| 230 | 6 | outside CGS | outside CGS's | Spelling |
| 231 | 2 | sold | told | Transcription Error |
| 235 | 14 | in 2000 ELF | in 2011 | Transcription Error |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: November 25, 2025

Signed: